

**ORIGINAL**
**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

APR 15 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

-ODE

1 08-CV-1425

---

CAMBRIDGE UNIVERSITY PRESS,
OXFORD UNIVERSITY PRESS, INC.,
and SAGE PUBLICATIONS, INC.,

                Plaintiffs,

    - vs. –

CARL V. PATTON, in his official
capacity as Georgia State University
President, RON HENRY, in his official
capacity as Georgia State University
Provost, CHARLENE HURT, in her
official capacity as Georgia State
University Dean of Libraries, and J.L.
ALBERT, in his official capacity as
Georgia State University Associate
Provost for Information Systems and
Technology,

                Defendants.

Civil Action No. _____

---

**COMPLAINT FOR DECLARATORY JUDGMENT**
**AND INJUNCTIVE RELIEF**

Plaintiffs Cambridge University Press, Oxford University Press, Inc.,

and SAGE Publications, Inc. (collectively, "Plaintiffs"), by and through their

attorneys, Weil, Gotshal & Manges LLP, and Bondurant, Mixson, & Elmore, LLP,

for their complaint, allege, on information and belief, the following against

defendants Carl V. Patton, in his official capacity as Georgia State University

President, Ron Henry, in his official capacity as Georgia State University Provost,

Charlene Hurt, in her official capacity as Georgia State University Dean of

Libraries, and J.L. Albert, in his official capacity as Georgia State University

Associate Provost for Information Systems and Technology (collectively, "Georgia

State," "the University," or "Defendants"):

## NATURE OF THIS ACTION

1.    This action for declaratory and injunctive relief arises from

Georgia State's systematic, widespread, and unauthorized copying and

distribution of a vast amount of copyrighted works, including those owned or

controlled by Plaintiffs, through a variety of online systems and outlets utilized

and hosted by the University for the digital distribution of course reading

material.  Georgia State has facilitated, enabled, encouraged, and induced

Georgia State professors to upload and post to these systems – and Georgia State

students simultaneously to download, view, print, copy, and distribute – many, if

not all, of the assigned readings for a particular course without limitation,

2

without oversight, and without the requisite authorization and appropriate compensation to the copyright owners of such materials.

2.     The unauthorized digital distribution of copyrighted course readings at Georgia State is pervasive, flagrant, and ongoing.  It has continued unabated in the face of notice and repeated attempts by Plaintiffs to reach an amicable and mutually acceptable solution without the need for litigation.  All such efforts have been flatly rebuffed by Georgia State, which continues to offer digitized course offerings through the Georgia State Library electronic course reserves service, through Georgia State's Blackboard/WebCT Vista electronic course management system, and through Georgia State departmental web pages and hyperlinked online syllabi available on websites and computer servers controlled by Georgia State.  By digitally distributing course reading materials – often in compilations of digital excerpts containing an entire semester's worth of reading – Georgia State provides its students (and until recently, the general public) the ability to view, download, and print without authorization a number and range of copyrighted works that vastly exceeds the amount and type of copying that might credibly be justified as fair use in an educational setting.

3.     With the University's encouragement, hundreds of professors employed by Georgia State have compiled thousands of copyrighted works,

made them available for electronic distribution, and invited students to download, view, and print such materials without permission from the copyright owners. As of February 19, 2008, the Georgia State Library's electronic course reserves system listed over 6700 total works available for some 600-plus courses. Upon information and belief, much (and likely most) of this extensive copying and distribution has been performed without authorization of the hundreds of publishers whose materials are present on the system (and certainly without the permission of Plaintiffs in this action), and thus without payment of the customary licensing fees due to copyright holders under well-established judicial authority.

4.    Georgia State's ongoing unauthorized digital distribution of Plaintiffs' copyrighted materials is directly substituting both for student purchases of copyrighted books and for paper "coursepacks" or "copy packs" – collections of course-related readings assigned by professors and purchased by students, the copying of which occurs pursuant to licenses obtained by bookstores and copy shops according to long-settled copyright law (including Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522 (S.D.N.Y. 1991), and Princeton Univ. Press v. Michigan Document Servs., Inc., 99 F.3d 1381 (6th Cir. 1996)). Many Georgia State students are now able to obtain, with

the encouragement of their professors and the University at large, unlicensed digital compilations containing many of the required readings for a given course without setting foot in a bookstore or expending a single cent on the copyrighted materials that lie at the heart of the educational experience. Those students could easily obtain the same copyrighted materials for use in their courses, either through purchase of the original works or by the University's utilization of existing permissions and licensing systems designed to fairly and efficiently compensate copyright owners for licensed excerpts of their works.

