# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

|  |  |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al, <br><br> Plaintiffs, <br><br> -*vs.*- <br><br> CARL V. PATTON, in his official capacity as Georgia State University President, et al, <br><br> Defendants. | Civil Action File <br> No. 1:08-CV-1425-ODE |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT TO ADD ADDITIONAL DEFENDANTS, AND MEMORANDUM IN SUPPORT

Cambridge University Press, Oxford University Press, Inc., and Sage Publications, Inc. (collectively, "Plaintiffs") respectfully move, pursuant to Fed. R. Civ. P. 15(a) and 21, for leave to file the First Amended Complaint attached hereto as Exhibit A which adds as additional defendants the Board of Regents of the University System of Georgia d/b/a Georgia State University, and the following individual members of the Board in their official capacities: Kenneth R. Bernard, Jr.; James A. Bishop; Hugh A. Carter, Jr.; William H. Cleveland; Robert F. Hatcher; Felton Jenkins; W. Mansfield Jennings, Jr.; James R. Jolly; Donald M. Leebern, Jr.; Eldridge McMillan; William NeSmith, Jr.; Doreen Stiles Poitevint;

Willis J. Potts; Jr.; Wanda Yancey Rodwell; Kessel Stelling, Jr.; Benjamin J. Tarbutton, III; Richard L. Tucker; and Allan Vigil (collectively "Board of Regents").

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading by leave of court, and "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In addition, Rule 21 provides that "Parties may be dropped or added by order of the court on motion of any party . . . at any stage of the action on such terms as are just." *See, e.g., Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1255 (11th Cir. 1998) ("in the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962), *cert. denied*, 526 U.S. 1081 (1999)) (reversing district court's denial of motion to amend to add additional defendant). Here, none of these factors is present.

Plaintiffs' motion is actuated by the Defendants' contention that the Board of Regents is a "necessary party" which has not been joined, insofar as Georgia State University is a unit of the Regents of the University System of Georgia. *See*

Joint Preliminary Planning Report ¶ 5; Answer ¶ 13. Therefore, Plaintiffs' right to injunctive relief against the Board of Regents may be said to arise "out of the same transaction, occurrence, or series of transactions or occurrences" as Plaintiffs' claims against the current Defendants. *See* Fed. R. Civ. P. 20. Further, common questions of law and fact exist regarding Plaintiffs' claims against the current Defendants and the Board of Regents. *See id.*

For all of these reasons, Plaintiffs respectfully request leave to file the attached First Amended Complaint adding the Board of Regents and its members in their individual capacities as defendants. A copy of the proposed First Amended Complaint is filed herewith.

Respectfully submitted, this 22nd day of September, 2008.

/s/ Edward B. Krugman
Edward B. Krugman
Georgia Bar No. 429927

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
krugman@bmelaw.com

R. Bruce Rich
Randi W. Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Plaintiffs*

EXHIBIT

A

CAMBRIDGE UNIVERSITY PRESS,
OXFORD UNIVERSITY PRESS, INC.,
and SAGE PUBLICATIONS, INC.,

                Plaintiffs,

    - *vs.* –

CARL V. PATTON, in his official
capacity as Georgia State University
President, RON HENRY, in his official
capacity as Georgia State University
Provost, CHARLENE HURT, in her
official capacity as Georgia State
University Dean of Libraries, J.L.
ALBERT, in his official capacity as
Georgia State University Associate
Provost for Information Systems and
Technology, THE BOARD OF
REGENTS OF THE UNIVERSITY
SYSTEM OF GEORGIA, KENNETH R.
BERNARD, JR., in his official capacity
as member of the Board of Regents of the
University System of Georgia, JAMES A.
BISHOP, in his official capacity as
member of the Board of Regents of the
University System of Georgia, HUGH A.
CARTER, JR., in his official capacity as
member of the Board of Regents of the
University System of Georgia, WILLIAM
H. CLEVELAND, in his official capacity
as member of the Board of Regents of the

Civil Action File
No. 1:08-CV-1425-ODE

University System of Georgia, ROBERT
F. HATCHER, in his official capacity as
Vice Chair of the Board of Regents of the
University System of Georgia, FELTON
JENKINS, in his official capacity as
member of the Board of Regents of the
University System of Georgia, W.
MANSFIELD JENNINGS, JR., in his
official capacity as member of the Board
of Regents of the University System of
Georgia, JAMES R. JOLLY, in his
official capacity as member of the Board
of Regents of the University System of
Georgia, DONALD M. LEEBERN, JR.,
in his official capacity as member of the
Board of Regents of the University
System of Georgia, ELRIDGE
MCMILLAN, in his official capacity as
member of the Board of Regents of the
University System of Georgia, WILLIAM
NESMITH, JR., in his official capacity as
member of the Board of Regents of the
University System of Georgia, DOREEN
STILES POITEVINT, in her official
capacity as member of the Board of
Regents of the University System of
Georgia, WILLIS J. POTTS, JR., in his
official capacity as member of the Board
of Regents of the University System of
Georgia, WANDA YANCEY
RODWELL, in her official capacity as
member of the Board of Regents of the
University System of Georgia, KESSEL
STELLING, JR., in his official capacity
as member of the Board of Regents of the
University System of Georgia,
BENJAMIN J. TARBUTTON, III, in his

official capacity as member of the Board of Regents of the University System of Georgia, RICHARD L. TUCKER, in his official capacity as Chair of the Board of Regents of the University System of Georgia, and ALLAN VIGIL, in his official capacity as member of the Board of Regents of the University System of Georgia,

Defendants.

