## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al., | |
| Plaintiffs, | Civil Action File No.1:08-CV-1425-ODE |
| -*vs.*- | |
| MARK P. BECKER, in his official capacity as Georgia State University President, et al., | |
| Defendants. | |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT THEREOF

NOW COME defendants MARK P. BECKER, in his official capacity as

Georgia State University President, RON HENRY, in his official capacity as

Georgia State University Provost, NANCY SEAMANS, in her official capacity as

Georgia State University Dean of Libraries, J.L. ALBERT, in his official capacity

as Georgia State University Associate Provost for Information Systems and

Technology, (collectively, "University Administrators"), KENNETH R.

BERNARD, JR., in his official capacity as member of the Board of Regents of the

University System of Georgia, JAMES A. BISHOP, in his official capacity as

member of the Board of Regents of the University System of Georgia, HUGH A.

CARTER, JR., in his official capacity as member of the Board of Regents of the

University System of Georgia, WILLIAM H. CLEVELAND, in his official

capacity as member of the Board of Regents of the University System of Georgia,

ROBERT F. HATCHER, in his official capacity as Vice Chair of the Board of

Regents of the University System of Georgia, FELTON JENKINS, in his official

capacity as member of the Board of Regents of the University System of Georgia,

W. MANSFIELD JENNINGS, JR., in his official capacity as member of the Board

of Regents of the University System of Georgia, JAMES R. JOLLY, in his official

capacity as member of the Board of Regents of the University System of Georgia,

DONALD M. LEEBURN, JR., in his official capacity as member of the Board of

Regents of the University System of Georgia, ELRIDGE MCMILLAN, in his

official capacity as member of the Board of Regents of the University System of

Georgia, WILLIAM NESMITH, JR., in his official capacity as member of the

Board of Regents of the University System of Georgia, DOREEN STILE

POITEVINT, in her official capacity as member of the Board of Regents of the

University System of Georgia, WILLIS J. POTTS, JR., in his official capacity as

member of the Board of Regents of the University System of Georgia, WANDA

YANCEY RODWELL, in her official capacity as member of the Board of Regents

of the University System of Georgia, KESSEL STELLING, JR., in his official

capacity as member of the Board of Regents of the University System of Georgia,

BENJAMIN J. TARBUTTON, III, in his official capacity as member of the Board

of Regents of the University System of Georgia, RICHARD L. TUCKER, in his

official capacity as Chair of the Board of Regents of the University System of

Georgia, and ALLAN VIGIL, in his official capacity as member of the Board of

Regents of the University System of Georgia ("Board Members") (collectively,

"Defendants"), and, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure,

file this Motion for Protective Order and Memorandum of Law in Support Thereof to

limit the scope of discovery in this case to relevant matters.

Because only the "ongoing and continuous conduct" of Defendants is subject

to Plaintiffs' claims for prospective relief under the <u>Ex parte Young</u> exception to

Eleventh Amendment sovereign immunity, this Court should enter a protective order

limiting the scope of allowable discovery to Defendants' "ongoing and continuous

conduct," and preventing inquiry into practices and policies no longer in effect.

## **BACKGROUND**

This is an action for copyright infringement under 17 U.S.C. §§ 101 <u>et seq.</u>,

in which Cambridge University Press, Oxford University Press, Inc., and SAGE

Publications, Inc. ("Plaintiffs") seek a declaration of copyright infringement,

permanent injunctive relief, and attorneys' fees and costs from and against

Defendants. Plaintiffs are publishers that sell or license various works to college libraries, university libraries, and students throughout the United States. The defendant University Administrators provide oversight to professors, librarians, and others at Georgia State University ("GSU"), a university under the Board of Regents of the University System of Georgia, a constitutional department in the executive branch of government of the State of Georgia, as set forth in 1983 Ga. Const. Art. VIII, Sec. IV, Par. I ("Board of Regents"), that provides college-level and advanced courses of study. In the provision of such educational services, the library at GSU facilitates GSU professors in making excerpts of reading materials for particular courses available to students via GSU's electronic reserve system ("ERes") and facilitates student access to such excerpts. Only students who are given a specific password can access the excerpts on ERes.

GSU also facilitates professors in making digitized course information available via a course management system known as uLearn (also known as Blackboard/WebCT Vista) ("uLearn"), course web pages and faculty web pages. Such electronic course management tools may provide syllabi, reading materials, and other course-related information. Only students who are given a specific password and are registered for an affected course can access the information for such course on uLearn.

