# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al.,<br><br>           Plaintiffs,<br><br>           -*vs.*-<br><br>MARK P. BECKER, in his official capacity as Georgia State University President, et al.,<br><br>           Defendants. | Civil Action File<br>No.1:08-CV-1425-ODE |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

NOW COME defendants MARK P. BECKER, in his official capacity as Georgia State University President, et al. (collectively, "Defendants"), and file this Reply in Support of Defendants' Motion for Protective Order ("Motion") and in opposition to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Protective Order ("Response").

## INTRODUCTION

Plaintiffs' Response assumes the very question at the heart of this litigation: whether Georgia State University's ("GSU") current practices constitute "widespread, systematic, and ongoing acts of copyright infringement." (Resp. at 1).

Plaintiffs argue that discovery into past practices is necessary because "Plaintiffs' claims are not predicated on the language of one or more State of Georgia copyright policies -- whether old or new," but are instead based on "systematic infringement of Plaintiffs' exclusive rights under the copyright law …" (Id. at 17). They argue that discovery into past practices "is precisely the discovery necessary to reveal that the infringing behavior of which Plaintiffs complain is indeed 'ongoing and continuous.'" (Id. at 24). Plaintiffs' specious argument assumes that GSU's past practices resulted in "systematic infringement" that is ongoing and continuous, and concludes that discovery into past practices is therefore necessary to prove that nothing has changed.

What is at issue here is whether the "ongoing and continuous" current practices of Defendants results in "systematic infringement," not whether Defendants' past practices are the same under the new policy. If the past practices of Defendants (or those in their employ or control) are in fact the same as the current practices and therefore "ongoing and continuous," as Plaintiffs argue, then ***Plaintiffs would not be foreclosed from conducting discovery into those past practices if Defendants' Motion is granted.*** Defendants' Motion only seeks to streamline discovery and avoid wasting the time and resources of the parties and of this Court. Under the doctrine of sovereign immunity, Plaintiffs are only entitled to prospective

injunctive relief as to the "ongoing and continuous conduct" of Defendants. Defendants' Motion merely seeks to limit discovery accordingly.

Plaintiffs' Response misinterprets Defendants' Motion as a tactic to limit discovery to the adequacy of the new policy, and employs circular reasoning to argue that discovery into past practices is necessary to prove the new policy is inadequate. As an initial matter, Defendants in this action are the policy-makers for GSU and the University System of Georgia ("USG"). Defendants are not actively involved in the daily operations of GSU's electronic reserves and course management systems. Their administrative positions do not afford them the luxury of monitoring each and every request from faculty to post educational material on ERes. Thus, the only relief that can be had as a practical matter against these Defendants is a change in *policy* concerning the posting of educational material on ERes and course management systems.

To the extent Plaintiffs can establish that some other relief is proper, however, Defendants do not contend that discovery should be limited to the new policy itself. Rather, Defendants maintain that discovery should be limited to their "ongoing and continuous" conduct under the new policy. Plaintiffs have not alleged that there is some "ongoing and continuous" conduct at issue here other than GSU's conduct under the new policy. As such, to avoid needless inquiry into the propriety of past

practices, Defendants respectfully request the Court to grant its Motion limiting discovery to Defendants' "ongoing and continuous" conduct under the new policy.

**BACKGROUND**

I. <u>Comparison to Coursepacks</u>

This suit involves GSU's provision of educational materials to students via electronic means. Specifically, Plaintiffs contend that GSU is infringing Plaintiffs' copyrights by facilitating GSU professors in making digitized excerpts of copyrighted course reading materials available to students via electronic reserves ("ERes") and other course management systems. In characterizing digitized course readings on ERes as "de facto electronic coursepacks," Plaintiffs make a significant but inaccurate representation of the law. (Resp. at 4). Courts have determined that the sale of "coursepacks," *i.e.,* hard-copy collections of required course readings that are assembled and sold to consumers, including students, without payment of a permission fee to the copyright holders, constitutes copyright infringement. But, the holdings in those cases were predicated upon a key distinction from the conduct at issue here -- the coursepacks were ***sold to consumers for profit by commercial entities.*** See <u>Princeton Univ. Press v. Mich. Document Servs., Inc.</u>, 99 F.3d 1381 (6th Cir. 1996) (holding that the creation of coursepacks by a private, commercial copy shop for profit was not fair use); <u>Basic Books, Inc. v. Kinko's Graphics</u>

