**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al., <br><br>                  Plaintiffs, <br><br>     *-vs.-* <br><br> MARK P. BECKER, in his official capacity as Georgia State University President, et al., <br><br>             Defendants. | Civil Action File <br> No.1:08-CV-1425-ODE |

## DEFENDANTS' RENEWED MOTION FOR PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT THEREOF

NOW COME defendants MARK P. BECKER, in his official capacity as Georgia State University President, et al. (collectively, "Defendants"), and, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, file this Renewed Motion for Protective Order and Memorandum of Law in Support Thereof to limit the scope of discovery in this case to practices and procedures that are ongoing and continuous at Georgia State University ("GSU").

Because the Eleventh Amendment and Ex parte Young only allow Plaintiffs Cambridge University Press, Oxford University Press, Inc., and SAGE Publications, Inc. ("Plaintiffs") prospective injunctive relief as to Defendants' "ongoing and

1

continuous" conduct (which Plaintiffs do not appear to dispute), discovery should be limited to Defendants' "ongoing and continuous" conduct under the University System of Georgia's new copyright policy. Needless discovery into GSU's past practices under the former copyright guidelines will only serve to delay this litigation and cause Defendants undue burden and expense. As such, Defendants respectfully renew their request for a protective order limiting the scope of discovery to "ongoing and continuous" conduct.

## INTRODUCTION

On April 27, 2009, this Court entered an Order dismissing Defendants' Motion for Protective Order ("Motion") without prejudice. The Court noted that "a limitation on discovery such as the one proposed by Defendants may be warranted in this case," but explained that the Court lacked adequate information to rule on Defendants' Motion. (Order at 3-4). The Court further explained that Defendants had not specifically identified additional discovery in which "there is a likelihood that Plaintiffs will inquire into Georgia State's past copyright practices in such a manner that it will be unduly burdensome." (Id. at 4-5). Defendants now file their Renewed Motion for Protective Order to provide the Court with additional information regarding the extremely burdensome nature of Plaintiffs' recent discovery efforts.

Since the filing of Defendants' original Motion on March 17, 2009, Plaintiffs

have continued to engage in the kind of burdensome, wasteful discovery that Defendants' original Motion sought to prevent. For example, Plaintiffs served Defendants on April 22, 2009, with ***over 1,300*** Requests for Admission, attached hereto as Exhibit A, all but 54 of which are directed at materials posted on ERes (from 2005 to the present) pursuant to the former copyright guidelines.[1] Plaintiffs also noticed 12 depositions over the course of 10 days, for a total of 14, and then filed a motion with this Court requesting to take up to 20 depositions.[2] Based on Plaintiffs' full-day interrogation of IT staff member James Palmour -- the vast majority of which was dedicated to past practices, some dating as far back as the

---

[1] All but 54 of these requests ask Defendants to admit or deny the accuracy of information in ERes reports produced by Defendants in this litigation, even though Defendants have offered to stipulate that the reports speak for themselves, and that Defendants have no reason to doubt their accuracy (see Palmour Dep., attached hereto as Exhibit B, 173:21-174:11, Apr. 23, 2009), and even though Plaintiffs spent hours during depositions questioning witnesses on the very same information these requests ask Defendants to admit or deny (see id. at 170-209; Burtle Dep., attached here to as Exhibit C at 118-130, 138-140, Apr. 24, 2009).

[2] Plaintiffs have noticed the depositions of 7 professors: Jodi Kaufmann, Marian Meyers, Patricia Dixon, Jason Reifler, Jeffrey Lazarus, Diane Belcher, and Marni Davis. Plaintiffs also noticed the depositions of Laura Burtle (Associate University Librarian for Learning and Technology), James Palmour (Information Systems Specialist), Denise Dimsdale (Library Media and Reserves Coordinator), Cory Schlotzhauer (Access and Media Services), and Paula Christopher (Project Manager, University Educational Technology Services).

