**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>-*vs.*-<br><br>MARK P. BECKER, in his official capacity as Georgia State University President, et al.,<br>　　　　　　　　Defendants. | Civil Action No.<br>1:08-CV-1425-ODE |

**DEFENDANTS' NOTICE OF 30(b)(6) DEPOSITION OF
<u>CAMBRIDGE UNIVERSITY PRESS</u>**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants MARK P. BECKER, in his official capacity as Georgia State University President, et al. (collectively, "Defendants") will take the deposition upon oral examination of Cambridge University Press ("Cambridge") at the times, dates, and places agreed upon by the parties. The deposition will be videotaped and may be stenographically recorded before a notary public or other officer authorized to administer oaths and will be taken for

all purposes permitted by the Federal Rules of Civil Procedure. The examination will continue from day to day until its completion.

Pursuant to Rule 30(b)(6), Cambridge must designate one or more officers, directors, managing agents, or other persons who will testify on behalf of Cambridge regarding the matters known or reasonably available to it as described in Schedule A attached hereto. Defendants request that, no less than thirty (30) days before the date of the deposition, Cambridge identify such person or persons to Defendants or provide a statement in writing that Cambridge is unable to designate a deponent with knowledge of all of the matters referenced in Schedule A.

This 8th day of May, 2009.

THURBERT E. BAKER    033887
Attorney General

R. O. LERER    446962
Deputy Attorney General

DENISE E. WHITING-PACK  558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General

 /s/Kristen A. Swift_____

*King & Spalding LLP*
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Kristen A. Swift
Georgia Bar No. 702536

***Attorneys for Defendants***

# CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing notice has been prepared using 14 point Times New Roman font.

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>/s/Kristen A. Swift
>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>Kristen A. Swift
>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>(Ga. Bar No. 702536)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al,<br><br>                          Plaintiffs,<br><br>*-vs.-*<br><br>CARL V. PATTON, in his official capacity as Georgia State University President, et al,<br>                          Defendants. | Civil Action No.<br>1:08-CV-1425-ODE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 8th day of May, 2009, I have electronically filed the foregoing **DEFENDANTS' NOTICE OF 30(b)(6) DEPOSITION OF CAMBRIDGE UNIVERSITY PRESS** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| Edward B. Krugman<br>krugman@bmelaw.com<br>Georgia Bar No. 429927<br>Corey F. Hirokawa<br>hirokawa@bmelaw.com<br>Georgia Bar No. 357087 | R. Bruce Rich<br>Randi Singer<br>Todd D. Larson<br><br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153 |

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

Telephone: (212) 310-8000
Facsimile: (212) 310-8007

       */s/Kristen A. Swift* _____
Kristen A. Swift
Georgia Bar No. 702536

# SCHEDULE "A" TO CAMBRIDGE UNIVERSITY PRESS

# DEFINITIONS AND INSTRUCTIONS

As used herein:

A. "Defendants" mean defendants MARK P. BECKER, in his official capacity as Georgia State University President, RON HENRY, in his official capacity as Georgia State University Provost, NANCY SEAMANS, in her official capacity as Georgia State University Dean of Libraries, J.L. ALBERT, in his official capacity as Georgia State University Associate Provost for Information Systems and Technology, KENNETH R. BERNARD, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, JAMES A. BISHOP, in his official capacity as member of the Board of Regents of the University System of Georgia, HUGH A. CARTER, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, WILLIAM H. CLEVELAND, in his official capacity as member of the Board of Regents of the University System of Georgia, ROBERT F. HATCHER, in his official capacity as Vice Chair of the Board of Regents of the University System of Georgia, FELTON JENKINS, in his official capacity as member of the Board of Regents of the University System of Georgia, W. MANSFIELD JENNINGS, JR., in his official capacity as member of the Board of Regents of the University System of

Georgia, JAMES R. JOLLY, in his official capacity as member of the Board of Regents of the University System of Georgia, DONALD M. LEEBERN, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, ELRIDGE MCMILLAN, in his official capacity as member of the Board of Regents of the University System of Georgia, WILLIAM NESMITH, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, DOREEN STILES POITEVINT, in her official capacity as member of the Board of Regents of the University System of Georgia, WILLIS J. POTTS, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, WANDA YANCEY RODWELL, in her official capacity as member of the Board of Regents of the University System of Georgia, KESSEL STELLING, JR., in his official capacity as member of the Board of Regents of the University System of Georgia, BENJAMIN J. TARBUTTON, III, in his official capacity as member of the Board of Regents of the University System of Georgia, RICHARD L. TUCKER, in his official capacity as Chair of the Board of Regents of the University System of Georgia, and ALLAN VIGIL, in his official capacity as member of the Board of Regents of the University System of Georgia ("Defendants"), and only in said capacities, and all other persons presently acting or purporting to act on behalf of Defendants.

