# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS,
OXFORD UNIVERSITY PRESS, INC.,
and SAGE PUBLICATIONS, INC.,

                 Plaintiffs,

       - *v.* -

MARK P. BECKER, in his official
capacity as Georgia State University
President, et al.,

                 Defendants.

Civil Action No. 1:08-CV-1425-ODE

## PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D. CREWS AND SUPPORTING MEMORANDUM

618735.1

Dockets.Justia.com

Plaintiffs Cambridge University Press, Oxford University Press, Inc., and Sage Publications, Inc. ("Plaintiffs") hereby move to exclude in its entirety the Expert Report of Kenneth D. Crews, J.D., Ph.D., Dkt. No. 104, Attachment 1 ("Crews Report" or "Report"), filed by Defendants (also referred to herein as "Georgia State") on June 1, 2009, as inadmissible under Federal Rule of Evidence 702 and, in any event, untimely under Local Rule 26.2.C.

## INTRODUCTION

This motion seeks to exclude a legal brief styled as an "expert report" with which Plaintiffs were sandbagged well after the applicable discovery deadline. The Crews Report consists of seventy-two single-spaced pages of legal argument that violates Rule 702 of the Federal Rules of Evidence, in that it does not help the Court determine a fact in issue, as well as Local Rule 26.2.C, in that it was prepared and filed in a surreptitious and untimely manner in derogation of the Court-ordered discovery schedule.

The central legal issue on which Georgia State's defense hinges is whether its systematic and infringing practice of electronically distributing Plaintiffs' copyrighted works is fair use under section 107 of the Copyright Act. Because the Crews Report constitutes legal advocacy – proposing an ultimate legal conclusion – on this very issue, it is not a proper subject of expert testimony under

Rule 702, which does not authorize the admission of expert testimony on questions of law or on the application of the law to the facts. This Court, not Dr. Crews, is the only proper expert on fair use in this proceeding. Yet the Crews Report develops a lengthy argument as to how the Court should apply the fair-use doctrine to Georgia State's copyright policies. Assuming it complied with the page and type limitations set forth in Local Rule 7.1.D, this legal argumentation, which constitutes the heart of the Report, could only appropriately be included in a legal brief filed in support of a motion, not in a purported "expert report."

Even if the Crews Report were otherwise admissible, it should be excluded on the ground that it was not served until a week after the May 25, 2009 close of discovery for all purposes but the taking of depositions (as to which the cut-off is June 30, 2009), in clear violation of Local Rule 26.2.C. Indeed, although Defendants retained Dr. Crews on the very same day the parties were moving the Court to extend the discovery schedule (April 22), Defendants did not at that time disclose that they had retained an expert, nor did they propose including any provision for expert discovery in the extension request. Plaintiffs were not informed that Defendants had retained an expert until nearly a month later – a mere six days before the May 25, 2009 deadline for discovery – and the Crews Report was not filed until a week *after* the applicable deadline had passed, thus depriving

Plaintiffs of adequate opportunity to take discovery of Dr. Crews or to retain a rebuttal expert and obtain a report from such expert should they be required to do so.

Defendants' "hide the ball" gamesmanship with respect to Dr. Crews, coupled with the blatant attempt to usurp the Court's role as the legal expert in this action, should be rejected and the Crews Report excluded in its entirety.

## FACTUAL BACKGROUND

At no point during the ten months of discovery in this case did Defendants ever indicate that they would seek to introduce expert testimony or even suggest that the parties should seek leave from the Court to conduct expert discovery outside of the agreed-upon discovery deadlines. *See* Declaration of Edward Krugman, dated June 5, 2009 ("Krugman Decl."), filed herewith, ¶ 5. Neither the Joint Preliminary Report and Discovery Plan the parties filed on July 25, 2008 (Dkt. No. 16; "Discovery Plan") nor the Scheduling Order entered on July 31, 2008 (Dkt. No. 23) provided for an expert discovery period.

