# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al., | |
| Plaintiffs, | Civil Action File No. 1:08-CV-1425-ODE |
| *-vs.-* | |
| MARK P. BECKER, in his official capacity as Georgia State University President, et al., | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D. CREWS

NOW COME defendants MARK P. BECKER, in his official capacity as Georgia State University President, et al. (collectively, "Defendants"), and file this memorandum in opposition to Plaintiffs' Motion to Exclude the Expert Report of Kenneth D. Crews (the "Motion"). In their Motion, Plaintiffs seek to exclude the expert report of Dr. Kenneth D. Crews ("Dr. Crews") on the grounds that it is untimely and consists solely of impermissible legal conclusions. Pl. Mot. at 1-2. Plaintiffs' Motion not only mischaracterizes the opinions offered by Dr. Crews, but also misstates the law governing the timeliness and admissibility of expert testimony.

Dr. Crews offers opinions regarding the complex and unique nature of the affirmative defense of fair use doctrine in copyright law and the application of that doctrine in educational environments. Specialized knowledge and experience regarding the evolution of library reserve systems is critical to deciding the parties' competing positions in this case. To assist in this understanding, Defendants retained Dr. Crews, a doctor of Library and Informational Science, a world-renowned expert on copyright policies and practices, and an attorney. With respect to the application of fair use in educational environments, Dr. Crews has substantial professional experience and knowledge in this area, has developed his opinions through painstaking review and analysis, and has provided well-reasoned and detailed opinions. His opinions may be tested through the presentation of opposing experts or cross-examination, but they should not be stricken as a matter of law.

In addition, Defendants disclosed their intent to rely upon Dr. Crews as a testifying expert and served a copy of his expert report upon Plaintiffs in a timely manner, well in advance of the June 30, 2009 close of discovery in this matter, and in full compliance with the Federal Rules of Civil Procedure and Local Rules.

## ARGUMENT AND AUTHORITIES

## I.    LEGAL STANDARD GOVERNING ADMISSIBILITY OF EXPERT TESTIMONY

The admissibility or exclusion of expert testimony is within the discretion of the trial court, derived from its authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). A party offering expert opinions must prove by a preponderance of the evidence that the proffered testimony satisfies the liberal requirements of Federal Rule of Evidence 702. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Expert testimony is admissible if the expert is qualified by special knowledge, skill, experience, training, or education and the expert's opinions are reliable and will help assist in the resolution of disputed fact issues. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In fact, the presumption under the Federal Rules is that expert testimony is admissible. *See e.g. United States v. Paul*, 175 F.3d 906, 910 (11th Cir. 2001) ("[R]ules 702 and 703 give all expert witnesses testimonial leeway unavailable to other witnesses on the presumption that the expert's opinion 'will have a reliable basis in the knowledge and experience of his discipline.'") (quoting *Kumho Tire*, 526 U.S. at 142).

Furthermore, Federal Rule of Evidence 704 specifically allows "testimony in the form of an opinion or inference . . . [that] embraces an ultimate issue to be

decided by the trier of fact." FED. R. EVID. 704(a). Accordingly, an expert witness may testify in the form of an opinion or inference, even if the opinion or inference embraces an ultimate fact issue. *A.E. By and Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991).

This relaxed standard is in accord with the "liberal thrust" of the Federal Rules of Evidence. *Daubert*, 509 U.S. at 588. And where the testimony is directed to an issue to be decided by the court, the court's gatekeeper function is further relaxed. *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) (noting the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony" and remarking "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself").

## II. DR. CREWS' EXPERT REPORT WILL ASSIST THE COURT AND IS ADMISSIBLE UNDER RULE 702

In *United States v. Frazier*, the Eleventh Circuit examined Rule 702 and set forth the following standards:

> [I]n determining the admissibility of expert testimony under Rule 702, we engage in a rigorous three-part inquiry. Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). In their Motion, Plaintiffs do not assert that Dr. Crews is unqualified to testify as an expert in this matter. Indeed, by virtue of his education, training, experience, and general knowledge, Dr. Crews is unquestionably qualified to offer expert testimony. *See* Part II, Background and Credentials of Expert and Curriculum Vitae, Docket 104, Attach. 1. at 3-4 and Appendix A. Plaintiffs do not challenge Dr. Crews' methodology either. As evidenced by his lengthy report, Dr. Crews performed substantial work and employed reliable methods in connection with its preparation. Rather, Plaintiffs premise their request that the Court exclude his expert report on the third factor, asserting that Dr. Crews' opinions consist purely of legal conclusions that are *per se* inadmissible. Plaintiffs' contention has no basis in fact or law.

