Cambridge University Press et al v. Patton et al Doc. 112

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

CAMBRIDGE UNIVERSITY PRESS, OXFORD UNIVERSITY PRESS, INC., and SAGE PUBLICATIONS, INC.,

Plaintiffs,

- *v.* -

MARK P. BECKER, in his official capacity as Georgia State University President, et al.,

Defendants.

Civil Action No. 1:08-CV-1425-ODE

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D. CREWS**

670320.1

Dockets.Justia.com

Plaintiffs Cambridge University Press, Oxford University Press, Inc., and Sage Publications, Inc. ("Plaintiffs") file this reply memorandum in further support of their motion to exclude the Expert Report of Kenneth D. Crews, J.D., Ph.D., Dkt. No. 104, Attachment 1 ("Crews Report" or "Report").

## PRELIMINARY STATEMENT

In their motion papers, Plaintiffs demonstrated that the 72-page "expert report" belatedly filed by Defendants on June 1, 2009 should be excluded for two reasons: (1) it is legal advocacy as to an ultimate legal conclusion and therefore is inadmissible under Federal Rule of Evidence 702, which allows expert testimony only to assist the trier of fact to "understand the evidence" or "determine a fact in issue"; and (2) it was not filed until after the Court-ordered May 25, 2009 deadline for all discovery other than depositions and thus clearly was untimely, in violation of Local Rule 26.2(C).

Defendants' opposition brief ("Def. Mem"), far from refuting Plaintiffs' argument, concedes that (i) Rule 702 does not allow expert opinion as to legal conclusions and (ii) the Crews Report offers a legal conclusion as to whether the Georgia State copyright policies at issue, which Dr. Crews had a hand in drafting, comply with copyright law. These concessions should be dispositive of this motion. As to the Report's timeliness, Defendants have no viable argument

that their filing of the Report on June 1, 2009 complied with the April 22 Scheduling Order, under which all discovery other than depositions was to have been completed by May 25, 2009. Their futile attempt to overcome this reality by redefining the applicable discovery deadline as June 30, 2009 is unavailing.

## ARGUMENT

### I. THERE IS NO BASIS FOR ADMITTING EXPERT TESTIMONY THAT CONCEDEDLY OPINES ON AN ULTIMATE LEGAL CONCLUSION

#### A. The Crews Report Is Impermissible Legal Advocacy

Federal Rule of Evidence 702 is clear and specific in defining the universe of admissible expert testimony: it states that if scientific, technical, or other specialized knowledge "will assist the trier of fact" – not the arbiter of the law – to "understand the evidence or to determine a fact in issue," then expert opinion testimony may be admitted. The purpose for which expert testimony may be admitted is to help the trier of fact to understand relevant facts, not to interpret the law and not to apply the law to the facts. Rule 702 also does not authorize an expert to simply put additional facts before the Court.

In their opening memorandum, Plaintiffs cited a wealth of authority for the proposition that proffered "expert" legal opinion as to the correct interpretation of the law or as to the correct application of the law to the facts is

inadmissible under Rule 702 because it does not "assist the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. *See* Plaintiffs' Motion to Exclude the Expert Report of Kenneth D. Crews ("Pl. Mem."), Dkt. No. 106 at 6-10. Plaintiffs then described the Crews Report section by section, (*see* Pl. Mem. at 10-12), and demonstrated that it clearly falls outside the well-recognized parameters of Rule 702. Nothing in Defendants' brief demonstrates otherwise. To the contrary, Defendants effectively concede the argument.

