IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAMBRIDGE UNIVERSITY PRESS, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 1:08-CV-1425-ODE |
| MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*, | § § § | |
| Defendants. | § § § | |

## <u>MEMORANDUM IN SUPPORT OF<br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

| OFFICE OF THE ATTORNEY GENERAL, STATE OF GEORGIA | KING & SPALDING LLP |
|---|---|
| Thurbet E. Baker<br>R. O. Lerer<br>Denise E. Whiting-Pack<br>Mary Jo Volkert | Anthony B. Askew.<br>Stephen M. Schaetzel<br>Katrina M. Quicker<br>Kristen A. Swift |
| 40 Capitol Square, SW<br>Atlanta, Georgia 30334<br>(404) 656-3300 (Telephone)<br>(404) 657-8733 (Facsimile) | 1180 Peachtree Street<br>Atlanta, Georgia 30309<br>(404) 572-4600 (Telephone)<br>(404) 572-5100 (Facsimile) |
| ATTORNEYS FOR DEFENDANTS | |

# TABLE OF CONTENTS

Page

I.  FACTUAL BACKGROUND ....................................................................2
    A.  SAGE Publications.................................................................5
        1.  Summer 2009 Semester .........................................7
        2.  Fall 2009 Semester .................................................7
        3.  Spring 2010 Semester ............................................8
    B.  Cambridge University Press ................................................8
        1.  Summer 2009 Semester .........................................10
        2.  Fall 2009 Semester .................................................11
        3.  Spring 2010 Semester ............................................11
    C.  Oxford University Press .....................................................11
        1.  Summer 2009 Semester .........................................13
        2.  Fall 2009 Semester .................................................13
        3.  Spring 2010 Semester ............................................13

II. LEGAL STANDARD..........................................................................14

III. ARGUMENT ....................................................................................15
    A.  Sovereign Immunity Dictates That Only Acts Under The New Copyright Policy Are Relevant ...........................................15
    B.  The Allegedly Infringed Works .........................................17
        1.  Infringement of SAGE Copyrights .......................21
            (i)  SAGE 1 .......................................................22
            (ii)  SAGE 2 .......................................................22
            (iii)  SAGE 3 .......................................................23
            (iv)  SAGE 4 .......................................................23
        2.  Infringement of Cambridge Copyrights.................23
        3.  Infringement of Oxford Copyrights.......................24
            (i)  Oxford 1 .......................................................25
            (ii)  Oxford 2 .......................................................25
            (iii)  Oxford 3 .......................................................26
            (iv)  Oxford 4 .......................................................26
    C.  Direct Infringement ..........................................................27
    D.  Contributory Infringement ................................................31
    E.  Vicarious Infringement .....................................................37
    F.  Claim for Injunctive Relief ...............................................42

IV. CONCLUSION ...................................................................................................45

ATL_IMANAGE-6736273.4

# TABLE OF AUTHORITIES

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......................................................37, 41

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................13, 38

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................... 38, 40-41

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) .........................................................14

*Blackwell Publishing, Inc. v. Excel Research Group, LLC*,
07-12731, 2009 WL 3287403 (E.D. Mich. Oct. 14, 2009) ...................... Passim

*Burdick v. Koerner*,
988 F. Supp. 1206 (E.D. Wis. 1998) ................................................29

*Burton v. City of Belle Glade*,
178 F.3d 1175 (11th Cir. 1999) ......................................................43

*by*, *Greenberg v. Nat'l Geographic Soc.*,
488 F.3d 1331 (11th Cir. 2007) ......................................................31

*by*, *N.Y. Times Co., Inc. v. Tasini*,
533 U.S. 483, 121 S. Ct. 2381 (2001)..............................................31

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
902 F.2d 829 (11th Cir. 1990) ................................................. 31-32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................13, 39

*Comm. for the First Amendment v. Campbell*,
962 F.2d 1517 (10th Cir. 1992) ......................................................16

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ...................................................................37, 41

*Ex parte Young*,
 209 U.S. 123 (1908)............................................................................................15

*Farnsworth v. Procter & Gamble Co.*,
 758 F.2d 1545 (11th Cir. 1985) .........................................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991)............................................................................................26

*Fisher v. Ciba Specialty Chems. Corp.*,
 238 F.R.D. 273 (S.D. Ala. 2006) .......................................................................19

*Green v. Mansour*,
 474 U.S. 64 (1985)..............................................................................................15

*Greenberg v. Nat'l Geographic Soc.*,
 244 F.3d 1267 (11th Cir. 2001) .........................................................................31

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., LTD.*,
 No. 95C0673, 1996 WL 680243.........................................................................17

*King Records, Inc. v. Bennett*,
 438 F. Supp. 2d 812 (M.D. Tenn. 2006) ...........................................................38

*King v. Kennesaw State Univ.*,
 No. 1:05-CV-3169-TWT, 2007 WL 2713252 (N.D. Ga. Sept. 13, 2007) .........19

*Lifetime Homes, Inc. v. Residential Development Corp.*,
 510 F. Supp. 2d 794 (M.D. Fla. 2007)...................................................... 8, 35-36

*Marcavage v. W. Chester Univ.*,
 No. 06-CV-910, 2007 WL 789430 (E.D. Pa. Mar. 15, 2007) ...........................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)..................................................................................... 13-14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005).................................................................................. Passim

*Microsoft Corp. v. Silver Star Micro, Inc.*,
    No. 1:08-CV-1350-WSD, 2008 U.S. Dist. LEXIS 1526 (N.D. Ga. Jan. 9,
    2008) ................................................................................................32, 37

*Mills v. Green*,
    159 U.S. 651 (1895)............................................................................42

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*,
    No. 3:07-CV-084, 2008 WL 1805439 .................................................14

*Oppenheimer Fund. Inc. v. Sanders*,
    437 U.S. 340 (1978)............................................................................18

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
    469 F. Supp. 2d 1148 (S.D. Fla. 2006) ........................................32, 38

*Payne v. Travenol Labs., Inc.*,
    565 F.2d 895 (5th Cir. 1978) .............................................................43

*Perez v. Miami-Dade County*,
    297 F.3d 1255 (11th Cir. 2002) .........................................................17

*Phipps v. Blakeney*,
    8 F.3d 788 (11th Cir. 1993) ...............................................................17

*Port Terminal & Warehousing Co. v. John S. James Co.*,
    695 F.2d 1328 (11th Cir. 1983) .........................................................18

*Prieto v. Malgor*
    361 F.3d 1313 (11th Cir. 2004) .........................................................18

*Rizzo v. Goode*,
    423 U.S. 362 (1976)............................................................................44

*Schmidt v. Lessard*,
    414 U.S. 473 (1974)............................................................................43

*Stambler v. RSA Sec., Inc.*,
    212 F.R.D. 470 (D. Del. 2003) ..........................................................17

*Students for a Conservative Am. v. Greenwood*,
  378 F.3d 1129 (9th Cir. 2004) .....................................................................15, 28

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) ........................................................... 14-15, 39

*United States v. Koziy*,
  728 F.2d 1314 (11th Cir. 1984) .......................................................................19

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1958)............................................................................... 16-17

STATUTES

17 U.S.C. §§ 101 *et seq.*........................................................................... 1-2

17 U.S.C. § 106..........................................................................................26

17 U.S.C. § 501(a) .....................................................................................26

OTHER AUTHORITIES

2006 and Fall 2007 "Introduction to Community Psychology" ....................6, 22, 25

2009 Semester, Professor Esposito's "Anthropology of Education" .................... 7-8

7 MOORE'S.................................................................................................18

"Action" column .........................................................................................29

Allwright & Bailey, Focus on the Language Classroom (1991) ..............................9

and Fall 2007 "Political Economy of East Asia"......................................................9

Awakening Children's Minds (2001) .....................................................................11

Cox & McCubbins, Legislative Leviathan (1993) ..................................................9

Democracy Without Competition in Japan: Opposition Failure in a One-
  Party Dominant State (2006) ................................................................................8

Dluhy, <u>Changing the System: Political Advocacy for Disadvantaged Groups</u> (1981)................................................................................................5

Eleventh Amendment........................................................... 4-5, 15

Fall 2006 "Baroque Music." ...................................................9

Fall 2007 "Qualitative Methods in Sociology."....................................21

