

# Policy on the Use of Copyrighted Works in Education and Research

As a system devoted to providing the highest quality undergraduate and graduate education to students; pursuing leading-edge basic and applied research, scholarly inquiry, and creative endeavors; and bringing intellectual resources to the citizenry, the University System of Georgia is committed to respecting the rights of copyright holders and complying with copyright law. The University System of Georgia recognizes that the exclusive rights of copyright holders are balanced by limitations on those rights under federal copyright law, including the right to make a fair use of copyrighted materials and the right to perform or display works in the course of face-to-face teaching activities.

The University System of Georgia facilitates compliance with copyright law and, where appropriate, the exercise in good faith of full fair use rights by faculty and staff in teaching, research, and service activities. Specifically, the University System of Georgia

- informs and educates students, faculty, and staff about copyright law, including the limited exclusive rights of copyright holders as set forth in 17 U.S.C. § 106, the application of the four fair use factors in 17 U.S.C. § 107, and other copyright exceptions;
- develops and makes available tools and resources for faculty and staff to assist in determining copyright status and ownership and determining whether use of a work in a specific situation would be a fair use and, therefore, not an infringement under copyright law;
- facilitates use of materials currently licensed by the University System of Georgia and provides information on licensing of third-party materials by the University System; and
- identifies individuals at the University System and member institutions who can counsel faculty and staff regarding application of copyright law.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright





# Copyright Generally

Most copyright questions that arise at the University System of Georgia revolve around issues of copyright ownership in new works, or fair use of existing works. Related questions arise with respect to managing our copyrights, negotiating publication agreements, developing digital libraries, and posting materials to Web servers. The answers to these and many other copyright questions will almost always begin with a few fundamental principles of copyright law.

Copyright provides the creators of original works of authorship with a set of limited exclusive rights, including the right to copy, distribute, and perform their works. The law balances the private interests of copyright owners with the public interest and is intended, in the words of the Constitution, "to promote the Progress of Science and useful Arts, by securing for a limited Time to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

Copyright law gives copyright owners the exclusive rights to:

- reproduce a work;
- prepare derivative works based on the original;
- distribute copies to the public;
- perform the work publicly; and
- display the work publicly;

Limitations to the exclusive rights are listed in Sections 107 through 122 of chapter 1 of the U.S. Copyright Act. These exceptions are integral to the balance of exclusive rights and productive, socially beneficial new and fair uses of works. One of the exceptions to a copyright holder's exclusive rights is the right to make a fair use of a copyrighted work. Copyright law applies to original works.

## Copyright law applies to nearly all creative and intellectual works.

A wide and diverse range of materials are protectable under copyright law. Books, journals, photographs, art, music, sound recordings, computer programs, websites, and many other materials are within the reach of copyright law. Also protectable are motion pictures, dance choreography, and architecture. If you can see it, read it, hear it, or watch it, chances are it is protectable by copyright law. One important exception is works of the U.S. Government. Works published or created by the U.S. Government are not subject to copyright.

## Works are protected automatically, without copyright notice or registration.

These many different works are protected under copyright if they are "original works of authorship" that are "fixed in any tangible medium of expression." In other words, once you create an original work, and fix it on paper, in clay, or on the drive of your computer, the work now receives instant and automatic copyright protection. The law today does not require placing a notice of copyright on the work or registering the work with the **U.S. Copyright Office** as it did in the past. The law provides some important benefits if you do use the notice or register the work, but you are the copyright owner even without these formalities.

## Copyright protection lasts for many decades.

The basic term of protection for works created today is for the life of the author, plus seventy years. In the case of "works made for hire" (explained below), the copyright lasts for the lesser of either 95 years from publication or 120 years from creation of the work. The rules for works created before 1978 are altogether different, and foreign works often receive distinctive treatment.

## Copyright ownership.

As a general rule, the author is the initial owner of the copyright in the work. If you wrote the book or took the photograph, you are the copyright owner. If you created the work as an employee, acting within the scope of your employment, the work may be a "work made for hire." In that event, the employer is the copyright owner. If you are an employee, and your job is to create software code, the copyright in that code probably belongs to your employer. Ownership of copyrights and other forms of intellectual property created by faculty, staff or students at University System of Georgia institutions is governed by the University System of Georgia **Intellectual Property Policy**.

