UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al.,<br><br>Plaintiffs,<br><br>-*vs.*-<br><br>MARK P. BECKER, in his official capacity as Georgia State University President, et al.,<br><br>Defendants. | Civil Action File<br>No.1:08-CV-1425-ODE |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE DEBRA J. MARINIELLO AS AN EXPERT, OR, IN THE ALTERNATIVE, TO EXCLUDE AND STRIKE CERTAIN EXPERT TESTIMONY OF DEBRA J. MARINIELLO**

Defendants submit this Reply to clarify several points raised by Plaintiffs in Plaintiff's Brief in Opposition to Defendants' Motion to Exclude Debra J. Mariniello As an Expert ("Response").

**ARGUMENT**

In their Response, Plaintiffs first misinterpret Defendants' Motion as seeking to exclude Ms. Mariniello entirely on the ground that she does not have the expertise to opine on market harm. To the contrary, Defendants seek to exclude

1

Mariniello entirely on the ground that the opinions contained in her report are not her own, but those of Plaintiffs' and their partner Copyright Clearance Center's ("CCC's") legal counsel. If the court admits any part of Mariniello's report (the "Mariniello Report") and testimony, Defendants argue that the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702 mandate that the court exclude all evidence and opinions from the Mariniello Report regarding "market harm."

Plaintiffs address Mariniello's lack of expertise and flawed methodology by arguing, first, even if Mariniello's conclusions themselves are not supportable, at least some of the data she uses to attempt to support them should not be excluded; second, that her passing experience selling products to universities and selling licenses to use a select body of works makes her an expert in university practices and the market for original products and licenses within the broad publishing industry; third, that she does not need to be an expert to present the opinions in her report; and fourth, that the conclusions she reaches are "obvious" even in the absence of factual foundation.

I.  **Mariniello's Failure to Prepare Her Report in Accordance with Federal Rule of Civil Procedure 26(a)(2)(B) Requires That She Be Excluded As an Expert Under Federal Rule of Civil Procedure 37(c)(1).**

Despite Plaintiffs' generous characterization that Mariniello "directed" and "controlled" the preparation of the Mariniello Report, Resp., D.E. 135 at 3 [hereinafter "Resp."], the evidence shows that her role was as more of a "middle man," gathering the data the attorneys deemed necessary and reviewing the reports they told her were important. (*See* evidence cited in Defs.' Mot.)

Plaintiffs argue that the Mariniello Report was prepared under circumstances similar to those in *Hoskins v. Gunn Trucking*, No. 4:07-CV-72-WCL, 2009 U.S. Dist. LEXIS 83630 (N.D. Ind. Sept. 14, 2009), where the court found that the expert's report was completed sufficiently in accordance with Rule 26 requirements. In *Hoskins*, as Plaintiffs note, the attorneys penned the first draft of the expert report following an in-person conference with counsel. *Hoskins*, No. 4:07-CV-72-WCL, 2009 U.S. Dist. LEXIS 83630, at *3. Key differences, however, are that the expert in *Hoskins* was identified long before the expert report was drafted, and the plaintiff had identified the documents on which the expert relied, her publications, and the basis of her expertise well before she met with counsel regarding the report. The plaintiffs had failed, in the first instance, to have the expert prepare a report in accordance with the Rule, and the court allowed time

3

for them to meet this requirement. *Id.* at *2. Thus, in *Hoskins*, the expert formed her expert opinions well in advance of her later "in-person conference with counsel[ ] before any work on the report began." *Id.* at *2-3.

In contrast, the evidence presented in Defendants' Motion amply shows that Plaintiffs' counsel drafted the Mariniello Report and largely directed its contents to conform to what they thought the report should say. (See, for example, the cited emails wherein Mariniello merely forwarded to Plaintiffs' counsel information she asked that other CCC employees collate per counsel's request.) Indeed, as is explained *infra*, Plaintiffs now do not even really argue that the few "opinions" presented by Mariniello should be retained, but instead argue that the "facts" in the report are what really matter. (*See* Resp. 14-20.)

