# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS,
OXFORD UNIVERSITY PRESS, INC.,
and SAGE PUBLICATIONS, INC.,

              Plaintiffs,

      - v. -

MARK P. BECKER, in his official
capacity as Georgia State University
President, et al.,

              Defendants.

Civil Action No. 1:08-CV-1425-ODE

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .......................................................................1

COUNTER-STATEMENT OF FACTS ..........................................................4

A.    The Infringing Practices at GSU Continue.....................................6

B.    The Summer 2009 Semester............................................................7

C.    The Fall 2009 Semester ..................................................................8

D.    The Spring 2010 Semester............................................................10

ARGUMENT ...............................................................................................15

I.    PLAINTIFFS HAVE PROVEN ONGOING ACTS OF INFRINGEMENT
      WARRANTING INJUNCTIVE RELIEF....................................................15

A.    The Basis for this Lawsuit Has Been Well Known to Defendants ..............15

B.    Plaintiffs are Entitled as a Matter of Law to the Broader Relief They
      Seek..................................................................................................17

C.    The Evidence Supports the Injunctive Relief Requested ...........................23

      1. Continuing Infringement of Plaintiffs' Exhibit 1 Works. .......................23

      2. Other Ongoing Infringement of Plaintiffs' Works .................................24

D.    Defendants' Arguments Aimed at Excluding Relevant Evidence Are
      Baseless ..........................................................................................25

E.    The Eleventh Amendment Does Not Bar Evidence of
      Past Infringements…………………………………………………...............28

II.   THE NAMED DEFENDANTS ARE LIABLE FOR DIRECT COPYRIGHT
      INFRINGEMENT ........................................................................................32

A.    Defendants Are Responsible for the Activities of GSU Employees Under
      Settled Principles of *Respondeat Superior* ...................................32

B.    Plaintiffs Are Entitled To Seek Injunctive Relief Against Defendants Under
      *Ex parte Young* .............................................................................35

III.  DEFENDANTS CONTRIBUTORILY INFRINGE PLAINTIFFS'
      COPYRIGHTS ......................................................................................... 39

# TABLE OF CONTENTS
## (continued)

**Page(s)**

A.   Defendants Materially Contribute to Direct Infringement by GSU
     Employees…......................................................................................40

B.   *Grokster* Does Not Define the Parameters or Limits of Contributory
     Infringement .....................................................................................43

IV.  DEFENDANTS VICARIOUSLY INFRINGE PLAINTIFFS'
     COPYRIGHTS ...................................................................................45

V.   PLAINTIFFS' PRAYER FOR RELIEF DOES NOT LIMIT THE COURT'S
     ABILITY TO FIND LIABILITY.........................................................49

CONCLUSION .................................................................................................50

755690.1

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ...............33, 41

*A&M Records, Inc. v. Napster, Inc.*, No. C 99-05183 MHP, 2001 U.S. Dist.
  LEXIS 2186 (N.D. Cal. Mar. 5, 2001) .............................................................18

*Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310 (S.D. Fla.
  2003) ..................................................................................................... 17, 22

*Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670, 2006 WL 842883
  (D.N.J. Mar. 31, 2006)....................................................................................40, 44

*Arista Records, LLC v. Butler*, No: 8:07-cv-3-T-23EAJ, 2007 U.S. Dist.
  LEXIS 93807 (M.D. Fla. Dec. 21, 2007) ..........................................................20

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005) .........................................31

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y.
  1991) .................................................................................................................21

*Basic Books, Inc. v. Kinko's Graphics Corp.*, No. 89 Civ. 2807,
  WL 311892 (S.D.N.Y. Oct. 16, 1991).............................................................21

*Bd. of Pub. Educ. for Savannah v. State of Georgia.*, No. CV 490-101, 1990
  WL. 608208 (S.D. Ga. Sept. 24, 1990)...........................................................37

*Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004)............................................30

*Cable/Home Communication Corp. v. Network Prods.*, Inc., 902 F.2d 829
  (11th Cir. 1990)...............................................................................................39

*Cable News Network, Inc. v. Video Monitoring Servs. of America*, 940 F.2d
  1471 (11th Cir. 1991).......................................................................................19

*Cable News Network v. Video Monitoring Servs. of America*, 949 F.2d 378
  (11th Cir. 1991).................................................................................................19

*Cable News Network v. Video Monitoring Servs. of America*, 959 F.2d 188
  (11th Cir. 1992).................................................................................................19

*Christian Coalition v. Cole*, 355 F.3d 1288 (11th Cir. 2004).................................30

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086
  (7th Cir. 1993)..................................................................................................34

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296 (E.D.N.Y. 2007) ...............................................................................................49

*Comm. for the First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992) ...............................................................................................31

*Cummings v. Walsh Constr. Co.*, 561 F. Supp. 872 (S.D. Ga. 1983) .....................34

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .....................................28

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...............................................................35

*Elektra Entm't Group Inc. v. Brimley,* No. CV-205-134, 2006 U.S. Dist. LEXIS 56798 (S.D. Ga. Aug. 15, 2006)................................................20

*Elektra Entm't Group, Inc. v. Jensen*, No. 1:07-CV-0054-JOF, 2007 U.S. Dist. LEXIS 60073 (N.D. Ga. Aug. 16, 2007) ...................................21

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)..............................................40

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................... *passim*

*Federal Deposit Ins. Corp. v. Senkovich*, 806 F. Supp. 245 (M.D. Fla. 1992) ...................................................................................... 27-28

*Felce v. Fiedler*, 974 F.2d 1484 (7th Cir. 1992)......................................................50

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ..........40, 44, 48

*Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375 (1982) ....................................32

*Green v. Mansour*, 474 U.S. 64 (1985) ..................................................................30

*HRH Architects, Inc. v. Lansing*, No. 1:08-CV-1479-RLV, 2009 U.S. Dist. LEXIS 46255 (N.D. Ga. Apr. 22, 2009).............................................45

*Hooker v. Fulton County*, No. CIVA105CV982GET, 2006 WL 2617142 (N.D. Ga. Sept. 12, 1006) . ....................................................................... 25-26

*Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026 (5th Cir. 1982) ...................................................................27

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Joelsongs v. Shelley Broad. Co.*, 491 F. Supp. 2d 1080 (M.D. Ala. 2007) .............20

*Kmetz v. State Historical Society*, 304 F. Supp. 2d 1108 (W.D. Wis. 2004) ..........50

*Lifetime Homes, Inc. v. Residential Development Corp.*, 510 F. Supp. 2d 794
    (M.D. Fla. 2007) ...................................................................................43

*Live Face on Web, LLC v. Howard Stern Productions, Inc.*, No. 08-2579,
    2009 WL 723481 (E.D. Pa. Mar. 17, 2009) ......................................................48

*Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988) ..................................... 35-36, 37

*Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984)...................................................29

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197
(C.D. Cal. 2007) ............................................................................... *passim*

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913
(2005) ........................................................................................ 43-44

*Milk Money Music v. Oakland Park Entm't Corp.*, No. 09-CV-61416, 2009
    WL. 4800272 (S.D. Fla. Dec. 10, 2009)............................................................20

*Monsanto Co. v. Campuzano (Nutrasweet Co.)*, 206 F. Supp. 2d 1252
    (S.D. Fla. 2002)..................................................................................38

*New World Music Co. v. Tampa Bay Downs, Inc.*, No. 8:07-cv-389-T-
    33TBM, 2009 WL. 35184 (M.D. Fla. Jan. 6, 2009)...........................................28

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1365
    (11th Cir. 2008) ...........................................................................25, 26

*Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir. 1994) .........................26

*Oravec v. Sunny Isles Luxury Ventures, LC*, 469 F. Supp. 2d 1148 (S.D. Fla.
    2006) ...........................................................................................46

*Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672 (S.D.N.Y. 1979) ........22

*Pacific & Southern Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1994) .... 18-19, 26, 28

*Pac. & S. Co. v. Duncan*, 618 F. Supp. 469 (N.D. Ga. 1985) .................................19

755690.1

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).........................35

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ......... 26, 41-42

*Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381 (6th Cir. 1996) ....................................................................................................21

*Region 8 Forest Svc. Timber Purchasers Council v. Alcock*, 736 F. Supp. 267 (N.D. Ga. 1990) ........................................................................... 30-31

*Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................................41

*Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. Aug. 1977) ....................................27

*Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352 (S.D.N.Y. 2001).......... 34, 37-38

*Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999)........................................... 36-37

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ......................................................... 49-50

*Seymour v. Clemens & Green, Inc.*, Civ. A. No. 82-2237, 1984 WL 5440 (D. Kan. Mar. 13, 1984)......................................................................................50

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963)............32

*Sony BMG Music Entm't v. Villarreal*, No. 5:06-CV-323(CAR), 2007 U.S. Dist. LEXIS 883 (M.D. Ga. Jan. 5, 2007) ....................................................20, 22

*Sony Music Entm't v. Global Arts Prods.*, 45 F. Supp. 2d 1345 (S.D. Fla. 1999) .................................................................................................................21

*Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999) ........................................................................................... 29-30 36

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 596 F. Supp. 28 (S.D.N.Y. 1984)........................................................................................... 32-33

*United States by Clark v. Georgia Power Co.*, 301 F. Supp. 538 (N.D. Ga. 1969)..........................................................................................................49

755690.1

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States v. Parke, Davis & Co.*, 360 U.S. 29 (1960)................................. 31-32

*Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp. 478 (N.D. Ohio 1984).........35

*Warner Bros. Records Inc. v. Tait*, No.: 3:07-cv-134-J16-HTS, 2008 U.S.
    Dist. LEXIS 46034 (M.D. Fla. June 12, 2008)............................................ 19-20

## STATUTES, RULES, AND OTHER AUTHORITIES

17 U.S.C. § 502(a) . ..................................................................................28

Fed.R.Civ.P. 26(e)(1)(A). ...............................................................10, 25

Fed.R.Civ.P. 37(c)(1)..........................................................................25

Fed.R. Civ.P. 65(d) ..............................................................................50

O.C.G.A. § 51-2-2 .................................................................................34

3 MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.04[A]

    (2009)........................................................................................33, 47

Restatement (Third) of Agency § 2.04 (1999) ......................................32

*Metro-Goldwyn-Mayer Studios, Inc., et al. v. Grokster, Ltd., et al.,*
    Complaint for Damages and Injunctive Relief for Copyright
    Infringement (Oct. 2, 2001) . ...............................................................18

Plaintiffs Cambridge University Press ("Cambridge"), Oxford University Press, Inc. ("Oxford"), and SAGE Publications, Inc. ("SAGE") (collectively, "Plaintiffs") submit this memorandum of law in opposition to Defendants' motion for summary judgment.