5.    Unless Georgia State's infringing digital distribution practices are enjoined, Plaintiffs, authors, and the publishing community at large will continue to face a certain, substantial, and continuing threat of loss of revenue, which will in turn threaten Plaintiffs' incentive to continue supporting and publishing the cutting-edge scholarship upon which the academic enterprise depends. Requiring the payment of permission fees in the context of the practices described will <u>not</u> jeopardize legitimate exercises of fair use, which Plaintiffs acknowledge and respect, or prevent Georgia State or its students from accessing or benefiting from publishers' works; to the contrary, it will in fact ensure that those works continue to be produced and available to current and future generations of students

## JURISDICTION AND VENUE

6.     This is a civil action seeking injunctive relief for copyright infringement under the Copyright Act (17 U.S.C. §§ 101 et seq.), as well as declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

7.     This Court has jurisdiction of this action pursuant to 17 U.S.C. §§ 101 et seq., 28 U.S.C. §§ 1331, 1338(a), and 2201.

8.     This Court has personal jurisdiction over Defendants, all of whom reside in the State of Georgia and in this District.  In addition, Defendants' conduct, which constitutes copyright infringement, occurred in this District and has caused harm in this District

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(a).

## PARTIES

10.  Plaintiff Cambridge University Press is the not-for-profit Printing and Publishing House of the University of Cambridge, and was chartered by New York State in 1949.  The University of Cambridge is an English common law corporation confirmed by an Act of Parliament passed in 1571.

11.  Plaintiff Oxford University Press, Inc. is a not-for-profit corporation duly organized and existing under the laws of Delaware, with its principal place of business in New York, New York.  Oxford University Press has maintained an office in New York since 1896.

12.  Plaintiff SAGE Publications is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in Thousand Oaks, California.  Its subsidiary publishing divisions and imprints include Corwin Press and SAGE Publications Ltd.

13.  Defendant Carl V. Patton ("Patton") is the president of Georgia State University, a public, not-for-profit corporation with its main campus in Atlanta, Georgia.  Under the statutes of the University, Patton is the chief administrative officer, with responsibility for providing general supervision for all affairs of the University.  Patton is also a member and the chairperson and presiding officer of every faculty and academic unit of the University.  Upon information and belief, Patton has ultimate responsibility for the academic and technical departments of the University involved in the provision of electronic course materials to Georgia State students through the Library website, the Blackboard course management system, and elsewhere – and the ability to direct

and demand their compliance with federal copyright law and to halt activities that do not so comply.

14.   Defendant Ron Henry ("Henry") is the Provost of Georgia State University, the second officer of the University.  In his role as Provost, Henry's responsibilities include ensuring conduct consistent with the professional and legal fulfillment of the University's purposes and objectives, faculty oversight, monitoring the performance of the University's library system, and direct supervision of the Dean of Libraries and the Associate Provost for Information Systems and Technology – i.e., the academic and technical departments of the university involved in the provision of electronic course materials to Georgia State students through the Library website, the Blackboard and WebCT course management systems, and elsewhere.

15.   Defendant Charlene Hurt ("Hurt") is the Dean of Libraries for Georgia State University.  Upon information and belief, Hurt has direct responsibility for and oversight of all library employees and all activities of the University library system, including its website, its electronic/digital offerings, course reserves, and the operation of and policies guiding its electronic course reserve system.

16.  Defendant J.L. Albert ("Albert") is the Associate Provost for Information Systems and Technology and Chief Information Officer.  Upon information and belief, Albert is responsible for information systems and computer technology and infrastructure across the University, including all electronic services provided to University faculty and students such as the Blackboard/WebCT course management system.  Albert also supervises the Director of Library Services Support, who provides technical support for the University's electronic course reserves (ERes) system

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

#### Plaintiffs and Their Infringed Copyrighted Works

17.  Plaintiffs are leading publishers of books, articles, journals, periodicals, and other copyrighted materials which are sold and/or licensed through various permissions and licensing programs to students enrolled in colleges and universities throughout the United States, including Georgia State. Plaintiffs invest significant resources developing and publishing these materials and rely on copyright protection to earn a return on their investment from the sale and licensing of such works (including in connection with coursepacks). This revenue is also vitally important to the authors of such works, and serves as a spur to, and reward for, creative expression.