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs Cambridge University Press, Oxford University Press, Inc., and

SAGE Publications, Inc. (collectively, "Plaintiffs"), by and through their attorneys,

Weil, Gotshal & Manges LLP, and Bondurant, Mixson, & Elmore, LLP, for their

complaint, allege, on information and belief, the following against defendants Carl

V. Patton, in his official capacity as Georgia State University President, Ron

Henry, in his official capacity as Georgia State University Provost, Charlene Hurt,

in her official capacity as Georgia State University Dean of Libraries, J.L. Albert,

in his official capacity as Georgia State University Associate Provost for

Information Systems and Technology, The Board of Regents of the University

System of the State of Georgia, Kenneth R. Bernard, Jr., in his official capacity as

3

member of the Board of Regents of the University System of Georgia, James A. Bishop, in his official capacity as member of the Board of Regents of the University System of Georgia, Hugh A. Carter, Jr., in his official capacity as member of the Board of Regents of the University System of Georgia, William H. Cleveland, in his official capacity as member of the Board of Regents of the University System of Georgia, Robert F. Hatcher, in his official capacity as Vice Chair of the Board of Regents of the University System of Georgia, Felton Jenkins, in his official capacity as member of the Board of Regents of the University System of Georgia, W. Mansfield Jennings, Jr., in his official capacity as member of the Board of Regents of the University System of Georgia, James R. Jolly, in his official capacity as member of the Board of Regents of the University System of Georgia, Donald M. Leebern, Jr., in his official capacity as member of the Board of Regents of the University System of Georgia, Elridge McMillan, in his official capacity as member of the Board of Regents of the University System of Georgia, William NeSmith, Jr., in his official capacity as member of the Board of Regents of the University System of Georgia, Doreen Stiles Poitevint, in her official capacity as member of the Board of Regents of the University System of Georgia, Willis J. Potts Jr., in his official capacity as member of the Board of Regents of the University System of Georgia, Wanda Yancey Rodwell, in her official capacity as

member of the Board of Regents of the University System of Georgia, Kessel

Stelling, Jr., in his official capacity as member of the Board of Regents of the

University System of Georgia, Benjamin J. Tarbutton, III, in his official capacity

as member of the Board of Regents of the University System of Georgia, Richard

L. Tucker, in his official capacity as Chair of the Board of Regents of the

University System of Georgia, and Allan Vigil, in his official capacity as member

of the Board of Regents of the University System of Georgia (collectively,

"Georgia State," "the University," or "Defendants"):

## **NATURE OF THIS ACTION**

1.

This action for declaratory and injunctive relief arises from Georgia State's

systematic, widespread, and unauthorized copying and distribution of a vast

amount of copyrighted works, including those owned or controlled by Plaintiffs,

through a variety of online systems and outlets utilized and hosted by the

University for the digital distribution of course reading material. Georgia State has

facilitated, enabled, encouraged, and induced Georgia State professors to upload

and post to these systems – and Georgia State students simultaneously to

download, view, print, copy, and distribute – many, if not all, of the assigned

readings for a particular course without limitation, without oversight, and without

5

the requisite authorization and appropriate compensation to the copyright owners of such materials.

2.

The unauthorized digital distribution of copyrighted course readings at Georgia State is pervasive, flagrant, and ongoing. It has continued unabated in the face of notice and repeated attempts by Plaintiffs to reach an amicable and mutually acceptable solution without the need for litigation. All such efforts have been flatly rebuffed by Georgia State, which continues to offer digitized course offerings through the Georgia State Library electronic course reserves service, through Georgia State's Blackboard/WebCT Vista electronic course management system, and through Georgia State departmental web pages and hyperlinked online syllabi available on websites and computer servers controlled by Georgia State. By digitally distributing course reading materials – often in compilations of digital excerpts containing an entire semester's worth of reading – Georgia State provides its students (and until recently, the general public) the ability to view, download, and print without authorization a number and range of copyrighted works that vastly exceeds the amount and type of copying that might credibly be justified as fair use in an educational setting.

3.