In all of the foregoing, Defendants believe and understand that the University System of Georgia's policy on copyright and fair use is followed. That policy is grounded upon the statutory doctrine of fair use as set forth in the Copyright Act, 17 U.S.C. §§ 101 *et seq.* or permission granted by the copyright holder.

Plaintiffs allege in their Complaint that Defendants or individuals in their employ or control are infringing Plaintiffs' copyrights by providing students access to copyrighted materials, pursuant to the University System of Georgia's former guidelines on copyright and fair use (entitled "1997 Regents Guide to Understanding Copyright & Educational Fair Use"), through ERes, uLearn, and course and faculty web pages. Specifically, Plaintiffs allege that "Georgia State's general copyright primer, entitled the 'Regents Guide to Understanding Copyright & Educational Fair Use'… affords 'fair use' parameters … that plainly exceed legal boundaries." (Compl. ¶ 28). Plaintiffs further allege that the former guidelines afforded an "impermissibly wide berth … to individual takings from Plaintiffs' and other publishers' works…" (Id.) Plaintiffs seek an updated copyright policy sufficient to ensure that Defendants or individuals in their employ or control do not infringe Plaintiffs' copyrights in the use of copyrighted materials on ERes, uLearn and course and faculty web pages. (See generally Compl.; see

also Letter from R. Bruce Rich to Kristen A. Swift, dated February 27, 2009, and Letter from Kristen A. Swift to R. Bruce Rich, dated March 13, 2009, attached hereto as Exhibits A and B, respectively).

As an update to the former guidelines referenced in Plaintiffs' Complaint and in accordance with present day legal principles, on February 17, 2009, the University System of Georgia adopted a new policy on copyright, which is publicly available at www.usg.edu/copyright. Counsel for Defendants notified Plaintiffs' counsel of the adoption of the new policy on February 20, 2009. (See Letter from Kristen A. Swift to Edward B. Krugman, dated February 20, 2009, attached hereto as Exhibit C). In the letter, counsel for Defendants suggested that, in light of the recent adoption of the new policy on the use of copyrighted works by the University System of Georgia, the parties discuss their conduct going forward in this case. (Id.)

In discussions held on February 23, counsel for Defendants proposed that the parties stay the litigation to engage in discussions about the new policy. (See Letter from Kristen A. Swift to Edward B. Krugman, dated February 25, 2009, attached hereto as Exhibit D). Because Plaintiffs' counsel has made clear that satisfactory copyright guidelines is a significant issue in this lawsuit, Defendants believed an open discussion about the adequacy of the new policy would be an

effective attempt at resolving this matter. (Id.) While Plaintiffs agreed to postpone depositions scheduled for the following week, they rejected Defendants' proposal to stay the litigation. (Id.) Instead, they requested that Defendants make Nancy Seamans, the Dean of Libraries at GSU, and William Potter, the chairman of the copyright committee appointed by the Chancellor of the Board of Regents to update the former guidelines, available for depositions regarding the new policy as soon as possible. (Id.) Plaintiffs also requested that Defendants produce all documents pertaining to the new policy prior to such depositions. (Id.) Defendants accommodated Plaintiffs' requests on short notice, and made Dr. Potter and Dr. Seamans available on March 9 and 10, respectively.

During those depositions, counsel questioned the witnesses extensively regarding practices and policies no longer in effect. For example, counsel questioned Dr. Potter about (1) the circumstances surrounding the adoption of the former guidelines, including their purpose, the influence of individual committee members on the guidelines, the amount of time spent drafting the guidelines, and the involvement of legal counsel (See Potter [Informal] Transcript at pp. 35-36, 49-51); (2) how the former guidelines were enforced, implemented and applied at the University of Georgia and other institutions (Id. at pp. 36-37, 66-67 (Q: "As of 1997, if you recall, what was the nature of electronic course reserves practices

within the university system of Georgia?")); (3) the intentions behind and interpretations of individual provisions within the former guidelines (Id. at pp. 49, 52-61, 67-69 (Q: "So if I'm reading 7B and 8 together correctly it seems to suggest that so long as one copies a work for the purpose of study or research, one doesn't need permission to do that. Is that how you interpret those?" A: "Yes." Q: "If you turn to the next page, there's an item listed at No. 14. … Do you know what that was attempting to convey?" A. "Yes." Q: "Please explain.")); and (4) the reasons that prior drafts of the new policy differed from the former guidelines (Id. at pp. 82-86). Counsel likewise questioned Dr. Seamans about her opinion of the adequacy of the former guidelines and the extent to which such guidelines were followed (See Seamans [Informal] Transcript at pp. 53, 59).