4

Corp., 758 F. Supp. 1522, 1533 (S.D.N.Y. 1991) (holding that copying done by a commercial printer for sale to consumers, such as students, was not fair use).

Unlike coursepacks, educational excerpts made available as supplemental reading on ERes and other course management systems are offered by GSU only electronically and only to students enrolled in an appropriate class ***at no charge***. They are not sold at the bookstore or copy shops, but are posted on password-protected sites limited to students who are enrolled in the course for which the material is posted. Professors utilizing ERes must satisfy a fair use analysis for each excerpt used and are only permitted to post supplemental (not required) course readings. ERes readings are not arranged so as to read like a textbook, but are posted individually to support separate teaching points. Despite these key differences, Plaintiffs characterize ERes readings as "de facto digital coursepacks" to essentially argue that the mere act of posting excerpts of copyrighted excerpts on ERes -- regardless of whether the use is fair -- constitutes copyright infringement.

## II. Development of the New Copyright Policy

Plaintiffs also mischaracterize the development of the new policy at issue. After Plaintiffs filed suit against Defendants, the parties discussed staying the litigation to facilitate the joint formulation of new copyright guidelines. Plaintiffs, however, required certain concessions as a prerequisite to jointly formulating new

5

guidelines. These concessions, characterized by Plaintiffs as "certain basic understandings" (Resp. at 8), included an acknowledgment by Defendants that unauthorized copying and distribution had occurred within GSU's ERes system and a requirement that Plaintiffs be allowed to monitor GSU's educational activities for an indefinite period of time. (See 7/17/08 Letter from R. Rich to G. Zier, Ex. A). Defendants disagreed with the substance of these concessions; and the discussions therefore ended.

Nevertheless, Defendants still felt it prudent to revisit the 1997 USG copyright guidelines and update them to reflect current legal principles, particularly in light of this litigation. These efforts culminated in a new USG copyright policy, which was formally adopted on February 17, 2009. (See USG Policy on Copyright in Education and Research, Ex. B). The new policy -- which was developed after several months of research into existing practices and policies of various universities -- was intended to reflect not only the current state of copyright law, but also the best practices for fair use of copyrighted materials in the educational setting.

An important component of the new policy is a Fair Use Checklist ("Checklist"). Based on a checklist developed by Kenneth D. Crews (Director of the Copyright Advisory Office for Columbia University), a preeminent scholar

concerning copyright in education, USG's Checklist serves as a helpful tool to guide laypersons, including professors at GSU, through the admittedly difficult fair use analysis. Under each statutory fair use factor, the Checklist provides for the professors' consideration of ***each and every*** circumstance that has been specifically identified by both Congress and the Supreme Court as relevant to a fair use determination. Given the highly nuanced and subjective nature of a fair use analysis (with which even lawyers and courts struggle), the Checklist is designed to help professors carefully consider and work through the four fair use factors and apply them to their selected excerpts. Recognizing the value of the Crews checklist, other universities -- including Columbia University, the University of Minnesota, Emory University, Brigham Young University, Cornell University, Duke University, and Indiana University -- have incorporated some form of his checklist into their copyright policies. Even the licensing agency for Plaintiffs' copyrighted works, the Copyright Clearance Center ("CCC"), offers a fair use checklist based on the Crews checklist.