1990's[3] --  it is clear that Plaintiffs will continue to question witnesses about irrelevant past practices.  And despite the fact that Defendants have taken remarkable measures to accommodate Plaintiffs' demands for live access to works currently posted on GSU's electronic reserves ("ERes") and course management systems, Plaintiffs now request that Defendants produce ***over 400*** individual works that were posted on ERes (from 2005 to the present) pursuant to the former guidelines.  This discovery is extremely burdensome and has already unnecessarily delayed this litigation, resulting in a second extension of the discovery period.

Defendants respectfully request the Court to grant Defendants' Renewed Motion to prevent exactly the kind of discovery in which Plaintiffs are currently engaged:  unduly burdensome, wasteful discovery into conduct that is neither ongoing nor continuous.   Given Plaintiffs' recent motion to take additional depositions, Plaintiffs show no signs of relenting.  Without this Court's protection, Defendants expect that these official capacity defendants will be subjected to even more harassing and burdensome discovery requests.

## BACKGROUND

This is an action for copyright infringement under 17 U.S.C. §§ 101 et seq.,

---

[3] Plaintiffs questioned Mr. Palmour regarding his role in ERes during the 1990's, including the development and implementation of the "20% rule."  (Palmour Dep. 76:19-80:3).

in which Plaintiffs seek a declaration of copyright infringement, permanent injunctive relief, and attorneys' fees and costs from and against Defendants. For a complete discussion of the background of this case, Defendants refer the Court to Defendants' original Motion for Protective Order (Dkt. 58) and Reply in Support (Dkt. 77), which Defendants incorporate herein by reference.

## I.    The Burdensome Nature of the Depositions of William Potter and Nancy Seamans

During the depositions of William Potter and Nancy Seamans on March 9 and 10, 2009, respectively, counsel questioned the witnesses extensively regarding practices and policies no longer in effect. For example, counsel questioned Dr. Potter about (1) the circumstances surrounding the adoption of the former guidelines, including their purpose, the influence of individual committee members on the guidelines, the amount of time spent drafting the guidelines, and the involvement of legal counsel (See Potter Dep., attached hereto as Exhibit D, at 40:5-41:8, 56:4-10); (2) how the former guidelines were enforced, implemented and applied at the University of Georgia and other institutions (Id. at 41:9-42:4, 72:20-22 (Q: "As of 1997, if you recall, what was the nature of electronic course reserves practices within the university system of Georgia?")); (3) the intentions behind and interpretations of individual provisions within the former guidelines (Id. at 56:11-20, 58:11-62:18, 65:4-16 (Q: "So if I'm reading 7B and 8 together

correctly it seems to suggest that so long as one copies a work for the purpose of study or research, one doesn't need permission to do that. Is that how you interpret those?" A: "Yes." Q: "If you turn to the next page, there's an item listed at No. 14. … Do you know what that was attempting to convey?" A. "Yes." Q: "Please explain.")); and (4) the reasons that prior drafts of the new policy differed from the former guidelines (Id. at 90:2-94:5). Counsel likewise questioned Dr. Seamans about her opinion of the adequacy of the former guidelines and the extent to which such guidelines were followed (See Seamans Dep., attached hereto as Exhibit E, at 59:23-60:9, 66:11-23).

Plaintiffs' counsel also spent a significant amount of time questioning Dr. Potter about the intentions behind and implementation of a 1992 University of Georgia copyright policy which Dr. Potter testified had been superseded by the new policy. (See Potter Dep., Ex. D, at 50:14-22 (Q: "Do you have any understanding as to whether [item numbered 3] permitted the copying of an entire copyrighted work, a single copy of an entire copyrighted work?" A: "I don't know how it was applied in practice." Q: "Do you know how it was intended to be applied?" A: "No.")).