B. "GSU" means Georgia State University, a unit of the Board of Regents of the University System of Georgia, a constitutional department in the executive branch of government of the State of Georgia, as set forth in 1983 Ga. Const. Art. VIII, Sec. IV, Par. I, and all other persons presently acting or purporting to act on behalf of GSU.

C. "Plaintiff," "Publisher," "you," and "your" mean plaintiff Cambridge University Press and all its subsidiaries, affiliates, and divisions, both U.S. and foreign, collectively and individually, and all other persons presently acting or purporting to act on behalf of Plaintiff.

D. "Document(s)" has the broadest meaning intended under Fed. R. Civ. P. 34 and includes, by way of illustration only and not by way of limitation, every writing or record of every type and description including those existing in all manner of memory means or devices used in connection with electronic computers or word processors that is or has been in your possession, control or custody, or of which you have knowledge, including without limitation: papers, contracts, correspondence, memoranda, tapes, communications, invoices, accounts, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, photographs, films, videotapes, sound or voice recordings, maps, reports, surveys, minutes, graphs, statistical compilations, charts, calculations, projections,

plans, data processing cards, tapes or disks of computer records or printouts; a copy of every such writing or record where such copy is not an identical copy of the original or where such copy contains any commentary or notation whatsoever that does not appear on the original.

E. "Person(s)" shall mean any individual(s), firm(s), partnership(s), corporation(s), proprietorship(s), association(s), governmental body or bodies, or any other organization(s) or entity(ies).

F. "Date(s)" shall mean the exact day, month and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

G. "Identify" or "specify" when used in reference to a Person who is an individual, shall mean to state the full name, present or last known address, telephone number, and present or last known position or business affiliation.

H. "Identify" or "specify" when used in reference to a Person who is a firm, partnership, corporation, proprietorship, association, or other organization or entity, shall mean to state its full name, the legal form of such entity or organization, its present or last known address, and the identity of its chief executive officer, partners, or persons in equivalent positions.

I. "Identify" or "specify" when used in reference to a communication shall mean to state the Persons involved, the date, and the substance of the communication.

J. "Relating," "concerning," or "regarding," or any permutation thereof, mean pertaining to, referring to, describing, evidencing or constituting.

K. "Plaintiff's Copyrights" means each copyright for a work of authorship that you allege GSU has infringed, including, but not limited to, each copyright identified in Exhibit 1 to the Amended Complaint.

L. "ERes" means the GSU library electronic course reserve system.

M. "Fair Use" means the doctrine of fair use as codified in 17 U.S.C. § 107.

N. "CCC" means the Copyright Clearance Center, Inc.

O. "Fair Use Checklist" means the Fair Use Checklist adopted by the University System of Georgia in its Policy on Copyright in Education and Research.

# TOPICS FOR EXAMINATION

1. Ownership of Plaintiff's Copyrights, including but not limited to the assignment to any person of any interest in Plaintiff's Copyrights or the renewal of such copyrights.

2. Any agreements concerning the publication of any works of authorship between Plaintiff and any of the authors of works which are covered by Plaintiff's Copyrights.

3. GSU's alleged infringement of Plaintiff's Copyrights, including but not limited to the date(s) when you first learned of GSU's alleged infringement of any of Plaintiff's Copyrights, how you received such information, and the substance of what you learned.

4. Any discussions with GSU regarding its alleged infringement of Plaintiff's Copyrights.

5. Any contentions by Plaintiff that other academic institutions have infringed or are infringing Plaintiff's Copyrights or any other copyright owned by Plaintiff, including but not limited to any discussions with other academic institutions from April 2005 to the present in which you contended that such institutions have infringed or were potentially infringing Plaintiff's Copyrights or any other copyright owned by Plaintiff and the resolution of those discussions.

6. Any analyses by Plaintiff regarding whether GSU's alleged use of the works covered by Plaintiff's Copyrights is a Fair Use.