Since submitting the initial Discovery Plan, the parties have discussed the discovery schedule on numerous occasions without a single mention by Defendants of an intention to retain an expert. Krugman Decl. ¶¶ 3-5. On February 17, 2009, the parties filed a joint motion for an extension of time to

complete discovery that made no mention whatsoever of expert discovery. Joint Motion for Extension of Time to Complete Discovery, Dkt. No. 49. The Court granted that motion and extended the discovery period through May 25, 2009. Scheduling Order, Dkt. No. 52. On April 22, 2009, the parties again sought an extension of the discovery period to June 30, 2009 "for the limited purpose of scheduling and taking depositions," and, again, no mention was made by Defendants of a need for expert discovery. *See* Joint Motion for an Extension of Time to Take Depositions, Dkt. No. 80. The same day (April 22), the Court granted the motion and ordered that "the Parties shall have until June 30, 2009 to schedule and take depositions. All other discovery must be completed by May 25, 2009." Scheduling Order, Dkt. No. 82. The Court has entered no further scheduling orders, and neither party has sought a further extension of the discovery period.

Unbeknownst to Plaintiffs, however, on April 22, 2009 – the very day the parties jointly requested a limited discovery extension for reasons unrelated to experts – Defendants retained Dr. Kenneth D. Crews to prepare an expert report and to testify in this matter. Crews Report at 6. Several weeks later, on May 15, 2009, the parties reached an agreement resolving several outstanding discovery disputes and agreed to file a joint motion to clarify that post-discovery deadlines

set by the local rules, such as the deadline for holding a settlement conference, for filing motions to compel, and for moving for summary judgment, should be calculated from the June 30, 2009 date. *See* Letter from Laura Gary to Randi Singer, dated May 15, 2009, Krugman Decl. Ex. A.[1]

It was not until May 19, 2009, when the parties were discussing the logistics of the above-referenced joint motion, that Defendants first stated that they intended to designate an expert – without disclosing the nature or subject matter of the proposed testimony. Letter from Laura Gary to Edward Krugman, Krugman Decl. Ex. B. On May 21, Plaintiffs informed Defendants that the designation of Crews as an expert witness was untimely under the local rules. Letter from Edward Krugman to Laura Gary, Krugman Decl. Ex. C. After several unsuccessful attempts by Plaintiffs' counsel to reach Defendants' counsel to discuss the timeliness of their designation of Dr. Crews, on June 1, 2009, Defendants' counsel informed Plaintiffs by e-mail that Defendants would be filing Dr. Crews' expert report later that afternoon. Krugman Decl. ¶ 10. Defendants

---

[1] In agreeing to this provision, Plaintiffs believed they were resolving any potential ambiguity in the April 22 scheduling order. They did not understand this provision of the agreement to authorize any additional discovery, whether expert discovery or additional written discovery (which was expressly prohibited). Had Plaintiffs known that Defendants intended to designate an expert witness, they would have objected.

then supplemented their Initial Disclosures to designate Crews as an expert, using the opportunity to file Dr. Crews' seventy-two page report and exhibits with the Court. Defendants' Supplemental Initial Disclosures, Dkt. No. 104.

## ARGUMENT

## I. THE CREWS REPORT IS INADMISSIBLE LEGAL ADVOCACY

### A. Legal Argument in the Guise of an "Expert Report" Is Not Admissible Under Federal Rule of Evidence 702

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." FED. R. EVID. 702 provides no basis for admitting the Crews Report, which includes a lengthy discussion of copyright case law, legal argument, and a legal conclusion rather than scientific, technical, or other specialized knowledge.

Courts have held consistently that proffered "expert" legal testimony directed toward the correct interpretation of the law or the correct application of the law to the facts is inadmissible under Rule 702 because it does not "assist the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. *See, e.g.*, *Humbert v. City of Coll. Park*, No. 1:05-cv-02740-GET, 2008

WL 5586504, at *3 (N.D. Ga. Aug. 18, 2008) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing argument." (citing *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005)); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not 'otherwise admissible.'").

The Crews Report is exactly what the cases construing Rule 702 forbid: testimony from a lawyer as to how the court should interpret the law and apply it to the facts. The Report surveys the law of fair use and counsels the Court to conclude that the Georgia State copyright policies he evaluates comport with copyright law – thus advising the Court as to how it should rule on Georgia State's principal defense. It is, therefore, inadmissible. *See, e.g.*, *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding that expert testimony as to whether the facts triggered certain duties under an insurance policy was "legal conclusion, and therefore should not have been admitted").

Unlike expert testimony that enables the fact-finder to better understand the record, expert testimony in which "the witness simply recounts the facts and then offers an opinion as to the conclusion . . . is not permitted." *Omar v.*

*Babcock*, 177 Fed. App'x. 59, 63 n.5 (11th Cir. 2006); *see also United States v. Delatorre*, 308 Fed. App'x. 380, 383 (11th Cir. 2009) ("We have held that an expert witness may not testify as to his opinion regarding ultimate legal conclusions."); *United States* v. *Long*, 300 Fed. App'x. 804, 814 (11th Cir. 2008) ("An expert witness may not testify as to his opinion regarding ultimate legal conclusions.").