While it is true that matters of law have been excluded as inappropriate subjects for expert testimony in some cases, no *per se* rule exists as Plaintiffs have advanced. "Testimony in the form of an opinion or inference otherwise admissible

is not objectionable because it embraces an ultimate issue to be decided by the trier

of fact." FED. R. EVID. 704(a); *see also United States v. Long*, 300 Fed. App'x.

804, 814-15 (11th Cir. 2008); *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1112

n. 8 (11th Cir. 2005). Indeed, courts have routinely admitted testimony of a legal

nature in instances were the law presents complex issues:

- *United States v. Johnston,* No. 08-14594, 2009 WL 806740 (11th Cir. March 30, 2009), agreed that expert's testimony about appropriate standard of care and her opinion that defendant wrote prescriptions without any legitimate medical purpose were not impermissible legal conclusions;

- *United States v. Long,* 300 Fed. App'x. 804 (11th Cir. 2008), permitted expert's statement describing defendant's financial practices as a "Ponzi scheme;"

- *Amerco, Inc. v. Comm'r*, 96 T.C. 18 (U.S. Tax Court 1991), *aff'd* 979 F.2d 162 (9th Cir. 1992), allowed expert testimony on key issues of insurance regulatory procedure;

- *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830 (1st Cir. 1990), affirmed trial court's decision to allow multiple legal experts to testify about the nuances of insurance law and opine about evidence of proximate cause;

- *United States v. Van Dyke*, 14 F.3d 415 (8th Cir. 1994), found that trial court erred in precluding testimony of expert witness that was author of regulation at issue and an attorney concerning the intent and scope of the regulation as it would be important for jury to understand the regulation;

- *United States v. Riddle,* 103 F.3d 423 (5th Cir. 1997), held that exclusion of expert testimony by law professor was error;

- *United States v. Jensen,* 608 F.2d 1349 (10th Cir. 1979), allowed expert to testify about his interpretation of NASD rules;

- *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998 (9th Cir. 2004), allowed expert to testify that, based on his understanding of the requirements of state law, the defendants departed from insurance industry norms;

- *Frazier v. Cont'l Oil Co.,* 568 F.2d 378 (5th Cir. 1978), ruled expert testimony in personal injury case as to defective design based on industry code was proper;

- *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir. 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983), allowed attorney to testify as to meaning in securities field of boilerplate language in securities fraud case.

While the rules may prevent an expert from testifying as to his opinion regarding the *ultimate legal conclusion*, they do not prevent that expert from stating an opinion on an ultimate issue of fact. *Long¸* 300 Fed. App'x. at 814. *See also United States v. Barile*, 286 F.3d 749, 760-63 (4th Cir. 2002) (To be an improper legal conclusion, the opinion must only reproduce the law with an opinion in one side's favor. In contrast, an expert's factual determinations "give the jury insight into the bases for the expert's conclusion.").

Specifically, Plaintiffs assert that Dr. Crews' report "consists of seventy-two single-spaced pages of legal arguments," but provide no specific references to support their position. Pl. Motion at 1. At most, Plaintiffs argue that (1) Dr.

Crews' qualifications as an expert in copyright law make his testimony "clearly inadmissible," (2) his previous role as a consultant rather than an expert suggests that he should not serve as an expert, and (3) the report's title suggests that all of the opinions are legal advocacy. *Id.* at 11-13.[1] None of those contentions are sufficient to warrant exclusion of the report.

Notably, Plaintiffs' challenge to the expert report omits an important point: that fair use is an affirmative defense which involves ***mixed questions of law and fact.*** *Pac. and S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1495 n.8 (11th Cir. 1984); H.R.Rep. No. 1476, 94th Cong., 2d Sess. 65-66 (1976) ("no generally applicable definition [of fair use] is possible, and each case raising the question must be decided on its own facts"). Even a cursory review reveals that Dr. Crews' report comprises many mixed questions of law and fact, consistent with a fair use analysis.