Defendants acknowledge that expert testimony may be admitted if it "will help assist (sic) in the resolution of disputed *fact* issues." Def. Mem. at 3 (emphasis added); *see also id.* at 4 ("[A]n expert witness may testify in the form of an opinion or inference, even if the opinion or inference embraces *an ultimate fact issue*.") (emphasis added). They also acknowledge that the rules "prevent an expert from testifying as to his opinion regarding the *ultimate legal conclusion*," (Def. Mem. at 7) (emphasis in original), as distinguished from "stating an opinion on an ultimate issue of fact," (*id.),* which is permissible. The problem for Defendants is that they admit that Dr. Crews does the former rather than the latter. Specifically, they state: "Dr. Crews offers opinions regarding the complex and unique nature of the affirmative defense of fair use doctrine in copyright law and

the application of that doctrine in educational environments." Def. Mem. at 2. This is precisely why the report must be excluded.[1] As courts have held, this sort of argumentation belongs in a legal brief, not in an expert report. *See, e.g.*, *RLJCS Enters., Inc. v. Prof'l Benefits Trust Multiple Employer Welfare Benefits Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007) (cited in Pl. Mem. at 12-13).[2]

Defendants' concession as to the legal nature of the Crews Report is accurate. As Plaintiffs showed, (*see* Pl. Mem. at 11-12), the Report: (i) announces

---

[1] It is clear that the Crews Report does not meet the standard set forth in *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (en banc) (cited in Def. Mem. at 4-5). Plaintiffs do not concede either Dr. Crews' qualifications and competence to testify as to fair use or the reliability of his methodology – to the contrary, they contend *infra* that both his impartiality as to policies he devised and the utility of his catalogue of other schools' copyright policies are questionable – but those issues need not be addressed because his report so clearly does not satisfy the third prong of the *Frazier* standard, which requires that the proffered testimony will assist the trier of fact "to understand the evidence or to determine a fact in issue." *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1107 n.5 (11th Cir. 2005) (holding that Daubert hearing was not required because the offering party did not meet the third prong of Rule 702 inquiry in that testimony would not be helpful to trier of fact). Should the Court find otherwise as to any portion of the Report, Plaintiffs reserve the right to request a Daubert hearing in accordance with the Federal Rules of Civil Procedure and the applicable local rules.

[2] That this is a bench trial does not weigh in favor of admitting the Crews Report. *See Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358, 360-61 (2008) ("'[E]ach courtroom comes equipped with a legal expert, called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.' This holds just as true when the finder of fact is the court, if not more so; the court is well equipped to instruct itself on the law.") (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.D.C. 1997))).

at the outset that it "will demonstrate that E-Reserves and the law of fair use today are not necessarily the same as they have been in the past" and that "a flexible understanding of fair use better reflects the law and can better serve future needs," (Crews Report at 2); (ii) concludes that the Georgia State copyright policy examined in the report "is consistent with the copyright law of the United States," (*id.* at 68); and (iii) is filled with discussion of fair-use case law, (*see, e.g.*, *id.* at 12-20).

### B. Inclusion of Irrelevant Facts Does Not Change the Inadmissible Nature of the Report

Despite their dispositive concessions as to the legal argument in the Report, Defendants insist that because the Crews Report includes some facts in the midst of its legal discussion, it is admissible. *See* Def. Mem. at 9. They also contend that because fair use is a mixed question of law and fact, (*see id.* at 8), the rule against expert legal opinions does not apply. Neither contention is correct, particularly where, as here, Dr. Crews is opining on the legality of policies he designed.[3]

[3] As Dr. Crews' report and documents produced by Defendants demonstrate (*see* Reply Declaration of Edward B. Krugman, dated June 24, 2009 ("Krugman Reply Decl."), Exs. D, E; Crews Report at 57-58), Dr. Crews and a colleague drafted the fair-use checklist that was adapted, with his assistance, by Georgia State. Dr. Crews is hardly a disinterested expert as to policies he was so closely involved in developing.

First, a legal opinion "moored to the facts of [the] case," (Def. Mem. at 9), is no less impermissible than one unmoored from the facts. *See, e.g., A.E. ex rel. Evans v. Indep. Sch. Dist., No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) ("[A]n expert may not state legal conclusions drawn by applying the law to the facts."). Simply introducing facts into a legal argument does not make the Report as a whole any less improper legal advocacy as to whether the Georgia State policies are lawful. The inclusion of facts in the Crews Report is especially ineffective as a hook for admissibility here because many of the "facts" to which the Crews Report is "moored" relate to undoubtedly cherry-picked copyright policies at other schools that are not even at issue in this action. *See* Def. Mem. at 8-9 (asserting that the report "details a comprehensive survey of copyright and fair use policies at 37 different colleges and universities").