Fall 2007 "The Psychology of Young Children."...................... 12-13, 25

Fall 2007 "Applied Linguistics Practicum"...........................................10

FED. R. CIV. P. 37(c)(1) ...............................................................18

Federal Rule of Civil Procedure 65(d)...................................................43

Rule 37(c)(1) of the Federal Rules of Civil Procedure...........................18

Rule 56(c) of the Federal Rules of Civil Procedure...........................13, 39

MOORE'S FEDERAL PRACTICE ¶ 37.60 (3d ed. 1997 & Supp. 2008).......................18

Professor Belcher's Fall 2007 "Qualitative Methods in Sociology." .......................6

Professor Belcher's Spring 2007 "Qualitative Research" .........................................6

Professor Blumi's Spring 2007 "Survey of World History Since 1500" ...............11

Professor Bunting's "Material Design, Development, and Publication" .................9

Professor Kaufman's "Qualitative Research in Education II" .................................7

Professor Kruger's "Learning and the Learner" .................................................12, 25

Professor Reimann's Fall 2006 "The Political Economy of Japan".........................9

Rule 26(e)(1) .............................................................................16

Rule 56(c).................................................................................13

Skocpol, <u>States and Social Revolutions: A Comparative Analysis of France, Russia and China</u> (1979).....................................................................9

Spring 2008 "American Legislative Process." ........................................................10

<u>The Cambridge Companion to the Organ</u> (1997) ......................................................8

<u>The Cambridge Companion to the Organ</u> (1998) ......................................................8

<u>The Slave Community:  Plantation Life in the Antebellum South</u> (1979) ..............11

van Zoonen, <u>Feminist Media Studies</u> (1994) ............................................................5

<u>White Supremacy:  A Comparative Study in American & South African History</u> (1981) ....................................................................................................11

NOW COME Defendants Mark P. Becker, in his official capacity as Georgia State University President, *et al.* (collectively, "Defendants"), and submit this Memorandum in Support of Defendants' Motion for Summary Judgment. In support of their Motion, Defendants respectfully show the Court as follows:

## I. <u>INTRODUCTION</u>

This is an action for copyright infringement under 17 U.S.C. §§ 101 *et seq.*, in which Cambridge University Press ("Cambridge"), Oxford University Press, Inc. ("Oxford"), and SAGE Publications, Inc. ("SAGE") (collectively, "Plaintiffs") seek a declaration of copyright infringement, permanent injunctive relief, and attorneys' fees and costs from and against Defendants. Plaintiffs are publishers that sell or license various works to college libraries, university libraries, and students throughout the United States. Defendants are university administrators that provide oversight to professors, librarians, and others at Georgia State University ("GSU"), a university member of the Board of Regents of the University System of Georgia ("University System"), that provides educational services to students.

Pursuant thereto, students are provided electronic access to course materials. First, the GSU library facilitates GSU professors in making excerpts of reading materials available to students via GSU's electronic reserve system ("ERes"). Only students who are given a specific password can access the excerpts on ERes.

1

Second, GSU facilitates professors in making course information available via a course management system known as uLearn (also known as Blackboard/WebCT Vista) ("uLearn"), course web pages and faculty web pages. Such electronic course management tools may provide syllabi, reading materials, and other course-related information. Only students who are given a specific password and are registered for an affected course can access course information on uLearn.

Plaintiffs allege in their Complaint that Defendants or individuals in their employ or control are infringing Plaintiffs' copyrights by providing students access to certain copyrighted materials, pursuant to the University System's former guidelines on copyright and fair use, through ERes, uLearn, and course and faculty web pages. In all of the foregoing, Defendants believe and understand that the University System's current policy on copyright and fair use is followed. That policy is grounded upon the statutory doctrine of fair use as set forth in the Copyright Act, 17 U.S.C. §§ 101 *et seq.* or permission granted by the copyright holder.

## I.   <u>FACTUAL BACKGROUND</u>

In their First Amended Complaint filed on December 15, 2008, Plaintiffs accused nineteen individuals (in their official capacities as administrators and policy-makers for GSU and the University System) of direct copyright

infringement (First Claim), contributory copyright infringement (Second Claim), and vicarious copyright infringement (Third Claim) based on the posting of excerpts from copyrighted works by electronic means on the ERes and uLearn systems. *See* Amended Complaint, D.E. 39, ¶¶ 13-16D; 47-62. The nineteen individuals are: Mark P. Becker; Risa Palm; Nancy Seamans; J.L. Albert; Kenneth R. Bernard, Jr.; James A. Bishop; Frederick E. Cooper; Larry R. Ellis; Robert F. Hatcher; Felton Jenkins; W. Mansfield Jennings, Jr.; James R. Jolly; Donald M. Leebern, Jr.; Larry Walker; Williams NeSmith, Jr.; Doreen Stiles Poitevint; Willis J. Potts, Jr.; Wanda Yancey Rodwell; Kessel Stelling, Jr.; Benjamin J. Tarbutton, III; Richard L. Tucker; and Allan Vigil. *Id.* Defendants are ***not*** actively involved in the daily operation of GSU's electronic reserves and course management systems. Their administrative positions do not involve facilitating access to course materials or monitoring faculty requests for providing such access.

The copyrights the Defendants are accused of infringing are described in Exhibit 1 to the Complaint and in Plaintiffs' Response to Interrogatory No. 2:

**Interrogatory No. 2**

Identify each of Plaintiffs' copyrights that you allege GSU has infringed, including, but not limited to, indicating each certificate of registration by registration number for each such copyright.

**Response to Interrogatory No. 2**

3

> … Subject to and without waiving said objections, Plaintiffs refer Defendants to Exhibit 1 to their Complaint of April 15, 2008, which provides the requested information for those infringements Plaintiffs have complained of to date, and to their response to Interrogatory No. 1. Plaintiffs reserve the right to amend their complaint, and their response to this interrogatory, if the discovery process reveals additional works owned or controlled by Plaintiffs that have been distributed to students at GSU without authorization.

*See* Statement of Facts ("SOF") at Ex. D, at No. 2.  With respect to Exhibit 1, because some entries exaggerate the amount of material that was actually posted electronically, Defendants have summarized the entirety of the works from which copying is alleged and the accurate amount of material posted in ***Exhibit A***.

On February 17, 2009, the University System adopted a new copyright policy ("New Copyright Policy") as an update to the former guidelines referenced in Plaintiffs' Complaint.  *See* D.E. 58 at 6; SOF 177.  Although Defendants suggested postponing the litigation to allow the parties to evaluate the impact of the New Copyright Policy, Plaintiffs refused.  *See* D.E. 58 at Ex. C.  On June 19, 2009, the Court issued a Protective Order in accordance with Eleventh Amendment principles of sovereign immunity limiting discovery to "ongoing and continuous activity" under the New Copyright Policy and prohibiting further inquiry into past practices under the former guidelines.  *See* D.E. 111 at 5-6.  In particular, evidence related to practices in existence before the adoption of the New Copyright Policy in February 17, 2009, is only permitted to show: (1) the circumstances surrounding

4

the adoption of the New Copyright Policy, (2) the membership of the committee that adopted the New Copyright Policy, (3) the resources consulted by the committee in adopting the New Copyright Policy, and (4) the differences between the New Copyright Policy and the previous guidelines. *Id.* Three semesters of course offerings, with required and supplemental reading assignments, have occurred since the adoption of the New Copyright Policy: Summer 2009, Fall 2009, and Spring 2010.

Following the University System's adoption of the New Copyright Policy, the amount of Plaintiffs' copyrighted material used by professors at GSU was reduced dramatically.

## A. SAGE Publications

Plaintiff SAGE Publication ("SAGE") accuses Defendants in the Complaint of unlawfully copying from two collective works and two individual works:

(1) Handbook of Qualitative Research, 2nd. ed. (2000) (157 pgs. or 14.7%) (*see* Ex. A at ##1-6 and SOF 1, 5, 9, 13, 17, 21-22) ("SAGE 1");

(2) The SAGE Handbook of Qualitative Research, 3rd. ed. (2005) (152 pgs. or 13.5%) (*see* Ex. A at ##7-14 and SOF 26-27, 31-32, 36-37, 41-42, 46-47, 51-54, 58-59, 63) ("SAGE 2");

(3) Dluhy, Changing the System: Political Advocacy for Disadvantaged Groups (1981) (28 pgs. or 23.9%) (*see* Ex. A at #15 and SOF 67-68, 72-73) ("SAGE 3"); and

(4) van Zoonen, Feminist Media Studies (1994) (55 pgs. or 35.5%) (*see* Ex. A at #16 and SOF 77, 81, 85) ("SAGE 4").