## For Further Information:

**Full text of the U.S. Copyright Act**
**Database of International Copyright Law**
A summary of copyright fundamentals for academic work can be found in **Copyright Law and Graduate Research**, by Kenneth D. Crews.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

270 Washington Street, S.W., Atlanta, GA 30334
U.S.A.

Content Source: USG Copyright





# The Fair Use Exception

One may make fair use of a copyrighted work without the copyright holder's permission. The determination of whether a use of a copyrighted work is within fair use depends upon making a reasoned and balanced application of the four fair use factors set forth in Section 107 of the U.S. Copyright Act. Those factors are

- the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
- the nature of the copyrighted work;
- the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
- the effect of the use upon the potential market for or value of the copyrighted work.

**All four factors** should be evaluated in each case, and no one factor will determine the outcome. While fair use is intended to apply to teaching, research, and other such activities, an educational purpose alone does not make a use fair. The "purpose and character of the use" is only one of four factors that users must analyze in order to conclude whether or not the use is fair, and therefore lawful.

Moreover, each of the factors is subject to interpretation as courts work to apply the law. Working through the four factors is important. Simple rules and solutions may be compelling, but by understanding and applying the factors, users receive the benefits of the law's application to the many new needs and technologies that continue to arise at member institutions within the University System of Georgia.

# Understanding the Four Factors

The following is a brief explanation of the four factors from the fair use statute. Keep in mind that fair use requires weighing and balancing all four factors before reaching a conclusion. Additionally, the four factors are nonexclusive, so other factors may be considered in determining whether a use is fair.

## Purpose and Character of the Use

The law explicitly favors nonprofit educational uses over commercial uses. Activities that are truly confined to the university in support of nonprofit education are likely to receive favorable treatment. Courts also favor uses that are "transformative," or that are not mere reproductions. A transformative use has been defined as a use that adds to or changes the original work in such a way as to give it new expression, meaning, or message. Fair use is more likely when the copyrighted work is "transformed" into something new or of new utility, such as quotations incorporated into a paper, and pieces of a work mixed into a multimedia product for teaching. The use of works in the context of criticism or critical analysis may also be given favorable treatment. The statute also notes that "multiple copies for classroom use" are permitted.

## Nature of the Copyrighted Work

This factor examines characteristics of the work being used. Quite simply, courts have tended to apply fair use differently to different types of works. For example, courts have concluded that the unpublished nature of a work is a fact weighing against fair use. Courts more readily favor the fair use of nonfiction, as opposed to fiction and other highly creative works, including novels, short stories, poetry, and modern art images. Only those portions of the work which are relevant to a purpose favoring fair use should be used. Instructors should carefully review uses of "consumable" materials, such as test forms and workbook pages that are meant to be used and

repurchased, as their use is less likely to qualify as fair use.

## Amount of the Work Used

Amount is measured both **quantitatively** and **qualitatively**. No exact measures of allowable quantity exist in the law. Quantity must be evaluated relative to the length of the entire work and in light of the amount needed to serve a proper objective. The amount taken from the work should be narrowly tailored to serve these purposes. Any copying of an entire work usually weighs heavily against fair use. Images generate serious controversies because a user nearly always wants the full image, or the full "amount." A "thumbnail," or low-resolution version of the image, might be an acceptable "amount." Motion pictures are also problematic because even short clips may borrow the most extraordinary or creative elements of the work. One may also reproduce only a small portion of any work, but still take "the heart of the work." This concept is a qualitative measure that may weigh against fair use.

## Effect on the Value of or Market for the Work

This factor assesses the extent to which a given use serves as a substitute for the markets or potential markets for the work. The "effect on the market" factor is closely linked to the "purpose of the use" factor. For example, if the purpose of the use is commercial, any adverse market effect resulting from that commercial use weighs against fair use. If the purpose of the use is non-commercial, however, an adverse market effect is less likely, weighing in favor of fair use. Occasional quotations or photocopies may have no adverse market effect, but reproductions of software and videotapes can make direct inroads on the potential markets for such works.