The present case is more like the scenarios in *Manning v. Crockett*, No. 95-C-3117, 1999 U.S. Dist. LEXIS 7966, 1999 WL 342715, at *3-4 (N.D. Ill. May 18, 1999), and *In re Jackson National Life Insurance Co. Premium Litigation*, MDL No. 1122, 5:96-MD-1122, 2000 U.S. Dist. LEXIS 1318, 2000 WL 33654070, at *1-2 (W.D. Mich. Feb 8, 2000), described in *Hoskins*. *See id.* at *8-10. As described by *Hoskins*, those cases explain that preparing an expert's opinion from "whole cloth and then asking the expert to sign it if he or she wishes to adopt it, conflicts with Rule 26(a)(2)(B)'s requirement that the expert prepare the report,"

4

and that Rule 26(a)(2)(B) is violated when the formulation of the opinions is provided to the expert by counsel. *See id.* at *8-9 (describing *Manning* and *In re Jackson Nat'l Life Ins. Co. Premium Litig.*). Unlike the *Hoskins* example relied on by Plaintiffs, Mariniello was not given a draft report "to consider for formatting purposes." *See id.* at *3. She essentially was given the report. Her technical corrections to counsels' draft and general editing of its contents do not change the fact that the report ultimately presents information counsel decided should be presented. (*See, e.g.*, Resp. Ex. G-I; Mariniello Tr., Defs.' Mot. Ex. A at 20-22, 29-53, 215, 225.)

Plaintiffs' Response acknowledges what Defendants' suspected—Mariniello was designated as an expert and the Mariniello Report was drafted largely as an attempt offer facts Plaintiffs failed to elicit or disclose properly during fact discovery. In response to Defendants' cogent arguments that Mariniello is not qualified to opine on market harm and that her supposed analysis falls far short of a reliable or trustworthy methodology in accordance with *Daubert*, Plaintiffs express the concern that the facts regarding Plaintiffs' and CCC's revenues should not be excluded, even if Mariniello's actual "analysis" about effects on those revenues are excluded. (*See* Resp. 15-20.) Plaintiffs argue that "sections of the report that . . . describ[e] Plaintiffs' established revenue streams from CCC" are "critically

important to the fair-use analysis and are independent of any of Ms. Mariniello's opinions as to the harm caused by GSU's unlicensed takings to date." (Resp. 9.) Of course, Plaintiffs know their revenue streams and could (should) have disclosed those facts before now. Notably, Plaintiffs do *not* argue that Mariniello's CCC sales trend analysis on pages 18 to 20 of her report is as important. This shows two things: (1) Plaintiffs know that Mariniello's "market harm analysis" fails the *Daubert* standards and they fear this Court will rightfully exclude those portions of the report; and (2) the "market harm analysis," which necessarily requires proof that there are revenue streams as explained in the Mariniello Report, was designed not really to rebut the contents of the Crews Report, but to circumvent the long-since closed fact discovery period.[1]

---

[1] Plaintiffs essentially have attempted to "back door" evidence. But their failure to introduce this evidence during fact discovery and their failure to proffer any non-rebuttal expert to testify regarding market harm cannot be cured by re-fashioning a Rule 30(b)(6) deponent into an expert and then having her "opine" on matters outside of her stated expertise with insufficient data and flawed methodology. Indeed, the Plaintiffs' prompt resort to trying to retain facts in Mariniello's Report without really defending Ms. Mariniello's conclusions based (in part) upon on those facts, *see* Resp. 14-15, is an acknowledgement of the weakness of Plaintiffs' attempt to circumvent discovery.

## II. Portions of the Mariniello Report Must Be Excluded Under the Standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Plaintiffs build up Ms. Mariniello's attributes in an effort to disguise her shortcomings. Plaintiffs spend substantial time and space arguing that Mariniello has an expertise related to CCC's products and their use, *see* Resp. 10-12, and state that "Defendants do not contest the vast majority of Ms. Mariniello's report," *id.* at 10. The fact that the Mariniello Report is in *some* ways responsive to the Crews Report and that Ms. Mariniello in *some* ways has the experience and expertise to opine on select matters raised in the Crews Report, however, does *not* mean that the Mariniello Report is wholly responsive or appropriate. At a minimum, portions of the Report should be stricken or excluded, particularly those portions purporting to address "market harm."