## PRELIMINARY STATEMENT

Since the Association of American Publishers first contacted the President of Georgia State University (GSU) three years ago on behalf of Plaintiffs and their fellow publishers, Plaintiffs' goal has been consistent and straightforward: to end the "systematic, widespread distribution and copying of a vast amount" of their copyrighted works without authorization on GSU's ERes and uLearn computer systems.  Plaintiffs' Opposition Exhibit ("Pl. Opp. Ex.") 1 (April 2007 letter).  As was true then and as remains true today, GSU, through these systems, operates what is effectively an in-house digital coursepack factory, churning out massive quantities of unlicensed copies of course reading materials semester after semester and year after year.  This unauthorized copying and distribution of works owned by Plaintiffs and other publishers continues even under Defendants' supposedly remedial new copyright policy, as demonstrated by the spring 2010 ERes report Defendants produced (after months of denying any obligation to do so) just hours before they filed their summary judgment motion.

Defendants' defense to the overwhelming evidence of persistent infringement is a startling effort to avoid confronting the magnitude of the continued problem as well as to avoid accepting legal responsibility for the conduct of the GSU employees who are directly involved in it.  Rather than address the fundamental legal issue presented by this case – whether the Defendants' copyright policies as implemented at GSU qualify as fair use – Defendants instead seek cover in two fundamentally flawed arguments.  The first is that because the most recent ERes report shows somewhat reduced copying of the specific works identified in the Complaint, the balance of GSU's copying activities, including ongoing infringement of numerous other of Plaintiffs' works, should be given a free pass.  The second is that the named Defendants, despite admittedly having supervisory authority over the conduct in question, cannot be held liable for infringing conduct on the part of GSU employees because the Defendants had no personal involvement in the actual copying and distribution. These arguments have no merit.

Defendants' attempt to reduce this to a case about the infringement of the works listed in Exhibit 1 to the Complaint – and no others – is completely disingenuous.  Defendants know full well – as the Complaint plainly states – that Plaintiffs' claims concern the legality of a pattern and practice of unlicensed

takings entailing the bundling of fifteen, twenty, or more works (in whole or in part) of Plaintiffs and other publishers into electronic anthologies of course readings. Each semester this conduct implicates thousands of unlicensed works assigned for hundreds of courses. The infringements identified in the Complaint are merely representative of Plaintiffs' works that have been caught up in this course of conduct as to which Plaintiffs seek injunctive relief.

As shown below, it is standard practice for courts to grant injunctive relief in copyright actions when a plaintiff has demonstrated (i) infringement of a representative sample of works emblematic of a pattern of unlawful practice and (ii) a likelihood that the infringement will continue absent an injunction. Plaintiffs have clearly established both elements here. Defendants have made no serious effort to dispute the evidence of the broad and systematic unlicensed copying of which Plaintiffs complain. Rather, Defendants claim – erroneously – that it falls to copyright plaintiffs to continually supplement their pleadings and disclosures to capture ongoing acts of infringement while defendants attempt to "clean up their act" solely as to newly alleged infringements. The law does not tolerate this type of gamesmanship.

The further notion that injunctive relief is inappropriate because the GSU officials and members of the Board of Regents who set and enforce copyright

policy at GSU, all of whom have admitted to their ability to remove infringing works from GSU systems, did not personally make any infringing copies is equally meritless.  Defendants' categorical refusal to take responsibility for infringing conduct carried out at GSU under their supervisory authority – while at the same time claiming *credit* for the supposedly curative but deeply flawed new copyright policy – ignores the black-letter rule that an employer is responsible for the infringing acts of its employees.  It also ignores a plethora of decisions holding that injunctive relief of the type sought by Plaintiffs is available against officials of state entities like GSU who are ultimately responsible for the unlawful conduct, whether or not they personally engage in it.

For these and the additional reasons set forth in Plaintiffs' papers, the Court should deny GSU's summary judgment motion.

## COUNTER-STATEMENT OF FACTS

On April 15, 2008, Plaintiffs served Defendants with a Complaint directed toward enjoining the systematic, widespread, and unauthorized copying and distribution of copyrighted works through a variety of university-controlled online systems for the distribution of course reading materials at GSU.  *See* Complaint for Declaratory Judgment and Injunctive Relief (Apr. 15, 2008) ("Complaint"),

Docket No. 1 ¶ 1.[1]  Plaintiffs had reason to believe, and the evidence subsequently

confirmed, that thousands of copyrighted works were being distributed digitally to

GSU students each semester without permission through GSU's so-called ERes

and uLearn computer systems.  *See*, *e.g.*, Plaintiffs' Exhibit ("Pl. Ex.") 54-59,

Docket Nos. 150-155; Pl. Ex. 21-22, Docket Nos. 145-146; Pl. Ex. 48-49, Docket

No. 149; Def. Ex. C to SOF, Docket No. 160 (ERes Reports); Plaintiffs' Local

Rule 56.1 Statement of Facts in Support of Their Motion for Summary Judgment

("Plaintiffs' 56.1 Statement"), Docket No. 141, ¶¶ 67-77, 96.

Rather than enlist dozens of additional publishers whose works had been

infringed to challenge conduct common to all, Plaintiffs came forward as litigants

and identified examples of their works that had been distributed electronically

without their authorization to GSU students via ERes and uLearn.  Plaintiffs

alleged throughout the Complaint that the specified infringements were merely

"representative samples" of a "pervasive, flagrant, and ongoing" pattern of

infringement of Plaintiffs' works.  *See* Complaint ¶¶ 1-3, 24, 26, 27.  Each of

Plaintiffs' claims for relief identified the actionable offense as Defendants'

"scanning, copying, displaying, and distributing Plaintiffs' copyrighted material –

---

[1] The First Amended Complaint, Docket No. 39, filed on December 15, 2008,
added as defendants members of the State Board of Regents but was in other
respects identical to the original Complaint.

*including but not limited to* each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis." *Id.* ¶¶ 48, 53, 59 (emphasis added).

## A.   The Infringing Practices at GSU Continue

Since the Complaint was filed, the widespread infringement at GSU has continued, including during each of the five semesters since February 2009 during which GSU's new copyright policy has been in place and including works owned or controlled by each of the Plaintiffs. *See, e.g.*, Pl. Ex. 54-59, Docket Nos. 150-55; Pl. Ex. 21, Docket No. 145; Pl. Ex. 48-49, Docket Nos. 148-149; Pl. Ex. 22, Docket No. 146; Def. Ex. C to SOF, Docket No. 160.  Although Defendants claim the new policy has "reduced dramatically" the amount of Plaintiffs' copyrighted material used by professors at GSU, *see* Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. S.J. Mem."), Docket No. 160, at 5, the evidence shows otherwise.

After the new policy was implemented, little if anything changed during the nearly three months that remained during the spring 2009 semester.  Infringing works were not reviewed or removed from GSU's systems but, rather, continued to be distributed to students without authorization or payment.  *See* Deposition of Laura Burtle ("Burtle Dep."), Docket No. 169, at 101:17-102:11; Deposition of Marjorie Denise Dimsdale ("Dimsdale Dep."), Docket No. 172, at 42:4-11, 136:4-

21.  Nearly 200 unlicensed excerpts from copyrighted works, which were accessed a total of more than 2,700 times, were posted to ERes during the 2009 "Maymester" – a three-week semester with only a few courses offered.  Pl. Ex. 48, Docket No. 149.

### B.     The Summer 2009 Semester

As of July 1, 2009 – just three weeks into the summer semester – more than 200 unlicensed excerpts, including works listed in Exhibit 1, already had been posted to the ERes system and accessed a total of more than 4,500 times.  Pl. Ex. 49, Docket No. 149.[2]  For instance, Professor Kruger posted the same excerpt from Oxford's *Awakening Children's Minds* identified in the Complaint, along with eighteen other course readings, for the course EPY7090.  *Id.*; Complaint ¶ 27, Ex. 1 at 2.  Likewise, Professor Kaufmann posted two excerpts from the second edition of *The SAGE Handbook of Qualitative Research* (pages 717-732 and 923-948), and Professor Esposito posted two other excerpts from the same edition.  Pl. Ex. 49, Docket No. 149.  Defendants' assertion that the second edition of *The SAGE Handbook* is no longer being distributed at GSU, and that no material from it was

---

[2] Defendants produced ERes reports dated July 1, 2009, September 15, 2009 (*see* Section C, *infra*), and February 18, 2010 (*see* Section D, *infra*), but none provided full statistics for the entire summer, fall, and spring semesters.

used during the summer 2009 semester, s*ee* Def. S.J. Mem. 7, 21, is false.[3]

### C.    The Fall 2009 Semester

The infringement continued during the fall 2009 semester, some seven

months after Defendants' new copyright policy took effect.  Three weeks into the

semester, approximately 1,000 unlicensed excerpts had been posted to ERes and

had been accessed more than 15,000 times.  Pl. Ex. 22, Docket No. 146.  The

report contains numerous examples of professors posting twenty or more excerpts

for a single course – for example, Professor Weiner (RELS4200), Professor Lasner

(PERS2001), and Professor Kahn (SOCI3216), *see id.* – and many professors

posted lengthy excerpts, some exceeding 100 pages.[4]

As for the Exhibit 1 works, among the 21 course readings Professor

Kaufmann posted to ERes for EPRS8500 were seven chapters from the third

edition of *The SAGE Handbook* and another chapter from the second edition – a

---

[3] Defendants acknowledge that Professor Esposito posted material from *The SAGE Handbook of Qualitative Research* (2d ed.) to ERes during the summer 2009 semester, but they claim Plaintiffs never asserted that Professor Esposito's use was infringing.  Def. S.J. Mem. 7 n.1.  Needless to say, Plaintiffs' claims are not limited to stopping *particular professors* from infringing their works.