9

18.  Sales and licensing revenue also is critical to the publishers' ability to continue developing and publishing works for the academic community; indeed, Plaintiffs alone have published books and journal articles by well over 100 Georgia State professors.  Such professors look to publishers to help fund the research and publishing that is so integral to their academic careers.

19.  Each of the works as to which infringement is specifically alleged in Exhibit 1 hereto and in paragraphs 22 through 27 below is an original work of authorship protected by copyright, and exclusive rights under these copyrights (including the rights infringed by Defendants) are owned by, or exclusively licensed to, Plaintiffs.  Each such work is registered with the United States Copyright Office, has its application for registration pending, or is protected under U.S. copyright law as a work first published in a country that is a signatory to the Berne Convention.

### Georgia State's Digital Distribution of Course Reading Materials

20.  On information and belief, over numerous academic terms, hundreds of faculty employed by Georgia State have afforded their students access to copies of thousands of articles, book chapters and other copyrighted works through Georgia State's electronic course reserves listings.  Each of these

copied works is available to students for downloading, viewing, and printing.
Many such works remain on the library's system and are offered to students
semester after semester.

21. A search of the Georgia State Library system conducted by
Plaintiffs during the spring 2008 semester revealed over 6700 total works
available. Although some of these listings identify traditional hard-copy reserve
materials, the vast majority provide direct access to electronic excerpts.
Plaintiffs believe that the volume of digital distribution at Georgia State
significantly exceeds the amount of material that Plaintiffs have been able to
review to date.

22. Many Georgia State courses utilizing Georgia State's digital
distribution capabilities provide students with copies of copyrighted works (each
available for downloading, viewing and printing) owned or controlled by
Plaintiffs in this action, but as to which no permission for such activities has
been obtained. In many cases, the distributed excerpts constitute the very heart
of the work at issue. And in many instances, these excerpts are compiled
together with numerous other readings to create for students a "digital
coursepack" not unlike the collections and anthologies offered for sale by the
Plaintiffs themselves or the hard-copy coursepacks students once would have

purchased at the campus bookstore or copy center.  For example, students in the

Spring 2007 term of Professor Belcher's course "Qualitative Research"

(AL8961) received, along with more than 20 other digital excerpts from other

works, five unlicensed digital excerpts from the second edition of the Handbook

of Qualitative Research, edited by Norman Denzin and Yvonna S. Lincoln and

published by Plaintiff SAGE Publications.  The SAGE Handbook excerpts

included "Paradigmatic Controversies, Contradictions, and Emerging

Confluences" (Ch. 6) by Yvonna S. Lincoln & Egon G. Guba, "Case Studies"

(Ch. 16) by Robert Stake, "Ethnography and Ethnographic Representation" (Ch.

17) by Barbara Tedlock, "Grounded Theory:  Objectivist and Constructivist

Methods" (Ch. 19) by Kathy Charmaz, and "The Interview:  From Structured

Questions to Negotiated Text" (Ch. 24) by Andrea Fontana & James H. Frey –

over 130 pages in total – all distributed without permission from or

compensation to SAGE or the editors and authors.

23.  Students in Professor Kaufman's fall 2007 course

"Qualitative/Interpretive Research in Education I" (EPS8500) were provided,

without SAGE's permission, with a digital compilation of six chapters from the

third edition of The SAGE Handbook of Qualitative Research:  Russell Bishop's

"Freeing Ourselves from Neocolonial Domination in Research" (Ch. 5), "Critical

Humanism and Queer Theory: Living With the Tensions" (Ch. 14), by Kenneth

Plummer, "Qualitative Case Studies" (Ch. 17), by Robert Stake, "Testimonio,

Subalternity, and Narrative Authority" (Ch. 22) , by John Beverley, "Narrative

Inquiry" (Ch. 25), by Susan Chase, and "Relativism, Criteria, and Politics" (Ch.