With the University's encouragement, hundreds of professors employed by
Georgia State have compiled thousands of copyrighted works, made them available
for electronic distribution, and invited students to download, view, and print such
materials without permission from the copyright owners. As of February 19, 2008,
the Georgia State Library's electronic course reserves system listed over 6700 total
works available for some 600-plus courses. Upon information and belief, much
(and likely most) of this extensive copying and distribution has been performed
without authorization of the hundreds of publishers whose materials are present on
the system (and certainly without the permission of Plaintiffs in this action), and
thus without payment of the customary licensing fees due to copyright holders
under well-established judicial authority.

4.

Georgia State's ongoing unauthorized digital distribution of Plaintiffs'
copyrighted materials is directly substituting both for student purchases of
copyrighted books and for paper "coursepacks" or "copy packs" – collections of
course-related readings assigned by professors and purchased by students, the
copying of which occurs pursuant to licenses obtained by bookstores and copy
shops according to long-settled copyright law (including <u>Basic Books, Inc.</u> v.

Kinko's Graphics Corp., 758 F. Supp. 1522 (S.D.N.Y. 1991), and Princeton Univ. Press v. Michigan Document Servs., Inc., 99 F.3d 1381 (6th Cir. 1996)). Many Georgia State students are now able to obtain, with the encouragement of their professors and the University at large, unlicensed digital compilations containing many of the required readings for a given course without setting foot in a bookstore or expending a single cent on the copyrighted materials that lie at the heart of the educational experience. Those students could easily obtain the same copyrighted materials for use in their courses, either through purchase of the original works or by the University's utilization of existing permissions and licensing systems designed to fairly and efficiently compensate copyright owners for licensed excerpts of their works.

5.

Unless Georgia State's infringing digital distribution practices are enjoined, Plaintiffs, authors, and the publishing community at large will continue to face a certain, substantial, and continuing threat of loss of revenue, which will in turn threaten Plaintiffs' incentive to continue supporting and publishing the cutting-edge scholarship upon which the academic enterprise depends. Requiring the payment of permission fees in the context of the practices described will not jeopardize legitimate exercises of fair use, which Plaintiffs acknowledge and

8

respect, or prevent Georgia State or its students from accessing or benefiting from publishers' works; to the contrary, it will in fact ensure that those works continue to be produced and available to current and future generations of students.

## JURISDICTION AND VENUE

### 6.

This is a civil action seeking injunctive relief for copyright infringement under the Copyright Act (17 U.S.C. §§ 101 et seq.), as well as declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

### 7.

This Court has jurisdiction of this action pursuant to 17 U.S.C. §§ 101 et seq., 28 U.S.C. §§ 1331, 1338(a), and 2201.

### 8.

This Court has personal jurisdiction over Defendants, all of whom reside in the State of Georgia and in this District. In addition, Defendants' conduct, which constitutes copyright infringement, occurred in this District and has caused harm in this District.

### 9.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(a).

## PARTIES

### 10.

Plaintiff Cambridge University Press is the not-for-profit Printing and Publishing House of the University of Cambridge, and was chartered by New York State in 1949. The University of Cambridge is an English common law corporation confirmed by an Act of Parliament passed in 1571.

### 11.

Plaintiff Oxford University Press, Inc. is a not-for-profit corporation duly organized and existing under the laws of Delaware, with its principal place of business in New York, New York. Oxford University Press has maintained an office in New York since 1896.

### 12.

Plaintiff SAGE Publications is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in Thousand Oaks, California. Its subsidiary publishing divisions and imprints include Corwin Press and SAGE Publications Ltd.

13.

Defendant Carl V. Patton ("Patton") is the president of Georgia State University, a public, not-for-profit corporation with its main campus in Atlanta, Georgia. Under the statutes of the University, Patton is the chief administrative officer, with responsibility for providing general supervision for all affairs of the University. Patton is also a member and the chairperson and presiding officer of every faculty and academic unit of the University. Upon information and belief, Patton has ultimate responsibility for the academic and technical departments of the University involved in the provision of electronic course materials to Georgia State students through the Library website, the Blackboard course management system, and elsewhere – and the ability to direct and demand their compliance with federal copyright law and to halt activities that do not so comply.

14.

Defendant Ron Henry ("Henry") is the Provost of Georgia State University, the second officer of the University. In his role as Provost, Henry's responsibilities include ensuring conduct consistent with the professional and legal fulfillment of the University's purposes and objectives, faculty oversight, monitoring the performance of the University's library system, and direct supervision of the Dean of Libraries and the Associate Provost for Information Systems and Technology –

i.e., the academic and technical departments of the university involved in the provision of electronic course materials to Georgia State students through the Library website, the Blackboard and WebCT course management systems, and elsewhere.

15.

Defendant Charlene Hurt ("Hurt") is the Dean of Libraries for Georgia State University. Upon information and belief, Hurt has direct responsibility for and oversight of all library employees and all activities of the University library system, including its website, its electronic/digital offerings, course reserves, and the operation of and policies guiding its electronic course reserve system.

16.