Plaintiffs' counsel also spent a significant amount of time questioning Dr. Potter about the intentions behind and implementation of a 1992 University of Georgia copyright policy which Dr. Potter testified had been superseded by the new policy (See Potter [Informal] Transcript at pp. 37-47 (Q: "Do you have any understanding as to whether [item numbered 3] permitted the copying of an entire copyrighted work, a single copy of an entire copyrighted work?" A: "I don't know how it was applied in practice." Q: "Do you know how it was intended to be applied?" A: "No.")).

Since Plaintiffs are barred by the Eleventh Amendment from litigating the legality of Defendants' past conduct, on March 13, 2009, Defendants requested that, going forward, Plaintiffs focus their discovery efforts on the new policy as only the "ongoing and continuous conduct" of Defendants is relevant to Plaintiffs' claims. (See Exhibit B). Indeed, counsel for Plaintiffs have themselves indicated that this lawsuit concerns the "*ongoing* infringements of Plaintiffs' copyrighted works that lie at the heart of this lawsuit -- not the policies *per se*" and that "while an overhaul of statewide and/or Georgia State University policies that could be seen to encourage *ongoing* infringement of the type addressed by this lawsuit is a necessary element in arriving at a solution, … such new policies are meaningless unless they result in a prompt and meaningful reform …" (See Exhibit A (emphasis added)).

Because the practices and procedures at issue in this litigation will now be informed by the current copyright policy, and not the past copyright guidelines in place at the time this lawsuit commenced, Defendants seek the protection of this Court to limit discovery to the implementation and procedures of the current policy. Plaintiffs' claims regarding practices and procedures under the former guidelines are moot and therefore irrelevant to any continued claims for prospective relief. Inquiry into such matters will only delay the litigation and

cause the parties undue burden and expense. Accordingly, Defendants respectfully

request the Court to enter a protective order limiting discovery to Defendants'

"ongoing and continuous conduct" pursuant to the current copyright policy.

## ARGUMENT AND AUTHORITIES

Rule 26(c) of the Federal Rules of Civil Procedure provides:

> A party or any person from whom discovery is sought may move for a
> protective order in the court where the action is pending.... The court
> may, for good cause, issue an order to protect a party or person from
> annoyance, embarrassment, oppression, or undue burden or expense,
> including ... (A) forbidding the disclosure or discovery; ... (D)
> forbidding inquiry into certain matters, or limiting the scope of
> disclosure or discovery to certain matters; ..."

Fed. R. Civ. P. 26(c)(1). "A party may obtain discovery regarding any

nonprivileged matter that is *relevant to any party's claim or defense*." Fed. R.

Civ. P. 26(b)(1) (emphasis added). Courts have broad discretion to limit the scope

of discovery to relevant matters. See Moore v. Armour Pharm. Co., 927 F.2d

1194, 1197 (11th Cir. 1991) (stating that trial court has "wide discretion in setting

the limits of discovery"); Whittaker v. Dep't of Human Res., 86 F.R.D. 689, 692-

93 (N.D. Ga. 1980) (granting protective order limiting discovery to relevant

matters and excluding inquiry regarding plaintiff's allegation of employment

discrimination based upon sex because sex discrimination was irrelevant to

plaintiff's claim of race discrimination); Kipperman v. Onex Corp., No. 1:05-CV-

1242-JOF, 2008 WL 1902227, at *1 (N.D. Ga. Apr. 25, 2008) (denying

defendant's motion to compel information regarding plaintiff's communications

with its beneficiaries because the substance of those communications was

irrelevant to the claims at issue).

Because the Eleventh Amendment to the U.S. Constitution (the States'

immunity from suit in the federal courts) prohibits an award of an injunction,

declaratory judgment or damages regarding past conduct, the practices and

procedures based on the former copyright guidelines are irrelevant to Plaintiffs'

claims.  As such, the Court should exercise its broad discretion to limit discovery

in this case to Defendants' "ongoing and continuous conduct" pursuant to the

current copyright policy.