In their Response, Plaintiffs suggest that professors are not capable of using the Checklist to make proper fair use determinations, since they will be "faced with the Hobson's choice of either paying the requisite permissions fees personally or not using the materials at all." (Resp. at 19). To the contrary, the professor is the

7

***only individual*** with the necessary information regarding the context for her proposed use and is the individual ***best equipped*** to make the fair use determination. The Checklist therefore properly puts the responsibility of making the determination in the professor's hands.

Plaintiffs further argue, in another round of circular reasoning, that "the mere use of Plaintiffs' works in the classroom setting will virtually assure that the Factor 1 checklist will result in a 'favoring' fair use outcome…." (Resp. at 11 n.3). In other words, Plaintiffs argue that because GSU is an educational institution, it is not entitled to rely upon fair use, since a fair use analysis will invariably result in a "distorted" finding favoring fair use. This result is not the fault of Defendants or of the Checklist itself, but is the likely result of a proper fair use analysis in the educational context.[1]

Far from "[d]isregarding entirely the nuanced balancing of considerations that underlies copyright fair use determinations" (Resp. at 11), the USG Checklist exhibits a balance not present in the CCC's and many other universities' checklists. Whereas CCC and other universities may include ten circumstances favoring fair use

---

[1] Despite the fact that GSU is primarily an educational institution, Dr. Seamans, Dean of Libraries at GSU, testified that the Checklist is to be completed for *every* use of a copyrighted work, including potential commercial uses, and is not limited solely to the classroom setting. (Seamans Dep. 193:11-14; 194:4-7, Mar. 10, 2009).

8

under Factor 1 and only five circumstances opposing fair use, USG's Checklist balances the circumstances equally, so that the circumstances favoring fair use never significantly outnumber the circumstances opposing fair use.

## III. Implementation of the New Copyright Policy

In addition to the explanatory material accompanying the new policy, GSU also intends to conduct an extensive implementation campaign, including educational efforts aimed at professors and library faculty.[2] Though Plaintiffs contend based on deposition testimony that GSU "has no planned implementation of [the policy]" (Resp. at 12), the depositions of Drs. Potter and Seamans were conducted only two weeks after the new policy was formally adopted. Not surprisingly, GSU had not yet established and completed its entire implementation efforts at that time.[3]

Nevertheless, implementation efforts have already begun. GSU's Office of

---

[2] So as not to disrupt current educational activities, implementation efforts will fully take place when the new semester commences on May 11, 2009. As such, the excerpts currently on ERes and uLearn were posted pursuant to the old copyright guidelines, and therefore do not constitute evidence of ongoing infringement under the new policy. Additionally, Plaintiffs' claim that excerpts currently on ERes had "been 'hit' a total of 28,625 times" ignores the fact that some of those "hits" were created by single students repeatedly accessing the work and Defendants' and Plaintiffs' counsel while reviewing GSU's ERes system. (Resp. at 14.)

[3] Defendants offered to suspend discovery so that the parties could discuss the policy and its implementation, but Plaintiffs instead chose to move forward with discovery and noticed the depositions of Drs. Potter and Seamans within a few days of the new policy's adoption

Legal Affairs has conducted mandatory seminars for library personnel on the new copyright policy and copyright law generally, and intends to continue and expand upon this educational program. (See 2/23/09 "Copyright in Instruction & the New USG Copyright Policy" Presentation, Ex. C). GSU is also working to implement procedures for enforcement of the policy. Though Plaintiffs suggest that GSU does not intend to enforce its policy by taking Dr. Seamans' deposition testimony out of context, her testimony is clear that the policy will be enforced the same as any other policy, with violations subject to appropriate disciplinary measures.[4] (Seamans Dep. 171:7-9).