## II.    **Additional Burdensome Discovery**

In response to Plaintiffs' focus on irrelevant past practices and procedures

during Dr. Potter's and Dr. Seaman's depositions, on March 17, 2009, Defendants filed a Motion for Protective Order seeking to limit discovery in this case to "ongoing and continuous conduct" under the new copyright policy. Plaintiffs opposed the Motion. Shortly after filing their Response on April 3, 2009, Plaintiffs continued to engage in burdensome discovery.

### A.    Over 1,300 Requests for Admission

Plaintiffs' ***over 1,300*** requests for admission, all but 54 of which focus on course materials posted on ERes and uLearn pursuant to the former copyright guidelines, some as far back as Fall 2005, are exactly the type of burdensome discovery that Defendants seek to prevent by their proposed protective order. For example, a typical set of Requests reads:

> **REQUEST FOR ADMISSION NO. 175:**   Admit that the course "Introduction to Community Psychology" (PSYC8200) had an enrollment of 14 students during the fall 2005 semester. If your answer is anything other than an unqualified admission, identify the number of students enrolled in the course.

> **REQUEST FOR ADMISSION NO. 176:**   Admit that Dr. Emshoff placed 91 Electronic Course Reading Materials on ERes for students in PSYC8200 during the fall 2005 semester. If your answer is anything other than an unqualified admission, identify the number of Electronic Course Reading Materials Dr. Emshoff placed on ERes.

> **REQUEST FOR ADMISSION NO. 177:**   Admit that Dr. Emshoff placed chapter 2, entitled "Understanding Successful Advocacy," comprising pages 17-26; and chapter 7, entitled "Advocacy Skills," comprising pages 91-108 from the book *Changing the System:*

**REQUEST FOR ADMISSION NO. 178:** Admit that Dr. Emshoff required students in PSYC8200 during the fall 2005 semester to read "Understanding Successful Advocacy" and "Advocacy Skills."

**REQUEST FOR ADMISSION NO. 179:** Admit that "Understanding Successful Advocacy" and "Advocacy Skills" were not Supplemental Reading for students in PSYC8200 during the fall 2005 semester.

(See Ex. A at 20-21). To comply with these Requests, Defendants would have to go to each professor and ask them to recall how many students were in a class that they taught over four years ago, the exact readings they assigned in that class, and whether those reading were supplemental or required readings. To complicate matters further, Plaintiffs define "Required Reading" as:

> Course Reading Material that is explicitly assigned to students in a course and that students are required to read, as opposed to reading that is merely suggested or optional, but not required or assigned, ***regardless of how the instructor/professor characterizes the Course Reading Material*** (*e.g.*, where the professor characterizes an ERes reading excerpt as "supplemental" because it supplements a textbook, but the reading is nonetheless assigned/required).

(Id. at 3) (emphasis added). Thus, Defendants could not rely on the professors' "characterization" of the course reading material, but would instead be forced to perform an independent analysis of each course to determine whether the students

were required to read a particular work in that course.[4]  Such discovery is extremely burdensome and wasteful, especially since ***all of the works*** identified in the Second Set of Requests for Admissions were posted ***under the former copyright guidelines*** that are no longer in effect and are, therefore, no longer relevant to the issues in this case.

### B.    Burdensome Requests for the Production of Documents

One day before serving Defendants with their voluminous Requests for Admission, Plaintiffs served their Third Requests for the Production of Documents, attached hereto as Exhibit G.  These Requests seek:

> 1.  All documents identified in Exhibit A to these Requests in their native portable document format as they are stored on the ERes server(s).
>
> 2.  A copy of the entire book (or other purchased copy) from which each of the excerpts identified in Exhibit A to these Requests was copied and/or scanned.

(See Ex. G at 6).  Exhibit A lists ***over 400*** works, all of which were posted on ERes ***under the former copyright guidelines***, some posted as early as Fall 2005.

Thus, Plaintiffs seek the preparation and then the production of copies of over 400 entire books and the production of over 400 PDFs, despite the fact that

---

[4] Plaintiffs have stated that, if Defendants are unable to answer these 1,351 Requests, Plaintiffs intend "to notice and depose large numbers of faculty members."  (Letter from John H. Rains IV to Kristen A. Swift, dated April 22, 2009, attached hereto as Exhibit F).