7. Any determination by Plaintiff regarding which portions of the works covered by Plaintiff's Copyrights constitute the "heart" of those works and how such determination was made.

8. Whether Plaintiff contends the markets or potential markets for Plaintiff's Copyrights have suffered or are suffering from the posting of excerpts of works covered by such copyrights on ERes, uLearn, and/or course and faculty websites at GSU, including but not limited to the amount of harm in U.S. dollars and how such amount was calculated.

9. All Persons to whom a license to reproduce in whole or in part the works covered by Plaintiff's Copyrights has been granted, including but not limited to all instances in which Plaintiff has granted a license to use or reproduce in whole or in part any portion of the works covered by Plaintiff's Copyrights and any fees charged for such license.

10. Plaintiff's sales and licensing activities in relation to the higher education/academic market.

11. Plaintiff's guidelines or requirements for when academic institutions, including faculty members, library staff or other individuals at academic

institutions, should request a license from Plaintiff concerning the use of works covered by Plaintiff's Copyrights or any other copyright owned by Plaintiff, whether directly or through CCC.

12. The procedures, processes, and/or policies governing Plaintiff's determination of whether a given request for permission to use works covered by Plaintiff's Copyrights or any other copyright owned by Plaintiff, whether submitted directly to Plaintiff or through CCC, qualifies as Fair Use, including but not limited to the frequency with which Plaintiff (either directly or through CCC) determines that any such request for permission qualifies as Fair Use.

13. The bases for Plaintiff's allegation in paragraph 22 of the Amended Complaint that Defendants are distributing "excerpts [which] are compiled together with numerous other readings to create for students a 'digital coursepack' not unlike the collections and anthologies offered for sale by the Plaintiffs themselves or the hard-copy coursepacks students once would have purchased at the campus bookstore or copy center," including but not limited to whether any excerpt or collection of excerpts on ERes, uLearn, and/or course and faculty websites at GSU from April 2005 to the present have infringed or are infringing the copyright in any coursepack published by Plaintiff.

14. Access or attempted access by Plaintiff or anyone acting on Plaintiff's behalf to ERes, uLearn, and/or course and faculty websites at GSU in connection with Plaintiff's investigation of GSU's alleged infringement of Plaintiff's Copyrights.

15. Any analyses of the materials accessed and reviewed through ERes, uLearn, and/or course and faculty websites at GSU, including but not limited to the comparison of such material with any of the 6700 works referenced in the Amended Complaint and determinations of whether GSU's use of such material violates GSU's former or current copyright guidelines and/or policies.

16. The costs incurred by Plaintiff in producing, making, assembling, duplicating, marketing and/or selling the works covered by Plaintiff's Copyrights.

17. Plaintiffs' revenues for the works covered by Plaintiff's Copyrights.

18. Communications between Plaintiff and the Association of American Publishers and/or Edward McCoyd of the Association of American Publishers concerning GSU and/or Plaintiff's Copyrights.

19. Plaintiff's relationship with CCC, including but not limited to any compensation paid to CCC by Plaintiff for approving and/or denying requests for permission to use Plaintiff's works and for facilitating any transaction(s) resulting from any such approval or denial and the terms of any agreement or business

arrangement, whether written or oral, between you and CCC regarding Plaintiff's Copyrights.

20. Communications between Plaintiff and the CCC and/or Caryl Kennedy of the CCC concerning GSU and/or Plaintiff's Copyrights.

21. The amount of copies of each of the works covered by Plaintiff's Copyrights that have ever been sold.

22. If Plaintiff has never granted a license to use any portion of the works covered by Plaintiff's Copyrights, the amount that Plaintiff intends to charge for use of the specific excerpts of the works covered by Plaintiff's Copyrights that were allegedly used by GSU.

23. The remedies sought by Plaintiff in this case, including but not limited to the substance of any policy Plaintiff proposes will stop the alleged infringement of Plaintiff's Copyrights on ERes, uLearn and/or course and faculty websites at GSU.

24. Whether Plaintiff contends that the Fair Use Checklist does not accurately reflect the circumstances relevant to a Fair Use determination and the bases for any such contention.

25. Whether Plaintiff contends that faculty at GSU are not capable of making reliable Fair Use determinations and the bases for any such contention.

26. What Plaintiff contends is a permitted fair use by professors at an educational institution.