The Eleventh Circuit has repeatedly held that a witness "may not testify to the legal implications of conduct" because the court must be the "only source of law." *Humbert*, 2008 WL 5586504, at *4 (quoting *Montgomery*, 898 F.2d at 1541); *see also Plantation Pipeline Co. v. Cont'l Cas. Co.*, No. 1:0-CV-2811-WBH, 2008 WL 4737163, at *6 (N.D. Ga. July 31, 2008) (excluding expert report on ground that "the opinions voiced therein express inadmissible legal opinions . . . that invade the province of the factfinder"); *U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) (stating that expert testimony "consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached, thereby improperly . . . impinging upon the responsibilities of the court"); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) (excluding legal opinion on ground that "the judge's expert

knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial").

Accordingly, as the Eleventh Circuit has stressed, "courts must remain vigilant against the admission of legal conclusions." *Long*, 300 Fed. App'x. at 814 (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). "Domestic law is properly considered and determined by the court" and is "not to be presented through testimony . . . as a question of fact." *United States v. Oliveros*, 275 F.3d 1299, 1306-7 (11th Cir. 2001) (refusing to allow immigration attorney to testify as expert witness on immigration law).

A proffered expert's view as to the proper application of the law to the record facts is no less improper than his view as to what the law is. An expert "may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1212-13; *see also Long*, 300 Fed. App'x. at 814-15 (holding that expert's testimony about hallmarks of Ponzi scheme was admissible because "this statement was a factual, not a legal, conclusion," whereas expert's statement that the business was a fraudulent scheme was "an impermissible legal conclusion"). Hence, expert reports that contain legal conclusions should be excluded. *See, e.g.*, *Maldonado v. Snead*, 168 Fed. App'x.

373, 386 (11th Cir. 2006) (affirming decision to strike affidavit of expert witness who reviewed case record and offered conclusions with respect to child welfare); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (en banc) (stating that testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case"); *Plantation Pipeline Co.*, 2008 WL 4737163 at **5-7 (excluding expert report in which expert, based on facts of case, rendered opinions as to whether claims were covered under insurance policy).

Thus, so-called "expert reports" that purport to explain to a court how to apply copyright law should be excluded. *See, e.g., Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999) (excluding expert affidavit of noted fair-use authority William F. Patry on the ground that "testimony of an expert on matters of domestic law is inadmissible for any purpose" and noting that "such testimony is inadmissible whether offered at trial for the benefit of the jury or submitted with motions for the benefit of the judge"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, No. C-95-20091-RMW, 1997 WL 34605244, at *8 (N.D. Cal. Jan. 6, 1997) (striking declarations of copyright "experts" and noting "[i]t is well-established that interpretations and explanations of the law are not proper subjects of expert testimony"); *Pivot Point Int'l, Inc. v.*

*Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996) (excluding expert testimony on copyrightability of mannequin heads on ground that "[t]here is no need for expert testimony on this subject; in a trial there is only one legal expert – the judge").

> ### B. The Crews Report Should Be Excluded Because It Is Inadmissible Legal Argument

The Crews Report presents Dr. Crews as an expert in copyright law, noting, *inter alia*, that he is director of the Copyright Advisory Office at Columbia University; that he earned a law degree at Washington University in St. Louis and practiced law in Los Angeles; that he wrote his dissertation on "fair use policies at major research universities in the United States"; and that he has authored several publications on copyright and fair use. Crews Report at 3-4. It states that in preparing the Report, Dr. Crews engaged in legal research, including "analysis of relevant cases and statutes" (*id.* at 6). All of this is intended to establish Dr. Crews' qualifications to provide the Court with what is clearly inadmissible testimony as to whether the Georgia State policies comply with copyright law. Such "testimony" is actually legal argument that belongs in a memorandum of law. Indeed, it is noteworthy that in the prior copyright litigations in which Dr. Crews indicates he "had a role" (*see id.* at 4-5), he served as a consultant, not as an expert witness.