For example, Part VII of the report details a comprehensive survey of copyright and fair use policies at 37 different colleges and universities. Docket 104, Attach. 1. at 28-44. The diverse schools included in the survey span public

---

[1] Plaintiffs' complaints about Dr. Crews' testimony are focused, in part, on the testimony not being relevant. *See* Pl. Motion at 12 (noting that the summary of copyright policies at various colleges and universities as well as common elements associated with e-reserve policies is "not relevant to Georgia State's practices"). Relevancy, however, is not a factor in determining whether the proposed testimony is improper legal conclusion.

and private, large and small, from east coast to west coast. *Id.* Dr. Crews performed the survey by reviewing each school's publicly available copyright policy. *Id.* at 28. He then divided those policies into three groups: policies that are limited by the percentage of work, policies that are limited by the number of chapters or articles, and policies that are limited by the application of the four fair use factors. *Id.* Each school's policy is then summarized. *Id.* at 29-44. Part VIII further considers each school's policy as it relates to electronic reserves. *Id.* at 45-49. Part IX evaluates the University System of Georgia copyright policy. *Id.* at 50. In particular, Dr. Crews describes the practices and procedures for implementation of the policy by a professor at the university, and how each provision is grounded in the law. *Id.* at 50-67. He explains how the policy's fair use checklist provides a roadmap for a professor to evaluate the four fair use factors in an effort to determine whether the selected course materials qualify as a fair use. *Id.*

Because Dr. Crews' opinions are moored to the facts of this case, they are not inadmissible merely because they include references to law. *See, e.g., Hangarter*, 373 F.3d at 1017 (citation omitted) ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."). The cases cited by Plaintiffs

thus are inapplicable. Each and every one of those cases involved an expert witness (only one of whom was a lawyer) offering testimony which **plainly** constituted a legal conclusion. Indeed, expert testimony to aid the Court in determining satisfaction of the fair use factors is entirely appropriate. *See Suntrust Bank, et al. v. Houghton Mifflin Co.,* 136 F.Supp.2d 1357,1373-74 (N.D. Ga. 2001) (Pannell, J.) (considering testimony from numerous experts on fair use factors including Professor Alan Lelchuk; Professor John E. Sitter; Professor Henry Louis Gates, Jr.; Joel Conarroe; Hope Dellon); *vacated and remanded on other grounds,* 268 F.3d 1257, 1280 (11th Cir. 2001) (noting that all of the expert testimony on the fair use factors was "incomplete").

Finally, in a bench trial, there is little danger that a jury, as finder of fact, might give too much credence to a legal expert. In *Flores v. Arizona*, the Ninth Circuit found no abuse of discretion with regard to the admission of expert testimony on federal educational funding law. 516 F.3d 1140 (9th Cir. 2008). While noting that such testimony is appropriate in complex and technical matters, the court reasoned that the testimony was, in any event, not prejudicial in a "bench trial, where there was no danger that a jury might give too much credence to a legal expert." *Id.* at 1166.

Similarly, no risk of prejudice to Plaintiffs exists here. Dr. Crews' opinions

will not usurp the role of the Court in determining the appropriate legal standards to apply in this matter, nor will they interfere with the Court's role as fact finder. On the contrary, Dr. Crews' opinions will provide an expert evaluation of the University System of Georgia copyright policy and will assist the Court in understanding the history of the development of library reserve systems. The Court can allow the testimony of Dr. Crews and give it the weight it deems appropriate. Dr. Crews' testimony is thus proper under Rules 702 and 704.