Defendants could attempt to include these other policies – which comprise the only portion of the Report that Defendants specifically defend – in their summary judgment papers. Simply cataloguing them, however, is not the proper role of an expert witness. Moreover, whereas Defendants contend that relevance is not a valid objection to expert testimony, (*see* Def. Mem. at 8 n.1), Rule 702 authorizes expert testimony that will help "determine a fact *in issue*" (emphasis added). *See United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir.

2005) (noting a district court must ensure that all expert testimony is "not only relevant, but reliable"); *Frazier*, 387 F.3d at 1260 (explaining that objective of Daubert gatekeeping requirement is to "ensure the reliability and relevancy of expert testimony"). Because facts as to *other schools'* copyright policies are not at issue here, they are not the proper subject of expert testimony, let alone simple recitation devoid of analysis. *See Logan v. Pennaco Hosiery*, No. 97-60292, 1998 WL 156350, at *4 n.3 (5th Cir. Mar. 23, 1998) (accepting district court's conclusion that report did not constitute expert opinion but rather "a mere recitation of facts of which a lay witness would be capable").

Second, the fact that fair use is a mixed question of law and fact, not a pure question of law, does not render the report potentially admissible under Rule 702; this is a distinction without a difference for purposes of Rule 702. *See Stobie Creek*, 81 Fed. Cl. at 359-60, 363 (excluding expert report on application of defense that presented "mixed questions of law and fact" where report consisted of "lengthy legal analyses of past precedent, complemented by arguments attempting to persuade the court that [offering party satisfied the defense]" and "conclude[d] that [offering party] fulfilled the requirements of the . . . defense")*; see also Omar v. Babcock*, 177 Fed. App'x 59, 63 n.5 (11th Cir. 2006) (noting that expert

testimony in which "the witness simply recounts the facts and then offers an opinion as to the conclusion . . . is not permitted"); Pl. Mem. at 9.

Defendants' own authorities make clear that while a witness "may refer to the law" in expressing an opinion that assists the fact-finder in understanding the evidence or a fact in issue, an expert cannot "give an opinion as to [his] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) (emphasis in original) (cited in Def. Mem. at 7). In fact, *SunTrust*, on which Defendants rely for the proposition that expert testimony on the application of the fair-use factors is proper, *see SunTrust Bank v. Houghton Mifflin Co.*, 136 F. Supp. 2d 1357 (N.D. Ga. 2001), *rev'd on other grounds*, 268 F.3d 1257 (11th Cir. 2001) (cited in Def. Mem. at 10), actually bolsters Plaintiffs' argument as to the limits on the proper scope of expert opinion in this context. In *SunTrust*, the court considered the expert testimony of *English professors*, who opined not on whether the defendants' book was fair use but solely on subsidiary factual issues such as whether attributes of defendant's work were indicative of satire or parody. *See* 136 F. Supp. 2d at 1373-74. Dr. Crews' Report, by contrast, is precisely the type of legal advocacy as to an ultimate legal conclusion that Rule 702 and the cases construing it prohibit.

None of the remaining cases Defendants cite, (*see* Def. Mem. at 6-7), provide a basis for admitting a report that is so blatantly focused on legal advocacy. To the contrary, they reinforce Plaintiffs' argument by delineating the clear divide between admissible expert testimony as to facts and inadmissible testimony as to conclusions of law. To wit:

- In *United States v. Johnston*, No. 08-14594, 2009 WL 806740, at *6 (11th Cir. Mar. 30, 2009), the court stated that experts "may not testify to legal conclusions" and permitted expert testimony on whether prescriptions were written without any medical purpose because "[c]riminal knowledge and intent are issues of fact, not law."