With respect to SAGE 1, SAGE asserts that Professor Belcher's Spring 2007 "Qualitative Research" course materials included copied Chapters 6, 16, 17, 19, 24, and 25. *See* Ex. A at ##1-6; SOF 1, 5, 9, 13, 17, 21. It also alleges that Chapter 25 was copied for Professor Belcher's Fall 2007 "Qualitative Methods in Sociology." *See* Ex. A at #6; SOF 22.

With respect to SAGE 2, SAGE alleges that Professor Kaufman copied Chapters 5, 12, 14, 17, 22, 25, 36, and 38 for various courses offered in Fall 2007 and Spring 2008. *See* Ex. A at ##7-14; SOF 26-27, 31-32, 36-37, 41-42, 46-47, 51-54, 58-59, 63.

With respect to SAGE 3, SAGE alleges that Professor Emshoff copied Chapter 2 for use in the Fall 2006 and Fall 2007 "Introduction to Community Psychology" course. *See* Ex. A at #15; SOF 67-68, 72-73.

With respect to SAGE 4, SAGE alleges that Chapters 2, 3, and 4 were purportedly copied for use in "Women and Media." *See* Ex. A at #16; SOF 77, 81, 85. The professor who taught this course and the semester during which the materials were allegedly copied have never been specified.

With reference to these works, the undisputed evidence shows the following after adoption of the New Copyright Policy.

ATL_IMANAGE-6736273.4

1. *Summer 2009 Semester*

In the Summer 2009 Semester, no material was used from SAGE 1, SAGE 3, and SAGE 4.[1]  *See* SOF 2, 6, 10, 14, 18, 23, 69, 74, 78, 82, 86.  Access was provided to twenty-six pages of SAGE 2 as part of Professor Kaufman's "Qualitative Research in Education II" (EPRS8510) class—about 1%.  *See* SOF 64.

2. Fall 2009 Semester

In the Fall 2009 Semester, no material was used from SAGE 1, SAGE 3, and SAGE 4.  *See* SOF 3, 7, 11, 15, 19, 24, 70, 75, 79, 83, 87.  While access to material from SAGE 2 was provided, the use was reduced by two chapters.  *See* SOF 29, 34, 39, 44, 49, 56, 61, 65.

With respect to SAGE 2, Chapters 12 and 25 were not included in Professor Kaufman's course reading materials.  *See* SOF 34, 56.  The reading materials did include Chapters 5 (pgs. 109-138), 14 (pgs. 357-73), 17 (pgs. 443-65), 22 (pgs. 547-57), 36 (pgs. 915-32), and 38 (pgs. 959-78), for a total of 88 pages from the 1126 pages of SAGE 2 (7.8%).  *See* SOF 29, 39, 44, 49, 61, 65.

---

[1] Defendants acknowledge that in the Summer 2009 Semester, Professor Esposito's "Anthropology of Education" (EPS8280) included thirty-pages from SAGE 1, or about 1%.  *See* SOF, Ex. A, at 316.  SAGE has never asserted Professor Esposito's use violated its copyright.

3. <u>Spring 2010 Semester</u>

In the Spring 2010 Semester, no material was used from SAGE 1 and SAGE 3. *See* SOF 4, 8, 12, 16, 20, 25. While access to material from SAGE 2 was provided by Professor Kaufman, the use was significantly and further reduced—by four chapters. *See* SOF 30, 35, 40, 45, 50, 57, 62, 66. Likewise, SAGE 4 was reduced by one chapter. *See* SOF 80, 84, 88.

With respect to SAGE 2, Chapters 12, 25, 36, and 38 were not included in Professor Kaufman's course reading materials. *See* SOF 35, 57, 62, 66. The course did include Chapters 5, 14, 17, and 22. *See* SOF 30, 40, 45, 50.

With respect to SAGE 4, Chapter 4 was not used; only Chapters 2 (pgs. 11-28) and 3 (pgs. 29-42) were included. *See* SOF 80, 84, 88.

## B. **Cambridge University Press**

Plaintiff Cambridge University Press ("Cambridge") accuses Defendants of unlawfully copying from three collective works and four individual works:

(1) <u>Democracy Without Competition in Japan: Opposition Failure in a One-Party Dominant State</u> (2006) (33 pgs. or 14.2%) (*see* Ex. A at #17; SOF 89-90) ("Cambridge 1");

(2) <u>The Cambridge Companion to the Organ</u> (1998) (32 pgs. or 10.0%) (*see* Ex. A at ##18-19; SOF 94, 98) ("Cambridge 2");

(3) <u>The Cambridge Companion to the Organ</u> (1997) (37 pgs. or 11.0%) (*see* Ex. A at ##20-21; SOF 102, 106) ("Cambridge 3");

ATL_IMANAGE-6736273.4

(4)    <u>Materials Development in Language Teaching</u> (1998) (30 pgs. or 17.6%) (*see* Ex. A at ##22-24; SOF 110, 114, 118) ("Cambridge 4");

(5)    Skocpol, <u>States and Social Revolutions: A Comparative Analysis of France, Russia and China</u> (1979) (106 pgs. or 30.3%) (*see* Ex. A at #25; SOF 122, 126) ("Cambridge 5");

(6)    Allwright & Bailey, <u>Focus on the Language Classroom</u> (1991) (36 pgs. or 16.1%) (*see* Ex. A at #26; SOF 130, 134) ("Cambridge 6"); and

(7)    Cox & McCubbins, <u>Legislative Leviathan</u> (1993) (96 pgs. or 29.3%) (*see* Ex. A at #27; SOF 138, 142, 146) ("Cambridge 7").

With respect to Cambridge 1, Cambridge alleges that Professor Reimann's Fall 2006 "The Political Economy of Japan" and Fall 2007 "Political Economy of East Asia" course reading materials included 33 pages of Chapter 2. *See* Ex. A at #17; SOF 89-90.

With respect to Cambridge 2, Cambridge alleges Professor Orr copied Chapters 14 and 15 for "Baroque Music" offered in Fall 2006. *See* Ex. A at ##18-19; SOF 94, 98.

With respect to Cambridge 3, Cambridge alleges Professor Orr also included Chapters 10-11 for use in Fall 2006 "Baroque Music." *See* Ex. A at ##20-21; SOF 102, 106.

ATL_IMANAGE-6736273.4

With respect to Cambridge 4, Cambridge alleges sixty pages were copied for use in Professor Bunting's "Material Design, Development, and Publication" course in Fall 2007. *See* Ex. A at ##22-24; SOF 110, 114, 118.

With respect to Cambridge 5, Cambridge alleges Chapters 1 and 2 were copied for use in "Comparative Political Analysis" in Fall 2007. *See* Ex. A at #25; SOF 122, 126. The professor who taught the course has never been specified.

With respect to Cambridge 6, Cambridge alleges that four different sections of Fall 2007 "Applied Linguistics Practicum" included 36 pages of Chapters 9 and 10. *See* Ex. A at #26; SOF 130, 134.

With respect to Cambridge 7, Cambridge alleges Professor Lazurus copied three chapters for use in Spring 2008 "American Legislative Process." *See* Ex. A at #27; SOF 138, 142, 146.

1. *Summer 2009 Semester*

In the Summer 2009 Semester, no material was used from Cambridge 1, Cambridge 2, Cambridge 3, Cambridge 4, Cambridge 5, Cambridge 6, and Cambridge 7. *See* SOF 91, 95, 99, 103, 107, 111, 115, 119, 123, 127, 131, 135, 139, 143, 147.

10

2.   *Fall 2009 Semester*

In the Fall 2009 Semester, no material was used from Cambridge 1, Cambridge 2, Cambridge 3, Cambridge 4, Cambridge 5, Cambridge 6, and Cambridge 7.  *See* SOF 92, 96, 100, 104, 108, 112, 116, 120, 124, 128, 132, 136, 140, 144, 148.