**All four factors must be considered in determining whether a use of a work is a fair use.**

*Revised for use by the University System of Georgia, based upon the fair use resources provided by the Copyright Advisory Office at Columbia University,* **http://www.copyright.columbia.edu/copyright/?q=four-factors/**

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# Introduction to the Fair Use Checklist

The **fair use checklist** is a tool to assist you in making a reasoned and balanced application of the four fair use factors in determining whether a given use of a work is a fair use. The checklist outlines various factual circumstances that are important to the evaluation of a contemplated fair use. It derives from the four fair use factors and from judicial decisions interpreting copyright law.

As you use the checklist and apply it to your proposed use, you are likely to check more than one box in each column and even check boxes across columns. Some checked boxes will favor fair use and others will weigh against fair use. The ultimate concern is whether the cumulative weight of the factors weighs in favor of fair use or weighs against fair use. Because you are most familiar with your project, you are probably best positioned to make that decision.

Before using the checklist to conduct a fair use analysis, the following threshold questions should be considered:

1. You should first determine whether the work to be used is protected by copyright. If not, a fair use analysis is not necessary. For example, works created by U.S. government employees as part of their official duties are not protected by copyright. Works first published prior to 1923 are no longer protected by copyright. All materials first published after 1978 should be presumed to be protected by copyright, even if no copyright notice is present.
2. You do not need to conduct a fair use analysis if you or your institution has a license (or permission) to use the work and your use falls within that license. For example, some materials are distributed with a license that specifically allows for nonprofit educational use. The work may also be available through an electronic database at your institution's library or legally available on the web. If so, you may be able to direct students to that work or link directly to that work without conducting a fair use analysis.
3. A separate exception in federal copyright law specifically allows for performance or display (but not copying and distribution) of a work by instructors or students in the course of "face-to-face" teaching activities. [17 U.S.C. § 110(1)]. If your proposed use falls into this statutory exception, you need not conduct a fair use analysis.

All uses of copyrighted materials, whether a "fair use," use under a license, or use under other exceptions, should include proper copyright notice and attribution.

A copy of the checklist can be found **here**. Complete and retain a copy of this checklist for each "fair use" of a copyrighted work in order to establish a "reasonable and good faith" attempt at applying fair use should any dispute regarding such use arise.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright

# Fair Use Checklist

Name: _____ Date: _____

Class or Project: _____

Course and Term: _____

Title of Copyrighted Work: _____

Author and Publisher: _____

Portion(s) to be used (e.g., pages, timer counts): _____

**Instructions:** Where the factors favoring fair use outnumber those against it, reliance on fair use is justified. Where fewer than half the factors favor fair use, instructors should seek permission from the rights holder. Where the factors are evenly split, instructors should consider the total facts weighing in favor of fair use as opposed to the total facts weighing against fair use in deciding whether fair use is justified. Not all of the facts will be present in any given situation. Check only those facts that apply to your use. No single item or factor is determinative of fair use. Instructors should consult the Legal Affairs office at their institution or at the Office of the Board of Regents if they have questions regarding analysis of the four factors.

For more information regarding the fair use factors, please see the fair use sections of the Policy on the Use of Copyrighted Works in Education and Research for the University System of Georgia, which can be found on the web at http://www.usg.edu/copyright/.

Complete and retain a copy of this checklist for each "fair use" of a copyrighted work in order to establish a "reasonable and good faith" attempt at applying fair use should any dispute regarding such use arise.

## Factor 1: Purpose and Character of the Use

*Weighs in Favor of Fair Use*

- ☐ Nonprofit Educational
- ☐ Teaching (including multiple copies for classroom use)
- ☐ Research or Scholarship
- ☐ Criticism, Comment, News Reporting, or Parody
- ☐ Transformative (use changes work for new utility or purpose)
- ☐ Personal Study
- ☐ Use is necessary to achieve your intended educational purpose

*Weighs Against Fair Use*

- ☐ Commercial activity
- ☐ Profiting from use
- ☐ Entertainment
- ☐ Non-transformative
- ☐ For publication
- ☐ For public distribution
- ☐ Use exceeds that which is necessary to achieve your intended educational purpose

☐ *Factor Weighs in Favor of Fair Use*  ☐ *Factor Weighs Against Fair Use*

## Factor 2: Nature of Copyrighted Work

*Weighs in Favor of Fair Use*

- ☐ Published work
- ☐ Factual or nonfiction work
- ☐ Important to educational objectives