Plaintiffs assert that because "the point" of Mariniello's Report was not to draw broad conclusions on market harm and specifically draw conclusions on the impact of GSU's activities on the revenues of CCC and other publishing entities, her opinions as to these matters should be allowed in. (*See, e.g.*, Resp. 14.) Plaintiffs essentially argue that: because "the first eighteen pages of her report" relate to other matters (although not exclusively), her opinions on market harm that draw specific conclusions about the impact that GSU's (undefined and

7

unsubstantiated) activities do and will have on the market for copyright permissions should be allowed in, too. (*See* Resp. 14.) Defendants know of no authority that would support a district court ignoring *Daubert* and Federal Rule of Evidence 702 to allow in objectionable opinion testimony simply because some other testimony may be *Daubert*-compliant. To the contrary, courts regularly exclude ***particular*** evidence proffered by an expert witness without excluding the witness altogether.

Plaintiffs try to minimize Mariniello's statements and conclusions outside of her expertise—and the lack reliable support—by stating that "Defendants do not contest the vast majority of Ms. Mariniello's report," Resp. 10, and there are "eighteen pages," *see, e.g.*, *id.* at 14, of her report that deal with other issues; and by characterizing the contested portions of the report as "three sentences," *id.* at 13, or "four sentences," *id.* at 8. First, rather than counting sentences, Defendants have identified content that should be excluded due to Mariniello's lack of expertise and faulty methodology. Second, Plaintiffs wrongly contend that the volume of unchallenged material diminishes the inappropriateness of the non-responsive, extra-expertise, and unsubstantiated elements of the report.

Plaintiffs further claim that Defendants have a "fundamental misunderstanding of Ms. Mariniello's report and its relation to the fourth fair use

8

factor." (Resp. 15.) Perhaps Defendants' "misunderstanding"—giving Plaintiffs the benefit of the doubt—comes from reading the Report as what it purports to be: a rebuttal to Dr. Crews's contentions regarding the lack of feasibility of seeking permissions. (*See* Mariniello Report 1; Resp. 15.) Information regarding CCC revenues does not address Dr. Crews's opinions and evidently is an attempt to circumvent the closed discovery period. Ms. Mariniello was not identified as an expert on market harm and her report does not purport to refute any market harm expert testimony in the Crews Report. The Mariniello Report does not point to a single "market harm" assertion by Dr. Crews. While Plaintiffs peppered the Mariniello Report with revenue figures and included an "analysis" and conclusions arguably directed to market harm, the attempt to interpose factual evidence in an expert report that previously was omitted distorts the process.

Plaintiffs argue that to opine on market harm, Ms. Mariniello does not have to be a "damages expert," Resp. 15, and state: "Defendants ask the Court to strike sections of the report . . . critically important to the fair-use analysis," Resp. 9. Defendants thereby admit that the purpose of presenting this information was not to rebut a contention by Dr. Crews. Rather, it appears Plaintiffs offer Mariniello as an "expert" on trends in CCC licensing in order to introduce evidence necessary for their "critical" market harm analysis, which they failed to produce during fact

discovery.  In confirmation, Plaintiffs contend that they did not need an expert to present the revenue data in the report at all and that Mariniello's conclusions are "too obvious to require expert qualifications."  (*See* Resp. 15-20.)