[4] For instance, Professor Perkins distributed 111 pages from Vern L. Bengtson's *Handbook of Theories of Aging*, and Professor Kahn distributed nine selections totaling 148 pages from Michael Kimmel and Michael Messner's *Men's Lives* and 13 selections totaling 129 pages from Estelle Disch's *Reconstructing Gender: A Multicultural Anthology.  Id.*

total of 187 pages.[5]  *See id.* at 21, 22, 43, 52, 119, 126, 136, 139.  Professor Dixon

posted the 35-page seventh chapter of Oxford's *The Slave Community* for

AAS3000, and Professor Kruger once again posted for EPY7090 the same excerpt

of Oxford's *Awakening Children's Minds* used in previous semesters.  This

illustrates a common ERes practice: even when works are removed, they often

reappear on the system when a course is taught again in later semesters.  The ERes

reports reveal, for example, that Professor Kruger posted excerpts of *Awakening*

*Children's Minds* for EPY7090 during the fall 2007, fall 2008, spring 2009,

summer 2009, and fall 2009 semesters.  The work is not currently on the system

merely because Professor Kruger is not teaching EPY7090 this semester.[6]

---

[5] The extremely high page count of these excerpts belies Defendants' suggestion
that the takings from the *SAGE Handbook* are acceptable because they comprise
"only" 7.8% of what is a very long book.  *See* Def. S.J. Mem. 7.  Moreover, as
explained in the Declaration of Sara van Valkenburg, each chapter of the
*Handbook* is a stand-alone work-for-hire by a different author; GSU thus is
infringing 100% of each of the chapters its professors distribute.  *See* Pl. Ex. 3,
Docket No. 166 ¶¶ 20, 23.

[6] Similarly, when Professor Reimann taught POLS4256 in the fall 2006 and fall
2008 semesters, she provided students with copies of the 33-page second chapter
of Cambridge's *Democracy Without Competition*, as she did when she taught
POLS4255 during the fall 2007 semester.  Pl. Ex. 55, 59, 57, Docket Nos. 151,
155, 153.  Professor Reimann did not teach these courses in the fall 2009 or spring
2010 semesters but is scheduled to teach POLS4255 this fall.

**D.     The Spring 2010 Semester**

On the day they filed their summary judgment motion, Defendants emailed

Plaintiffs the latest ERes report for the spring 2010 semester (a document they

previously had refused to produce), which they cite repeatedly as evidence of their

supposedly reformed practices.[7]  The report reveals anything but reform; just a few

weeks into the semester, some 1000 unlicensed course materials already had been

posted to ERes and accessed over 25,000 times – including works from Exhibit 1,

new works owned by Plaintiffs and used for the first time, and a variety of other of

Plaintiffs' works that continue to be distributed semester after semester.  Def. Ex.

C to SOF, Docket No. 160.

For example, Professor Dixon has once again posted chapter 7 of Oxford's

*The Slave Community* to ERes for AAS3000; as of February 18, it already had

---

[7] The circumstances of the production of this document warrant mention.  On
September 10, 2009, Plaintiffs requested the latest ERes report for the fall semester
pursuant to Rule 26(e).  *See* Pl. Opp. Ex. 2.  Defendants responded that they had no
"continuing obligation to supplement their production with this report or with any
additional reports under Rule 26(e)" because "[t]here [had] not been a material
change in the documents that GSU has posted to ERes since the production of the
Maymester and Summer ERes reports."  *See* Pl. Opp. Ex. 3.  Defendants agreed to
produce one final report – the initial fall 2009 report described above – but
pointedly advised:  "We do not agree to the ongoing production of ERes reports."
*Id.*  It is thus ironic that Defendants harp on the requirements for timely production
and supplementation of discovery, *see* Def. S.J. Mem. 17-21, which they ignore
except when it suits their purposes.

been accessed 90 times.  *Id.*  Professor Meyers has posted chapters 2 and 3

(totaling 32 pages) from SAGE's *Feminist Media Studies* for JOU4780 along with

20 other readings; these chapters had been accessed 17 times.  *Id.*  Professors

Kaufmann and Esposito again have posted numerous chapters from the second and

third editions of *The SAGE Handbook of Qualitative Research*.  Among the 19

readings posted for EPRS8500, Professor Kaufmann has posted six chapters from

the third edition of *The SAGE Handbook* and one chapter from the second edition

(a total of 169 pages).  *Id.*  These readings were accessed 53 times in the month

and a half that they had been on the ERes system.  *Id.*  Professor Esposito has

posted two chapters from the third edition of this work and one chapter from the

second edition (a total of 96 pages) among the 26 excerpts she is providing for

EPRS8500.  She is also providing, *inter alia*, two chapters (totaling 40 pages) from

the second edition for EPRS8510, along with 14 excerpts of other works.  *Id.*

Defendants claim incorrectly that "no material was used" from the second

edition of the SAGE *Handbook* in the spring 2010 semester and that "Chapter[] …

38 ["Writing: A Method of Inquiry"] w[as] not included in Professor Kaufman[n]'s

course reading materials" during the spring 2010 Semester, Def. S.J. Mem. 8; *see*

*also* Defendants' Local Rule Statement of Material Facts to Which There Is No

Genuine Issue in Support of Their Motion for Summary Judgment ("Defendants'

L.R. 56.1 Statement"), Docket No. 160, ¶¶ 4, 35, 57, 66.  In fact, Professor

Kaufmann posted this chapter for EPRS8500.  Def. Ex. C to SOF, Docket No. 160,

at 130; Plaintiffs' Response to Defendants' Local Rule Statement (Apr. 5, 2010) ¶¶

4, 35, 57, 66.

In addition to the continued use of certain Exhibit 1 works, other works

owned or controlled by Plaintiffs either continue to be distributed or are being

distributed via ERes for the first time in the spring 2010 semester.  This not only

undermines the factual and legal inferences Defendants would have the Court

draw, but proves that nothing has fundamentally changed under the new policy;

Defendants' assiduous effort to limit the Court's purview to evidence of ongoing

copying simply of Exhibit 1 works reflects a transparent effort to hide the ongoing

fundamental flaws in GSU's practices.

a.    Cambridge Works Currently Being Infringed at GSU

Examples of Cambridge works currently being unlawfully copied and

distributed on ERes for the first time are *The Cambridge Companion to Don*

*Delillo* (Duvall, J., ed.), Chapters 9 and 12 of which Professor Kocela is providing

for ENGL8900, and Naoko Shimazu's *Japanese Society at War: Death, Memory*

*and the Russo-Japanese War,* Chapter 2 (pp. 55-85) of which Professor Youngs is

providing for HIST4990.  Def. Ex. C, Docket No. 160, at 48, 139.  Cambridge

owns or is the exclusive licensee of all rights in these works.  *See* Pl. Opp. Ex. 4

(Smith Supp. Decl.) ¶¶ 5-12.  Other Cambridge works posted to ERes for the first

time during the spring 2010 semester include *Critics of the Bible (Cambridge*

*English Prose Text), Freedom's Soldiers: The Black Military Experience in the*

*Civil War, On Religion: Speeches to its Cultured Despisers, The Cambridge*

*Companion to Karl Bath, The Ottoman Road to War in 1914*, and *Trade Warriors*.

Def. Ex. C to SOF, Docket No. 160.  The spring 2010 report also reveals the

distribution of other Cambridge works posted in prior semesters, including

*Rethinking Context*, *Language Acquisition and Conceptual Development, Reading*

*the West*, *A History of Feminist Literary Criticism*, *Cheap Print & Popular Piety,*

*The Rise of European Music,* and *On the Genealogy of Morality.*  *Id.*

        b.      <u>Oxford Works Currently Being Infringed at GSU</u>

Works owned by Oxford also are being distributed via ERes for the

first time during the spring 2010 semester.  For example, Professor Hartley has

posted pages 155-184 of Ann Cudd's *Analyzing Oppression* for PHIL4860, and

Professor Umoja has posted pages 15-41 of Colin Palmer's *The First Passage:*

*Blacks in the Americas* for AAS4620.  *Id.*  Oxford owns or is the exclusive licensee

of all rights in these works.  Pl. Opp. Ex. 5 (Pfund Supp. Decl.) ¶¶ 5-14.  Other

Oxford works posted to ERes during the spring 2010 semester include *A Brief*

*History of Neoliberalism, Finite and Infinite Goods: A Framework for Ethics,*

*Social Theory: Roots and Branches, The New Language of Qualitative*

*Methodology, The Craft of Inquiry*, *Approaches to Qualitative Research*, *The*

*Crusades, The Examinations of Anne Askew*, *Slave Religion*, and *Film Theory &*

*Criticism.*  Def. Ex. C to SOF, Docket No. 160; Pl. Opp. Ex. 5 (Pfund Supp. Decl.)

¶ 2.

        c.    <u>SAGE Works Currently Being Infringed at GSU</u>

New works by SAGE also have appeared on ERes during the spring 2010

semester.  Def. Ex. C to SOF, Docket No. 160.  These include Elizabeth

Higgenbotham and Mary Romero's *Women and Work: Exploring Race, Ethnicity*

*and Class,* Chapter 7 of which Professor Harvey posted for SOCI8900.  Def. Ex. C

to SOF, Docket No. 160 at 80.  SAGE owns and has registered the copyright to this

book, including the copyright to Chapter 7.  In addition, many SAGE works

previously posted to ERes are being distributed again this semester, including

*Applications of Case Study Research*, *Asian American Women and Men*, *Basics of*

*Qualitative Research*, *Educational Psychology in Context*, *Handbook of*

*Ethnography*, *Handbook of Feminist Research*, *Naturalistic Inquiry*,

*Phenomenological Research Methods*, *Symbolic Exchange & Death*, and *Visual*

*Methodologies.  See* Pl. Opp. Ex. 6 (van Valkenburg Supp. Decl.) ¶¶ 2-7.