36), by John Smith & Phil Hodkinson. For the spring 2008 version of the course

(EPRS8510), Professor Kaufman is once again providing students with the same

six chapters, as well as a seventh, Laurel Richardson & Elizabeth Adams St.

Pierre's "Writing: A Method of Inquiry" (Ch. 38), for a total of 152 pages.

24. As another example of a Georgia State professor providing

students with the same, unlicensed, excerpts semester after semester, students in

Professor Emshoff's Fall 2006 course "Introduction to Community Psychology"

(PSYC8200) were given digital copies of two chapters from Milan J. Dluhy's

Changing the System: Political Advocacy for Disadvantaged Groups, also

published by SAGE. Despite SAGE's specific complaint to Georgia State about

this work, Professor Emshoff provided the same excerpt to students in

PSYC8200 during the fall 2007 semester. These and other representative

samples of SAGE Publications works that have been distributed digitally to

students at Georgia State without permission – including three chapters (55

pages) of Liesbet van Zoonen's <u>Feminist Media Studies</u> – are identified in Exhibit 1.

      25.  The works of university presses also are being made available by Georgia State professors in digital format without permission or compensation.  By way of example, students in the Fall 2006 semester of Professor Reimann's course "The Political Economy of Japan" (POLS4256) were able to download, view, and print digital copies of a 33-page excerpt from Ethan Scheiner's book <u>Democracy without Competition in Japan</u>, a book published by Plaintiff Cambridge University Press.  Students in the Fall 2006 semester of Professor Orr's course "Baroque Music" were given digital copies of 32 pages from <u>The Cambridge Companion to the Organ</u>, including the full text of two chapters by Patrick Russill and Geoffrey Webber.  Graydon Beek's essay "Handel's Sacred Music," which appears in Plaintiff Cambridge's anthology <u>Cambridge Companion to Handel</u>, was also compiled along with these materials and made available to Professor Orr's class in digital form without the requisite license.

      26.  Even after Cambridge complained to Georgia State about its failure to properly license digital course material, professors have continued to offer Cambridge works without permission.  The above-mentioned excerpt from

Professor Scheiner's book was once again offered to students in the fall 2007 semester by Professor Reimann in POLS4255.   In that same semester, Professor Bunting compiled three separate chapters totaling 60 pages from a Cambridge collection entitled <u>Materials Development in Language Teaching</u> as part of an unlicensed anthology of readings offered to students in "Material Design, Development, and Publication" (AL8660).  Meanwhile, students in "Comparative Political Analysis" (POLS8200) received two full chapters – totaling over 100 pages – of Theda Skocpol's <u>States and Social Revolutions,</u> while students in four different sections of the Applied Linguistics Practicum (AL8900) received two full chapters of <u>Focus on the Language Classroom</u> by Richard Allwright and Kathleen Bailey.  More recently, in the spring 2008 semester, Professor Lazurus (who himself has published two recent articles in journals sponsored by Plaintiff SAGE Publications) provided students in POLS8170 with 76 pages – chapters 5, 7, and 8 – of <u>Legislative Leviathan</u> by Gary Cox and Mathew McCubbins.  Representative samples of Cambridge works that have been distributed digitally to students at Georgia State without permission are identified in Exhibit 1.

27.  Plaintiff Oxford University Press has also seen its copyright rights, and those of its authors, systematically infringed.  Students in Professor

Blumi's "Survey of World History Since 1500" (HIST1112) received electronic copies of a 50-page excerpt of George M. Frederickson's White Supremacy: A Comparative Study of American and South African History without permission from Oxford.  Students in Professor Darsey's fall 2006 course were provided with electronic copies of the 28-page first chapter of Christopher Simpson's Science of Coercion:  Communication Research and Psychological Warfare, also by Oxford.  Such infringement has continued in recent semesters even after Oxford approached Georgia State to complain of its unlicensed activities. Recently, Professor Dixon provided students in the fall 2007 semester of "African American Male/Female Relationships" (AAS4030) with the 43-page fourth chapter of John Blassingame's The Slave Community:  Plantation Life in the Antebellum South.  In the spring 2008 semester, Professor Dixon provided her students in AAS4030, as well as her students in AAS3000, with the fourth and seventh chapters of Blassingame's book, a total of 78 pages for those two excerpts alone.  During the fall 2007 semester, students in three different sections of "The Psychology of Young Children" (EPY7090) were provided with the 39-page sixth chapter of Laura Berk's Awakening Children's Minds, compiled with at least 15 other digital readings for the course.  Representative

samples of Oxford works that have been distributed digitally to students at Georgia State without permission are identified in Exhibit 1.