Defendant J.L. Albert ("Albert") is the Associate Provost for Information Systems and Technology and Chief Information Officer. Upon information and belief, Albert is responsible for information systems and computer technology and infrastructure across the University, including all electronic services provided to University faculty and students such as the Blackboard/WebCT course management system. Albert also supervises the Director of Library Services Support, who provides technical support for the University's electronic course reserves (ERes) system.

16a.

Defendant The Board of Regents of the University System of Georgia ("Board of Regents" or "Board") is, information and belief, a department in the executive branch of government of the State of Georgia as set forth in 1983 Ga. Const. Art. VIII, Sec. IV, Par. I, of which Georgia State University is a unit.

16b.

Defendant Richard L. Tucker is, on information and belief, a resident of the State of Georgia who serves as Chair of the Board of Regents.

16c.

Defendant Robert F. Hatcher is, on information and belief, a resident of the State of Georgia who serves as Vice Chair of the Board of Regents.

16d.

Defendants Kenneth R. Bernard, Jr., James A. Bishop, Hugh A. Carter, Jr., William H. Cleveland, Felton Jenkins, W. Mansfield Jennings, Jr., James R. Jolly, Donald M. Leebern, Jr., Elridge McMillan, William NeSmith, Jr., Doreen Stiles Poitevint, Willis J. Potts, Jr., Wanda Yancey Rodwell, Kessel Stelling, Jr., Benjamin J. Tarbutton, III, and Allan Vigil are all, on information and belief, residents of the State of Georgia who serve as members of the Board of Regents.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

## Plaintiffs and Their Infringed Copyrighted Works

### 17.

Plaintiffs are leading publishers of books, articles, journals, periodicals, and other copyrighted materials which are sold and/or licensed through various permissions and licensing programs to students enrolled in colleges and universities throughout the United States, including Georgia State. Plaintiffs invest significant resources developing and publishing these materials and rely on copyright protection to earn a return on their investment from the sale and licensing of such works (including in connection with coursepacks). This revenue is also vitally important to the authors of such works, and serves as a spur to, and reward for, creative expression.

### 18.

Sales and licensing revenue also is critical to the publishers' ability to continue developing and publishing works for the academic community; indeed, Plaintiffs alone have published books and journal articles by well over 100 Georgia State professors. Such professors look to publishers to help fund the research and publishing that is so integral to their academic careers.

19.

Each of the works as to which infringement is specifically alleged in Exhibit 1 attached to the Complaint and in paragraphs 22 through 27 below is an original work of authorship protected by copyright, and exclusive rights under these copyrights (including the rights infringed by Defendants) are owned by, or exclusively licensed to, Plaintiffs. Each such work is registered with the United States Copyright Office, has its application for registration pending, or is protected under U.S. copyright law as a work first published in a country that is a signatory to the Berne Convention.

## Georgia State's Digital Distribution of Course Reading Materials

20.

On information and belief, over numerous academic terms, hundreds of faculty employed by Georgia State have afforded their students access to copies of thousands of articles, book chapters and other copyrighted works through Georgia State's electronic course reserves listings. Each of these copied works is available to students for downloading, viewing, and printing. Many such works remain on the library's system and are offered to students semester after semester.

21.

A search of the Georgia State Library system conducted by Plaintiffs during the spring 2008 semester revealed over 6700 total works available. Although some of these listings identify traditional hard-copy reserve materials, the vast majority provide direct access to electronic excerpts. Plaintiffs believe that the volume of digital distribution at Georgia State significantly exceeds the amount of material that Plaintiffs have been able to review to date.

22.

Many Georgia State courses utilizing Georgia State's digital distribution capabilities provide students with copies of copyrighted works (each available for downloading, viewing and printing) owned or controlled by Plaintiffs in this action, but as to which no permission for such activities has been obtained. In many cases, the distributed excerpts constitute the very heart of the work at issue. And in many instances, these excerpts are compiled together with numerous other readings to create for students a "digital coursepack" not unlike the collections and anthologies offered for sale by the Plaintiffs themselves or the hard-copy coursepacks students once would have purchased at the campus bookstore or copy center. For example, students in the Spring 2007 term of Professor Belcher's course "Qualitative Research" (AL8961) received, along with more than 20 other

digital excerpts from other works, five unlicensed digital excerpts from the second

edition of the Handbook of Qualitative Research, edited by Norman Denzin and

Yvonna S. Lincoln and published by Plaintiff SAGE Publications. The SAGE

Handbook excerpts included "Paradigmatic Controversies, Contradictions, and

Emerging Confluences" (Ch. 6) by Yvonna S. Lincoln & Egon G. Guba, "Case

Studies" (Ch. 16) by Robert Stake, "Ethnography and Ethnographic

Representation" (Ch. 17) by Barbara Tedlock, "Grounded Theory: Objectivist and

Constructivist Methods" (Ch. 19) by Kathy Charmaz, and "The Interview: From

Structured Questions to Negotiated Text" (Ch. 24) by Andrea Fontana & James H.