**I.** **Plaintiffs May Only Seek Prospective Relief to End Defendants'**
**Ongoing and Continuous Conduct Pursuant to Current Policy**

**A.** **Eleventh Amendment Sovereign Immunity**

The Eleventh Amendment to the U.S. Constitution provides:  "The Judicial

power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.

amend. XI.  Despite the limited scope of the Amendment's text, the U.S. Supreme

Court has stated that the Eleventh Amendment must be understood "to stand not so

much for what it says, but for the presupposition . . . which it confirms." <u>Seminole Tribe of Florida v. Florida,</u> 517 U.S. 44, 54 (1996) (<u>quoting</u> <u>Blatchford v. Native Village of Noatak,</u> 501 U.S. 775, 779 (1991)). "That presupposition . . . has two parts: first, that each State is a sovereign entity in our federal system; and second, that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" <u>Id.</u> (<u>quoting</u> <u>Hans v. Louisiana,</u> 134 U.S. 1, 13 (1890)). Stated succinctly, the general rule is that "the Constitution does not provide for federal jurisdiction over suits against non-consenting States." <u>Kimel v. Florida Bd. of Regents,</u> 528 U.S. 62, 73 (2000).

While often referred to as "Eleventh Amendment immunity," the Supreme Court has clarified the doctrine of the States' immunity from suit as neither derived from, nor limited by, the terms of the Eleventh Amendment. Rather, it is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain Constitutional Amendments. <u>Alden v. Maine,</u> 527 U.S. 706, 713 (1999).

Under the Eleventh Amendment, a person may not bring suit seeking injunctive relief or damages against a state in federal court based on past conduct.

Seminole Tribe of Fla., 517 U.S. at 54. This immunity extends to state agencies, instrumentalities, and other arms of the State. See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2003) ("It is well established that Eleventh Amendment immunity encompasses not only cases in which the State itself is named as a defendant, but also certain actions against state agents and state instrumentalities.") (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)).

GSU and the Board of Regents of the University System of Georgia are arms of the State of Georgia. See O.C.G.A. § 20-3-36 (2008) ("The applicability of the doctrine of sovereign immunity to the board of regents is reaffirmed, except to the extent that the General Assembly may expressly provide."); see also Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga., No. 3:07-CV-084, 2008 WL 1805439, at * 3 (M.D. Ga. Apr. 18, 2008) ("Here, the parties do not dispute that the Board is an arm of the State of Georgia."). As arms of the State, GSU and the Board of Regents are entitled to full sovereign immunity under the Eleventh Amendment.

A. **Ex parte Young Exception to Eleventh Amendment Sovereign Immunity**

Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), there is a long and well-recognized exception to the doctrine of sovereign immunity for suits

against state officers seeking ***prospective*** equitable relief to end ***ongoing and continuous*** violations of federal law. See Summit Med. Assoc., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). A suit seeking prospective rather than retrospective relief is not barred so long as the prospective relief sought is ***not*** the functional equivalent of money damages, *i.e.,* it is "measured in terms of a monetary loss resulting from a past breach of legal duty." See id. at 1337. "In other words, a plaintiff ***may not use the doctrine to adjudicate the legality of past conduct.***" Id. (emphasis added). Young focuses on cases in which a violation of federal law by a state official is ongoing "as opposed to cases in which federal law has been violated at one time or over a period of time in the past." Id. at 1338 (citing Papasan v. Allain, 478 U.S. 265, 277-78 (1986)).

Moreover, courts have held that a declaratory judgment regarding the past conduct of state officials, in the absence of an ongoing and continuous violation of federal law, would be useful only if it were offered in state court proceedings as *res judicata* on the issue of liability. Green v. Mansour, 474 U.S. 64, 73 (1985). Otherwise, an award of declaratory relief "would be a partial 'end-run' around" the Eleventh Amendment, since it would have the same effect as an award of money damages. Id.; see also Cobb v. Marshall, 481 F. Supp. 2d 1248, 1258 (M.D. Ala. 2007) ("The issuance of a declaratory judgment against Defendant in his official

capacity…would serve no purpose other than to validate or authorize an award of monetary damages.").

### C. Plaintiffs May Not Adjudicate the Legality of Defendants' Past Conduct Pursuant to Former Guidelines

Pursuant to the doctrine of <u>Ex parte Young</u>, Plaintiffs may bring claims against Defendants in their official capacity for declaratory and injunctive relief, but only as to conduct that is ***ongoing and continuous***. Plaintiffs may not use this lawsuit, which must proceed in accordance with the doctrine of sovereign immunity, to adjudicate the legality of Defendants' past conduct pursuant to the former policy. <u>See</u> <u>Summit Med. Assoc., P.C.</u>, 180 F.3d at 1337. The rationale for allowing federal courts to grant prospective, but not retrospective, relief was succinctly explained in the Supreme Court's decision in <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985):

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in <u>Ex parte Young</u> gives life to the Supremacy Clause. ***Remedies designed to end a continuing violation of federal law are necessary*** to vindicate the federal interest in assuring the supremacy of that law. ***But compensatory or deterrence interests are insufficient*** to overcome the dictates of the Eleventh Amendment.