## IV. Plaintiffs' Arguments Ignore Legitimate Claims of Fair Use

Though Plaintiffs claim to be arguing for vigorous protection of copyright law, what they actually seek from this Court is a permissions-based system for the use of excerpts from copyrighted works on ERes and other course management systems, effectively eviscerating the university's right to rely on the fair use doctrine in educational settings. (See Resp. at 18 n.8) ("[I]t is not Plaintiffs' intent to foreclose

---

[4] Dr. Seamans' comment, in the appropriate context, reads, "[W]e teach the faculty, we give them the tools that they have, we try to make sure [copyright infringement] doesn't happen. But there are no copyright police out there beating up on people if they make the wrong determination." (Seamans Dep. 167:24-168:8, 18-21). Dr. Seamans also acknowledged that, even though the GSU *library* would not act as copyright police, GSU would still enforce the copyright policy just like any other university policy. (Id. at 171:7-9) ("There presumably will be consequences for flagrant violation of any policy in place on campus.").

either hard-copy or electronic use of their copyrighted works. GSU faculty and students can easily obtain the same copyrighted materials for use in their courses ***by the University's utilization of existing permissions and licensing systems*** …."). What Plaintiffs fail to acknowledge is that an important component of copyright law is a robust application of the doctrine of fair use. At no point in Plaintiffs' lengthy Response is there any acknowledgement that the posting of certain excerpts on ERes may constitute fair use and not require permission or a license. To the contrary, Plaintiffs suggest that the posting of excerpts on ERes can ***never*** constitute fair use, improperly dismissing Defendants' legitimate claims of fair use as "predictable." (Resp. at 7). They cite instance upon instance of alleged "copyright infringement" without any analysis whatsoever as to why each of these instances constitutes copyright infringement and not fair use.

Plaintiffs' sweeping conclusions concerning GSU's "widespread, systematic, and ongoing" infringement of its copyrights and ***other publishers'*** copyrights are nothing more than unsupported assumptions that ignore the issue at hand: whether discovery should be limited to the "ongoing and continuous" conduct of Defendants. Because the Eleventh Amendment only allows Plaintiffs prospective injunctive relief as to Defendants' ongoing conduct, needless discovery into past practices will only serve to delay this litigation and cause Defendants undue burden and expense.

## ARGUMENT AND AUTHORITIES

As discussed in Defendants' Motion, a suit against state officials in their official capacity may only seek prospective equitable relief to end ***ongoing and continuous*** violations of federal law. Summit Med. Assoc., P.C. v. Pryor, 180 F.3d 1326 (11th Cir. 1999). Since both the University Administrators and the Board Members are official capacity defendants, only claims regarding Defendants' ongoing and continuous conduct pursuant to the USG copyright policy are appropriate for relief. If Plaintiffs are permitted to inquire into practices and procedures under the former copyright guidelines, the parties will be effectively litigating the legality of Defendants' past conduct in contravention of Eleventh Amendment sovereign immunity. Id. at 1337.

Plaintiffs' circular argument that discovery into past practices is necessary to prove that nothing has changed under the new policy rests upon the assumption that GSU's past practices resulted in "systematic infringement" of Plaintiffs' copyrights and that such practices are ongoing and continuous. (Resp. at 17). But, the ultimate issue to be determined is whether Defendants' "ongoing and continuous conduct" -- the only conduct that is subject to injunctive relief -- infringes Plaintiffs' copyrights, not whether such current conduct has remained unchanged from Defendants' past conduct despite GSU's adoption of a new

policy.

The case law Plaintiffs cite to support their argument is inapposite to the facts of this case. Plaintiffs cite the courts' opinions in Walt Disney Co. v. Powell, 897 F.2d 565 (D.C. Cir. 1990), New World Music Co. v. Tampa Bay Downs, Inc., No. 8:07-cv-389-T-33TBM, 2009 WL 35184 (M.D. Fla. Jan. 6, 2009), and Mattel, Inc. v. Robarb's, Inc., No.00 Civ. 4866, 2001 WL 913894 (S.D.N.Y. Aug. 14, 2001), for the proposition that a court must look to a pattern of prior infringement in determining whether to issue an injunction. (See Resp. at 21). None of these cases involve a change in operative and controlling policy by official capacity defendants or Eleventh Amendment sovereign immunity.[5] Whereas inquiry into prior practices may be acceptable for private individuals and corporations, those same inquiries are barred by the Eleventh Amendment when the State is the real party at interest in the litigation. See Green v. Mansour, 474 U.S. 64, 73 (1985) (holding that an award of declaratory relief for past conduct would be a "partial 'end-run' around" the Eleventh Amendment); Summit, 180 F.3d at 1336 (noting that the Ex parte Young doctrine only applies to ongoing and continuous violations