Plaintiffs had live access to the ERes system and all of its reporting capabilities --
including access to any PDF files on it -- for the current semester, and Plaintiffs
apparently have their own copies of the entire books in question. Such discovery is
extremely burdensome and duplicative, especially since ***all of the works*** identified
in Plaintiffs' Third Requests for the Production of Documents were posted ***under
the former copyright guidelines*** that are no longer in effect and are, therefore, no
longer relevant to this case.

### C.     Burdensome Inquiries into Past Practices During Depositions

On April 24, 2009, Plaintiffs deposed James Palmour, Information Systems
Specialist for GSU. Despite the fact that Mr. Palmour testified early on that he was
no longer involved with ERes, Plaintiffs insisted on spending an inordinate amount
of time questioning Mr. Palmour as to works previously posted on ERes. In fact,
the majority of the deposition was dedicated to unnecessary questions regarding
former ERes practices, with over 30 pages of the transcript devoted to a line-by-
line review of reports identifying works posted on ERes ***under the former
copyright guidelines***. For example, a typical line of questioning reads,

> Q: Turn to page 98, if you would. Look at the first entry. Does this
> reflect the fact that an article by an S. Chase called "Narrative
> Inquiry" in the Sage "Handbook of Qualitative Research" was
> provided to students in EPS 9280 in the fall of 2006?
>
> A: Yes.

Q:  And it is hit 57 times?

A:  Yes.

Q:  Okay.  And go to page 102.  And look at the second entry when you get there.

A:  Okay.

Q:  Does this entry here reflect the fact that an excerpt called "Defining Psychological War And World War And Early Modern Communication Research" by Christopher Simpson were made available to students in Com 8100 in the fall of 2006?

A:  Yes.

Q:  And hit 71 times by students in that class?

A:  Yes.

(Palmour Dep., Ex. B, 177:10-178:3).

Plaintiffs also questioned Mr. Palmour as to pre-2004 ERes practices, including practices going as far back as the 1990's ("Let's go back just for a second to what you were telling me about the EReserve system pre-2004") (id. at 27:8-29:2) ("Q:  Incidentally, do you know the derivation of the 20 percent rule? A:  That's -- my best recollection is that when we first started providing services in mid to late 90s that my boss at that time, Phil Williams, told me what that limit was.") (id. at 76:19-80:3); ERes reports from as early as 2001 ("My question is, did

you keep similar numbers for the period between summer semester of 2001 and spring semester of 2008?") (id. at 128:4-11); and the change from the Docuweb system to the current ERes system in 2004. (id. at 52:8-54:7).

Likewise, Plaintiffs questioned Ms. Burtle as to payments made to the CCC from 1998 to the present (See Burtle Dep., Ex. C, at 30:23-32:20); ERes document hits from 2003 to 2008 (id. at 138:11-139:8); and the former "20% rule" -- even though Ms. Burtle testified that the library staff no longer uses the "20% rule" (id. at 145:14-148:15) ("We no longer use the 20 percent rule…. It's been replaced by the faculty doing analysis of fair use using the checklist [in the new policy]….").

Plaintiffs have noticed the depositions of 11 more GSU witnesses, including 7 professors. Given the fact that Plaintiffs so far have spent a significant majority of the time in depositions questioning witnesses as to irrelevant information and spending hardly any time on the new copyright policy, Defendants anticipate that these additional depositions will be just as burdensome, if not more so. At a time when GSU is moving forward with implementing the new copyright policy -- including educating professors about the new policy (see E-mail from Cynthia V. Hall, dated April 29, 2009, attached hereto as Exhibit H) -- Plaintiffs insist upon litigating issues relating to Defendants' past practices pursuant to past guidelines in contravention of Eleventh Amendment sovereign immunity.