The Crews Report announces its objective to shape the Court's evaluation of Georgia State's fair-use defense, stating that it "will demonstrate that E-Reserves and the law of fair use today are not necessarily the same as they have been in the past" and that "a flexible understanding of fair use better reflects the law and can better serve future needs."  Crews Report at 2.  The inadmissible legal argumentation is most explicit in Part V: "The Law of Copyright and Fair Use" (*id.* 12-20) – the heart of the Report – which is a survey of fair-use decisions that, Dr. Crews opines, "tells us much about the substance of fair use as applied to E-Reserves."  *Id.* at 18.  Then, following a discussion of model policies for fair use and reserves (*id.* at 21-27) that, as Dr. Crews notes, "have found no support in the law" (*id.* at 21), the Report devotes seventeen pages to summarizing the copyright and fair-use policies at various colleges and universities (likely cherry-picked to suit his purposes), none of which are even relevant to this Court's evaluation of Georgia State's ***practices***.  After a section devoted to "Common Elements of an E-Reserve Policy" (*id.* at 45-49), which, again, is not relevant to Georgia State's ***practices***, Dr. Crews provides an "overview and evaluation" of the Georgia State policies (*id.* at 50-67) that consists of nothing more than Dr. Crews' views as to the compatibility of each aspect of the policies with copyright law.  As Dr. Crews

concludes: "The Georgia University Policy, as examined in this report, is consistent with the copyright law of the United States. . . ." *Id.* at 68.

This is unquestionably advocacy of a legal conclusion and, as such, an improper subject of expert testimony. Expert witnesses are prohibited from "interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *McCabe v. MacAuley*, No. C05-73-LRR, 2007 WL 625569, at *3 (N.D. Iowa Feb. 26, 2007). Yet that is just what Dr. Crews has done. Dr. Crews' views as to the compatibility of the Georgia State policy with copyright law "belongs in briefs, not in [an] 'expert' report. . . . If specialized knowledge . . . would assist the judge, the holders of that knowledge can help counsel write the briefs and present oral argument." *RLJCS Enters., Inc. v. Prof'l Benefit Trust Multiple Employer Welfare Benefit Plan*, 487 F.3d 494, 498 (7th Cir. 2007) (citations omitted).

## II. THE CREWS REPORT AND TESTIMONY SHOULD BE EXCLUDED BECAUSE DEFENDANTS FAILED TO COMPLY WITH LOCAL RULE 26.2.C

Beyond its incompatibility with Rule 702, the Crews Report was not even filed in a timely manner. Local Rule 26.2.C provides, in relevant part:

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name

its own expert witness sufficiently in advance of the close
of discovery so that a similar discovery deposition of the
second expert might also be conducted prior to the close
of discovery.

Any party who does not comply with the provisions of
the foregoing paragraph shall not be permitted to offer
the testimony of the party's expert, unless expressly
authorized by court order based upon a showing that the
failure to comply was justified.

N.D. Ga. Local R. 26.2.C. The identification of an expert is "sufficiently early"

when it affords the other party enough time to prepare for a deposition and depose

the expert, *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1194

(N.D. Ga. 2005), and to "decide whether they wish[] to retain a counter-expert,

locate and retain a counter-expert, allow that expert to prepare his expert report,

and make that expert available for deposition within the discovery period." *Gainor*

*v. Douglas Co.,* 59 F. Supp. 2d 1259, 1297 (N.D. Ga. 1998).

Defendants have no justification for their flagrant violation of Rule

26.2.C. Dr. Crews was retained by King & Spalding on April 22, 2009. Crews

Report at 6. Yet, Defendants did nothing to inform Plaintiffs of this fact until May

19, 2009, nearly a month later, despite the fact that on the very day Dr. Crews was

retained the parties filed a joint request to extend the discovery schedule.

Defendants' designation of Dr. Crews only six days before the May 25 deadline

and the service of his report on June 1, 2009 – after the close of all discovery with

the exception of depositions – violated Local Rule 26.2.C, as Defendants failed to "designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery," as Rule 26.2.C requires. *See Carolina Cas. Ins. Co. v. R.L. Brown & Assocs.*, No. 1:04-CV-3537-GET, 2007 WL 174171, at **2-3 (N.D. Ga. Jan. 19, 2007) (excluding expert testimony where expert was designated seventeen days before close of discovery).