## IV. DEFENDANTS DISCLOSED DR. CREWS AND SERVED HIS EXPERT REPORT IN A TIMELY MANNER

Plaintiffs breathlessly exclaim that they have been "sandbagged" with Dr. Crews' report, which they attack as "feverishly prepared" and "prepared and filed in a surreptitious and untimely manner" and "in flagrant violation of Rule 26.2.C." Pl. Motion at 1, 14; Declaration of Laura Gary, dated June 19, 2009, and filed herewith ("Gary Decl."), ¶ 15 and Exh. H. Plaintiffs also accuse Defendants' counsel of engaging in "'hide the ball' gamesmanship" and "ducking [Plaintiffs' counsel's] phone calls" in a "calculated effort to place Plaintiffs in [an] untenable position." Pl. Motion at 3, 16; Gary Decl. ¶ 15 and Exh. H. As Plaintiffs put it, "You've got to be kidding if you think this is an ethical way to practice law." Gary Decl. ¶ 15 and Exh. H.

Contrary to Plaintiffs' hyperbole, Defendants disclosed their intent to rely upon Dr. Crews as an expert witness and served his expert report in a timely manner and in compliance with the Federal Rules of Civil Procedure and the Local Rules. Defendants' conduct in this matter has been entirely aboveboard.

### A. The Close Of Discovery, Including Expert Discovery, Is June 30, 2009

On May 15, 2009, the parties entered into an agreement that states: "For purposes of the Scheduling Order and any applicable Local Rules, the 'close of discovery' shall be June 30, 2009. This date, however, shall not be construed to allow either Party to serve additional discovery requests." Gary Decl. ¶ 10 and Exh. E. The May 15 agreement should be given its plain and ordinary meaning -- that the parties have until June 30, 2009, to conduct all discovery permitted by the Scheduling Order and Local Rules, with the exception of service of additional discovery requests, which is specifically excluded. Plaintiffs designated Dr. Crews and served his report in a timely manner, well in advance of the June 30 date, and Plaintiffs' Motion should therefore be denied.

The purpose of the May 15 agreement was to resolve certain discovery issues between the parties, including the potential confusion that could arise as to which of the two dates in the April 22 Scheduling Order -- May 25, 2009, and June 30, 2009 -- is the "close of discovery." Gary Decl. ¶ 2. The April 22 Scheduling

Order does not reflect any intent by the parties to foreclose their ability to designate expert witnesses because that was, in fact, not intended. Declaration of Anthony B. Askew, dated June 19, 2009, and filed herewith ("Askew Decl."), ¶ 11. To avoid any uncertainty, the May 15 agreement unambiguously confirms that under the April 22 Scheduling Order, discovery remains open -- save for written discovery, which is expressly excluded -- until June 30, 2009.

To argue that discovery closed before June 30, and that Dr. Crews' testimony should be excluded, Plaintiffs now claim that they somehow "understood" the May 15 agreement to mean something other than what it says. Pl. Motion at 4, 5 n.1. Plaintiffs should be bound by the language chosen for the May 15 agreement, which was memorialized only after the parties engaged in detailed discussions and correspondence regarding its terms. Gary Decl. ¶¶ 3-9 and Exhs. B-E. The terms of the parties' agreement should be given their plain and ordinary meaning, and additional terms not contemplated by the parties should not be added. *See Schwartz v. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987).

The crimped interpretation urged by Plaintiffs is that the June 30 date simply clarifies the calculation of post-discovery deadlines. The plain language of the May 15 agreement, however, is not nearly so narrow and is not limited to calculation of later deadlines. The agreement explicitly states that the June 30

close of discovery is of broad applicability: "[f]or purposes of the Scheduling Order and any applicable Local Rules."

More importantly, Plaintiffs proposed a provision in the agreement to state that the June 30 close of discovery "shall not extend the May 25, 2009 deadline for completing discovery." Defendants, however, deleted this provision in future drafts, and it does not appear in the final agreement. Gary Decl. ¶¶ 8, 10 and Exhs. D, E. Defendants explained that the deleted provision could be interpreted to limit discovery in certain respects. In their Motion, Plaintiffs' disingenuously state, "Had Plaintiffs known that Defendants intended to designate an expert witness, they would have objected." Pl. Motion at 5 n.1. In fact, Plaintiffs should have known that the May 15 agreement allowed either party to retain an expert witness, yet they declined to attempt to prohibit such activity through that agreement.