- In *United States v. Long*, 300 Fed. Appx. 804, 814-15 (11th Cir. 2008), the court held that expert testimony about the hallmarks of a Ponzi scheme was admissible because "this statement was a factual, and not a legal, conclusion," whereas the expert's statement that the business was a fraudulent scheme was "an impermissible legal conclusion."

- In *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837-38 (1st Cir. 1990), the court affirmed the admission of testimony by expert-attorneys who offered opinion evidence on proximate cause, which, the court explained, was "a fact question."

- In *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979), the court stated that "an expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence" and permitted expert testimony because it was "with respect to a self-governing rule of a private association, not an unadorned legal conclusion."

- In *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), the court allowed an expert to testify that defendants deviated from insurance industry standards because the expert's "testimony did not

improperly . . . reach[] a legal conclusion that defendants actually acted in bad faith."

- In *Frazier v. Cont'l Oil Co.*, 568 F.2d 378, 383 (5th Cir. 1978), the court permitted an expert, who had designed and overseen construction of approximately 300 gas stations, to testify about industry standards governing service station facilities and whether defendant's venting gasoline storage tanks were consistent with those standards.

- In *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *aff'd in part, rev'd in part*, 459 U.S. 375 (1983), the court permitted an attorney expert witness to testify as to the meaning of boilerplate language in the insurance industry and whether such language was standard because the testimony "had a tendency to make the existence of a fact consequent to the determination of the action more probable or less probable" and "would assist the trier of fact to understand the evidence or determine a fact at issue."

- In *Amerco, Inc. v. Commissioner*, 96 T.C. 18, 31 (U.S. Tax Court 1991), *aff'd*, 979 F.2d 162 (9th Cir. 1992), the court admitted an unchallenged expert report that helped "to describe how [insurance company petitioner] is regulated and the effects of state regulation on the company and . . . its contracts."[4]

## II. THE CREWS REPORT WAS UNTIMELY

Because the Crews Report is so clearly inadmissible on the merits, the Court need not pass on its timeliness to decide this motion. Should it do so,

---

[4] In *United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994), and *United States v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997) (cited in Def. Mem. at 6), the courts held that expert testimony from lawyers should have been allowed solely to rebut improperly admitted lay testimony. In *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008), *cert. granted*, 129 S. Ct. 893 (2009) (cited in Def. Mem. at 10), a class action against the state alleging that English Language Learner programs were not adequately funded, the court, while making an exception, noted the rule that "matters of law are generally inappropriate subjects for expert testimony."

however, it should note that Defendants do not contend that the Crews Report was timely under the operative April 22 Scheduling Order, which should settle the issue. The Order provides that "the Parties shall have until June 30, 2009 to schedule and take depositions. All other discovery must be completed by May 25, 2009." Scheduling Order, Dkt. No. 82. The Crews Report is not a deposition; therefore, its filing on June 1, 2009 was untimely.

Defendants' attempt to avoid this inescapable conclusion centers on their assertion that June 30 was the relevant deadline, but the plain language of the April 22 order, which makes clear the limited scope of post-May 25 discovery, forecloses this argument. Defendants' purported understanding of a never-finalized agreement to further amend the discovery schedule, (*see* Def. Mem. at 13-15), is irrelevant. That agreement never ripened into a joint filing with the Court seeking an extension of the discovery period – precisely because Plaintiffs discovered that Defendants had withheld their intentions with respect to Dr. Crews until *after* they obtained Plaintiffs' sign-off on the agreement and because Defendants subsequently proposed changing the previously negotiated schedule to allow time for discovery related to Dr. Crews' untimely report. *See* Reply

Declaration of Todd D. Larson, dated June 24, 2009 ("Larson Decl."), ¶ 23; Krugman Reply Decl. ¶¶ 8-11.[5]