3.   *Spring 2010 Semester*

In the Spring 2010 Semester, no material was used from Cambridge 1, Cambridge 2, Cambridge 3, Cambridge 4, Cambridge 5, Cambridge 6, and Cambridge 7.  *See* SOF 93, 97, 101, 105, 109, 113, 117, 121, 125, 129, 133, 137, 141, 145, 149.

## C.   **Oxford University Press**

Plaintiff Oxford University Press ("Oxford") accuses Defendants of unlawfully copying from four individual works:

(1)   White Supremacy:  A Comparative Study in American & South African History (1981) (51 pgs. or 15%) (*see* Ex. A at #28; SOF 150) ("Oxford 1");

(2)   Science of Coercion:  Communication Research & Psychological Warfare 1945-1960 (1994) (28 pgs. or 14.5%) (*see*  Ex. A at #29; SOF 154, 158) ("Oxford 2");

(3)   The Slave Community:  Plantation Life in the Antebellum South (1979) (78 pgs. or 20.4%) (*see*  Ex. A at #30; SOF 162-64, 168-69) ("Oxford 3"); and

(4)   Awakening Children's Minds (2001) (39 pgs. or 13.2%) (*see*  Ex. A at #31; SOF 173) ("Oxford 4").

With respect to Oxford 1, Oxford alleges that Professor Blumi's Spring 2007 "Survey of World History Since 1500" reading course materials included Chapter 1. *See* Ex. A at #28; SOF 150.

With respect to Oxford 2, Oxford alleges that Professor Darsey copied Chapters 1 and 2 for "Theories of Public" offered in Fall 2006. *See* Ex. A at #29; SOF 154, 158.

With respect to Oxford 3, Oxford alleges that Professor Dixon copied Chapter 4 for use in classes offered in Fall 2007 and Spring 2008. *See* Ex. A at #30; SOF 162-64, 168-69. Additionally, Oxford alleges Chapter 7 was copied for a course in Spring 2008. *See* Ex. A at #30; SOF 162-64, 168-69.

With respect to Oxford 4, Oxford alleges that Chapter 6 was copied for use in three different sections of Fall 2007 "The Psychology of Young Children." *See* Ex. A at #31; SOF 173. (The professors(s) who taught the courses have never been specified.)

Once again, a review following adoption of the New Copyright Policy is instructive.

1. *Summer 2009 Semester*

In the Summer 2009 Semester, no material was used from Oxford 1, Oxford 2, and Oxford 3. *See* SOF 151, 155, 159, 165, 170. A small percentage of Oxford 4 was used. *See* SOF 174.

With respect to Oxford 4, 20 pages of Chapter 6 were included in Professor Kruger's "Learning and the Learner" course. *See id.* Oxford 4 has a total of 296 pages (6.76%). *See* Ex. A at #31.

2. *Fall 2009 Semester*

In the Fall 2009 Semester, no material was used from Oxford 1, Oxford 2, or Oxford 4. *See* SOF 152, 156, 160, 175. The use of Oxford 3 was decreased from two chapters to one. *See* SOF 166, 171.

With respect to Oxford 3, Chapter 4 was not used. *See* SOF 166, 171. Chapter 7 was included in Professor Dixon's African-American Family course. *See* SOF 166, 171.

3. *Spring 2010 Semester*

In the Spring 2009 Semester, no material was used from Oxford 1, Oxford 2, or Oxford 4. *See* SOF 153, 157, 161, 176. The use of Oxford 3 was decreased from two chapters to one. *See* SOF 167, 172.

ATL_IMANAGE-6736273.4

With respect to Oxford 3, Chapter 4 was not used. *See* SOF 167, 172.

Chapter 7 was included in Professor Dixon's African-American Family course.

*See* SOF 167, 172.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is presented only when there is "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(c) of the Federal Rules of Civil Procedure does not allow the non-moving party to rely solely on the pleadings or mere arguments of counsel. Rather, Rule 56(c) "requires the nonmoving party to go beyond the pleadings" in order to prove "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The nonmoving party must produce evidence that shows a genuine issue of material fact—and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact. *Id.*

ATL_IMANAGE-6736273.4

## III.   ARGUMENT

This Court should grant summary judgment in favor of Defendants on Plaintiffs' claim of direct infringement, contributory infringement, and vicarious infringement because, as discussed below, it is undisputed that these Defendants have not violated any of Plaintiffs' exclusive rights under the Copyright Act. Courts have been willing to grant summary judgment in copyright infringement cases when it is clear that the moving party is entitled to judgment as a matter of law. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (citing cases).

### A.   Sovereign Immunity Dictates That Only Acts Under The New Copyright Policy Are Relevant

A suit against state officials in their official capacity may only seek prospective equitable relief to end *ongoing and continuous* violations of federal law. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Defendants are arms of the State of Georgia. *See* O.C.G.A. § 20-3-36; *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 3:07-CV-084, 2008 WL 1805439, at * 3 (M.D. Ga. Apr. 18, 2008). Since Defendants are sued in their official capacities, they are entitled to full sovereign immunity under the Eleventh Amendment.

ATL_IMANAGE-6736273.4

Under the doctrine of sovereign immunity, Plaintiffs are only entitled to prospective injunctive relief as to the "ongoing and continuous conduct" of Defendants. *See Ex parte Young*, 209 U.S. 123 (1908). Accordingly, at issue here is whether the "ongoing and continuous" conduct by Defendants under the New Copyright Policy constitutes "systematic infringement" and a violation of federal law. "In other words, a plaintiff **may not use the doctrine to adjudicate the legality of past conduct**." *Summit Med. Assocs., P.C.* 180 F.3d at 1337 (emphasis added). Any award of declaratory relief based on past conduct "would be a partial 'end-run' around" the Eleventh Amendment, since it would have the same effect as an award of money damages. *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

For that reason, only claims regarding Defendants' ongoing and continuous conduct under the New Copyright Policy are appropriate for relief. Plaintiffs' claims regarding the legality of practices and procedures under the former guidelines, which have been superseded and no longer instruct the practices and procedures used by Defendants, are moot. *See, e.g., Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130-31 (9th Cir. 2004) (affirming district court decision that defendant's changes to challenged university election code mooted claims for declaratory and injunctive relief); *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1525-26 (10th Cir. 1992) (upholding

district court's determination that plaintiff's claims for injunctive relief based on University's old policy were rendered moot when the University adopted a new policy concerning prior restraint and content-based discrimination); *Marcavage v. W. Chester Univ.*, No. 06-CV-910, 2007 WL 789430, at \*3-5 (E.D. Pa. Mar. 15, 2007) (concluding that, because a university's new policy on expressive activities on campus was more permissive than original policy, plaintiff's claims for equitable relief based on the old policy were moot).

### B. <u>The Allegedly Infringed Works</u>

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Rule 26(e)(1) requires a party to timely supplement its discovery responses "if the party learns that in some material respect the information disclosed is incomplete or incorrect," presuming that the information has not otherwise been made known to the parties. FED. R. CIV. P. 26(e)(1). The purpose of this requirement is to prevent trial by ambush. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) (holding that the Federal Rules were intended to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.").

17

Courts recognize that "[i]n every trial there comes a time when discovery must be closed for the issues to be resolved through summary judgment and/or trial." *See Stambler v. RSA Sec., Inc.*, 212 F.R.D. 470, 472 (D. Del. 2003). "If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed, the purpose of the Rule is effectively frustrated because the opposing party is denied the opportunity to conduct discovery on the supplemented responses." *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., LTD.*, No. 95C0673, 1996 WL 680243 at *8, 42 U.S.P.Q.2d 1369 (N.D. Ill. Nov. 21, 1996).

As such, district courts are afforded broad discretion and authority in controlling and managing pretrial discovery matters to ensure that cases move to a reasonable, timely, and orderly conclusion. *Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 (11th Cir. 2002); *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Under the Federal Rules, the overall purpose of discovery is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Oppenheimer Fund. Inc. v. Sanders*, 437

U.S. 340, 351 (1978) (discovery "is designed to help define and clarify the issues").