*Weighs Against Fair Use*

- ☐ Unpublished work
- ☐ Highly creative work (art, music, novels, films, plays, poetry, fiction)
- ☐ Consumable work (workbook, test)

☐ *Factor Weighs in Favor of Fair Use*   ☐ *Factor Weighs Against Fair Use*

## Factor 3: Amount and Substantiality of Portion Used

*Weighs in Favor of Fair Use*

- ☐ Small portion of work used
- ☐ Portion used is not central or significant to entire work as a whole
- ☐ Amount taken is narrowly tailored to educational purpose, such as criticism, comment, research, or subject being taught

*Weighs Against Fair Use*

- ☐ Large portion or entire work used
- ☐ Portion used is central to work or "heart of the work"
- ☐ Amount taken is more than necessary for criticism, comment, research, or subject being taught

☐ *Factor Weighs in Favor of Fair Use*   ☐ *Factor Weighs Against Fair Use*

## Factor 4: Effect on Market for Original

*Weighs in Favor of Fair Use*

- ☐ No significant effect on market or potential market for copyrighted work
- ☐ Use stimulates market for original work
- ☐ No similar product marketed by the copyright holder
- ☐ No longer in print
- ☐ Licensing or permission unavailable
- ☐ Supplemental classroom reading
- ☐ One or few copies made or distributed
- ☐ User owns lawfully acquired or purchased copy of original work
- ☐ Restricted access (to students or other appropriate group)

*Weighs Against Fair Use*

- ☐ Significantly impairs market or potential market for copyrighted work or derivative
- ☐ Licensing or permission reasonably available
- ☐ Numerous copies made or distributed
- ☐ Repeated or long-term use that demonstrably affects the market for the work
- ☐ Required classroom reading
- ☐ User does not own lawfully acquired or purchased copy of original work
- ☐ Unrestricted access on the web or other public forum

☐ *Factor Weighs in Favor of Fair Use*   ☐ *Factor Weighs Against Fair Use*

Revised for use by the University System of Georgia, based upon the Copyright Advisory Office at Columbia University's "Fair Use Checklist", http://www.copyright.columbia.edu/fair-use-checklist



# Additional Guidelines for Electronic Reserves

The University System of Georgia supports instruction with electronic reserves and similar electronic services. The primary function of these services is to assure that students and teachers will have timely access to course-related library resources. Course materials authored by professors, such as syllabi, lecture notes, or exams, may be made available on electronic reserves. The following standards apply to use of copyrighted works for electronic reserves:

- Instructors are responsible for evaluating, on a case-by-case basis, whether the use of a copyrighted work on electronic reserves requires permission or qualifies as a **fair use**. If relying upon the fair use exception, instructors must complete a copy of the fair use **checklist** before submitting material for electronic reserves.
- Inclusion of materials on electronic reserves will be at the request of the instructor for his or her educational needs.
- Materials made available on electronic reserves should include a citation to the original source of publication and a form of copyright notice.
- The instructor, library or other unit of the institution must possess a lawfully obtained copy of any material submitted for electronic reserves.
- Access to course material on electronic reserves should be restricted by password to students and instructors enrolled in and responsible for the course. Access should be terminated as soon as the student has completed the course.
- Library reserves staff should check to see whether materials submitted for electronic reserves are available through an electronic database or are otherwise legally available. If so, staff should provide a link rather than scanning and posting the material.
- Library reserves staff should delete materials available on electronic reserves at the conclusion of each semester.
- Institutions at the University System of Georgia will impose no charge to students for access to materials on electronic reserves.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# Additional Resources

- Other Exceptions
- Permissions
- Identifying the Copyright Owner
- Collective Licensing Agencies
- Orphan Works
- TEACH Act

©2009 **Board of Regents of the University System of Georgia**
Contact USG | Disclaimer | Privacy

270 Washington Street, S.W., Atlanta, GA 30334
U.S.A.

Content Source: USG Copyright



# Other Exceptions

Copyrights are subject to many limitations and exceptions that ultimately permit the public to make certain uses of copyrighted works. "Fair use" is the best known of these exceptions. The U.S. Copyright Act, however, includes more than a dozen statutory exceptions. Keep in mind that most of these exceptions are narrow in their application and depend upon meeting a variety of specific conditions. By contrast, fair use is flexible and general in application and scope. The important point is that the law gives several means for making lawful uses of copyrighted works in connection with research, teaching, and service at the University System of Georgia. Of course, one can also make lawful uses of copyrighted works with permission from the copyright owner. Other parts of this website offer guidance about fair use and permissions.