To the contrary, and as is amply explained in Defendants' Motion, the same criteria that are used to assess the reliability of a scientific opinion are applicable to evaluating the reliability of non-scientific, experience-based expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Ms. Mariniello's conclusions that Plaintiffs claim are "too obvious to require expert qualifications" suffer from gaps in logic and a lack of underlying support, both requirements for admitting supposed expert testimony.  For example, as explained in Defendants' Motion, Mariniello concludes that "if GSU activities continue unabated, or become widespread, there is a real risk of significant harm . . . ," Mariniello Report 3; "[t]he advent and increasing use of digital copies to fulfill course reading requirements at institutions such as GSU appears to be having the effect of reducing permissions payments under programs such as the APS . . . without, however, a commensurate increase in payments under [electronic] programs . . . ," *id.* at 19; and "I believe that at least some portion of the 'leakage' is caused by professors opting for unlicensed digital distribution as opposed to licensed coursepacks," *id.* at 20.  Mariniello at best bases these conclusions on nothing

more than conversations she has had with customers regarding the products and licenses she sells, revenues that sales of licenses through CCC have generated for the Plaintiff publishers, and crude "trend data" regarding CCC's sales of licenses. (*See* Resp. 11-14.) Plaintiffs argue that Mariniello can opine on the relative harm "such [purported, yet unsubstantiated] takings" would have on the nation-wide "viable, workable market for permissions," Resp. 16, without any expertise in or factual foundation regarding whether the trends she cites are due to any actual takings and without any perspective or factual foundation regarding the national market for permissions or the relative import of revenues from license sales to the overall market, *see, e.g.*, *id.* at 15. Of course, if Ms. Mariniello is *not* a proper expert, her testimony could not be based on hearsay evidence. Without factually-supported, logically-derived expert opinion on market harm, those portions of the Mariniello Report that deal with market harm should be excluded under the clear guidance of Federal Rule of Evidence 702 and *Daubert*. Plaintiffs cannot use the expert report as a forum to present unreliable conclusions and circumvent the close of factual discovery.

## III. Mischaracterization of the Crews Report

Finally, Defendants note that the mischaracterizations of the Crews report, as described in Defendants' Motion, speak for themselves, and they request that

the court merely review the actual language used in the Crews and Mariniello Reports.

Respectfully submitted this 9th day of March, 2010.

        THURBERT E. BAKER    033887
        Attorney General

        R. O. LERER    446962
        Deputy Attorney General

        DENISE E. WHITING-PACK  558559
        Senior Assistant Attorney General

        MARY JO VOLKERT
        Georgia Bar No. 728755
        Assistant Attorney General

        */s/ C. Suzanne Johnson*
        King & Spalding LLP
        Anthony B. Askew
        Georgia Bar No. 025300
        Special Assistant Attorney General
        Stephen M. Schaetzel
        Georgia Bar No. 628653
        Kristen A. Swift
        Georgia Bar No. 702536
        C. Suzanne Johnson
        Georgia Bar No. 321398

        ***Attorneys for Defendants***

# CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1D, that the foregoing memorandum has been prepared using 14 point Times New Roman font.

> /s/ *C. Suzanne Johnson*
> C. Suzanne Johnson
> (Ga. Bar No. 321398)

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al,<br><br>Plaintiffs,<br><br>-*vs.*-<br><br>CARL V. PATTON, in his official capacity as Georgia State University President, et al,<br><br>Defendants. | Civil Action No.<br>1:08-CV-1425-ODE |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 9th day of March, 2010, I have electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE DEBRA J. MARINIELLO AS AN EXPERT, OR, IN THE ALTERNATIVE, TO EXCLUDE AND STRIKE CERTAIN EXPERT TESTIMONY OF DEBRA J. MARINIELLO** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

ATL_IMANAGE-6822678.1

| | |
|---|---|
| Edward B. Krugman<br>krugman@bmelaw.com<br>Georgia Bar No. 429927<br>Corey F. Hirokawa<br>hirokawa@bmelaw.com<br>Georgia Bar No. 357087<br><br>BONDURANT, MIXSON & ELMORE, LLP<br>1201 West Peachtree Street NW<br>Suite 3900<br>Atlanta, GA  30309<br>Telephone: (404) 881-4100<br>Facsimile: (404) 881-4111 | R. Bruce Rich<br>Randi Singer<br>Todd D. Larson<br><br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007 |

                                              */s/ C. Suzanne Johnson*
                                              C. Suzanne Johnson
                                                (Ga. Bar No. 321398)