## ARGUMENT

### I.   PLAINTIFFS HAVE PROVEN ONGOING ACTS OF INFRINGEMENT WARRANTING INJUNCTIVE RELIEF

Defendants have been aware from the outset that this case involves the legality of its ERes and uLearn systems and practices as they relate to the copying and distribution of Plaintiffs' and other publishers' works without permission.  Defendants nevertheless argue that because the extent of their takings of some of the specific works identified in the Complaint has diminished, Plaintiffs' entire case has been mooted.  Def. S.J. Mem. 15-27.  Defendants also suggest erroneously that Plaintiffs are barred from now providing information as to other, current infringements that might demonstrate the continued existence of a live controversy, lest Defendants be "ambush[ed]."  *Id.* at 17-20.  Defendants' effort to avoid accountability through such arguments is unavailing.

### A.   The Basis for This Lawsuit Has Been Well Known to Defendants

Plaintiffs commenced this lawsuit to redress the persistent infringement of their copyrighted works as part and parcel of GSU's "systematic, widespread, and unauthorized copying and distribution of a vast amount of copyrighted works" by means of its ERes and uLearn systems.  Complaint ¶ 1.  Defendants knew even before inception of this lawsuit that it involved a challenge to a pattern and practice of activity described by the Complaint as: "pervasive, flagrant, and ongoing," *id.*

¶ 2; entailing "hundreds of professors employed by Georgia State . . . compil[ing] thousands of copyrighted works" in digital format for students, *id.* ¶ 3; and cumulating, as of the commencement of the suit, in the unlicensed offering of "over 6700 total works . . . for some 600-plus courses," *id.*

    As is common in such types of litigation, Plaintiffs alleged particular instances of infringement, summarized in Exhibit 1 to the Complaint, as "*representative samples* of [Plaintiffs'] works that have been distributed digitally to students at Georgia State without permission." *Id.* ¶¶ 24, 26, 27 (emphasis added).  Consistent with the animating rationale for the suit, Plaintiffs sued to stop Defendants' "scanning, copying, displaying, and distributing Plaintiffs' copyrighted material – *including but not limited to* each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis." *Id.* ¶¶ 48, 53, 59 (emphasis added).  The prayer for relief similarly sought to enjoin Defendants from copying "any of Plaintiffs' copyrighted works."  Plaintiffs' litigation approach has remained consistent with this notice.[8]

---

[8] Subsequent filings and communications with Defendants' counsel stated explicitly that the suit was not limited to the Exhibit 1 works. *See, e.g.*, Memorandum of Law in Opposition to Defendants' Motion for Protective Order (Apr. 3, 2009), Docket No. 61, at 6, 17-18; Pl. Opp. Ex. 7 (June 30, 2009 letter to Defendants' counsel).

Any profession of surprise – let alone "ambush" – on the part of Defendants that this case involves more than just the 14 works and 38 excerpts identified in the Complaint is unfounded.  To be sure, Defendants continue to infringe a number of the Exhibit 1 works on which they focus, *see supra* pp. 6-12 and *infra* Part C; but the relief sought is far broader than a cleansing of those discrete titles from GSU's electronic course reading systems.  It is instead protection of <u>all</u> of Plaintiffs' copyrighted works – now existing or as may in the future be created – from the kinds of infringements exemplified in Exhibit 1.

### B.     Plaintiffs Are Entitled as a Matter of Law to the Broader Relief They Seek

It is "standard practice" for plaintiffs prosecuting suits involving infringing systems such as those utilized at GSU to identify a limited number of representative infringements as evidence of a larger pattern of ongoing violations. *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1315 (S.D. Fla. 2003).  Based on such examples, courts regularly enjoin defendants from infringing <u>any</u> of the plaintiffs' copyrighted works.  For example, in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007), a group of record-company and movie-studio plaintiffs appended to their complaint – exactly as Plaintiffs did here – exhibits identifying certain of their works found on the file-sharing systems of Grokster, StreamCast, and the other

755690.1

defendants, while making clear that the list was only a sample of the "massive" infringement taking place on those systems. *See* Pl. Opp. Ex. 8, *Metro-Goldwyn-Mayer Studios, Inc., et al. v. Grokster*, *Ltd., et al.,* Complaint for Damages and Injunctive Relief for Copyright Infringement (Oct. 2, 2001) at 2, 13. The court (after a remand from the Supreme Court) entered an injunction covering "all of Plaintiffs' copyrighted works whether now in existence or later created," not just the works in the exhibits attached to the complaint. *Grokster,* 518 F. Supp. 2d at 1229. In doing so, the court went out of its way to explain that the injunction was "entirely proper" and cited supporting case law to that effect from the Eighth, Ninth, and Eleventh Circuits. *Id.*[9]

This approach is indeed routine in the Eleventh Circuit. In *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984) – one of the cases cited in *Grokster* – a television station owner sued over the infringement of a single newscast but sought to enjoin the defendant from infringing any of its other newscasts. The Eleventh Circuit rejected the defendant's argument that the injunction could not sweep more broadly than the single work named in the suit

---

[9] *See also A&M Records, Inc. v. Napster, Inc.*, No. C 99-05183 MHP, 2001 U.S. Dist. LEXIS 2186, at *4 (N.D. Cal. Mar. 5, 2001), *aff'd*, 284 F.3d 1091 (9th Cir. 2002) (extending the injunction beyond the specific works identified in the complaint to all of the plaintiffs' works present on the Napster peer-to-peer file-sharing system).

and upheld this Court's authority to issue an injunction addressing all plaintiff works, including "unregistered works" and "works that have not been created." *Id.* at 1499 n.17; *Pac. & S. Co. v. Duncan*, 618 F. Supp. 469, 471 (N.D. Ga. 1985) (Evans, J.) (subsequently enjoining the copying of any of the plaintiff's broadcast news programs). The issue arose again in *Cable News Network, Inc. v. Video Monitoring Servs. of America*, 940 F.2d 1471 (11th Cir. 1991), where the panel overturned an injunction preventing the copying of any of CNN's daily newscasts in addition to the lone work identified in the complaint. *Id.* at 1486. The Eleventh Circuit, sitting *en banc*, vacated the panel decision, *see Cable News Network v. Video Monitoring Servs. of Am.*, 949 F.2d 378 (11th Cir. 1991), after which the district court reinstated the injunction covering all plaintiff newscasts. *See Cable News Network v. Video Monitoring Servs. of Am.*, 959 F.2d 188 (11th Cir. 1992).

District courts in this Circuit have followed suit. In numerous cases, the complaints have identified a representative sample of works infringed by the defendant, and the trial courts have issued broad injunctions covering all of the plaintiffs' works. *See, e.g., Warner Bros. Records Inc. v. Tait*, No.: 3:07-cv-134-J16-HTS, 2008 U.S. Dist. LEXIS 46034, at *9 (M.D. Fla. June 12, 2008) (enjoining the defendant from "directly or indirectly infringing Plaintiffs' rights under federal or state law in the Exhibit A Recordings and any sound recording,

755690.1

19

whether now in existence or later created, that is owned or controlled by

Plaintiffs"); *Sony BMG Music Entm't v. Villarreal*, No. 5:06-CV-323(CAR), 2007

U.S. Dist. LEXIS 883, at *10 (M.D. Ga. Jan. 5, 2007) (granting injunction "barring

Defendant from infringing upon all of Plaintiffs' copyrighted recordings, and not

just those eight recordings listed herein"); *Arista Records, LLC v. Butler*, No: 8:07-

cv-3-T-23EAJ, 2007 U.S. Dist. LEXIS 93807, at *12 (M.D. Fla. Dec. 21, 2007)

("Because the defendant's admissions show not only her liability for infringement

of the twenty-two infringed recordings but also a substantial threat of continuing

infringement, enjoining the defendant from further infringement of the [plaintiff's]

sound recordings, whether now in existence or later created, is appropriate.");

*Elektra Entm't Group Inc. v. Brimley*, No. CV-205-134, 2006 U.S. Dist. LEXIS

56798, at *11 (S.D. Ga. Aug. 15, 2006) (same).[10]

As noted, courts routinely extend copyright injunctions to include not only

all of the plaintiff's works currently in existence but also those not yet created.  In

the leading fair use decision involving educational coursepacks, the Sixth Circuit

---

[10] Recent cases have extended injunctive relief beyond the plaintiffs' works to
entire *categories* of copyright owners' works.  For example, in *Milk Money Music
v. Oakland Park Entertainment Corp.*, No.: 09-CV-61416, 2009 U.S. Dist. LEXIS
121661, at *7-10 (S.D. Fla. Dec. 10, 2009), the court enjoined the defendant from
infringing the copyrights of all members of ASCAP, the repertory of which
encompasses several million works.  *See also Joelsongs v. Shelley Broad. Co.*, 491
F. Supp. 2d 1080, 1086-87 (M.D. Ala. 2007) (same).

rejected the defendants' argument that the district court "exceeded its powers by enjoining them from reproduction of future copyrighted works," explaining: "We do not find the argument persuasive. The weight of authority supports the extension of injunctive relief to future works." *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392-93 (6th Cir. 1996). Similarly, in *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) – in which the complaint identified 12 sample excerpts of works copied by Kinko's without permission for use in coursepacks, *id.* at 1542 – the court entered an injunction covering "any work in which plaintiffs or any of them now own or hereafter acquire a copyright or exclusive right under copyright in the material copied." *Basic Books, Inc. v. Kinko's Graphics Corp. No. 89 Civ. 2807,* 1991 WL 311892, at *1 (S.D.N.Y. Oct. 16, 1991).[11]

Given this authority, the fact that certain of the Exhibit 1 works may not be offered on ERes during the spring 2010 semester has no bearing on Defendants' liability or on the scope of potential injunctive relief. To the contrary, the

---

[11] *See also Elektra Entm't Group, Inc. v. Jensen*, No. 1:07-CV-0054-JOF, 2007 U.S. Dist. LEXIS 60073, at *8-*9 (N.D. Ga. Aug. 16, 2007) ("In cases where there is such a history and threat of continued infringement, a district court ought not only to issue a broad permanent injunction protecting present works, but can protect works not yet created." (citations omitted)); *Sony Music Entm't v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999) (same).

undisputed facts confirm the "substantial threat" of continued infringement of Plaintiffs' works.  Were Defendants' successful in their attempt to limit the case to the Exhibit 1 works, Plaintiffs would be compelled to file a new suit for other of their works currently on the system and another action every time a new work of theirs appears on the GSU systems.  The broad injunctions entered in the above-described cases were crafted precisely to avoid such inefficiency.  As the *Arista Records* court explained, "because Plaintiffs continually create new works – works that would be vulnerable to infringement if the injunction were limited to existing works, and that would require new litigation to redress each future infringement – the requested injunction follows standard practice in copyright cases by covering works to be created in the future."  298 F. Supp. 2d at 1315; *see also Villarreal*, 2007 U.S. Dist. LEXIS 883, at *10 (same); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979) ("[I]t would be inequitable to grant the copyright owner . . . judgment on the issue of liability without enjoining the infringement of future registered works.  Otherwise, HBO would be required to bring a separate infringement action every time it register[ed] a new copyrighted work . . . .").