28. Georgia State's general copyright primer, entitled the "Regents Guide to Understanding Copyright & Educational Fair Use" and available at http://www.usg.edu/legal/copyright, affords "fair use" parameters – that is, guidelines as to allowable copying without permission – that plainly exceed legal boundaries. The same is true with respect to Georgia State's copyright policy specifically governing the sharing of copyrighted works via the Library's electronic course reserves system, and via Georgia State's use of digital distribution technologies more generally, which endorses the unlicensed copying of up to twenty percent of a work – a benchmark that would countenance unlicensed excerpts of dozens or even hundreds of pages from a given work.

29. The impermissibly wide berth afforded by Georgia State to individual takings from Plaintiffs' and other publishers' works is only exacerbated by systematic bundling and digital distribution of numerous works so copied into what is effectively an electronic compilation or anthology of readings for a given course. For example, students in the course "Social and Personality Development" (EPY8220), offered during the fall 2006 semester, were provided with more than 80 digital reading excerpts, a compilation of

material surpassing even the thickest coursepack or anthology.  Students in the same course during the spring 2007 semester were given 72 electronic readings, while students in "Qualitative Research" (AL8961) received 34.  Georgia State's Regents Guide explicitly endorses this practice of anthologizing, in direct contravention of governing precedent.

30.  What is more, Georgia State's policies are not enforced. Georgia State's electronic course reserves system contains numerous examples of works that violate even the University's own lax policies, including many of the works identified in paragraphs 22 through 27 above.

**The Electronic Course Reserves Functionality at Georgia State**

31.  The Georgia State University Libraries operate a central Internet website (at http://www.library.gsu.edu/) accessible to both Georgia State students and the general public.  This site includes a hyperlink called "Course Reserves."  Clicking this link takes the website visitor to a new web page with prominent hyperlinks that visitors can click to "Search Reserves" or view an "Instructors Online Submission Form." (See sample screen shots attached at Exhibit 2, pp. 1-2.)  Clicking the "Search Reserves" link leads viewers to a web page headlined "ERes/electronic reserves system," where visitors can search the Library database for course reserve listings.  (See Exhibit 2, p. 3.)

32. On the "ERes" page, visitors have several options for searching electronic reserve material. First, they can "Search for Course Reserve Pages" by entering search text, selecting from a dropdown menu one of several database fields within which to search (Course Number, Course Name, Section Number, Department, or Instructor), and clicking the "Search" button; the Library database then displays, on a new page, a list of courses that contain the entered search terms in the specified field(s). (See Exhibit 2, p. 4.) The Course Number for each entry in the search-results list is an active hyperlink; when clicked, the viewer is taken first to an interim copyright policy page (see Exhibit 2, p. 5), where the user must click an "accept" button before being delivered to the Course Reserves Page.

33. Course Reserves Pages (see Exhibit 3) include a list of all the electronic reserve readings for the particular course and (if used by the professor) hard-copy reserve materials and the location on campus where such materials are held. Each electronic reading listed on the Course Reserves Page contains a hyperlink; when one of these hyperlinks is clicked, Adobe Reader (a document viewing software program) is launched and the requested work is displayed for the user, in a new "browser window," in portable document format (pdf). The work can be printed, saved to the user's local computer, and further redistributed

in printed form or through electronic transmission, even to people outside

Georgia State, thereby competing with the publisher's own sales to other people

as well.

34.  When Plaintiffs first visited the Georgia State "ERes" website,

no password was required to view the Course Reserves Pages described above.

However, after Plaintiffs complained to Georgia State about its unlicensed

activities on the website, Georgia State reacted by requiring students to enter a

password on the copyright policy page before being delivered to the Course

Reserves Page, the effect of which was to stymie the publishers' ability to

continue viewing, at a course-by-course level, the massive infringement of their

own works taking place on the site.  Despite this change, the system has

remained open enough for Plaintiffs to identify the ongoing and systematic

infringement identified in this complaint.