Frey – over 130 pages in total – all distributed without permission from or

compensation to SAGE or the editors and authors.

23.

Students in Professor Kaufman's fall 2007 course "Qualitative/Interpretive

Research in Education I" (EPS8500) were provided, without SAGE's permission,

with a digital compilation of six chapters from the third edition of The SAGE

Handbook of Qualitative Research: Russell Bishop's "Freeing Ourselves from

Neocolonial Domination in Research" (Ch. 5), "Critical Humanism and Queer

Theory: Living With the Tensions" (Ch. 14), by Kenneth Plummer, "Qualitative

Case Studies" (Ch. 17), by Robert Stake, "Testimonio, Subalternity, and Narrative

17

Authority" (Ch. 22) , by John Beverley, "Narrative Inquiry" (Ch. 25), by Susan

Chase, and "Relativism, Criteria, and Politics" (Ch. 36), by John Smith & Phil

Hodkinson. For the spring 2008 version of the course (EPRS8510), Professor

Kaufman is once again providing students with the same six chapters, as well as a

seventh, Laurel Richardson & Elizabeth Adams St. Pierre's "Writing: A Method

of Inquiry" (Ch. 38), for a total of 152 pages.

24.

As another example of a Georgia State professor providing students with the

same, unlicensed, excerpts semester after semester, students in Professor

Emshoff's Fall 2006 course "Introduction to Community Psychology"

(PSYC8200) were given digital copies of two chapters from Milan J. Dluhy's

Changing the System: Political Advocacy for Disadvantaged Groups, also

published by SAGE. Despite SAGE's specific complaint to Georgia State about

this work, Professor Emshoff provided the same excerpt to students in PSYC8200

during the fall 2007 semester. These and other representative samples of SAGE

Publications works that have been distributed digitally to students at Georgia State

without permission – including three chapters (55 pages) of Liesbet van Zoonen's

Feminist Media Studies – are identified in Exhibit 1 to the Complaint.

25.

The works of university presses also are being made available by Georgia State professors in digital format without permission or compensation. By way of example, students in the Fall 2006 semester of Professor Reimann's course "The Political Economy of Japan" (POLS4256) were able to download, view, and print digital copies of a 33-page excerpt from Ethan Scheiner's book <u>Democracy without Competition in Japan</u>, a book published by Plaintiff Cambridge University Press. Students in the Fall 2006 semester of Professor Orr's course "Baroque Music" were given digital copies of 32 pages from <u>The Cambridge Companion to the Organ</u>, including the full text of two chapters by Patrick Russill and Geoffrey Webber. Graydon Beek's essay "Handel's Sacred Music," which appears in Plaintiff Cambridge's anthology <u>Cambridge Companion to Handel</u>, was also compiled along with these materials and made available to Professor Orr's class in digital form without the requisite license.

26.

Even after Cambridge complained to Georgia State about its failure to properly license digital course material, professors have continued to offer Cambridge works without permission. The above-mentioned excerpt from Professor Scheiner's book was once again offered to students in the fall 2007

semester by Professor Reimann in POLS4255. In that same semester, Professor Bunting compiled three separate chapters totaling 60 pages from a Cambridge collection entitled <u>Materials Development in Language Teaching</u> as part of an unlicensed anthology of readings offered to students in "Material Design, Development, and Publication" (AL8660). Meanwhile, students in "Comparative Political Analysis" (POLS8200) received two full chapters – totaling over 100 pages – of Theda Skocpol's <u>States and Social Revolutions</u>, while students in four different sections of the Applied Linguistics Practicum (AL8900) received two full chapters of <u>Focus on the Language Classroom</u> by Richard Allwright and Kathleen Bailey. More recently, in the spring 2008 semester, Professor Lazurus (who himself has published two recent articles in journals sponsored by Plaintiff SAGE Publications) provided students in POLS8170 with 76 pages – chapters 5, 7, and 8 – of <u>Legislative Leviathan</u> by Gary Cox and Mathew McCubbins. Representative samples of Cambridge works that have been distributed digitally to students at Georgia State without permission are identified in Exhibit 1 to the Complaint.

27.

Plaintiff Oxford University Press has also seen its copyright rights, and those of its authors, systematically infringed. Students in Professor Blumi's "Survey of World History Since 1500" (HIST1112) received electronic copies of a 50-page

excerpt of George M. Frederickson's <u>White Supremacy: A Comparative Study of American and South African History</u> without permission from Oxford. Students in Professor Darsey's fall 2006 course were provided with electronic copies of the 28-page first chapter of Christopher Simpson's <u>Science of Coercion: Communication Research and Psychological Warfare,</u> also by Oxford. Such infringement has continued in recent semesters even after Oxford approached Georgia State to complain of its unlicensed activities. Recently, Professor Dixon provided students in the fall 2007 semester of "African American Male/Female Relationships" (AAS4030) with the 43-page fourth chapter of John Blassingame's <u>The Slave Community: Plantation Life in the Antebellum South.</u> In the spring 2008 semester, Professor Dixon provided her students in AAS4030, as well as her students in AAS3000, with the fourth and seventh chapters of Blassingame's book, a total of 78 pages for those two excerpts alone. During the fall 2007 semester, students in three different sections of "The Psychology of Young Children" (EPY7090) were provided with the 39-page sixth chapter of Laura Berk's <u>Awakening Children's Minds,</u> compiled with at least 15 other digital readings for the course. Representative samples of Oxford works that have been distributed digitally to students at Georgia State without permission are identified in Exhibit 1 to the Complaint.