<u>Id.</u> at 73 (emphasis added).

Thus, any such award of declaratory relief "would be a partial 'end-run' around" the Eleventh Amendment, since it would have the same effect as an award of money damages. See id.; see also Cobb, 481 F. Supp. 2d at 1258 ("The issuance of a declaratory judgment against Defendant in his official capacity...would serve no purpose other than to validate or authorize an award of monetary damages.").

Accordingly, only claims regarding Defendants' ongoing and continuous conduct pursuant to the current policy are appropriate for relief. Plaintiffs' claims regarding the legality of practices and procedures under the former guidelines, which have been superseded and no longer instruct the practices and procedures at member institutions of the University System of Georgia, are moot. See, e.g., Students for a Conservative Am. v. Greenwood, 378 F.3d 1129, 1130-31 (9th Cir. 2004) (affirming district court decision that defendant's changes to challenged university election code mooted claims for declaratory and injunctive relief); Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1525-26 (10th Cir. 1992) (upholding district court's determination that plaintiff's claims for injunctive relief based on University's old policy were rendered moot when the University adopted a new policy concerning prior restraint and content-based discrimination); Marcavage v. West Chester Univ., No. 06-CV-910, 2007 WL 789430, at *3-5 (E.D. Pa. Mar. 15, 2007) (concluding that, because a university's new policy on

expressive activities on campus was more permissive than original policy,

plaintiff's claims for equitable relief based on the old policy were moot).

## II. Discovery Regarding Defendants' Past Conduct Pursuant to Former Guidelines Should be Prohibited as Irrelevant to Plaintiffs' Claims

If Plaintiffs wish to continue this litigation as to the legality of practices and

procedures under the new copyright policy, then discovery should be limited

accordingly. The practices and procedures under the former guidelines are not

ongoing and continuous, and therefore not subject to an injunction or declaratory

judgment. See Summit Med. Assoc., P.C., 180 F.3d at 1336. As such, Plaintiffs'

claims regarding Defendants' conduct pursuant to the former copyright guidelines

are moot and therefore irrelevant to any claim for prospective relief. See, e.g.,

Students for a Conservative Am., 378 F.3d at 1130-31; Comm. for the First

Amendment, 962 F.2d at 1525-26; Marcavage, 2007 WL 789430, at *3-5.

If Plaintiffs are permitted to inquire into practices and procedures under the

former guidelines, the parties will be effectively litigating the legality of

Defendants' past conduct in contravention of Eleventh Amendment sovereign

immunity. See Summit Med. Assoc., P.C., 180 F.3d at 1337. Since the relief

sought by Plaintiffs is necessarily limited to the adequacy of *current* policy and

procedures in ensuring compliance with copyright law, discovery should be limited

accordingly. <u>Cf.</u> <u>Students for a Conservative Am.</u>, 378 F.3d at 1130-31; <u>Comm. for</u> <u>the First Amendment</u>, 962 F.2d at 1525-26; <u>Marcavage</u>, 2007 WL 789430, at *3-5. To do otherwise would be to needlessly expend the resources of the parties and, eventually, the Court.

Thus, Defendants respectfully request that the Court enter a protective order to limit discovery to the "ongoing and continuous conduct" of Defendants and those in their employ or control (that is, the implementation and procedures of the current policy) and to protect Defendants from the undue burden and expense caused by inquiry into matters which are irrelevant to any continued claims for prospective relief.

## CONCLUSION

Though Defendants regret having to involve the Court in a discovery matter, the threat to Georgia's sovereign immunity and the needless inquiry into matters concerning claims barred by the Eleventh Amendment warrant a protective order in this case. Defendants respectfully request that the Court enter a protective order limiting the scope of allowable discovery to Defendants' ongoing and continuous conduct pursuant to the current policy.

Respectfully submitted this 17th day of March, 2009.

THURBERT E. BAKER        033887
Attorney General

R. O. LERER              446962
Deputy Attorney General

DENISE E. WHITING-PACK   558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General

/s/ *Kristen A. Swift*
King & Spalding LLP
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Kristen A. Swift
Georgia Bar No. 702536

**Attorneys for Defendants**

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing memorandum has been prepared using 14 point Times New Roman font.