---

[5] The only case cited by Plaintiffs that implicates sovereign immunity involves issues of standing, not discovery practices. See Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984) (determining whether the named plaintiff had standing to represent the class of hospitalized persons even though the plaintiff was no longer hospitalized).

13

of federal law and that "a plaintiff may not use the doctrine to adjudicate the legality of past conduct").

Plaintiffs further contend that Defendants' cases are inapposite since "they involve situations in which the plaintiffs specifically sought to enjoin the enforcement of particular state policies." (Id. at 22). Plaintiffs' attempt to distinguish between the "contents of a copyright policy" and the "ongoing infringing practices" pursuant to the policy is unavailing. Since the only relief Plaintiffs can obtain as a practical matter from these Defendants is a change in policy, Defendants' cases are squarely on point. See, e.g., Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1525-26 (10th Cir. 1992) (upholding district court's determination that plaintiff's claims for injunctive relief based on University's old policy were rendered moot when the University adopted a new policy); Marcavage v. West Chester Univ., No. 06-CV-910, 2007 WL 789430, at*3-5 (E.D. Pa. Mar. 15, 2007) (concluding that the adoption of a new policy rendered moot plaintiff's claims based on the old policy). In any event, Defendants have only argued that the case is moot to the extent Plaintiffs' claims are dependent on the former guidelines. Any continued claims for infringement must be based on the new policy to be appropriate for relief under the doctrine of sovereign immunity.

Plaintiffs' argument that inquiry into past practices is necessary to prove that infringement is likely to happen in the future is specious and should be rejected by this Court. What is at issue here is whether the "ongoing and continuous" conduct of Defendants is unlawful, not whether the conduct of Defendants pursuant to the former guidelines remains unchanged by the new policy.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a protective order limiting the scope of allowable discovery to Defendants' "ongoing and continuous" conduct pursuant to the current USG copyright policy.

Respectfully submitted this 16h day of April, 2009.

| | |
|---|---|
| THURBERT E. BAKER 033887 | R. O. LERER 446962 |
| Attorney General | Deputy Attorney General |
| | |
| DENISE E. WHITING-PACK 558559 | MARY JO VOLKERT 728755 |
| Senior Assistant Attorney General | Assistant Attorney General |

/s/ Kristen A. Swift
*King & Spalding LLP*
Anthony B. Askew   025300
Special Assistant Attorney General
Stephen M. Schaetzel   628653
Kristen A. Swift   702536

***Attorneys for Defendants***

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing memorandum has been prepared using 14 point Times New Roman font.

/s/ Kristen A. Swift
Kristen A. Swift
 (Ga. Bar No. 702536)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al, <br><br> Plaintiffs, <br><br> -*vs.*- <br><br> CARL V. PATTON, in his official capacity as Georgia State University President, et al, <br><br> Defendants. | Civil Action No. <br> 1:08-CV-1425-ODE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 16th day of April, 2009, I have electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman  
krugman@bmelaw.com  
Georgia Bar No. 429927  
Corey F. Hirokawa  
hirokawa@bmelaw.com  
Georgia Bar No. 357087  

R. Bruce Rich  
Randi Singer  
Todd D. Larson  

WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, New York 10153

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

Telephone: (212) 310-8000
Facsimile: (212) 310-8007

/s/ Kristen A. Swift
Kristen A. Swift
  (Ga. Bar No. 702536)