If Plaintiffs are permitted to continue their inquiry into irrelevant past practices, the burden on Defendants will be unnecessary and simply enormous. Instead of educating faculty and staff members about the new policy, Defendants will be forced to comb through old documents and prepare witnesses on practices that are no longer in effect.[5] Indeed, Defendants fully expect that Plaintiffs will question these witnesses in the same manner as they questioned Mr. Palmour about every work they have ever posted on ERes. Such questioning is burdensome, wasteful, and time-consuming.

Since Plaintiffs are barred by the Eleventh Amendment from litigating issues relating to Defendants' past conduct and since the practices and procedures of faculty, staff, and administration at issue in this litigation will now be governed by the current copyright policy -- and not the former copyright guidelines -- Defendants seek the protection of this Court to limit discovery to the ongoing and continuous practices and procedures of the current policy. Plaintiffs' claims regarding practices and procedures under the former guidelines are moot and therefore irrelevant to any continued claims for prospective relief. Inquiry into such matters will only delay the litigation and cause the parties undue burden and

---

[5] Defendants have offered to stay the litigation for six months to give faculty and staff more experience with the new policy so that Plaintiffs' discovery efforts will be more fruitful when they resume. Plaintiffs are currently considering Defendants' proposal.

expense. Accordingly, Defendants respectfully request the Court to enter a protective order limiting discovery to Defendants' "ongoing and continuous conduct" pursuant to the current copyright policy.

## ARGUMENT AND AUTHORITIES[6]

Rule 26(c) of the Federal Rules of Civil Procedure provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … (A) forbidding the disclosure or discovery; … (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; …"

Fed. R. Civ. P. 26(c)(1).[7] "A party may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Courts have broad discretion to limit the scope of discovery to relevant matters. See Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991) (stating that trial court has "wide discretion in setting

---

[6] Because these arguments are fully set forth in Defendants' original Motion for Protective Order (Dkt. #58) and Reply in Support (Dkt. #77), which Defendants incorporate herein by reference, they will only be briefly recounted here.

[7] Rule 26(c)(1) also requires a movant to include a certificate of good faith with any motion for protective order. It is Defendants' understanding that their previous Good Faith Certificate attaches to this Renewed Motion. Since Plaintiffs opposed Defendants' original Motion, Defendants believe that additional conferences would be futile and unnecessary.

the limits of discovery"); <u>Whittaker v. Dep't of Human Res.</u>, 86 F.R.D. 689, 692-93 (N.D. Ga. 1980) (granting protective order limiting discovery to relevant matters and excluding inquiry regarding plaintiff's allegation of employment discrimination based upon sex because sex discrimination was irrelevant to plaintiff's claim of race discrimination); <u>Kipperman v. Onex Corp.</u>, No. 1:05-CV-1242-JOF, 2008 WL 1902227, at *1 (N.D. Ga. Apr. 25, 2008) (denying defendant's motion to compel information regarding plaintiff's communications with its beneficiaries because the substance of those communications was irrelevant to the claims at issue).

Because the Eleventh Amendment to the U.S. Constitution (the States' immunity from suit in the federal courts) prohibits an award of an injunction, declaratory judgment or damages regarding past conduct, the practices and procedures based on the former copyright guidelines are irrelevant to Plaintiffs' claims. As such, the Court should exercise its broad discretion to limit discovery in this case to Defendants' "ongoing and continuous conduct" pursuant to the current copyright policy.

## I.   <u>Plaintiffs May Only Seek Prospective Relief to End Defendants' Ongoing and Continuous Conduct Pursuant to Current Policy</u>

As discussed in Defendants' original Motion, a suit against state officials in their official capacity may only seek prospective equitable relief to end ***ongoing***

*and continuous* violations of federal law. Summit Med. Assoc., P.C. v. Pryor, 180 F.3d 1326 (11th Cir. 1999). Since Defendants in this case are official capacity defendants, only claims regarding Defendants' ongoing and continuous conduct pursuant to the USG copyright policy are appropriate for relief.