Moreover, Defendants did not produce Dr. Crews' report until June 1, 2009 – after the May 25, 2009 deadline for all discovery other than depositions and less than thirty days prior to the deadline for completion of depositions. Even if, for purposes of Local Rule 26.2.C, the "close of discovery" in this case were somehow construed to be June 30, 2009, it is unreasonable to expect Plaintiffs to review additional expert discovery materials that have not yet been produced, depose Dr. Crews on his seventy-two page, single-spaced report, retain a rebuttal expert, and obtain a rebuttal expert report prior to June 30, 2009.[2] The Court

---

[2] Defendants cannot argue that Plaintiffs somehow conceded in the May 15 letter agreement to an extension of the discovery period to June 30 for all purposes, including the submission of expert reports. As discussed above, Plaintiffs entered into the agreement for the sole purpose of clarifying the appropriate date for the calculation of post-discovery deadlines, and they did so without knowledge that

should not tolerate Defendants' calculated effort to place Plaintiffs in this untenable position, which is precisely what Local Rule 26.2.C is intended to prevent.

More fundamentally, the retention of Dr. Crews and the dilatory filing of his report violated the Court's unambiguous April 22 discovery order, which clearly provides that all discovery but for depositions was to have been completed by May 25, 2009.  Scheduling Order, Dkt. No. 82.  Defendants' suggestion that Plaintiffs should now agree to a further extension of the discovery period to accommodate Defendants' delay in designating an "expert" does not excuse Defendants' disregard of the Court's scheduling order and the local rules.  *See The Lamar Co., L.L.C. v. City of Marietta,* 538 F. Supp. 2d 1366, 1378, 1380 (N.D. Ga. 2008) (excluding testimony of expert witness where party delayed disclosing intention to present expert testimony despite the party's offer to agree to extension of the discovery period to allow other party to depose late-disclosed expert).  As

---

Defendants had retained Dr. Crews nearly a month earlier, a fact Defendants withheld until May 19.  *See* Krugman Decl. ¶ 4.  Indeed, Plaintiffs insisted that the "close of discovery" clause be narrowed to clarify that no additional written discovery be allowed past the May 25 deadline.  *See id.*  Had Defendants forthrightly informed Plaintiffs of Dr. Crews' retention on May 15, Plaintiffs would have objected immediately – as they did upon learning that information on May 19 – and refused to sign the agreement.

this Court held in *Nestlehutt v. Am. Indus. Chem. Corp.*, No. 1:03-CV-1054-ODE, 2005 WL 6033021, at *11 (N.D. Ga. May 5, 2005) (Evans, J.), designating an expert such that further extensions of the discovery period are necessary "work[s] against [a party's] argument for leniency rather than in favor." As the Court concluded in granting the motion to exclude the expert testimony:

> The procedural history suggests that Plaintiff has had an exceedingly long discovery period in which to identify an expert, but that he inexplicably provided the expert report at a time in which there could be no doubt yet another discovery extension would be required to accommodate his testimony. Accordingly, Defendants' motion to exclude expert testimony is GRANTED.

*Id.* The present motion to exclude the Crews Report should be granted for the same reason.

## CONCLUSION

For the reasons set forth above, the Crews Report is both inadmissible and untimely and thus should be excluded in its entirety.

Respectfully submitted this 5th day of June, 2009.

/s/ Edward B. Krugman
Edward B. Krugman
Georgia Bar No. 429927
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
krugman@bmelaw.com
rains@bmelaw.com

R. Bruce Rich (*pro hac vice*)
Randi Singer (*pro hac vice*)
Todd D. Larson (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
r.bruce.rich@weil.com
randi.singer@weil.com
todd.larson@weil.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1.  This document was prepared in Times New Roman 14 point font.

<u>/s/ Edward B. Krugman</u>
Edward B. Krugman

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the foregoing **PLAINTIFFS'**

**MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D.**

**CREWS WITH SUPPORTING MEMORANDUM** with the Clerk of Court

using the CM/ECF filing system which will automatically send e-mail notification

of such filing to the following attorney of record:

> Mary Jo Volkert, Esq.
> Assistant S. Attorney General
> 40 Capitol Square
> Atlanta, Georgia 30334

In addition, I have served a copy upon the following individuals via hand

delivery:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Kristen A. Swift, Esq.
> C. Suzanne Johnson, Esq.
> Laura E. Gary, Esq.
> King & Spalding
> 1180 Peachtree Street
> Atlanta, Georgia 30309

This 5th day of June, 2009.


> /s/ Edward B. Krugman
> Edward B. Krugman