Plaintiffs' efforts to escape the plain meaning of the May 15 agreement also violate basic principles of interpretation. For example, Plaintiffs state that they "did not understand the provision to authorize any additional discovery." Pl. Motion at 5 n.1. If the May 15 agreement did not authorize any additional discovery, then there would be no reason for Plaintiffs to add provisions to the agreement -- as they did -- to single out certain types of discovery for prohibition. For the May 15 agreement to include one thing implies the exclusion of the

alternative.  Because the May 15 agreement specifically prohibits the parties from engaging in certain discovery activities up to June 30 (*i.e.*, written discovery requests), it then follows that other discovery activities, not specifically prohibited (*i.e.*, expert discovery), are permissible during that time.  Plaintiffs should be bound by the terms of the May 15 agreement that set June 30, 2009, as the close of discovery.

### B.     Defendants Have Complied With Local Rule 26.2(C)

While it is true that Local Rule 26.2(C) requires sufficiently early disclosure of expert witnesses, Defendants' disclosure of Dr. Crews satisfies the requirements of this rule.  Defendants fulfilled their obligation to disclose Dr. Crews and the subject matter of his testimony to Plaintiffs on May 19, 2009 -- the very day that it was decided that Defendants would rely on Dr. Crews as a testifying trial expert and six weeks prior to the June 30 close of discovery.[2]   Askew Decl. ¶¶ 5, 6. Defendants believed that Plaintiffs were already familiar with Dr. Crews and his

---

[2] Plaintiffs attempt to make hay of the fact that Defendants, "unbeknownst to Plaintiffs," retained Dr. Crews in April 2009 yet "did nothing to inform Plaintiffs" immediately upon his retention.  Pl. Motion at 4, 14.  Plaintiffs do not -- and cannot -- cite any rule that requires a party to instantaneously disclose the retention of a potential expert.  Rather, Rule 26.2(C) only requires a party to designate an expert once the party determines that it "desires to use the testimony" of that expert.  Although Defendants retained Dr. Crews in April 2009, no determination to use him as a testifying expert for Defendants was made until May 19, 2009, and Defendants designated him as such on the very same day.  Askew Decl. ¶¶ 3-6.

opinions regarding fair use because he is a published author of scholarly works in the field. *Id.* ¶ 6. Even without prior knowledge of Dr. Crews, Plaintiffs had almost a month and a half to research Defendants' expert witness and his work before discovery closed.

Moreover, Defendants served Dr. Crews' report on Plaintiffs as soon as possible on June 1, 2009. *Id.*; Docket 104. Plaintiffs will enjoy a full month between the service of Dr. Crews' report and the close of discovery, which is more than sufficient time for Plaintiffs to attempt to rebut the specific opinions offered by Dr. Crews.

Defendants' designation of Dr. Crews and service of his report well in advance of the close of discovery is consistent with the requirements of Local Rule 26.2(C). The handful of authorities that Plaintiffs cite to suggest that they have somehow been "sandbagged" by Dr. Crews' report are so far removed from the facts of this case as to be inapposite. For example, in several extreme cases cited by Plaintiffs, the court excluded expert testimony offered by parties who designated their witnesses and served their reports ***only after the close of discovery, if at all***. *See Lamar Co., L.L.C. v. City of Marietta*, 538 F. Supp. 2d 1366, 137-80 (N.D. Ga. 2008) (excluding expert testimony from witness not even designated until after close of discovery); *Fedrick v. Mercedes-Benz USA, LLC*,

366 F. Supp. 2d 1190, 1194-95 (N.D. Ga. 2005) (excluding expert testimony from witness not disclosed until five months after court-ordered deadline, two and a half months after close of discovery, and two months after summary judgment motion filed).

The other authorities cited by Plaintiffs are similarly unpersuasive because they involve short time periods, expert report deficiencies, or misreadings of the rules not at issue in this case. *See Carolina Cas. Ins. Co. v. R.L. Brown & Assocs.*, No. 1:04-CV-3537-GET, 2007 WL 174171, at *2-3 (N.D. Ga. Jan. 19, 2007) (excluding expert testimony from three witnesses, none of whom were designated as experts until seventeen days before close of discovery and two of whom never submitted reports); *Nestlehutt v. Am. Indus. Chem. Corp.*, No. 1:03-CV-1054-ODE, 2005 WL 6033021, at *10-11 (N.D. Ga. May 5, 2005) (excluding expert testimony from witness who was not identified and did not deliver report until two weeks before close of discovery); *Gainor v. Douglas County*, 59 F. Supp. 2d 1259, 1296-97 (excluding expert testimony from witness who, though identified in mandatory disclosures, withheld report until less than a month before close of discovery and showed "willful disregard" for rules).