The Court also should note that Defendants' failure to abide by the discovery schedule was the outcome of what the papers on this motion reveal to be a pattern of less-than-forthcoming conduct with respect to their intended use of Dr. Crews. In short, Defendants clearly sprung the Report on Plaintiffs at the latest possible moment, without prior notification of their intent to use Dr. Crews as an expert and notwithstanding multiple opportunities to afford that notice while potential adjustments to the discovery schedule were being negotiated. Although Dr. Crews was retained by Defendants as early as January 2009, and was actively working on the Report as of April 22, 2009 (*see* Krugman Reply Decl. Ex. D-E; Declaration of Anthony B. Askew, dated June 19, 2009, Dkt. No. 110 #1, ¶ 4), no mention of these facts was made to Plaintiffs even as late as May 15, when counsel

---

[5] Moreover, even if the relevant discovery deadline were June 30 rather than May 25, Defendants have still failed to comply with Local Rule 26.2.C. Contrary to Defendants' contention that "Plaintiffs will enjoy a full month between the service of Dr. Crews' report and the close of discovery," (Def. Mem. at 16) Plaintiffs nevertheless note that as of June 24, 2009, Defendants had yet to search Dr. Crews' files for responsive documents. *See* Larson Decl. ¶ 24. Plaintiffs will not have the opportunity to properly examine Dr. Crews in the next six days, much less retain their own expert, have that expert write a report and allow Defendants to conduct discovery from that expert.

for the parties were negotiating the resolution of a number of discovery issues and their timing implications. *See* Larson Decl. ¶¶ 14-20.

What is more, after Defendants' May 19, 2009 disclosure of their intent to submit the Crews Report, counsel for Defendants repeatedly failed to respond to efforts by Plaintiffs' counsel to discuss the matter and, if necessary, propose convening a conference with the Court to discuss it and avoid any potential prejudice to Plaintiffs. *See* Krugman Reply Decl. ¶¶ 11, 17-19. Defendants' professed willingness to extend the discovery schedule to accommodate a response to the Crews Report has no bearing on whether it is timely under the Court-ordered discovery schedule. *See Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366, 1378, 1380 (N.D. Ga. 2008).

The bottom line is that Defendants' conduct with respect to the Crews Report is precisely what Local Rule 26.2(C) is intended to avert. *See* Local Rule 26.2(C) (expert must be designated "sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so

that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery."); Pl. Mem. at 13-15.[6]

**CONCLUSION**

For the reasons set forth in Plaintiffs' motion papers and above, the Crews Report should be excluded in its entirety.

Respectfully submitted this 24th day of June, 2009.

/s/ Edward B. Krugman
Edward B. Krugman
Georgia Bar No. 429927
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
krugman@bmelaw.com
rains@bmelaw.com

R. Bruce Rich (*pro hac vice*)
Randi Singer (*pro hac vice*)

[6] Without conceding that there is none – under the current discovery schedule there clearly is – Plaintiffs note that a showing of prejudice is not required for the Court to exclude untimely testimony. *See Williams v. Energy Delivery Servs., Inc.*, No. 04-CV-3101-CC, 2005 WL 5976570, at *3 (N.D. Ga. Sept. 6, 2005) ("Local Rule 26.2(C) does not require that Defendants demonstrate prejudice in order to have Mr. Whitlock excluded as an expert witness."); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1195 (N.D. Ga. 2005).

Todd D. Larson (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
r.bruce.rich@weil.com
randi.singer@weil.com
todd.larson@weil.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1. This document was prepared in Times New Roman 14 point font.

/s/ Edward B. Krugman
Edward B. Krugman

670320.1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE EXPERT REPORT OF KENNETH D. CREWS** with the Clerk of Court using the CM/ECF filing system which will automatically send e-mail notification of such filing to the following attorneys of record:

Mary Jo Volkert, Esq.
Assistant S. Attorney General
40 Capitol Square
Atlanta, Georgia 30334

Anthony B. Askew, Esq.
Stephen M. Schaetzel, Esq.
Katrina M. Quicker, Esq.
John P. Sheesley, Esq.
Kristen A. Swift, Esq.
C. Suzanne Johnson, Esq.
Laura E. Gary, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, Georgia 30309

This 24th day of June, 2009.

/s/ Edward B. Krugman
Edward B. Krugman