Rule 37(c)(1) of the Federal Rules of Civil Procedure states:

> If a party *fails to provide information* or identify a witness as required by *Rule 26(a) or (e)*, the party is *not allowed to use that information* or witness to supply evidence *on a motion*, at a hearing, or at a trial, *unless* the failure was *substantially justified* or *is harmless*.

FED. R. CIV. P. 37(c)(1) (emphasis added). The burden of establishing substantial justification or harmlessness is on the party who failed to make the required disclosure. *See Prieto v. Malgor* 361 F.3d 1313, 1318 (11th Cir. 2004); 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 37.60 (3d ed. 1997 & Supp. 2008) (citing *Nguyen v. IBP, Inc*., 162 F.R.D. 675, 679-680 (D. Kan. 1995).

"The purpose of this sanction is to provide parties with an incentive to timely disclose all material evidence in support of their positions that they intend to use at any point during the course of the litigation, thus attacking the temptation some parties might feel to try to gain a tactical advantage at trial by exposing for the first time at that stage evidence that is favorable to their position." 7 MOORE'S, at ¶ 37.60 (citing FED. R. CIV. P. 37(c) advisory committee's note (1993)); *see also Port Terminal & Warehousing Co. v. John S. James Co*., 695 F.2d 1328, 1335 (11th Cir. 1983) ("firm deadlines for discovery are more than helpful to the Court

19

in promoting the just and efficient administration of justice, they are essential").  In fact, courts in the Eleventh Circuit have regularly excluded from trials and hearings evidence not disclosed during discovery where the party who failed to disclose cannot satisfy its burden of proving substantial justification or harmless error.  *See, e.g., United States v. Koziy*, 728 F.2d 1314, 1321 (11th Cir. 1984) (affirming exclusion of two witnesses for failure to disclose on witness list, despite having previously deposed them); *King v. Kennesaw State Univ*., No. 1:05-CV-3169-TWT, 2007 WL 2713252, at *9 (N.D. Ga. Sept. 13, 2007) (finding that plaintiff's failure to disclose certain witnesses and other evidence in initial disclosures, responses to document requests, and interrogatories warranted exclusion); *Fisher v. Ciba Specialty Chems. Corp*., 238 F.R.D. 273, 283 (S.D. Ala. 2006) (excluding sampling data at certification phase because late production violated spirit of discovery obligations, needlessly ushered confusion into class certification hearing, and prejudiced company).

Plaintiffs have never specified *any* acts of infringement by Defendants *after* adoption of the New Copyright Policy.  *See* Ex. A (providing summary of Plaintiffs' allegations against Defendants, which only span Fall 2006 to Spring 2008).  Defendants requested an identification of works for which copying is alleged.  Plaintiffs have only described the 31 works encompassed in Exhibit A.

20

Following adoption of the New Copyright Policy, only those described works are at issue. A brief review of those works under the New Copyright Policy is in order.

     1.    *Infringement of SAGE Copyrights*

SAGE alleges that three named professors (Professors Belcher, Kaufman, and Emshoff) and one unnamed professor copied portions of four of its copyrighted works (SAGE 1, SAGE 2, SAGE 3, and SAGE 4) at various times during Fall 2006 until Spring 2008. *See* Ex. A at ##1-16. As shown, SAGE 1 and SAGE 3 are no longer used; only SAGE 2 and SAGE 4 have been used since the adoption of the New Copyright Policy. *See* SOF 1-88.

Notably, the amount of material used from SAGE 2 and SAGE 4 has also been reduced since the New Copyright Policy was implemented. For instance, before the adoption of the New Copyright Policy, Professor Kaufman provided access to eight chapters of SAGE 2. *See* Ex. A at ##7-14; SOF 26-27, 31-32, 36-37, 41-42, 46-47, 51-54, 58-59, 63. After adoption, Professor Kaufman provided access to only five chapters in Fall 2009 (Chapters 14, 17, 22, 36, and 38) and four chapters in Spring 2010 (Chapters 5, 14, 17, and 22). *See* SOF 29, 34, 39, 44, 49, 56, 61, 65; SOF 30, 35, 40, 45, 50, 57, 62, 66. Similarly, before the adoption of the New Copyright Policy, three chapters of SAGE 4 were used. *See* Ex. A at #16;

SOF 77, 81, 85. In Spring 2010, access was provided to only two chapters (Chapters 3 and 4). *See* SOF 80, 84, 88.

(i)    <u>SAGE 1</u>

As alleged by Plaintiffs, Professor Belcher provided access to 157 pages of SAGE 1's 1065 pages for her course "Qualitative Research" in Spring 2007, *see* Ex. A at ##1-6, and 30 pages of SAGE 1 in materials for her Fall 2007 "Qualitative Methods in Sociology." *See id.* at #6; SOF 1, 5, 9, 13, 17, 21-22. Professor Belcher, however, did not include any pages from SAGE 1 in either course taught in Summer 2009, Fall 2009, or Spring 2010. *See* SOF 2-4, 6-8, 10-12, 14-16, 18-20, 23-25. Defendants are thus entitled to judgment as a matter of law of no ongoing and continuous copying of SAGE 1.

(ii)    <u>SAGE 2</u>

Professor Kaufman allegedly copied eight chapters—5, 12, 14, 17, 22, 25, 36, and 38—for various courses offered in Fall 2007 and Spring 2008. *See* Ex. A at ##7-14; SOF 26-27, 31-32, 36-37, 41-42, 46-47, 51-54, 58-59, 63. In Summer 2009, twenty-five pages of a previous edition of SAGE 2 were used by Professor Kaufman. *See* SOF 64. In Fall 2009, only six of the eight chapters were used: Chapters 5, 14, 17, 22, 36, and 38, which amounted to 88 pages of the 1126 page book. *See* SOF 29, 39, 44, 49, 61, 65. Then in Spring 2010, Professor Kaufman

22

again narrowed the works copied, and included only four: Chapters 5, 14, 17, and 22, totaling 81 pages. *See* SOF 30, 40, 45, 50.

(iii) <u>SAGE 3</u>

SAGE claims that Professor Emshoff copied Chapter 2 for use in the Fall 2006 and Fall 2007 "Introduction to Community Psychology" course. *See* Ex. A at #15; SOF 67-68, 72-73. Professor Emschoff, however, did not include any pages from SAGE 3 in any course taught in Summer 2009, Fall 2009, or Spring 2010. *See* SOF 69-71, 74-76. Defendants are therefore entitled to judgment as a matter of law of no ongoing and continuous copying of SAGE 3.

(iv) <u>SAGE 4</u>

For the "Women and Media" course offered before the adoption of the New Copyright Policy, three chapters of SAGE 4 were used: Chapters 2, 3, and 4. *See* Ex. A at #16; SOF 77, 81, 85. Although SAGE 4 was never used in Summer 2009 or Fall 2009, in Spring 2010, only Chapters 2 (pgs. 11-28) and 3 (pgs. 29-42) were included. *See* SOF 78-80, 82-84, 86-88.

2. *Infringement of Cambridge Copyrights*

Cambridge asserts that four named professors (Professors Reimann, Orr, Bunting, and Lazarus) and two unnamed professor copied portions of seven of its copyrighted works (Cambridge 1, Cambridge 2, Cambridge 3, Cambridge 4,

Cambridge 5, Cambridge 6, and Cambridge 7) at various times during Fall 2006 until Spring 2008.  *See* Ex. A at ##17-27; SOF 89-90, 94, 98, 102, 106, 110, 114, 118, 122, 126, 130, 134, 138, 142, 146.  None of the Cambridge works Plaintiffs accuse Defendants of copying have been used since the adoption of the New Copyright Policy.  *See* SOF 91-93, 95-97, 99-101, 103-105, 107-109, 111-113, 115-117, 119-121, 123-125, 127-129, 131-133, 135-137, 139-141, 143-145, 147-149.  Because Cambridge's infringement claims are dependent upon the copying of Cambridge 1-7, Defendants are entitled to judgment as a matter of law of no ongoing and continuous infringement of Cambridge's copyrights.

### 3. *Infringement of Oxford Copyrights*

Oxford alleges that three named professors (Blumi, Darsey, and  Dixon) and one unnamed professor copied portions of four of its copyrighted works (Oxford 1, Oxford 2, Oxford 3, and Oxford 4) at various times from Fall 2006 until Spring 2008.  *See* Ex. A at ##28-31; SOF 150, 154, 158, 162-164, 168-169.  As described below, Oxford 1 and Oxford 2 are no longer used.  *See* SOF 151-153, 155-157, 159-161.  Only Oxford 3 and Oxford 4 have been used since the adoption of the New Copyright Policy.  *See*  SOF 165-167, 170-172, 174-176.