The following is a brief summary of some of the statutory exceptions, with references to the provision of the U.S. Copyright Act:

**LIBRARY COPYING (Section 108).** This provision permits libraries to make copies of materials for preservation and security, to give copies to users for their private study or research, and to send copies through interlibrary loan. Like most of the exceptions, this provision applies only to certain types of works, and only under certain circumstances.

**FIRST SALE (Section 109(a)).** This important exception limits the "distribution rights" of the copyright holder by providing that once the owner authorizes the release of lawful copies of a work, those copies may in turn be passed along to others by sale, rental, loan, gift, or other transfer. This exception allows libraries to lend materials and bookstores to sell books.

**PUBLIC DISPLAYS (Section 109(c)).** One of the rights of copyright owners is the right to make "public displays," but this statute allows the owner of a lawful copy of a work to display it to the public at the place where the work is located. An art museum that owns a painting may hang it on the wall; a bookstore can place books on display in front windows; and a library may put materials in the display cases for all to see.

**DISPLAYS AND PERFORMANCES IN FACE-TO-FACE TEACHING (Section 110(1)).** Under this exception, educators may perform and display all types of works in a classroom or similar place at most educational institutions. It allows instructors and students to recite poetry, read plays, show videos, play music, project slides, and engage in many other performances and displays of protected works in the classroom setting. This exception is actually comparatively simple and broad, but keep in mind that it permits only displays and performances in the classroom—not the making of copies or the posting of digital works on servers.

**DISPLAYS AND PERFORMANCES IN DISTANCE EDUCATION (Section 110(2)).** When materials are displayed or performed to students at remote locations, or "transmitted" to students at any location, the rules change. This exception is known as "the TEACH Act" and was revised in 2002 to address issues of online education. The new law allows posting of materials to servers, but only subject to a long list of conditions. Many colleges and universities are struggling with this statute, and many rely instead on fair use or permissions.

**COMPUTER SOFTWARE (Section 117).** This exception allows the owner of a copy of a computer program to modify the program to work on his or her computer or computer platform, and to make a back-up copy of the software to use in the event of damage to or destruction of the original copy. Realistically, most commercial programs are sold for use on multiple platforms, or the rights of use may be governed by license agreements.

**ARCHITECTURAL WORKS (Section 120).** Architectural designs are protected by copyright, but this exception

makes clear that once a building is constructed at a place visible to the public, anyone may make and use a picture of that building without infringing the copyright in the architectural design. We might infringe copyright when we reproduce blueprints or duplicate the Trump Tower, but we are not infringing when we snap a photograph and use it in a book or on postcards.

**SPECIAL FORMATS FOR PERSONS WHO ARE BLIND OR HAVE OTHER DISABILITIES (Section 121).** This exception permits certain organizations to make specific formats of published, non-dramatic literary works in order that they may be useful to persons who are blind or have other disabilities. For example, some educational institutions and libraries may be able to make large-print or Braille versions of some works in the collection.

## For Further Information:

### Full text of the U.S. Copyright Act

*Revised for use by the University System of Georgia, based upon the fair use resources provided by the Copyright Advisory Office at Columbia University,* **http://www.copyright.columbia.edu/appropriate-use**

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# Permissions

If you are seeking to use a copyrighted work, you may have to obtain permission from the copyright owner. The owner may be the original creator of the work or that person's employer. The original author may also have transferred the copyright to a publisher or some other party. In some instances, you may contact the owner directly. In other cases, you can secure permission on behalf of the owner by contacting an industry licensing agency or a publisher. Sometimes, the copyright owner may require a fee or impose other conditions. You have to decide if the cost and conditions are acceptable, and you should feel free to negotiate. Keep in mind that permission is not necessary if (1) your use is within fair use or another copyright exception; (2) the work is not protected by copyright at all; or (3) your use is within the terms of a license agreement, including, for example, a **Creative Commons** license from the author.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# Identifying the Copyright Owner

The first source for identifying the copyright owner is the copyright notice on the work, which often looks like this: Copyright © 2005, XYZ Corporation. Another important source is the registration of the claim of copyright with the United States Copyright Office. For information about searching registration records, see
**http://www.copyright.gov/records/**.