As Plaintiffs are not seeking damages for the copying of particular works, Defendants cannot claim any prejudice from application of this salutary rule.

Neither the Court's appraisal of the conduct at issue nor the nature of the

appropriate relief is affected by the precise number of Plaintiffs' works "at issue."

To the extent GSU's systematic practices violate copyright law, the appropriate

remedy is an injunction barring the Defendants from continuing to engage in those

practices across the range of Plaintiffs' works.

### C.     The Evidence Supports the Injunctive Relief Requested

####     *1.     Continuing Infringement of Plaintiffs' Exhibit 1 Works*

Since the Complaint was filed, extensive excerpts of works listed in Exhibit

1 to the Complaint have continued to be offered on the ERes system (and very

probably on uLearn as well) without authorization from the Plaintiffs,

notwithstanding Defendants' new copyright policy.  Indeed, while Defendants

proffer the spring 2010 ERes report as evidence of reformed practice as to Exhibit

1 works, what it actually shows is that excerpts of between one and seven chapters

(comprising as many as 169 pages) from no fewer than three different Exhibit 1

works have been combined with numerous other unlicensed works as ERes course

offerings – without any authorization from or compensation to Plaintiffs.

It is scarcely a defense to such continued acts of infringement to argue, as

Defendants do, that it is infringing *fewer* such works, or, for that matter, that

professors in the courses involved have cut back their unlicensed takings from

(taking Professor Kaufmann as an example) eight chapters of a given work to five chapters. Def. S.J. Mem. 21. Nor is the mere demonstration that one or more Exhibit 1 works have not been offered at all on EREs during the current academic term probative given that a number of the courses in which such works have been offered repeatedly are not being taught this term. *See supra* p. 9. Even, therefore, as to the unduly narrow group of copyrighted works that Defendants maintain should be at issue, GSU still earns a failing grade as to copyright compliance.

2.   *Other Ongoing Infringements of Plaintiffs' Works*

Throughout this litigation and continuing to this day, Defendants have infringed numerous other works of the Plaintiffs. Lest there be any doubt as to the ongoing and persistent nature of this infringing activity, in addition to works that have been infringed semester after semester, the supplemental declarations of SAGE's Sara van Valkenburg, Cambridge's Frank Smith, and Oxford's Niko Pfund identify several of their respective works that appear for the first time on the EREs report pertaining to course offerings for the spring 2010 semester. Far from demonstrating a cessation of infringing activity, this belatedly produced EREs report underscores that nothing has changed.

### D.    Defendants' Arguments Aimed at Excluding Relevant Evidence Are Baseless

Defendants' hypertechnical arguments that it is somehow procedurally unfair to hold them liable for infringement are utterly lacking in merit.  Plaintiffs have already addressed the ludicrous notion that *Plaintiffs* held back, and now seek to "ambush" the Defendants with, evidence of infringements beyond those identified in Exhibit 1 to the Complaint.  *See supra* n.7 (describing Defendants' own refusal to produce the spring 2010 ERes report until the day summary judgment papers were filed.)  More important, Defendants' own possession of the ERes reports – the best evidence of GSU's ongoing infringement of Plaintiffs' works – belies any assertion that Plaintiffs should be excluded, under Rule 37(c)(1), from presenting evidence as to infringements beyond those specified in Exhibit 1.  *See* Def. S.J. Mem. 18-20.  Defendants know from the reports exactly which works they are copying without authorization and cannot credibly claim surprise from allegations related to the contents of those reports.  That Plaintiffs did not transcribe each report into an updated interrogatory response is thus both "substantially justified" and completely "harmless."  *See* Fed. R. Civ. P. 37(c)(1); *id.* 26(e)(1)(A) (requiring supplementation of interrogatory responses only where information "has not otherwise been made known to the other parties during the discovery process"); *Hooker v. Fulton County*, No. CIVA105CV982GET, 2006

755690.1

25

WL 2617142, at *3-4 (N.D. Ga. Sept. 12, 2006) (same); Plaintiffs' Responses and

Objections to Defendants' Second Set of Interrogatories to Plaintiffs, No. 17

(identifying ERes and uLearn reports, course syllabi, and other documents by

Bates range as evidence of on-going infringement); *see also OFS Fitel, LLC v.*

*Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1365 (11th Cir. 2008) (finding

abuse of discretion in Rule 37(c) exclusion absent "willful or 'stonewalling'"

delay).

Moreover, for the reasons discussed above, it is legally irrelevant that

Plaintiffs formally failed to specify infringements of each of the hundreds of

additional works found to have been infringed over every academic term this case

has spanned or to provide additional discovery (copyright registration information,

for example) relating to these works.[12]   The relief Plaintiffs seek is not work-

specific but rather is addressed more broadly to GSU's *practices*.  Because

---

[12] The cases make clear that the registration status of such additional works is not
material to the issuance of injunctive relief.  Indeed, in the Eleventh Circuit the
works covered by an injunction *need not even be registered.  See Pac. & S. Co.,*
744 F.2d at 1499 n.17 ("[T]he statute provides for injunctions to prevent
infringement of 'a copyright,' not necessarily the registered copyright that gave
rise to the infringement action."); *see also Perfect 10, Inc. v. Amazon.com, Inc.,*
508 F.3d 1146, 1154 n.1 (9th Cir. 2007) ("Once a court has jurisdiction over an
action for copyright infringement under section 411, the court may grant injunctive
relief to restrain infringement of any copyright, whether registered or
unregistered." (citations omitted)); *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d
1345, 1349 (8th Cir. 1994).

Defendants' operation and supervision of the ERes and uLearn systems has facilitated the systematic infringement of Plaintiffs' works, a properly framed injunction should prevent the recurrence of such infringement across the range of Plaintiffs' existing and future works.  An injunction limited to the works enumerated in the Complaint would spawn duplicative lawsuits in which Defendants would be collaterally estopped from relitigating the facts presented here – a waste of litigant and judicial resources that plainly makes no sense.

Finally, even though Plaintiffs do not believe any amendments to their Complaint are or were necessary for the Court to address the ongoing infringement of works other than those identified in Exhibit 1, we note that courts in the Eleventh Circuit (and in the Fifth Circuit prior to the creation of the Eleventh) have interpreted Federal Rule 15(b) to allow pleadings to be deemed amended to conform to the evidence in a summary judgment proceeding.  *See*, *e.g.*, *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1036 n.11 (5th Cir. 1982) ("[T]he pleadings may be deemed amended to conform to the proof on a motion for summary judgment . . . ."); *Rodriguez v. Ritchey*, 556 F.2d 1185, 1190 n.14 (5th Cir. 1977) ("where a case is in summary judgment posture, the allegations of the complaint and answer should be deemed amended to conform to the proof under Federal Rule of Civil Procedure 15(b) before a court determines

whether to grant judgment."); *cf. Federal Deposit Ins. Corp. v. Senkovich*, 806 F. Supp. 245, 248 n.1 (M.D. Fla. 1992) ("The complaint can be deemed to be amended to reflect the Court's rulings and to conf[o]rm to the evidence, even in the absence of a formal amendment.").

### E.    The Eleventh Amendment Does Not Bar Evidence of Past Infringements

Defendants contend that the lack of any *current* infringement of many of the Exhibit 1 works – coupled with the claimed irrelevance, under the protections of the Eleventh Amendment, of Defendants' *past* transgressions – moots Plaintiffs' claims.  *See* Def. S.J. Mem. 16-27.  But Defendants cannot invoke the Eleventh Amendment to block evidence of prior infringement.  Although the Eleventh Amendment bars *relief* for past activities (which is why Plaintiffs seek only a prospective injunction), it does not speak to their *relevance* in identifying a pattern of ongoing infringement.  Past conduct remains highly probative of whether infringement is likely to continue, particularly when a defendant claims to have reformed its conduct.

To obtain an injunction, Plaintiffs must prove "a past infringement and a substantial likelihood of future infringement."  *New World Music Co. v. Tampa Bay Downs, Inc.*, No. 8:07-cv-389-T-33TBM, 2009 WL 35184, at *9 (M.D. Fla.

Jan. 6, 2009) (*quoting Pac. & S. Co., Inc.*, 744 F.2d at 1499); 17 U.S.C. § 502(a).[13]

Courts routinely view past behavior as probative of future conduct and of the

likelihood of ongoing infringement.  *See Lynch v. Baxley*, 744 F.2d 1452, 1456

(11th Cir. 1984) ("Past wrongs do constitute evidence bearing on whether there is a

real and immediate threat of repeated injury which could be averted by the issuing

of an injunction."); *Grokster*, 518 F. Supp. 2d at 1214 n.18 (explaining that "harm

suffered in the past may frequently be the best method for determining how future

harm would impact Plaintiffs" and issuing an injunction based in part on

"irreparable harm from past infringements").