35.  Students or other visitors to the Georgia State ERes website can

also search for all Course Reserves Pages offered within a given department or

taught by a given instructor (selected from dropdown menus), or by using

keywords to search for specific documents (as described above) by author or title

(see Exhibit 2, p. 3).

36.  Upon information and belief, the electronic reserve copies that are distributed to students in the manner described above are copied and digitized by either the professor, a person working under the professor's direction, or a library staff member, and are stored on a Georgia State computer server with the Library's knowledge and participation.

37.  In addition to the course reserves system on the Georgia State University Library gateway, syllabi for various Georgia State courses are publicly available on web pages within the Georgia State University domain. Such syllabi contain reading lists with references to reading assignment materials stored on the library's electronic course reserves listings, as described above. Some syllabi contain active hyperlinks which students can click to directly view and print unlicensed electronic versions of the reading materials stored on Georgia State servers.

38.  Upon information and belief, faculty at Georgia State also have posted and distributed electronic copies of Plaintiffs' copyrighted course materials on Blackboard/WebCT Vista, the University's online course management system, which offers centralized and individualized online forums for all Georgia State classes where students can, among other activities. download course readings, get updates on news for the course and view syllabi,

and post electronic messages to a course bulletin board. A key feature of these systems, as described in the tutorials available to faculty and students on the Georgia State website, is the easy ability of instructors to "upload" electronic files to a centralized course "content file," including a "media library" of course content for students to view, download, and save to their own computers.

## The Longstanding Permissions Market for Paper Coursepacks and Distribution of Electronic Copies

39.   Georgia State's ability to distribute reading materials electronically in substitution for student acquisitions of hard-copy books and coursepacks should not be confused with permission to do so; nor does it justify the massive, unauthorized giveaway that is taking place at the expense of Plaintiffs, their authors, and the publishing community at large. If allowed to continue, Georgia State's conduct will cause the publishing industry to incur further and substantial damages. Particularly given the presence of readily accessible, efficient, and economical licensing mechanisms specifically designed by the publishing community to foster innovative distribution formats (including electronic reserves) without sacrificing a fair return to the publishers who bring such works to the public at a substantial cost to these publishers, Georgia State's conduct is indefensible.

40. Efficient and user-friendly mechanisms for the licensing of copyrighted materials for use in paper coursepacks and electronic distribution systems have long been available. Each Plaintiff offers academic users an easy and efficient mechanism for obtaining photocopy (i.e., coursepack) and electronic-use licenses directly from the publisher

41. In addition, Copyright Clearance Center, Inc. (CCC), a not-for-profit corporation established in 1977 by authors, publishers, and users at the suggestion of Congress, provides the academic community (including professors, faculty, librarians, and coursepack vendors) with an efficient, centralized source for licenses for a broad and extensive repertory of millions of copyrighted works from nearly ten-thousand publishers and hundreds of thousands of authors.

42. For example, through its Academic Permissions Service (APS), CCC offers professors, library personnel and other licensees a convenient mechanism for obtaining per-use copyright permission to photocopy, for coursepacks and classroom handouts, content from books, journals, magazines and other materials – including those of Plaintiffs in this action. Users can access APS through the CCC website (or by phone, fax, or mail), establish an account, search for requested works by title, publisher, or ISBN number, enter information about the course for which permission is requested, and obtain rate

quotes for use of a work, all with no charge. For over 1.2 million "pre-cleared" titles, users can obtain on-the-spot permission to include the work in a coursepack, while other requests are forwarded to the rightsholder of record for clearance.

43. CCC's Electronic Course Content Service (ECCS) offers users an essentially identical mechanism for obtaining per-use copyright permission to share books, journals, magazines and other materials via electronic reserves, e-coursepacks, and other electronic formats. For over 620,000 "pre-cleared" titles, including those of Plaintiffs in this action, users can obtain on-the-spot permission for electronic use, while other requests are forwarded to the rightsholder of record for clearance.

44. CCC also offers a new Annual Copyright License for Academic Institutions which provides for the campus-wide use and reuse of publishers' materials in hard-copy or electronic formats (coursepacks, classroom handouts, library reserves, electronic course content, etc.), for a single annual fee rather than on a pay-per-use basis. Plaintiff SAGE Publications has already signed on to participate in this convenient new offering.