28.

Georgia State's general copyright primer, entitled the "Regents Guide to

Understanding Copyright & Educational Fair Use" and available at

http://www.usg.edu/legal/copyright, affords "fair use" parameters – that is,

guidelines as to allowable copying without permission – that plainly exceed legal

boundaries. The same is true with respect to Georgia State's copyright policy

specifically governing the sharing of copyrighted works via the Library's

electronic course reserves system, and via Georgia State's use of digital

distribution technologies more generally, which endorses the unlicensed copying

of up to twenty percent of a work – a benchmark that would countenance

unlicensed excerpts of dozens or even hundreds of pages from a given work.

29.

The impermissibly wide berth afforded by Georgia State to individual

takings from Plaintiffs' and other publishers' works is only exacerbated by

systematic bundling and digital distribution of numerous works so copied into what

is effectively an electronic compilation or anthology of readings for a given course.

For example, students in the course "Social and Personality Development"

(EPY8220), offered during the fall 2006 semester, were provided with more than

80 digital reading excerpts, a compilation of material surpassing even the thickest

coursepack or anthology. Students in the same course during the spring 2007

semester were given 72 electronic readings, while students in "Qualitative

Research" (AL8961) received 34. Georgia State's Regents Guide explicitly

endorses this practice of anthologizing, in direct contravention of governing

precedent.

30.

What is more, Georgia State's policies are not enforced. Georgia State's

electronic course reserves system contains numerous examples of works that

violate even the University's own lax policies, including many of the works

identified in paragraphs 22 through 27 above.

## The Electronic Course Reserves Functionality at Georgia State

31.

The Georgia State University Libraries operate a central Internet website (at

http://www.library.gsu.edu/) accessible to both Georgia State students and the

general public. This site includes a hyperlink called "Course Reserves." Clicking

this link takes the website visitor to a new web page with prominent hyperlinks

that visitors can click to "Search Reserves" or view an "Instructors Online

Submission Form." (See sample screen shots attached at Exhibit 2 to the

Complaint, pp. 1-2.) Clicking the "Search Reserves" link leads viewers to a web

page headlined "ERes/electronic reserves system," where visitors can search the Library database for course reserve listings. (See Exhibit 2 to the Complaint, p. 3.)

32.

On the "ERes" page, visitors have several options for searching electronic reserve material. First, they can "Search for Course Reserve Pages" by entering search text, selecting from a dropdown menu one of several database fields within which to search (Course Number, Course Name, Section Number, Department, or Instructor), and clicking the "Search" button; the Library database then displays, on a new page, a list of courses that contain the entered search terms in the specified field(s). (See Exhibit 2 to the Complaint, p. 4.) The Course Number for each entry in the search-results list is an active hyperlink; when clicked, the viewer is taken first to an interim copyright policy page (see Exhibit 2 to the Complaint, p. 5), where the user must click an "accept" button before being delivered to the Course Reserves Page.

33.

Course Reserves Pages (see Exhibit 3 to the Complaint) include a list of all the electronic reserve readings for the particular course and (if used by the professor) hard-copy reserve materials and the location on campus where such materials are held. Each electronic reading listed on the Course Reserves Page

24

contains a hyperlink; when one of these hyperlinks is clicked, Adobe Reader (a document viewing software program) is launched and the requested work is displayed for the user, in a new "browser window," in portable document format (pdf). The work can be printed, saved to the user's local computer, and further redistributed in printed form or through electronic transmission, even to people outside Georgia State, thereby competing with the publisher's own sales to other people as well.

34.

When Plaintiffs first visited the Georgia State "ERes" website, no password was required to view the Course Reserves Pages described above. However, after Plaintiffs complained to Georgia State about its unlicensed activities on the website, Georgia State reacted by requiring students to enter a password on the copyright policy page before being delivered to the Course Reserves Page, the effect of which was to stymie the publishers' ability to continue viewing, at a course-by-course level, the massive infringement of their own works taking place on the site. Despite this change, the system has remained open enough for Plaintiffs to identify the ongoing and systematic infringement identified in this complaint.

35.

Students or other visitors to the Georgia State ERes website can also search

for all Course Reserves Pages offered within a given department or taught by a

given instructor (selected from dropdown menus), or by using keywords to search

for specific documents (as described above) by author or title (see Exhibit 2 to the

Complaint, p. 3).