_s/ Kristen A. Swift_
Kristen A. Swift
(Ga. Bar No. 702536)

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS, et al,

                              Plaintiffs,

         *-vs.-*

CARL V. PATTON, in his official capacity as Georgia State University President, et al,

                        Defendants.

Civil Action No.
1:08-CV-1425-ODE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 17th day of March, 2009, I have electronically filed the foregoing **DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT THEREOF** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP

Georgia Bar No. 357087

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Kristen A. Swift*
Kristen A. Swift
(Ga. Bar No. 702536)

# EXHIBIT A

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

R. BRUCE RICH
DIRECT LINE (212) 310-8170
E-MAIL: r.bruce.rich@weil.com

February 27, 2009

<u>VIA EMAIL AND US MAIL</u>

Kristen A. Swift, Esq.
King & Spalding
1180 Peachtree Street, NE
Atlanta, GA  30309-3521

> Re:  **Cambridge University Press, et al., United States
> District Court for the Northern District of
> Georgia Case NO. 1:08-CV-1425-ODE**

Dear Kristen:

We are constrained briefly to respond to several aspects of your February 25, 2009 letter that go beyond proposing dates for the depositions of Mr. Potter and Ms. Seamans that have now been scheduled.

Most significant is your mischaracterization of "the only relief [our] clients seek" as consisting of "satisfactory copyright guidelines." We frankly cannot conceive how you or your clients might have arrived at this mistaken assumption. As the Amended Complaint in this action makes clear, Plaintiffs seek to bring to an end "Georgia State's systematic, widespread, and unauthorized copying and distribution of a vast amount of copyrighted works." The relief requested includes "enjoining Defendants or any individuals in their employ or control, now or in the future, without seeking the appropriate authorization from Plaintiffs, from copying, displaying or distributing electronic copies of any of Plaintiffs' copyrighted works to Georgia State students or anyone else…"

Stated in simple terms, it is the massive ongoing infringements of Plaintiffs' copyrighted works that lie at the heart of this lawsuit – not the policies *per se* that may have spawned, enabled, facilitated or even authorized such conduct. It follows that while an overhaul of statewide and/or Georgia State University policies that could be seen to encourage ongoing infringement of the type addressed by the lawsuit is a necessary element in arriving at a solution, in and of itself any such new policies are

NYI 16060089.01 YFQ901!DOC 38985.0061

meaningless unless they result in prompt and meaningful reform of the copying activities of the type cited in the Amended Complaint. The new policy presented to us as a *fait accompli* last Friday utterly fails to present such promise.

Our clients have attempted, beginning well prior to initiation of this lawsuit, to open a meaningful dialogue focusing on remediating current practice. Continuing since commencement of litigation, we have urged the Defendants and their counsel to work with us to revise the existing guidelines to avoid the prospect of a situation precisely of the sort we now confront – namely, a unilateral attempt by Georgia State University and/or the Regents at a policy "fix" that provides no basis whatsoever for assuring that there will, in fact, be a meaningful change in existing practice. Indeed, our perusal of the new policies – including the apparent delegation of copyright compliance determinations to individual faculty members based on a legally flimsy Fair Use Checklist – causes us concern that, if anything, even more egregious infringements of the works of Plaintiffs and countless other publishers may result in their wake.

Given the outright refusal of the Defendants to date to invite the collaborative process we invited, as well as the substance of the resulting new policies – which, as it appears, have already been disseminated – we have difficulty discerning the value of providing after-the-fact "feedback" on them, as you invite. We frankly find the new policies and guidelines so deeply flawed both as a matter of law and intended manner of implementation as not to lend themselves to tweaks at their margins.

If in light of these reactions your clients are willing to revisit in potentially fundamental fashion certain aspects of the approaches reflected in the new policy, you will find us ready to meet. Else, we believe that the only fruitful course is to proceed with the litigation.

Second, we appreciate that you are working to collect the requested documents pertaining to the new policy and look forward to receiving them sufficiently in advance of the Potter and Seamans depositions. Concerning your advice as to the intent to withhold certain information reflecting legal advice pursuant to the attorney-client privilege, we trust that you will not be adopting the position that the mere presence of counsel in discussions or its being a copyee on email communications automatically

Kristen A. Swift, Esq.
February 27, 2009
Page 3


renders all such discussions or communications privileged. That, of course, is not the
law.