Inquiries into prior practices are barred by the Eleventh Amendment when the State is the real party at interest in the litigation. See Green v. Mansour, 474 U.S. 64, 73 (1985) (holding that an award of declaratory relief for past conduct would be a "partial 'end-run' around" the Eleventh Amendment); Summit, 180 F.3d at 1336 (noting that the Ex parte Young doctrine only applies to ongoing and continuous violations of federal law and that "a plaintiff may not use the doctrine to adjudicate the legality of past conduct"). If Plaintiffs are permitted to inquire into practices and procedures under the former copyright guidelines, the parties will be effectively litigating the legality of Defendants' past conduct in contravention of Eleventh Amendment sovereign immunity. Summit, 180 F.3d at 1337.

## II. Discovery Regarding Defendants' Past Conduct Pursuant to Former Guidelines Should Be Prohibited as Irrelevant to Plaintiffs' Claims

Only claims regarding Defendants' ongoing and continuous conduct pursuant to the current policy are appropriate for relief. Plaintiffs' claims regarding the legality of practices and procedures under the former guidelines,

which have been superseded and no longer govern the practices and procedures at member institutions of the University System of Georgia, are moot. <u>See, e.g.,</u> <u>Students for a Conservative Am. v. Greenwood</u>, 378 F.3d 1129, 1130-31 (9th Cir. 2004) (affirming district court decision that defendant's changes to challenged university election code mooted claims for declaratory and injunctive relief); <u>Comm. for the First Amendment v. Campbell</u>, 962 F.2d 1517, 1525-26 (10th Cir. 1992) (upholding district court's determination that plaintiff's claims for injunctive relief based on University's old policy were rendered moot when the University adopted a new policy concerning prior restraint and content-based discrimination).

Thus, Defendants respectfully request that the Court enter a protective order to limit discovery to the "ongoing and continuous conduct" of Defendants and those in their employ or control (that is, the practices and procedures of the current policy) and to protect Defendants from the undue burden and expense caused by inquiry into practices and procedures of the old policy, which are irrelevant to any continued claims for prospective relief.

<u>**CONCLUSION**</u>

Though Defendants regret having to involve the Court in a discovery matter, the threat to Georgia's sovereign immunity and the needless, burdensome inquiry into matters concerning claims barred by the Eleventh Amendment warrant a

protective order in this case.  Defendants respectfully request that the Court enter a protective order limiting the scope of allowable discovery to Defendants' ongoing and continuous conduct pursuant to the current policy concerning the use of copyrighted works.

Respectfully submitted this 4th day of May, 2009.

THURBERT E. BAKER     033887
Attorney General

R. O. LERER     446962
Deputy Attorney General

DENISE E. WHITING-PACK  558559
Senior Assistant Attorney General

MARY JO VOLKERT   728755
Assistant Attorney General

/s/ *Kristen A. Swift*
King & Spalding LLP
Anthony B. Askew    025300
Special Assistant Attorney General
Stephen M. Schaetzel   628653
Kristen A. Swift    702536

**Attorneys for Defendants**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing

memorandum has been prepared using 14 point Times New Roman font.


                                 _s/ *Kristen A. Swift*_

                                 Kristen A. Swift

                                 (Ga. Bar No. 702536)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS,
et al,

                    Plaintiffs,

          *-vs.-*

CARL V. PATTON, in his official
capacity as Georgia State University
President, et al,
                 Defendants.

Civil Action No.
1:08-CV-1425-ODE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 4th day of May, 2009, I have

electronically filed the foregoing **DEFENDANTS' RENEWED MOTION FOR**

**PROTECTIVE ORDER AND MEMORANDUM OF LAW IN SUPPORT**

**THEREOF** with the Clerk of the Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to the following attorney of

record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP

Georgia Bar No. 357087

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Kristen A. Swift*
Kristen A. Swift
(Ga. Bar No. 702536)