### C. Plaintiffs Have Not Been Prejudiced By Expert Discovery

Finally, Plaintiffs have not shown that they have been prejudiced by the timing of Defendants' designation of Dr. Crews and service of his report. Defendants have already produced documents to Plaintiffs regarding Dr. Crews and have already provided potential dates for his deposition. Gary Decl. ¶¶ 17, 18 and Exh. I. The availability of such discovery illustrates the lack of prejudice to Plaintiffs and weighs against exclusion of Dr. Crews' testimony. *See Hines v. Dean*, No. Civ.A. 1:02-CV3390-MH, 2005 WL 589803, at *3 (N.D. Ga. Mar. 10, 2005) (finding no prejudice in reliance on expert report submitted on the last day of discovery period where witness was made available for deposition after close of discovery); *Suboh v. BellSouth Bus. Sys., Inc.*, No. 1:03-CV-0996-CC-CCH, 2004 WL 5550100, at *13-14 (N.D. Ga. Nov. 17, 2004) (denying motion to strike expert report produced with just two weeks left in discovery where expert was available for deposition).

Finally, although Defendants believe that the present schedule is more than sufficient for Plaintiffs to conduct expert discovery as envisioned by Local Rule 26.2(C), Defendants have repeatedly expressed their willingness to adjust the discovery schedule, should Plaintiffs believe they need additional time to respond

to Dr. Crews' report.[3]  Askew Decl. ¶ 7; Gary Decl. ¶ 14 and Exhs. F, G; Declaration of Stephen M. Schaetzel, dated June 19, 2009, and filed herewith ("Schaetzel Decl.), ¶¶ 2, 4 and Exh. A.  Rather than draw the Court into this matter by filing this Motion, a more appropriate course of conduct would have been simply to address Defendants' offer.[4]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion be denied in its entirety.

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing memorandum has been prepared using 14 point Times New Roman font.

---

[3] Plaintiffs mischaracterize Defendants' good faith offer to adjust the schedule should Plaintiffs see a need to do so as "Defendants' suggestion that Plaintiffs should now agree to a further extension of the discovery period to accommodate Defendants' delay in designating an 'expert'."  Pl. Motion at 16.  In fact, Defendants do not believe that Dr. Crews and his report warrant additional time in discovery and have never sought Plaintiffs' consent to such an extension.

[4] Plaintiffs suggest that Defendants have acted in bad faith by "ducking" phone calls and being otherwise unresponsive.  Pl. Motion at 5; Gary Decl. ¶ 15 and Exh. H.  There is no merit to these accusations, which apparently are based on Plaintiffs' attempts to contact only one of Defendants' counsel, Anthony Askew.  Mr. Askew was out of the office at the relevant times.  Askew Decl. ¶¶ 8, 10.  Other attorneys from King & Spalding LLP responded to Plaintiffs' inquiries in Mr. Askew's stead.  Askew Decl. ¶ 8; Gary Decl. ¶¶ 12, 13 and Exh. G; Schaetzel Decl. ¶¶ 2, 4 and Exh. A.

Respectfully submitted this 19th day of June, 2009.

THURBERT E. BAKER     033887
Attorney General

R. O. LERER     446962
Deputy Attorney General

DENISE E. WHITING-PACK  558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General


*/s/ Katrina M. Quicker*
King & Spalding LLP
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Katrina M. Quicker
Georgia Bar No. 590859
John P. Sheesley
Georgia Bar No. 556914

**Attorneys for Defendants**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al., | |
| Plaintiffs, | Civil Action File No. 1:08-CV-1425-ODE |
| *-vs.-* | |
| MARK P. BECKER, in his official capacity as Georgia State University President, et al., | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 19th day of June, 2009, I have electronically filed the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D. CREWS** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON
& ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Katrina M. Quicker*_____
Katrina M. Quicker
  (Ga. Bar No. 590859)