Like SAGE, the amount of use of Oxford 3 and Oxford 4 has been reduced since the New Copyright Policy was implemented.  *See id.*  For instance, before the

adoption of the New Copyright Policy, Professor Dixon used two chapters of Oxford 3. *See* Ex. A at #30; SOF 162-164, 168-169. After the adoption, Professor Dixon only used one. *See* SOF 165-167, 170-172. With respect to Oxford 4, before and for the Summer and Fall 2009 Semesters, one chapter was used. *See* Ex. A at #31; SOF 173-175. Yet in Spring 2010, no pages were used. *See* SOF 176.

(i)     Oxford 1

As described by Plaintiffs, Professor Blumi included 51 pages of Oxford 1's 339 pages for his course "Survey of World History" in Spring 2007. *See* Ex. A at #28; SOF 150. Professor Blumi, however, did not include any pages from Oxford 1 in any course taught in Summer 2009, Fall 2009, or Spring 2010. *See* SOF 151-153. In light of the undisputed record evidence and the applicable law, Oxford cannot demonstrate, as a matter of law, that it can prevail on any of its claims of ongoing and continuous copying of Oxford 1. Judgment in Defendants' favor should therefore be granted with respect to Oxford 1.

(ii)    Oxford 2

Professor Darsey allegedly copied Chapters 1 and 2 of Oxford 2 for "Theories of Public" offered in Fall 2006. *See* Ex. A at ##29; SOF 154, 158. Professor Darsey, however, did not include any pages from Oxford 2 in any course

taught in Summer 2009, Fall 2009, or Spring 2010. *See* SOF 155-157, 159-161.

Judgment in Defendants' favor is therefore appropriate with respect to Oxford 2

since Oxford cannot demonstrate any ongoing and continuous copying of Oxford

2.

### (iii)    Oxford 3

Oxford claims that Professor Dixon taught "African-American Male/Female

Relationships" in Fall 2007 and Spring 2008 and "African-American Family" in

Spring 2008. *See* Ex. A at #30; SOF 162-164, 168-169.  With respect to Oxford 3,

Professor Dixon provided access to Chapter 4 (pgs. 149-191) in the Fall 2007 and

Spring 2008 and Chapter 7 (pgs. 249-283) in Spring 2008. *See id*.  After the

adoption of the New Copyright Policy, Professor Dixon decreased the use from

two chapters to only one:  Chapter 7.  *See* SOF 165-167, 170-172.

### (iv)    Oxford 4

Chapter 6 of Oxford 4 was used in three different sections of Fall 2007 "The

Psychology of Young Children." *See* Ex. A at #31; SOF 173.  Twenty pages of

Chapter 6 were included in Professor Kruger's "Learning and the Learner" course

taught in the Summer 2009 and Fall 2009. *See* SOF 174-175.  Yet in Spring 2010,

none of Oxford 4's 296 pages have been used. *See* SOF 176.  Thus Oxford is

unable to demonstrate any ongoing and continuous copying of Oxford 4 and Defendants are therefore entitled to judgment in their favor as to Oxford 4.

## C. Direct Infringement

As described above, only SAGE 2 (used by Professor Kaufman), SAGE 4 (unknown user), Oxford 3 (used by Professor Dixon), and Oxford 4 (used by Professor Kruger) are at issue. With respect to those works (or any of the other works as originally alleged), Plaintiffs have not and cannot show that Defendants themselves have directly infringed Plaintiffs' exclusive purported copyright because Defendants themselves have not reproduced, distributed or used the copyrighted works-at-issue.

To prevail on their claim for direct copyright infringement, Plaintiffs must prove (1) ownership of the copyrights at issue[2] and (2) that Defendants, without authorization, reproduced, distributed or otherwise used the copyrighted works in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also* 17 U.S.C. § 501(a) (explaining that infringement occurs when alleged infringer engages in any activity listed in § 106).

---

[2] For purposes of this motion alone, Defendants do not dispute Plaintiffs' ownership of valid copyrights in the works-at-issue in this case. Defendants reserve the right to challenge ownership at trial.

ATL_IMANAGE-6736273.4

Plaintiffs cannot point to any evidence that shows these Defendants—that is the President, Provost, University Dean of Libraries, Associate Provost, the members of the Board of Regents, and the Chair of the Board of Regents—actually reproduced, distributed, or used the works-at-issue for which Plaintiffs hold the copyrights.  There is no evidence:

- *that these Defendants* ever made copies of any copyrighted works;
- *that these Defendants* ever distributed any copyrighted works;
- *that these Defendants* ever improperly used any copyrighted works;
- *what* works these Defendants allegedly copied;
- *what* works these Defendants allegedly distributed;
- *what* works these Defendants allegedly used;
- *where* these Defendants made the alleged copies;
- *where* these Defendants distributed the alleged copies;
- *where* these Defendants used the alleged copies;
- *how* these Defendants allegedly made the copies;
- *how* these Defendants allegedly distributed the copies;
- *how* these Defendants allegedly used the copies;
- *when* these Defendants allegedly made the copies;[3]
- *when* these Defendants allegedly distributed the copies; and
- *when* these Defendants allegedly used the copies.

---

[3] To the extent Plaintiffs' allegations of direct infringement by these Defendants extend to these Defendants' activities prior to February 17, 2009, their claim necessarily fails because of this Court's June 19, 2009 Order granting Defendants' Motion for Protective Order.  *See* D.E. 111.

ATL_IMANAGE-6736273.4

*See* SOF 178-192.  Indeed, the asserted reproduction, distribution, or improper use was never performed by any of the Defendants.  *See id.*  Rather, any alleged unlawful reproduction, distribution, or improper use was actually done by instructors, professors, students, or library employees.  *See* SOF 193-204.

For example, the parties stipulated that "[*i*]*nstructors* at GSU may post Electronic Course Materials on the uLearn system," and "[a]s part of the process of posting Electronic Course Materials to uLearn, *professors* at GSU or their authorized representatives save copies of such materials to their computers to facilitate the upload of these files to the uLearn system."  *See* D.E. 118, Jt. Notice of Filing Stip., Ex. A at 10, Nos. 28-29 (emphasis added).  Defendants admitted that "the GSU library makes the ERes system available for *faculty* to place excerpts of course material that satisfy a fair use analysis in accordance with the USG Policy on Copyright in Education and Research."  *See* SOF, Ex. F at Nos. 5, 24, 41, attached hereto as Ex. G (emphasis added).  As for the actual posting of such material, employees of GSU's library post and save any material made available via ERes.  *See* D.E. 118, Jt. Notice of Filing Stip., Ex. A at 5-6, Nos. 1-2.

Very simply, Defendants cannot be held liable for direct copyright infringement because no Defendant performed any act of alleged unlawful copying.  *See* SOF 178-192.  Defendants are entitled to summary judgment that no

named Defendant performed any act of direct copyright infringement. *See*

*Burdick v. Koerner*, 988 F. Supp. 1206, 1209 (E.D. Wis. 1998).

Undoubtedly, Plaintiffs will cite to *Blackwell Publishing, Inc. v. Excel*

*Research Group, LLC*, 07-12731, 2009 WL 3287403 (E.D. Mich. Oct. 14, 2009),

in an effort to support their allegations of liability for direct infringement by the

Defendants. That case, however, is neither controlling nor analogous. The case

clearly involved a commercial photocopying company that provided coursepacks

for University of Michigan students consisting of portions of copyrighted works

reproduced without obtaining the necessary permissions. *See id.* at *1-2.