However, the law does not require a copyright notice or registration, and the original owner may have transferred the copyright. Sometimes you simply need to contact any person associated with the work, such as the author, publisher, or benefactor, and ask about the copyright status and ownership.

**Sample permission letters**.

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# Collective Licensing Agencies

Collective licensing agencies are organizations meant to centralize copyright ownership information for their respective industries. These centers can expedite your search, either by putting you directly in touch with a copyright owner or by negotiating the copyright usage itself. **However, most of these agencies do charge a fee for their services.**

Select a type of work below to view information on licensing agencies for that industry.

- **Works in Print**
- **Online Works**
- **Musical Works: Performance Rights**
- **Musical Works: Mechanical Rights**
- **Dramatic Works**
- **Pictoral, Graphic, and Sculptural Works**
- **Motion Pictures and other Audio-Visual Works**
- **Software**
- **Syndicated Comics, Cartoons, and Editorials**
- **Religious Works**

## Works in Print

- **Copyright Clearance Center**
  The CCC should be your starting point if you are looking to get permission for a text-based work. The CCC can grant permission for thousands of works, many instantly online.
- **The Authors Registry**
  A collaboration of literary rights organizations: The Authors Guild, The American Society of Journalists & Authors, The Dramatists Guild, and The Association of Authors' Representatives.
- **Access Copyright**
  Licenses works under Canadian copyright.
- **Author's Licensing and Collecting Society**
  The largest licensing agency in the United Kingdom, the ALCS represents writers of all genres, from text-book authors to poets and radio dramatists.

## Online Works

Most online sources have contact information. Directly contacting the owner or administrator of the site is usually your best starting point. However, if this information is not helpful, try these agencies.

- **Copyright Clearance Center**
  The CCC should be your starting point if you are looking to get permission for a text-based work. The CCC can grant permission for thousands of works, many instantly online.
- **iCopyright**
  Focused on copyrights of digital and online content.

## Musical Works: Performance Rights

Performance rights are all uses associated with public performance of copyrighted music, everything from concert performances to playing an artist's music on overhead speakers in a retail space. Together, these three licensing agencies encompass the vast majority of published American music.

- **ASCAP (American Society of Composers, Authors & Publishers)**
  Membership association of composers, songwriters, lyricists and musical publishers.
- **BMI (Broadcast Music, Inc.)**
  Performance works and media licensing center.
- **SESAC**
  One of the fastest growing performance rights organizations, with offices in Nashville, New York, Los Angeles, London and Atlanta.

## Musical Works: Mechanical Rights

Mechanical Rights are those associated with reproducing derivatives of copyrighted work, such as recording a "cover" of another artist's song. Other examples would be reproducing the work as part of a collection album or as a ringtone. Once a composition has been commercially recorded, anyone may obtain a compulsory mechanical license pursuant to §115 of the United States Copyright Act. The royalty fee for using the material is set by law, and is known as the "statutory rate."

- **Harry Fox Agency**

## Dramatic Works

Dramatic works may not be publicly performed without permission, either in their entirety or in smaller portions, such as excerpts, acts, scenes, monologues, etc. The rights that are needed to publicly perform a dramatic work that combines a musical work together with staging, dialogue, costuming, special lighting, choreography, etc. are referred to as grand performing rights. Grand performing rights are typically obtained from the creator of the work or their publisher.

The rights to publicly perform a single piece of music from a musical play in a non-dramatic fashion are often referred to as small performing rights. Small performing rights are typically obtained from organizations such as **ASCAP, BMI,** and **SESAC**. To qualify as a non-dramatic performance, a piece of music taken from a musical play may not make use of any form of staging, choreography, etc., even if the use of any of these elements is not intended to represent any part of the original musical play. For example, creating your own dance steps to a piece of music from a musical play disqualifies the use as a non-dramatic use and permission for the grand performing rights must be sought.