　　　Nothing in this Court's June 19, 2009 decision on Defendants' protective

order motion, *see* Docket No. 111; Def. S.J. Mem. 4, is to the contrary.  The Court

recognized the relevance of Defendants' past behavior and merely foreclosed

*additional discovery* into past practice because the Court determined that Plaintiffs

already had "sufficient discovery to present evidence of past infringement in

---

[13] The Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S.
388 (2006), a patent case, does not make past infringement irrelevant.  *eBay* simply
held that a demonstration of infringement liability for past acts is not enough, *on its
own*, to justify an automatic presumption of irreparable harm.  *See Grokster*, 518 F.
Supp. 2d at 1216 ("we may still consider [prior infringement] to be a relevant
factor in our analysis under the four-factor [*eBay*] test") (citation omitted).

support of a request for an injunction." Order, Docket No. 111 at 5.[14]  Indeed,

"Only when the defendant can demonstrate that there is *no reasonable expectation*

*that the wrong will be repeated* are federal courts precluded from deciding the case

on mootness grounds." *Bourgeois v. Peters*, 387 F.3d 1303, 1309 (11th Cir. 2004)

(quoting *Christian Coalition v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004))

(emphasis added).  As this Court has explained, official capacity defendants "fulfill

their heavy burden of establishing that the alleged violation is reasonably likely not

to recur [when] the events that are alleged to have made the action moot have

completely and irrevocably eradicated the effects of the alleged violation." *Region*

*8 Forest Serv. Timber Purchasers Council v. Alcock*, 736 F. Supp. 267, 274 (N.D.

---

[14] *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999)
requires no different result.  The *Summit* court entered an injunction against
enforcement of an unconstitutional state statute based in part on evidence of past
statements by the state Attorney General that suggested he might continue to
enforce the statute – the very type of evidence Defendants suggest the court cannot
consider here.  *Id.* at 1339.  The *Summit* court's warning that a plaintiff cannot
"adjudicate the legality of past conduct" was merely a reiteration of the
requirement that plaintiffs must show the conduct is "ongoing and continuous" to
support an injunction.  *Id.* at 1337-40.  Nor does *Green v. Mansour*, 474 U.S. 64
(1985), stand for the broad proposition that "[a]ny award of declaratory relief
based on past conduct" would constitute an "end-run around" the Eleventh
Amendment.  Def. S.J. Mem. 16.  While the Court in that case refused to award
declaratory relief because the challenged law had been repealed, and there was "no
claimed continuing violation of federal law," 474 U.S. at 73, the Court explicitly
endorsed declaratory relief as to past violations if ancillary to a valid injunction
over "continuing and future violations" of the same nature.  *Id.* at 71-72, 74.

Ga. 1990) (Evans, J.) *aff'd in part, vacated in part by*, 993 F.2d 800.  Defendants

here have made no such showing.

Given the years of ongoing infringement at GSU – and the fact, as evidenced

by the spring 2010 ERes Report, that it continues to this day – the apparent

absence of some Exhibit 1 works from ERes during the current semester and a new

copyright policy do not come close to mooting Plaintiffs' case (even assuming the

works also are absent from uLearn, which Defendants have not demonstrated).

Rather than deploying adequate means and devoting adequate resources to

"completely and irrevocably eradicat[ing]" the pervasive infringement at GSU,

*Alcock*, 736 F. Supp. at 274, Defendants' briefing of this motion reflects their

effort to avoid legal accountability and instead to shift the blame for any

infringements onto their employees.[15]  In these circumstances, there is every

reason to be concerned that, absent appropriate injunctive relief, Defendants will

---

[15] The cases cited by Defendants involving revoked university guidelines, *see* Def.
S.J. Mem. 16-17, are inapposite, as they address *legal* First Amendment activities
threatened by *illegal university policies*; as such, complete relief was afforded
when the defendants revoked the policies.  This case, by contrast, focuses on
*illegal activity* that continues under an ineffective new policy; neither revocation
nor continuance of that policy will ensure (much less make likely) that the illegal
conduct will be remedied.  *See Comm. for the First Amendment v. Campbell*, 962
F.2d 1517, 1524 (10th Cir. 1992) (noting that an injunction can issue where there is
"some cognizable danger of recurrent violation," and "the character of past
violations" may be considered in making that determination).

"immediately return to [their] prior ways."  *Grokster*, 518 F. Supp. 2d at 1221.[16]

## II.   THE NAMED DEFENDANTS ARE LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT

### A.   Defendants Are Responsible for the Activities of GSU Employees Under Settled Principles of *Respondeat Superior*

Defendants make the frivolous argument that they cannot be held liable for

direct infringement because "no Defendant performed any act of alleged unlawful

copying."  Def. S.J. Mem. 29.  The doctrine of *respondeat superior,* however,

"enables the imposition of liability on a principal for the tortious acts of his agent,

and, in the more common case, on the master for the wrongful acts of his servant."

*Gen. Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 392 (1982); *see also*

Restatement (Third) of Agency § 2.04 (1999) ("An employer is subject to liability

for torts committed by employees while acting within the scope of their

employment.").  It is "quite clear . . . that the normal agency rule of respondeat

superior applies to copyright infringement by a servant within the scope of his

employment."  *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d

---

[16] *See also BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005) ("A private party's discontinuation of unlawful conduct does not make the dispute moot . . . . An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends."); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960) ("A trial court's wide discretion in fashioning remedies is not to be exercised to deny relief altogether by lightly inferring an abandonment of the unlawful activities from a cessation which seems timed to anticipate suit.").

Cir. 1963); *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 596 F. Supp. 28,

33 (S.D.N.Y. 1984) (holding defendant employer liable for copyright infringement

where the record established that its "employees, within the scope of their

employment and under the supervision of [defendant], undertook the activities

leading to the infringement of the copyright"); 3 MELVILLE NIMMER & DAVID

NIMMER, NIMMER ON COPYRIGHT, § 12.04[A][1] (2009) ("To the extent that the

infringer is the agent of another, the master can be held culpable for the

infringement.").[17]

It is undisputed that GSU employees are the literal copiers in this case.

Defendants acknowledge that the "professors," "instructors," "faculty," and

"employees of GSU's library" "save," "post," and "upload" copyrighted works on

the uLearn and ERes systems without authorization or payment.  Def. S.J. Mem.

29.  The duties of GSU instructors obviously include assigning readings to their

students, which they make available via uLearn and ERes, and GSU librarians

upload these materials in the course of discharging their responsibilities.

*Respondeat superior* establishes GSU's liability as the employer of the faculty and

---

[17] *Respondeat superior* is distinct from the "vicarious liability" announced in
*Shapiro, Bernstein*, which extended traditional employer liability to parties *outside*
the employment context.  *See A&M Records, Inc. v. Napster,* Inc. 239 F.3d 1004,
1022 (9th Cir. 2001) ("Vicarious copyright liability is an outgrowth of respondeat
superior" and "extends beyond an employer/employee relationship").

staff engaged in the unchecked and unauthorized reproduction and distribution of digital works.[18]  *Cf.* O.C.G.A. § 51-2-2 ("Every person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business . . . .").

While claiming credit for the new copyright policy, Defendants blame the continued infringement that has resulted from following that flawed policy on GSU professors and librarians (and even students).  *See* Def. S.J. Mem. 29.  But the mere existence of a policy that nominally prohibits the challenged conduct does not nullify liability; a principal (whether a state agency or not) cannot shift responsibility to an agent to avoid liability.  *See, e.g., City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1096 (7th Cir. 1992). Even express instructions by an employer not to commit wrongdoing do not exculpate it for misconduct of employees that occurs within the scope of their employment.  *See, e.g., Cummings v. Walsh Constr. Co.*, 561 F. Supp. 872, 879 (S.D. Ga. 1983) (citation omitted).  Any other rule would encourage employers to

---

[18] As we describe in the next section, *Ex parte Young* entitles Plaintiffs to seek injunctive relief against the named Defendants rather than against GSU to stop the infringing acts of GSU employees that give rise to the *respondeat superior* liability.  *See Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352 (S.D.N.Y. 2001), discussed at *infra* Section II.D.

willfully ignore rampant copyright infringement by their employees where the employer could point to a policy nominally forbidding such conduct.[19]

**B.   Plaintiffs Are Entitled To Seek Injunctive Relief Against Defendants Under *Ex parte Young***

The Eleventh Amendment neither alters the preceding discussion nor bars prospective injunctive relief against university officials for the acts of university employees.  In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that plaintiffs may sue state officials to enjoin violations of federal law even if the corresponding state entities are themselves immune from suit.  *Id.* at 159-60.  *Ex parte Young* enables individuals to vindicate their federal rights against state officials in federal courts where the sovereign immunity guaranteed by the Eleventh Amendment otherwise would bar their claims.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984); *see also Edelman v. Jordan*, 415 U.S. 651, 674-77 (1974).

Plaintiffs are not required to show that state officials named as official-capacity defendants *personally* violated federal law.  For example, in *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), the class-action plaintiffs complained that

---

[19] In the copyright context, courts have held that proprietors who hire performers remain liable for copyright infringement by the performers even where they expressly instructed them not to infringe.  *See, e.g.*, *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp 478, 482-83 (N.D. Ohio 1984).

the state provided inadequate funding for indigent legal services and named as

defendants the Governor of Georgia and the state judges responsible for providing

counsel to indigent defendants in Georgia courts. *Id.* at 1013-14.  The Eleventh

Circuit rejected the notion that an *Ex parte Young* defendant official must have

taken some action personally that violates the Constitution or federal law, holding

instead that "[p]ersonal action by defendants individually is not a necessary

condition of injunctive relief against state officers in their official capacity." *Id.*

Rather, "[a]ll that is required is that the official be *responsible for* the challenged

action." *Id.* (emphasis added). *See also Summit Med. Assocs., P.C.*, 180 F.3d at

1341 (plaintiffs properly named as defendants Alabama's Governor and Attorney

General and the District Attorney because they were authorized to enforce the

criminal liability provisions of the challenged statute).  In other words, even

putting *respondeat superior* aside and assuming the professors and librarians were

the only direct infringers at GSU, *Ex parte Young* would *still* allow a suit against

Defendants.