45. CCC has partnered with leading application vendors to incorporate its permission services directly into the leading library-automation,

coursepack- production, and course-management systems.  As a result, librarians can secure copyright permissions for many works directly from their own library software applications while working within those applications (including Docutek ERes, the system used at Georgia State), making the permission and compliance process even easier.

46.  Despite the presence of these efficient licensing mechanisms – and despite Georgia State's widespread use of digital course reading distribution methods as detailed above – electronic licensing fees actually paid by Georgia State are minuscule.

## CLAIMS FOR RELIEF

### First Claim
### Direct Copyright Infringement in Violation of 17 U.S.C. § 106
### (Against All Defendants)

47.  Paragraphs 1 through 46 above are incorporated by reference as if set forth fully herein.

48.  By scanning, copying, displaying, and distributing Plaintiffs' copyrighted material – including but not limited to each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis via the Georgia State website and other Georgia State computers and servers, Defendants' conduct constitutes infringement of Plaintiffs' copyrights and exclusive rights

under copyright in violation of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

49.  Defendants' acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiffs' rights.

50.  As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to injunctive and declaratory relief.  Unless enjoined by this Court, Defendants' conduct will continue to cause severe and irreparable harm to Plaintiffs.

51.  Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### Second Claim
### Contributory Copyright Infringement
### (Against All Defendants)

52.  Paragraphs 1 through 51 above are incorporated by reference as if set forth fully herein.

53.  By facilitating, encouraging, and inducing librarians and professors to scan, copy, display, and distribute Plaintiffs' copyrighted material – including but not limited to each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis via the Georgia State University website and other Georgia State computers and servers; and by facilitating, encouraging, and

26

inducing students to view, download, copy and further distribute that copyrighted material, Defendants' conduct constitutes contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

54. Defendants have actual and constructive knowledge that librarians and professors will scan, copy, display and distribute, and that students will view, download, copy and further distribute, Plaintiffs' copyrighted material, and knowingly encourage librarians, professors, and students to do so.

55. Defendants' acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiffs' rights.

56. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to injunctive and declaratory relief. Unless enjoined by this Court, Defendants' conduct will continue to cause severe and irreparable harm to Plaintiffs.

57. Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**Third Claim**
**Vicarious Copyright Infringement**
**(Against All Defendants)**

58. Paragraphs 1 through 57 above are incorporated by reference as if set forth fully herein.

59. By allowing professors and other employees of Georgia State University to scan, copy, display, and distribute Plaintiffs' copyrighted material – including but not limited to each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis via the Georgia State University website and other Georgia State computers and servers; by facilitating, encouraging and inducing students to view, download, copy and further distribute that copyrighted material; by failing to supervise or prevent such infringement when they have the right and ability to do so; and by profiting by such infringement, Defendants' conduct constitutes vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

60. Defendants' acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiffs' rights.

61. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright. Plaintiffs are entitled

to injunctive and declaratory relief. Unless enjoined by this Court, Defendants'
conduct will continue to cause severe and irreparable harm to Plaintiffs.

62. Plaintiffs are entitled to recover their attorneys' fees and costs
pursuant to 17 U.S.C. § 505.

**WHEREFORE,** Plaintiffs pray:

1. That this Court enter an order pursuant to 17 U.S.C. § 502 and
28 U.S.C. § 2201 declaring that Defendants' actions as complained of herein
constitute copyright infringement, and granting permanent injunctive relief
enjoining Defendants or any individuals in their employ or control. now or in the
future, without seeking the appropriate authorization from Plaintiffs, from copying,
displaying or distributing electronic copies of any of Plaintiffs' copyrighted works
to Georgia State students or anyone else, or from facilitating or encouraging others
to do so, in the manner described above – namely, via the collection and assembly
of course reading materials for offer to students through an e-reserves system, a
course management system, a course web page, or any similar electronic
distribution method;

2. That this Court award Plaintiffs the costs of this action and
reasonable attorneys fees' and expenses pursuant to 17 U.S.C. § 505; and

3.     That this Court grant such other and further relief as it deems just and proper.

Respectfully submitted, this 15th day of April, 2008.

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich (*pro hac vice pending*)
Randi Singer (*pro hac vice pending*)
Todd D. Larson (*pro hac vice pending*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Plaintiffs*