36.

Upon information and belief, the electronic reserve copies that are

distributed to students in the manner described above are copied and digitized by

either the professor, a person working under the professor's direction, or a library

staff member, and are stored on a Georgia State computer server with the Library's

knowledge and participation.

37.

In addition to the course reserves system on the Georgia State University

Library gateway, syllabi for various Georgia State courses are publicly available

on web pages within the Georgia State University domain. Such syllabi contain

reading lists with references to reading assignment materials stored on the library's

electronic course reserves listings, as described above. Some syllabi contain active

hyperlinks which students can click to directly view and print unlicensed electronic versions of the reading materials stored on Georgia State servers.

38.

Upon information and belief, faculty at Georgia State also have posted and distributed electronic copies of Plaintiffs' copyrighted course materials on Blackboard/WebCT Vista, the University's online course management system, which offers centralized and individualized online forums for all Georgia State classes where students can, among other activities, download course readings, get updates on news for the course and view syllabi, and post electronic messages to a course bulletin board. A key feature of these systems, as described in the tutorials available to faculty and students on the Georgia State website, is the easy ability of instructors to "upload" electronic files to a centralized course "content file," including a "media library" of course content for students to view, download, and save to their own computers.

### The Longstanding Permissions Market for Paper Coursepacks and Distribution of Electronic Copies

39.

Georgia State's ability to distribute reading materials electronically in substitution for student acquisitions of hard-copy books and coursepacks should not be confused with permission to do so; nor does it justify the massive,

27

unauthorized giveaway that is taking place at the expense of Plaintiffs, their authors, and the publishing community at large. If allowed to continue, Georgia State's conduct will cause the publishing industry to incur further and substantial damages. Particularly given the presence of readily accessible, efficient, and economical licensing mechanisms specifically designed by the publishing community to foster innovative distribution formats (including electronic reserves) without sacrificing a fair return to the publishers who bring such works to the public at a substantial cost to these publishers, Georgia State's conduct is indefensible.

40.

Efficient and user-friendly mechanisms for the licensing of copyrighted materials for use in paper coursepacks and electronic distribution systems have long been available. Each Plaintiff offers academic users an easy and efficient mechanism for obtaining photocopy (i.e., coursepack) and electronic-use licenses directly from the publisher.

41.

In addition, Copyright Clearance Center, Inc. (CCC), a not-for-profit corporation established in 1977 by authors, publishers, and users at the suggestion of Congress, provides the academic community (including professors, faculty,

librarians, and coursepack vendors) with an efficient, centralized source for licenses for a broad and extensive repertory of millions of copyrighted works from nearly ten-thousand publishers and hundreds of thousands of authors.

42.

For example, through its Academic Permissions Service (APS), CCC offers professors, library personnel and other licensees a convenient mechanism for obtaining per-use copyright permission to photocopy, for coursepacks and classroom handouts, content from books, journals, magazines and other materials – including those of Plaintiffs in this action. Users can access APS through the CCC website (or by phone, fax, or mail), establish an account, search for requested works by title, publisher, or ISBN number, enter information about the course for which permission is requested, and obtain rate quotes for use of a work, all with no charge. For over 1.2 million "pre-cleared" titles, users can obtain on-the-spot permission to include the work in a coursepack, while other requests are forwarded to the rightsholder of record for clearance.

43.

CCC's Electronic Course Content Service (ECCS) offers users an essentially identical mechanism for obtaining per-use copyright permission to share books, journals, magazines and other materials via electronic reserves, e-coursepacks, and

other electronic formats. For over 620,000 "pre-cleared" titles, including those of Plaintiffs in this action, users can obtain on-the-spot permission for electronic use, while other requests are forwarded to the rightsholder of record for clearance.

44.

CCC also offers a new Annual Copyright License for Academic Institutions which provides for the campus-wide use and reuse of publishers' materials in hard-copy or electronic formats (coursepacks, classroom handouts, library reserves, electronic course content, etc.), for a single annual fee rather than on a pay-per-use basis. Plaintiff SAGE Publications has already signed on to participate in this convenient new offering.

45.

CCC has partnered with leading application vendors to incorporate its permission services directly into the leading library-automation, coursepack-production, and course-management systems. As a result, librarians can secure copyright permissions for many works directly from their own library software applications while working within those applications (including Docutek ERes, the system used at Georgia State), making the permission and compliance process even easier.

46.

Despite the presence of these efficient licensing mechanisms – and despite

Georgia State's widespread use of digital course reading distribution methods as

detailed above – electronic licensing fees actually paid by Georgia State are

minuscule.

## CLAIMS FOR RELIEF

### First Claim
### Direct Copyright Infringement in Violation of 17 U.S.C. § 106
### (Against All Defendants)

47.

Paragraphs 1 through 46 above are incorporated by reference as if set forth

fully herein.

48.