Sincerely,

R. Bruce Rich

cc: John H. Raines, IV, Esq. (via email)
    Cynthia V. Hall, Esq. (via email)
    Burns Newsome, Esq. (via email)
    Mary Jo Volkert, Esq. (via email)
    Anthony B. Askew (via email)
    Stephen M. Schaetzel (via email)

# EXHIBIT B

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3521
www.kslaw.com

Kristen A. Swift
Direct Dial: 404 572-4762
Direct Fax: 404 572-5134
kswift@kslaw.com

March 13, 2009

**VIA ELECTRONIC MAIL AND U.S. MAIL**

R. Bruce Rich, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

> **RE:** *Cambridge University Press, et al. v. Patton, et al.,*
> **United States District Court for the Northern District of Georgia**
> <u>**Case No. 1:08-CV-1425-ODE**</u>

Dear Bruce:

We are in receipt of your letter of February 27, 2009, and of John's letter of March 12, 2009. We would like to clarify some issues raised in those letters. First of all, it has always been our understanding, based on past conversations, that the only relief your clients seek is a copyright policy sufficient to ensure that defendants or individuals in their employ or control do not infringe plaintiffs' copyrights in the use of copyrighted materials. We appreciate that you may interpret those conversations differently.

To that end, we believe that discovery going forward should be limited to defendants' ongoing and continuous conduct pursuant to the new copyright policy. As you know, both GSU and the Board of Regents are arms of the state of Georgia and, as such, are protected by Eleventh Amendment sovereign immunity. We acknowledge the well-recognized exception to the doctrine of sovereign immunity for suits against state officers in their official capacity, but note that the exception only applies to claims for prospective equitable relief to end "ongoing and continuous violations" of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). Given the nature of this lawsuit -- a suit against state officers in their official capacity -- we believe discovery should be limited in this case to defendants' ongoing and continuous conduct in order to preserve Georgia's sovereign immunity.

Second, we would like to address what you characterized in your February 27 letter as defendants' "outright refusal...to invite the collaborative process" regarding the new copyright policy. In July 2008, the parties discussed staying this litigation to facilitate the joint formulation

of new copyright guidelines and/or the implementation of a new copyright policy. Plaintiffs, however, required certain concessions as a prerequisite to jointly formulating new guidelines, including an acknowledgement by defendants that unauthorized copying and distribution had occurred within GSU's electronic course reserves system and a requirement that plaintiffs be allowed to monitor GSU's educational activities for an indefinite period of time. These concessions were unacceptable to defendants, and plaintiffs' insistence on these concessions -- not any "outright refusal" by the defendants -- caused the discussions to fall through. Nevertheless, defendants still felt it prudent to revisit the 1997 guidelines and update them to reflect current legal principles. This effort culminated in the creation of the new state-wide copyright policy.

Finally, we are aware of your concerns regarding our privilege log, as stated in John's March 12 letter. As explained in our February 25 letter, our clients have only asserted the attorney-client privilege as to communications between attorney and client in securing legal advice. Nevertheless, we are glad to update our privilege log to include email subject lines, and are reviewing the log to determine what additional information, if any, should be added to the "Description" column.

If you have any questions, please do not hesitate to contact us.

Sincerely,

Kristen A. Swift

cc:     Edward B. Krugman, Esq. (via email)
        John H. Raines, IV, Esq. (via email)
        Randi W. Singer, Esq. (via email)
        Todd Larson, Esq. (via email)
        Cynthia V. Hall, Esq. (via email)
        Burns Newsome, Esq. (via email)
        Mary Jo Volkert, Esq. (via email)
        Anthony B. Askew, Esq. (via email)
        Stephen M. Schaetzel, Esq. (via email)
        Glenda R. Smith (file)

EXHIBIT C

# KING & SPALDING

Kristen A. Swift
Direct Dial: 404 572-1762
Direct Fax: 404 572-5134
kswift@kslaw.com

February 20, 2009

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Edward B. Krugman, Esq.
Bondurant, Mixson & Elmore, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
krugman@bmelaw.com

> **RE:** *Cambridge University Press, et al. v. Patton, et al.*,
> **United States District Court for the Northern District of Georgia**
> **Case No. 1:08-CV-1425-ODE**

Dear Edward:

Effective February 17, 2009, the Board of Regents has issued a new policy governing copyright and fair use at the University System of Georgia, which is available for your review at www.usg.edu/copyright.