Specifically, a professor brought to the copyshop photocopies of the contents of the

coursepack—which then became the master copy. *See id.* The copyshop then

directed students to make a photocopy of the master copy and the copyshop would

then bind the photocopying into a coursepack. *See id.* Importantly, the copyshop

activity was a commercial enterprise that generated revenue from the improper

copying. *See id.*

In granting summary judgment to a group of publishers, the court relied on

the Sixth Circuit's 1996 ruling in a similar case involving a commercial

copyshop's sales of course-packs to students at the University of Michigan. *See id.*

It found that the fact that the students pushed a button on a copier at the direction

of the copyshop was of no significance because the photocopying company was using those customers as proxies to reproduce the publishers' materials on *a commercial basis*. *See id.* The copyshop also admitted that, by not paying the copyright fees to publishers, it was able to charge the students a lower fee than if the students had tried to copy the materials at a permission-obtaining copyshop or on campus. *See id.*

## D. Contributory Infringement

The Copyright Act does not specifically provide for secondary liability, but contributory copyright infringement is an established principle derived from common law. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005). "[T]he well-settled test for a contributory infringer [is] 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (internal quotation marks omitted) (citing, *inter alia*, *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)); *see also Greenberg v. Nat'l Geographic Soc.*, 244 F.3d 1267, 1271 n.6 (11th Cir. 2001), *abrogated on other grounds by*, *N.Y. Times Co., Inc. v. Tasini*,

31

533 U.S. 483, 121 S. Ct. 2381 (2001), *as recognized by*, *Greenberg v. Nat'l Geographic Soc.*, 488 F.3d 1331 (11th Cir. 2007). Contributory infringement must follow a finding of direct or primary infringement. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 846 (11th Cir. 1990); *see also Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1179 (S.D. Fla. 2006) ("Because there is no direct infringement, there can be no contributory or vicarious infringement as a matter of law."). "[T]he standard of knowledge is objective: Know, or have reason to know." *Cable/Home Commc'n Corp.*, 902 F.2d at 845 (internal quotation marks omitted); *see also Microsoft Corp. v. Silver Star Micro, Inc.*, No. 1:08-CV-1350-WSD, 2008 U.S. Dist. LEXIS 1526 (N.D. Ga. Jan. 9, 2008).

Plaintiffs have failed to produce any evidence on the basis of which a finder of fact could conclude that Defendants have ***induced, caused, or materially contributed to*** the direct infringement alleged in this case. *See* SOF 205. To the contrary, all of the evidence in this case points to Defendants' efforts to ***discourage and prevent*** copyright infringement by users of its electronic course reserves systems. *See* SOF 206-207. As a result, summary judgment in favor of Defendants on Plaintiffs' Second Claim is warranted.

Defendants' provision of the uLearn and ERes systems through which the alleged infringement purportedly took place alone is not enough to establish contributory liability. Liability for contributory copyright infringement may not be imposed by presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005). Liability is limited "to instances of more acute fault." *Id.* at 932-33. The Supreme Court has held that "one who distributes a device ***with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement***, is liable for the resulting acts of infringement by third parties." *Id.* at 919 (emphasis added). Here, as opposed to "fostering" or "promoting," *see id.*, use of Defendants' electronic reserves systems for copyright infringement, Defendants have undertaken numerous efforts to ensure that their electronic systems are ***not*** used for infringing purposes, including: empanelling a committee of stakeholders and experts to develop an updated, comprehensive, and legally-effective copyright policy, *see generally* SOF, Ex. E; D.E. 104-2; SOF 215 (adoption of the New Copyright Policy, education of professors regarding the New Copyright Policy and copyrights in general, and empowerment of library staff to review and, when necessary, reject professors' submissions to the electronic

ATL_IMANAGE-6736273.4

reserves systems. These efforts are in stark contrast to the acts courts have found that demonstrate an unlawful objective of promoting and profiting from copyright infringement.

For example, in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), the distributor of file sharing software (Grokster) was found to have contributorily infringed not purely because it distributed software used for an infringing purpose, but because it had promoted unlawful use of the software by targeting its advertisements to users who were known infringers (demonstrating an intent to infringe), and it had failed to develop tools or mechanisms that could reduce infringing use. 545 U.S. at 939-40.

Unlike Grokster, Defendants have gone to great lengths to discourage use of their electronic systems for infringing purposes. They have created a comprehensive copyright policy, have educated faculty regarding that policy, and have established support systems whereby users can seek legal counsel. SOF 216. The New Copyright Policy makes instructors "responsible for evaluating, on a case-by-case basis, whether the use of a copyrighted work on electronic reserves requires permission or qualifies as a fair use." SOF, Ex. E at 8; s*ee also* D.E. 104-2 at 54. The policy also requires that if an instructor is "relying upon the fair use exception, [the instructor] must complete a copy of the fair use checklist before

34

submitting material for electronic reserves." SOF, Ex. E at 9, 4-8; *see also* D.E. 104-2 at 55. Library staff are empowered to examine requests that appear to be beyond fair use, and since the New Copyright Policy was adopted, library staff have rejected at least one request to copy material. SOF 217. Thus, while Defendants have, like Grokster, provided alleged infringers with a forum through and with which they may infringe, unlike Grokster, Defendants do not induce, cause, or encourage the alleged infringers to infringe. *See Grokster*, 545 U.S. at 937-40. Instead, Defendants have developed "tools or other mechanisms to diminish the infringing activity using their software." *See id.* at 939.

Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794 (M.D. Fla. 2007), also is instructive. In *Lifetime Homes*, the court held that defendants that sold land to a builder who built infringing homes on the land were not contributorily liable. 510 F. Supp. 2d at 808-09. The Plaintiff alleged that the sellers of the land were liable for contributory infringement because they provided the infringer with (in the court's words) "a *forum* in which [the infringer] engages in infringing construction." *Id.* at 808 (emphasis added). The court indicated that without more than "buying and selling land" to the copyright infringer, the sellers could not be held accountable for the infringement. *Id.* at 808-09. Even if the sellers knew of the infringing activity, merely selling the land did not evidence that

the sellers had "induced, caused or materially contributed to" construction of the allegedly infringing homes. *Id.* at 809. The court indicated that without evidence that the defendants "only sold land to [the infringer] for construction of the allegedly infringing design" or that the sale of the land was more than a "passive land deal[] completed prior to the construction of homes on the land," the contributory infringement claim failed. *Id.*

Like the land sold to the infringing home builder in *Lifetime Homes*, the ERes and uLearn systems merely provide the "forum" wherein the allegedly infringing activity took place. GSU has provided these systems "to assure that students and teachers will have timely access to course-related library resources." (Ex. C at 9; D.E. 104-2 at 54 (quoting New Copyright Policy "Additional Guidelines for Electronic Reserves").) There is no evidence that creation of the forum itself ever was intended to facilitate copyright infringement. *Cf. Lifetime Homes*, 510 F. Supp. 2d at 809 (finding it significant that there was no evidence the defendants sold the forum to infringe "only . . . for construction of the allegedly infringing design"). "Without more" than providing this forum, there is no authority to support holding Defendants accountable for the alleged infringement. *See Lifetime Homes*, 510 F. Supp. 2d at 809.

ATL_IMANAGE-6736273.4

Because Plaintiffs have produced no evidence indicating that Defendants induce, cause, or materially contribute to direct infringement of their copyrights, and because Defendants have amply demonstrated that they in fact actively advocate for the protection of copyrights and have instituted numerous mechanisms to discourage and prevent use of their electronic reserves systems for infringing purposes, summary judgment in favor of Defendants on Plaintiffs' claim for contributory infringement is warranted.

### E. Vicarious Infringement

To prevail on their claim of vicarious liability for copyright infringement, D.E. 39 ¶¶ 58-62, Plaintiffs must show that Defendants "profit[ed] directly from the infringement and [had] a right and ability to supervise the direct infringer." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005); *see also Microsoft Corp. v. Silver Star Micro, Inc.*, No. 06-1350, 2008 U.S. Dist. LEXIS 1526, at *23 (N.D. Ga. Jan. 9, 2008) (citing standard from *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*). Plaintiffs cannot make this showing. Summary judgment on Plaintiffs' vicarious liability claim is appropriate because Plaintiffs have not and cannot establish the required second element of a vicarious liability claim—profit from the infringing activities.