- **Dramatists Play Service, Inc.**
- **MTI (Musical Theatre International)**
- **Rodgers & Hammerstein Organization**
- **Tams-Witmark Music Library, Inc.**
- **Dramatic Publishing**
- **Samuel French, Inc.**
- Baker's Plays
- Pioneer Drama
- **BPPI (Broadway Play Publishing, Inc.)**

## Pictoral, Graphic, and Sculptural Works

Many organizations license the use of still images. Unfortunately, there is not a real collective agency for this industry. Instead, contact the publisher of the picture, or in the alternative, seek out a royalty-free organization that specializes in the dissemination of free stock photography.

- **List of stock photo agencies.**



## Motion Pictures and other Audio-Visual Works



Start your search with the **Internet Movie Database** to identify who owns the film (listed under the "Company Credits"). Some of the licensing agencies are:

- **Motion Picture Licensing Corporation**
- **Criterion Pictures**
  Licenses non-theatrical public performances of feature entertainment films in Canada. CriterionUSA provides licenses for the US.
- **Swank Motion Pictures, Inc.**
- **Kino International**
  Source for world cinema, independent films, classics, and documentaries.

## Software

Permission must be secured to reproduce, distribute, perform, display, or make derivative works of software. Nearly all software publishers may be contacted through their homepage on the Internet.

- **CNET**
  CNET has comprehensive reviews of software. It also acts as a hub for the dissemination of free software through its download section.

## Syndicated Comics, Cartoons, and Editorials

- **Creators**
- **EToon**
- **King Features Syndicate**
- **Tribune Media Syndicate**
- **Comics Page**
- **United Feature Syndicate - ComicZone**
- **Universal Press Syndicate**
- **CartoonBank**
- **CartoonStock**

## Religious Works

- **Christian Copyright Licensing International**

*Revised for use by the University System of Georgia, based upon the fair use resources provided by the Copyright Advisory Office at Columbia University, **http://www.copyright.columbia.edu/collective-licensing-agencies***

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

270 Washington Street, S.W., Atlanta, GA 30334
U.S.A.

Content Source: USG Copyright





# Orphan Works

The situation is common: You want to use a copyrighted work beyond the limits of fair use or other copyright exception. You tracked down a likely copyright owner and have attempted to seek permission, but the effort simply has produced no conclusion. Worse, perhaps you did receive permission, but with burdensome conditions or a high price. Perhaps you wrote for permission, and the permission was flatly denied.

In some situations, you might have little choice but to absorb the bad news and change your plans. Much more complex and frustrating, however, is when you exert an honest effort, but you simply cannot find a copyright owner or your efforts go unanswered. When you cannot identify or locate the current owner, the copyright materials are sometimes called "orphan works." In the meantime, what do you do when you reach that mysterious "dead end" of the quest?

**Return to fair use.**
When you originally evaluated fair use, you may have focused on an assumption about the "potential market" for the work in question, and the possible harm to that market caused by your use of the work. If you discover that there is truly no permissions market for this work, you should reevaluate the fourth factor in the fair use analysis. You may find that this factor now weighs in favor of fair use. For more information, visit the fair use pages of the USG Copyright Policy.

**Replace the materials with alternative works.**
If you reach a "dead end," you should ask yourself whether those specific copyrighted works are the only materials that will satisfy your goals. In many cases, you can achieve your desired end results with works in the public domain and available for use without copyright restriction or from other copyright owners.

**Alter your planned use of the copyrighted works.**
Your ambitious plans may have involved scanning, digitizing, uploading, dissemination, Internet access, and multiple copies for students and colleagues, causing the copyright owner to deny permission for such broad uses. Changing your ambitious plans to something more modest and controllable may either change the copyright holder's mind or increase the likelihood that you are within fair use. Reigning in the number of copies, scope of access, or potential for rapid digital duplication and dissemination, may tip the balance in favor of fair use.

*Revised for use by the University System of Georgia, based upon the fair use resources provided by the Copyright Advisory Office at Columbia University,* **http://www.copyright.columbia.edu/orphan-works**

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright



# TEACH Act

For more information regarding requirements of the TEACH Act, please visit the University System of Georgia's "**Guide to the TEACH Act.**"

©2009 **Board of Regents of the University System of Georgia**
**Contact USG | Disclaimer | Privacy**

*270 Washington Street, S.W., Atlanta, GA 30334*
*U.S.A.*

Content Source: USG Copyright