The only relevant question is whether the named defendants have the

*authority* to stop the violations about which Plaintiffs complain. *See, e.g.,*

*Sandoval v. Hagan*, 197 F.3d 484, 492, 500-01 (11th Cir. 1999) (holding that the

Director of the Alabama Department of Public Safety could face a lawsuit alleging

755690.1

36

unlawful promulgation of English-only drivers' license exams), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001); *Bd. of Pub. Educ. for Savannah v. State of Georgia.*, No. CV 490-101, 1990 WL 608208, at *4 (S.D. Ga. Sept. 24, 1990) (unpublished) (rejecting defendants' argument that the *Ex parte Young* exception applies only when the official is "personally or individually involved in the unconstitutional action") (citing *Luckey*, 860 F.2d at 1015-16). That fact, as explained below, is uncontested here.

Relying on *Ex parte Young*, courts have permitted a plaintiff to seek injunctive relief against an officer of a state university for ongoing violations of federal copyright law.  *See Salerno*, 191 F. Supp. 2d at 357.  The plaintiff in *Salerno* sued the chancellor of the City University of New York and the director of another state institute, alleging that the plaintiff's work was being infringed by employees of the university and the institute.  In response, both the chancellor and the director moved to dismiss on the ground that the plaintiffs had not alleged with specificity how the officers were connected with the enforcement of the alleged violations of the plaintiff's copyright.  *Id.* at 357.  The defendants also argued that *Ex parte Young* was unavailable because "the state is the real party in interest in this matter."  *Id.*  The court rejected both arguments, explaining that *Ex parte Young* only required the plaintiff to allege "*some connection* between the official

755690.1

37

and the enforcement of the illegal act" and noting that the defendant's argument ignored the whole point of *Ex parte Young*, which is to permit claims for prospective injunctive relief against state officials to ensure state compliance with federal law. *See id.* at 357 (emphasis added).[20]

This Court likewise should reject the assertion that Defendants' alleged lack of personal participation in copyright violations renders them improper defendants. All of the Defendants have admitted that they have the authority and/or duty to ensure, in one way or another, that GSU comes into compliance with federal copyright law. For example, Defendants have conceded that President Becker, Provost Palm, and Dean of Libraries Seamans each have the authority to direct library staff to block access to or remove specific infringing materials on the ERes system if required to do so by the Court. Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Admission, May 13, 2009 ("First RFA"), No. 7; Defendants' Amended and Supplemental Responses to Plaintiffs First Set of Interrogatories to Defendants, May 19, 2009 ("GSU Interrog. Response"), No. 4.

---

[20] Even outside the *Ex parte Young* context direct infringement has never been construed so narrowly as to allow everyone but the person who physically copies the material to escape direct liability. *See, e.g.*, *Monsanto Co. v. Campuzano (Nutrasweet Co.)*, 206 F. Supp. 2d 1252, 1266 (S.D. Fla. 2002) (explaining that establishing actionable copying does not necessarily require that the defendants "personally duplicated" the copyrighted works at issue).

Provost Palm, for example, is responsible for monitoring functions and officials of the University's academic administration and for "correct[ing] any conduct not consistent with the professional and legal fulfillment of the University's purposes and objectives," which obviously includes noncompliance with copyright law. *See* First RFA, Nos. 18-19. In short, *Ex parte Young* provides Defendants no shelter from liability.

## III.  DEFENDANTS CONTRIBUTORILY INFRINGE PLAINTIFFS' COPYRIGHTS

Although Plaintiffs need not rely on the doctrine of contributory liability to obtain injunctive relief against Defendants (who are directly liable for the infringing acts of GSU employees), it provides an alternative basis for liability. A contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (internal citation omitted). Defendants do not dispute their knowledge of the infringing activity. Rather, they claim that pursuant to the test outlined by the Supreme Court in *Grokster*, they have not induced GSU employees to infringe. Def. S.J. Mem. 32-35. But contributory copyright liability is not circumscribed by the *Grokster* inducement test (which, as we show below, does not apply here); it

attaches to a range of "material contributions," including Defendants' failure to use their authority to stop known infringement on campus systems they provide.

### A. Defendants Materially Contribute to Direct Infringement by GSU Employees

Providing "the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (rejecting the assertion that the defendant must have "expressly promoted or encouraged the sale of counterfeit products" and noting that "it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by [defendant]"). In *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), the Ninth Circuit held that the provision of a computer service used to store infringing material was sufficient to defeat the defendant's motion for summary judgment because "a reasonable trier of fact could conclude that AOL materially contributed to the copyright infringement by storing infringing copies of Ellison's works on its USENET groups and providing the groups' users with access to those copies." *Id.* at 1078. *See also Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670, 2006 WL 842883, at *15 (D.N.J. Mar. 31, 2006) ("Plaintiffs need only provide a central 'hub' for infringing activity to materially contribute to infringement.") (citation omitted).

755690.1

In addition, a computer system operator can be held contributorily liable if it has "*actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works." *Perfect 10, Inc.*, 508 F.3d at 1172 (internal citation omitted); s*ee also Napster, Inc.*, 239 F.3d at 1021 (imposing contributory liability where the defendant "fail[ed] to purge [infringing] material from the system"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995) (defendant's failure to "take simple measures to prevent further damage to plaintiff's copyrighted works" constitutes substantial participation).

These cases make clear that Defendants' provision of the "site and facilities" for the storage of infringing materials – that is, the ERes and uLearn systems – and their refusal to remove infringing works establishes the requisite material contribution. *See, e.g.*, Def. S.J. Mem. 1-2, 29; *see also* First RFA, Nos. 21, 36, 41-43, 45, 47-48, 58, 62-64.  Undisputed and/or stipulated evidence shows that the named Defendants are in position to order the removal of infringing materials from GSU systems, discipline violators of University policy, and ensure faculty and staff compliance with copyright law and with any court order in this case.  *See* First RFA, Nos.  3, 7, 9-10, 12 (Becker); Nos. 18-19, 22, 25-26, 28-30 (Palm); Nos. 59,

60 (Board of Regents); Deposition of Nancy Seamans ("Seamans Dep."), Docket

No. 174 at 10:2-3.

As operators of these computer systems, Defendants have refused to "take

simple measures to prevent further damage." *See Perfect 10*, 508 F.3d at 1172.[21]

Indeed, in the five semesters since the new GSU policy was instituted, library staff

have flagged as potentially infringing only *one* work out of thousands submitted

for posting on ERes.  Def. S.J. Mem. 35.  Since May 2003, GSU has not paid

anything to secure permissions for using Plaintiffs' or any other publishers' works

on the ERes system, and Defendants acknowledge that they have "no budget

dedicated to paying permissions fees" and "no system to recoup any costs for

buying such permissions from students." *Id.* at 40.  This conduct easily qualifies as

a "material contribution" to infringement.

The adoption of a new copyright policy – which allocates more discretion to

---

[21] The record reveals that despite its claims to the contrary, GSU has encouraged faculty to use the ERes system in lieu of other course reading distribution options, such as paper coursepacks, *specifically to circumvent payment of copyright permission fees*.  Pl. Ex. 16, Docket No. 144; Deposition of James D. Palmour ("Palmour Dep."), Docket No. 167, at 142:12-145:5.  As for uLearn, the facts show that instructors are encouraged to use uLearn to distribute reading materials (including required readings), and such distribution is among the most-used features of the uLearn system.  Deposition of Paula Christopher ("Christopher Dep."), Docket No. 168, at 24:14-22, 58:24-59:7; Deposition of Jason Reifler ("Reifler Dep."), Docket No. 175, at 40:15-22.

professors and less oversight to GSU administrators to block infringing copies than

in the past – hardly weighs in Defendants' favor.  Def. S.J. Mem. 34; Seamans

Dep., Docket No. 174, at 20:10-18; Deposition of William Potter ("Potter Dep."),

Docket No. 170, at 145:14-146:9 (delegation is a "fundamental element" of the

policy).  To the contrary, the abdication of responsibility under the new policy by

those who provide the "site and facilities" for infringement is the kind of material

contribution to infringement that courts have condemned repeatedly as

contributory infringement.[22]

> **B.**     ***Grokster* Does Not Define the Parameters or Limits of Contributory Infringement**

Defendants' reliance on *Grokster*, *see* Def. S.J. Mem. 33-35, is misplaced.

*Grokster*'s inducement rule does not apply to computer system operators like

Defendants who maintain an active and ongoing relationship with users of the

system.  *Grokster* involved defendants who distributed computer software that

allowed users to share copyrighted music.  *Metro-Goldwyn-Mayer Studios, Inc. v.*

---

[22] *Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794 (M.D. Fla. 2007), does not help Defendants.  Plaintiffs in that case tried to sue sellers of land later used to construct allegedly infringing buildings.  The court held that the land sale was a completely "separate and distinct transaction" from the infringing home construction and was "completed prior to the construction of homes on the land." *Id.* at 809.  By contrast, Defendants here not only supply the "forum" for infringement at GSU but maintain an ongoing, active relationship with the direct infringers, which gives them the ability to halt the subsequent infringement.

*Grokster, Ltd.*, 545 U.S. 913 (2005).  Once the software was distributed, however, the defendants had no knowledge of whether it was used to infringe – a fact they claimed absolved them of liability.  The Supreme Court disagreed, holding that the defendants could be held liable under an inducement theory given the evidence that they intended infringement to occur (whether they knew it would or not) and took "active steps" to induce it.  *Id.* at 936-41.  *Grokster* thus represented an extension of contributory liability to permit claims against a new generation of peer-to-peer software manufacturers who otherwise would have escaped liability; it did not supplant the "material contribution" standard or (either explicitly or implicitly) overrule the cases discussed above.