By scanning, copying, displaying, and distributing Plaintiffs' copyrighted

material – including but not limited to each copyrighted work identified on Exhibit

1 to the Complaint – on a widespread and continuing basis via the Georgia State

website and other Georgia State computers and servers, Defendants' conduct

constitutes infringement of Plaintiffs' copyrights and exclusive rights under

copyright in violation of Sections 106, 501-503, and 505 of the Copyright Act, 17

U.S.C. §§ 106, 501-503, 505.

49.

Defendants' acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiffs' rights.

50.

As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to injunctive and declaratory relief. Unless enjoined by this Court, Defendants' conduct will continue to cause severe and irreparable harm to Plaintiffs.

51.

Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## Second Claim
## Contributory Copyright Infringement
## (Against All Defendants)

52.

Paragraphs 1 through 51 above are incorporated by reference as if set forth fully herein.

53.

By facilitating, encouraging, and inducing librarians and professors to scan, copy, display, and distribute Plaintiffs' copyrighted material – including but not

limited to each copyrighted work identified on Exhibit 1 to the Complaint – on a widespread and continuing basis via the Georgia State University website and other Georgia State computers and servers; and by facilitating, encouraging, and inducing students to view, download, copy and further distribute that copyrighted material, Defendants' conduct constitutes contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of Sections 106, 501-503, and 505 of the Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

54.

Defendants have actual and constructive knowledge that librarians and professors will scan, copy, display and distribute, and that students will view, download, copy and further distribute, Plaintiffs' copyrighted material, and knowingly encourage librarians, professors, and students to do so.

55.

Defendants' acts have been and continue to be willful, intentional and purposeful, in violation of Plaintiffs' rights.

56.

As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to injunctive

and declaratory relief. Unless enjoined by this Court, Defendants' conduct will continue to cause severe and irreparable harm to Plaintiffs.

57.

Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**Third Claim**

**Vicarious Copyright Infringement
(Against All Defendants)**

58.

Paragraphs 1 through 57 above are incorporated by reference as if set forth fully herein.

59.

By allowing professors and other employees of Georgia State University to scan, copy, display, and distribute Plaintiffs' copyrighted material – including but not limited to each copyrighted work identified on Exhibit 1 to the Complaint – on a widespread and continuing basis via the Georgia State University website and other Georgia State computers and servers; by facilitating, encouraging and inducing students to view, download, copy and further distribute that copyrighted material; by failing to supervise or prevent such infringement when they have the right and ability to do so; and by profiting by such infringement, Defendants'

34

conduct constitutes vicarious infringement of Plaintiffs' copyrights and exclusive

rights under copyright in violation of Sections 106, 501-503, and 505 of the

Copyright Act, 17 U.S.C. §§ 106, 501-503, 505.

60.

Defendants' acts have been and continue to be willful, intentional and

purposeful, in violation of Plaintiffs' rights.

61.

As a direct and proximate result of Defendants' infringement of Plaintiffs'

copyrights and exclusive rights under copyright, Plaintiffs are entitled to injunctive

and declaratory relief. Unless enjoined by this Court, Defendants' conduct will

continue to cause severe and irreparable harm to Plaintiffs.

62.

Plaintiffs are entitled to recover their attorneys' fees and costs pursuant to 17

U.S.C. § 505.

**WHEREFORE,** Plaintiffs pray:

1.     That this Court enter an order pursuant to 17 U.S.C. § 502 and

28 U.S.C. § 2201 declaring that Defendants' actions as complained of herein

constitute copyright infringement, and granting permanent injunctive relief

enjoining Defendants or any individuals in their employ or control, now or in the

future, without seeking the appropriate authorization from Plaintiffs, from copying, displaying or distributing electronic copies of any of Plaintiffs' copyrighted works to Georgia State students or anyone else, or from facilitating or encouraging others to do so, in the manner described above – namely, via the collection and assembly of course reading materials for offer to students through an e-reserves system, a course management system, a course web page, or any similar electronic distribution method;

2.      That this Court award Plaintiffs the costs of this action and reasonable attorneys fees' and expenses pursuant to 17 U.S.C. § 505; and

3.      That this Court grant such other and further relief as it deems just and proper.

Respectfully submitted, this _____ day of _____. 2008.


_____
Edward B. Krugman
Georgia Bar No. 429927
BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
krugman@bmelaw.com

R. Bruce Rich
Randi W. Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 22nd day of September, 2008 the foregoing **PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT TO ADD ADDITIONAL DEFENDANTS, AND MEMORANDUM IN SUPPORT** was filed with the Clerk of Court using the CM/ECF filing system which will automatically send e-mail notification of such filing to opposing counsel as follows:

Anthony B. Askew, Esq.
Stephen M. Schaetzel, Esq.
Kristen A. Swift, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, Georgia 30309

Mary Jo Volkert, Esq.
Assistant S. Attorney General
40 Capitol Square
Atlanta, Georgia 30334

This 22nd day of September, 2008.

/s/ Edward B. Krugman
Edward B. Krugman