In view of this development, we think it is worthwhile to consider how the parties will conduct this lawsuit going forward. Your clients may wish to postpone the depositions planned for next week in order to review the new policy. In any event, before the parties invest significant time and effort on practices and procedures which are no longer the policy of the Board of Regents or GSU, we would like to discuss with you how the lawsuit should proceed.

Given that depositions are planned for next week, please let us know if you are available for a conference call this afternoon. We look forward to hearing from you.

Sincerely,

Kristen A. Swift

Edward B. Krugman, Esq.
February 20, 2009
Page 2

cc:     Cynthia V. Hall, Esq. (via email)
        Burns Newsome, Esq. (via email)
        Mary Jo Volkert, Esq. (via email)
        Anthony B. Askew, Esq. (via email)
        Stephen M. Schaetzel, Esq. (via email)
        John H. Raines, IV, Esq. (via email)
        Glenda R. Smith (file)

# EXHIBIT D

# KING & SPALDING

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309-3521
www.kslaw.com

Kristen A. Swift
Direct Dial: 404 572-4762
Direct Fax: 404 572-5134
kswift@kslaw.com

February 25, 2009

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Edward B. Krugman, Esq.
Bondurant, Mixson & Elmore, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
krugman@bmelaw.com

> **RE:** *Cambridge University Press, et al. v. Patton, et al.,*
> **United States District Court for the Northern District of Georgia**
> **Case No. 1:08-CV-1425-ODE**

Dear Edward:

We are in receipt of your letter of today regarding the depositions of William Potter and Nancy Seamans, the production of documents pertaining to the new policy, and the postponement of the depositions of Denise Dimsdale, Cory Schlotzhauer, Jim Palmour and Laura Burtle. This response letter is to provide you with the dates of availability for William Potter's and Nancy Seamans' depositions and to confirm our conversations on February 23, 2009, regarding the University System of Georgia's new copyright policy.

Regarding the depositions of William Potter and Nancy Seamans, Mr. Potter is available at 10:00 a.m. on March 9, 2009, at our offices, and Ms. Seamans is available at 10:00 a.m. on March 10, 2009, at Georgia State University. Please let us know at your convenience whether these dates are acceptable.

Regarding documents pertaining to the new policy, we are currently working to collect and review all such documents and will endeavor to produce any non-privileged documents responsive to Plaintiffs' First Requests for the Production of Documents Nos. 2, 3, 6, 31, 32-36, and 39, before the above-referenced depositions take place. Please note that we plan to assert the attorney-client privilege as to documents and discussions at copyright committee meetings because counsel were present for the purpose of providing legal advice and did provide legal advice. We also intend to assert the attorney-client privilege as to email communications made by committee members to secure legal advice on which counsel were copied. Any responsive

documents which are withheld due to privilege will be included on a privilege log for your review.

In our letter of February 20, we suggested that, in light of the recent adoption of the new policy on the use of copyrighted works by the University System of Georgia, the parties discuss their conduct going forward in this case. You agreed to confer with us on Monday, February 23. We proposed in our February 23 conversation that the parties postpone the depositions scheduled for the following week to give the parties time to engage in discussions about the new policy. Because you have made clear that the only relief your clients seek in this lawsuit is satisfactory copyright guidelines, we thought an open discussion about the adequacy of the new policy would be an effective attempt at resolving this matter.

While you have agreed to postpone the depositions, it is our understanding that you wish to move forward with this litigation rather than discuss the new policy. We also understand that you believe the new policy is, on its face, wholly inadequate to ensure compliance with copyright law, and that our clients should have invited you to participate in the meetings of the copyright committee as appointed by the Board of Regents to update the new policy.

We appreciate your proposal to postpone the above-mentioned depositions, and look forward to hearing from you regarding our proposed dates for the depositions of William Potter and Nancy Seamans. However, as discussed, we continue to welcome the opportunity to discuss the new policy with you. In an effort to resolve this matter, our clients will be glad to consider any specific feedback your clients can provide about the new policy.

Sincerely,

Kristen A. Swift

cc:      John H. Raines, IV, Esq. (via email)
R. Bruce Rich, Esq. (via email)
Randi W. Singer, Esq. (via email)
Todd Larson, Esq. (via email)
Cynthia V. Hall, Esq. (via email)
Burns Newsome, Esq. (via email)
Mary Jo Volkert, Esq. (via email)
Anthony B. Askew, Esq. (via email)
Stephen M. Schaetzel, Esq. (via email)
Glenda R. Smith (file)