In order to determine if the defendant profited, the relevant inquiry is "whether the infringing activity constitutes a draw for subscribers," not whether the infringing activity is "just an added benefit." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). In *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), for example, the court explained that there was ample evidence that the infringing party's "future revenue is directly dependent upon increases in userbase" caused by the infringing activity. Similarly, courts have found that an alleged infringer obtains a direct financial benefit from the infringement where the defendants' revenue increase depends on the users' volume of downloads of the infringing material, *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156-57 (S.D.N.Y. 2009), and where the defendant retains profits from the infringing activity, *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006). Evidence of defendants' likelihood to profit from the allegedly infringing conduct also has been found sufficient to survive summary judgment where, for example, the defendant admitted in an earlier pleading that he had a "substantial financial interest . . . in the profit and success" of the allegedly infringing conduct, and the defendant was the owner of corporate entities that "stand[ ] to profit" from the allegedly infringing conduct. *Oravec v. Sunny Isles Luxary Ventures L.C.*, 469 F. Supp. 2d 1148, 1173 (S.D. Fla. 2006).

ATL_IMANAGE-6736273.4

Here, Plaintiffs have failed to present any "evidence on which the jury could reasonably find" that Defendants have profited from use of the allegedly infringing works.[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Instead, Plaintiffs' Complaint makes only the broad and unsupported allegation that Defendants are "profiting by [the alleged] infringement." *See* Compl., D.E. 39 ¶ 59. Rule 56(c) of the Federal Rules of Civil Procedure, however, does not allow the non-moving party to rely solely on the pleadings or mere arguments of counsel. Rather, it "requires the nonmoving party to go beyond the pleadings" in order to prove "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Here, Plaintiffs have offered no such specific facts, despite the parties' extensive discovery. More particularly, Plaintiffs have presented ***no*** evidence that demonstrates Defendants' profit from use of the allegedly infringing works. *See* SOF 208. Nothing in Plaintiff's initial disclosures evidences Defendants' profit. Nor did Plaintiffs identify any profit in their

---

[4] Because Plaintiffs' requested relief is prospective, only evidence of profits obtained after the adoption of the New Copyright Policy is relevant. *See* Protective Or., D.E. 111 at 5-6 (limiting admissibility of evidence of events prior to adoption of the New Copyright Policy to specified purposes, not including to demonstrate profit with regard to vicarious liability); *see also Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (indicating a suit against state officials in their official capacity may seek only prospective equitable relief to end ongoing and continuous violations of federal law).

ATL_IMANAGE-6736273.4

responses to Defendants' interrogatories, *see generally* SOF, Ex. D, or in their responses to Defendants' expert report.

In contrast, Defendants have made clear that they do not profit from use of the allegedly infringing materials. Defendants do not charge for use of the ERes or uLearn systems. *See* SOF 209. Thus, there is no profit from students' use of the system on which the allegedly infringing materials are posted or through which they are accessed. *Cf. Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156-57 (S.D.N.Y. 2009) (stating that profit is established if the defendants' revenue increase depends on users' volume of downloads of the infringing material). In addition, Defendants have no budget dedicated to paying permissions fees for materials on electronic systems, and they have no system to recoup any costs for buying such permissions from students. *See* SOF 210-211. Rather, Defendants have presented unrefuted evidence that faculty members would decline to use works like those at issue if there was an obligation to pay permission fees. *See* SOF 212. If faculty members chose to pay permission fees, those fees would have to come from the professors' or students' pockets rather than Defendants' since there is no budget at GSU from which to draw such fees. *See id.* Thus, Defendants cannot "profit" either directly or indirectly from use of works on ERes

and uLearn because there are no fees earned by such use and there are no fees retained that would otherwise would be spent on permissions. *See* SOF 208-212.

Furthermore, Defendants' expert Dr. Kenneth Crews made clear in his expert report that "E-Reserves are for nonprofit purposes, and the library will not charge any fees that could possibly diminish the strength of the nonprofit purpose." (D.E. 104-2 at 57 (quoting the new copyright policy as stating: "Institutions at the University of Georgia System will impose no charge to students for access to materials on electronic reserves."); *see also* SOF, Ex. E at 8.) This point stands unrefuted.

Finally, there is an absence of evidence indicating that students are "drawn" to attend GSU because of the availability of the allegedly infringing works on the ERes and uLearn systems, *cf. Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (indicating financial benefit is incurred when the infringing activity constitutes a draw for paying customers); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (same), and Plaintiffs have not presented any such evidence. *See* SOF 213-214. At most, availability of the allegedly infringing works on the ERes and uLearn systems is "just an added benefit" that in no way creates a "profit" to support a vicarious infringement claim. *Cf. Ellison*, 357 F.3d at 1079 (indicating that where the infringing activity is "just an added benefit" but

41

does not draw paying subscribers, profit is not established). There is no evidence that GSU attracts students or retains students because of the availability of infringing works on the ERes and uLearn systems. *See* SOF 213-214. In addition, unlike the defendants in the *Arista Records* and *Napster* cases cited above, Defendants are not paid purely for the purpose of allowing the download of the allegedly infringing material. Defendants are part of an educational system for providing an education in an educational environment and for conferring degrees. Accordingly, no jury could reasonably conclude that GSU received a direct financial benefit from providing access to the allegedly infringing material.

Because Plaintiffs have presented no evidence that establishes that Defendants have profited from the alleged infringement—and Defendants have presented ample evidence that they do not profit—the Court should grant Defendants summary judgment on Plaintiffs' Claim Three regarding vicarious liability.

## F.  Claim for Injunctive Relief

This Court is without jurisdiction to hear Plaintiffs' claims for injunctive relief. The United States Supreme Court has stated:

> The duty of this Court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or

> abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

*Mills v. Green*, 159 U.S. 651, 653 (1895). Because Plaintiffs' request for injunctive relief is not sufficiently specific to warrant relief, their request should be denied.

The Supreme Court has interpreted Federal Rule of Civil Procedure 65(d) to require that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained." *Schmidt v. Lessard*, 414 U.S. 473, 475 (1974). The Court further noted that, "[t]he Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id*. at 476.

Here, as in *Schmidt*, Plaintiffs seek injunctive relief that fails to establish the precise actions that must be undertaken by the State to avoid a violation of such an order. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-1201 (11th Cir. 1999) ("[A]n injunction must contain an operative command capable of enforcement." (citations omitted)). Injunctions that do nothing more than instruct the defendant to "obey the law" are improper as the Court is incapable of enforcing

43

so broad and vague an injunction. *Payne v. Travenol Labs., Inc*., 565 F.2d 895, 898 (5th Cir. 1978).

Plaintiffs fail to identify any specific conduct or action by the State they seek to enjoin but rather essentially ask the Court to forbid the Defendants from "copying, displaying, or distributing electronic copies of *any* of Plaintiffs' copyright works," and for the Court to monitor their progress in doing so. *See* D.E. 39 at 33. This superficial request for injunctive relief lacks sufficient specificity to provide the Defendants with notice of the specific behavior they are to avoid, and completely forecloses the Defendants' legitimate right to make a fair use of the

44

copyrighted works.[5]  Thus Plaintiffs' request should not be considered by the

Court.

## IV.     **CONCLUSION**

For these reasons, the Court should grant Defendants' Motion for Summary

Judgment.

---

[5] The Supreme Court of the United States has cautioned,

> Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.... When the frame of reference moves from a unitary court system....to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.

*Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (citations omitted). "[T]hese principles []have applicability where injunctive relief is sought, not against the judicial branch of state government, but against those in charge of an executive branch of an agency of state or local governments. . . ." *Id.* at 380.

Respectfully submitted this 26th day of February, 2010.

THURBERT E. BAKER
Georgia Bar No. 033887
Attorney General

R. O. LERER
Georgia Bar No. 446962
Deputy Attorney General

DENISE E. WHITING-PACK
Georgia Bar No. 558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General
KING & SPALDING LLP

*/s/ Katrina M. Quicker*
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Katrina M. Quicker
Georgia Bar No. 590859
Kristen A. Swift
Georgia Bar No. 702536

**Attorneys for Defendants**

ATL_IMANAGE-6736273.4

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Katrina M. Quicker*
Katrina M. Quicker
(Ga. Bar No. 590859)

ATL_IMANAGE-6736273.4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAMBRIDGE UNIVERSITY PRESS, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 1:08-CV-1425-ODE |
| MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*, | § § § | |
| Defendants. | § § § | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 26th day of February, 2010, I have electronically filed the foregoing **Memorandum in Support of Defendants' Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Katrina M. Quicker*
Katrina M. Quicker
  (Ga. Bar No. 590859)

49