In *Flea World, Inc.*, 2006 WL 842883, at *14-16, for instance, the court rejected the contention that *Grokster* required the plaintiffs to show inducement in order to establish contributory liability.  "The fact that the corporate Defendants have such a high degree of control over the vendors," the court explained, "clearly distinguishes this case from *Grokster*."  *Id.* at *15.  Noting the "ongoing relationship between the direct infringer and the contributory infringer" at the time the infringing conduct occurred, the court applied the "material contribution" standard and held that the defendant flea market operators provided "a similar site and services to those considered in *Fonovisa*."  *Id.* at *15-16.

44

Because Defendants in this case (1) do not contest their knowledge of infringing activities on ERes and uLearn and (2) have acknowledged that they have the authority and ability to remove infringing material from those systems, Plaintiffs need not establish that Defendants intended to induce infringement.

## IV.   DEFENDANTS VICARIOUSLY INFRINGE PLAINTIFFS' COPYRIGHTS

Vicarious liability applies where the defendant has "the right and ability to supervise" infringing activity and "a direct financial interest" in the infringement. *HRH Architects, Inc. v. Lansing*, No. 1:08-CV-1479-RLV, 2009 U.S. Dist. LEXIS 46255, at *23-24 (N.D. Ga. Apr. 22, 2009) (citation omitted)). Because Defendants do not contest their "right and ability to supervise" the infringing ERes and uLearn systems, the only question raised by their motion with respect to vicarious liability is whether GSU has a "financial interest" in allowing its students, faculty, and staff to engage in large-scale copyright infringement of copyrighted works. The answer is clear: "Defendants admit that they encourage University System of Georgia institutions to utilize current technology for the educational environment *to attract and retain students . . . .*" First RFA, No. 62 (emphasis added).

While this admission should by itself end the inquiry, testimony from GSU witnesses further reveals the various ways GSU benefits financially from providing

students with free electronic course reading materials.  *See* Plaintiffs'

Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiffs'

S.J. Mem.") 46-47.  By shifting from licensed coursepacks to unlicensed ERes and

uLearn systems, GSU has avoided paying the cost of permission fees or passing

that cost on to its students.  The administrator responsible for processing

coursepacks and ERes postings at GSU explained the commercial advantage of this

"cost-cutting" strategy:  when students are forced to pay copyright royalties, they

complain to professors about the cost of coursepacks, and it is "important" to GSU

to provide students with services they "don't complain about" because they are

GSU's "customers."  Palmour Dep., Docket No. 167, at 142:16–145:5.  Although

GSU could allocate a portion of its budget to procure the requisite licenses, thereby

serving its "customers" while also complying with the law, it has never done so,

instead boasting that it has "no budget dedicated to paying permissions fees for

materials on electronic systems . . . ."  Def. S.J. Mem. 40.  This odd admission

underscores that GSU indeed "stands to profit" from a system that allows every

stakeholder in its scholarly community to blatantly disregard copyright laws.  *See*

*Oravec v. Sunny Isles Luxury Ventures*, 469 F. Supp. 2d 1148, 1173 (S.D. Fla.

2006), *aff'd*, 527 F.3d 1218 (11th Cir. 2008).  Funds that GSU otherwise might use

to pay Plaintiffs can be spent elsewhere.

755690.1

46

The benefits of unlicensed electronic distribution extend to GSU professors, who keep their students happy – and achieve higher course evaluations – by providing course readings for free.  Professor Belcher, for example, testified that placing chapters on ERes rather than requiring students to purchase the book helps her avoid "a common complaint on student evaluations," namely, having to purchase a book that is not assigned in its entirety.  Deposition of Diane Belcher ("Belcher Dep."), Docket No. 171, at 61:4-62:6.  Moreover, if both GSU and its students are unwilling to pay for books and permissions fees, using uLearn and ERes allows professors to avoid having to pay for permissions *themselves*.  *See* Def. S.J. Mem. 40 ("If faculty members chose to pay permission fees, those fees would have to come from the professors' or students' pockets.").

Defendants argue that "they do not profit from the use of the allegedly infringing materials" because they "do not charge for the use of the ERes or uLearn systems."  Def. S.J. Mem. 40.  But the financial-benefit requirement does not limit vicarious liability to those persons who engage in copyright infringement as an independent source of income.  Instead, courts have construed "profit" and financial benefit to mean "generalized benefit."  NIMMER, *supra*, § 12.04[A][2] (noting that courts have relaxed the "direct-ness" necessary for a finding of "direct financial benefit," instead allowing a "generalized" benefit, rather than one that is

"traceable directly to the infringement"); *see also Fonovisa, Inc.*, 76 F.3d at 263

(holding that a sufficient financial interest may exist where a proprietor of a flea

market received admission fees, concession stand sales, and parking fees even

though none of these benefits was directly linked to the infringing works sold at

the market).[23]   Certainly, offering a service that reduces the cost of reading

materials for (and complaints from) tuition-paying students falls within the ambit

of "financial interest" as envisioned by these authorities.

Not one of the cases cited by Defendants, *see* Def. S.J. Mem. 38, stands for

the proposition that the *only* means of obtaining a "direct financial benefit" is to

receive cash or its equivalent from infringement.   In fact, courts have rejected such

a constrained conception of financial benefit.   *See, e.g., Live Face on Web, LLC v.

Howard Stern Prods., Inc.*, No. 08-2579, 2009 WL 723481, at *3 (E.D. Pa. Mar.

17, 2009) (explaining that showing that potential customers were "drawn" is

"merely one way of showing direct financial interest").   Not having to pay for the

copyrighted works clearly is a financial benefit despite the absence of cash flow.

Plaintiffs' S.J. Mem. 44-47.

---

[23] The testimony of Dr. Crews as to the allegedly nonprofit purpose of the ERes
system and GSU's nonprofit status, *see* Def. S.J. Mem. 41, is irrelevant.   There is
no basis for the assertion that a nonprofit entity cannot obtain a financial benefit
from copyright infringement.   *See* Plaintiffs' S.J. Mem. 44-47.

## V.    PLAINTIFFS' PRAYER FOR RELIEF DOES NOT LIMIT THE COURT'S ABILITY TO FIND LIABILITY

Contrary to Defendants' assertion, neither Plaintiffs' claims, nor the ability of this Court to "consider" Defendants' liability as to those claims, are impaired by any lack of specificity in Plaintiffs' prayer for relief.  Plaintiffs do not dispute that "[e]very order granting an injunction . . . shall be specific in terms" and "shall describe in reasonable detail . . . the act or acts sought to be restrained." *Schmidt v. Lessard*, 414 U.S. 473, 475 (1974).  Defendant's argument fails, however, in that it conflates an eventual court *order* granting an injunction with Plaintiffs' *request* for injunctive relief, and then suggests erroneously that shortcomings in Plaintiffs' request foreclose the Court from determining Defendants' liability.

Federal Rule of Civil Procedure 65(d) does not impose a requirement of specificity on the request for relief.  In *United States by Clark v. Georgia Power Co.*, 301 F. Supp. 538, 543 (N.D. Ga. 1969), the court denied a motion to dismiss a complaint for lack of sufficient specificity as to the alleged act(s) to be enjoined or restrained, holding that "Rule 65(d) . . . refers to the form of an injunction or a restraining order, and is silent as to the specificity required in the complaint's request for injunction." *Id.*  Similarly, in *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007), the court explained that "[i]t is the court that will craft any remedy.  Only when that remedy has been determined may

755690.1

defendants contest its application on grounds of vagueness or some other violation

of Rule 65(d) of the Federal Rules of Civil Procedure."[24]  Even in *Schmidt*, on

which Defendants rely, the Court faulted the "brief judgment order" and "opinion"

of the court (<u>not</u> the appellant's request for injunctive relief) for its failure to

describe in "reasonable detail . . . the act or acts sought to be restrained.").  414

U.S. at 476.

Plaintiffs are more than willing to provide the Court with a detailed

recitation of the desired injunction whenever the Court would find it helpful, but

the fact they have yet to do so does not bear on the Court's ability to determine

Defendants' substantive liability.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' motion for summary judgment.

This 5th day of April, 2010.

/s/ John H. Rains IV

---

[24] In fact, "[w]hen a party seeks any relief that the court deems just and equitable, a court may grant injunctive relief that the plaintiff did not request specifically." *Kmetz v. State Historical Soc'y*, 304 F. Supp. 2d 1108, 1138 (W.D. Wis. 2004) (citing *Felce v. Fiedler*, 974 F.2d 1484, 1501 (7th Cir. 1992)); *see also Seymour v. Clemens & Green, Inc.*, Civ. A. No. 82-2237, 1984 WL 5440, at *1 (D. Kan. Mar. 13, 1984) (injunction proper where plaintiff merely asked the court to "grant such other and further relief as the court may deem to be just and equitable").

Edward B. Krugman
Georgia Bar No. 429927
John H. Rains IV
Georgia Bar No. 556052


BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
krugman@bmelaw.com
rains@bmelaw.com

R. Bruce Rich (*pro hac vice*)
Randi Singer (*pro hac vice*)
Jonathan Bloom (*pro hac vice*)
Todd D. Larson (*pro hac vice*)


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
r.bruce.rich@weil.com
randi.singer@weil.com
jonathan.bloom@weil.com
todd.larson@weil.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1.  This document was prepared in Times New Roman 14 point font.

<u>/s/ John H. Rains IV</u>
John H. Rains IV

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing **PLAINTIFFS'**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the

CM/ECF filing system which will automatically send e-mail notification of such

filing to the following attorneys of record:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Katrina M. Quicker, Esq.
> John P. Sheesley, Esq.
> Kristen A. Swift, Esq.
> C. Suzanne Johnson, Esq.
> Laura E. Gary, Esq.
> King & Spalding
> 1180 Peachtree Street
> Atlanta, Georgia 30309
>
> Mary Jo Volkert, Esq.
> Assistant S. Attorney General
> 40 Capitol Square
> Atlanta, Georgia 30334

This 5th day of April, 2010.

/s/John H. Rains IV
John H. Rains IV
