# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS, *et al.*,

Plaintiffs,

*-vs.-*

MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*,

Defendants.

Civil Action No.
1:08-CV-1425-ODE

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.        INTRODUCTION.......................................................................1

II.       PLAINTIFFS' ATTEMPT TO EXPAND THE CASE DOES NOTSHOW ONGOING INFRINGEMENT AND IS PREJUDICIAL. .......................................4

III. THE ADMINISTRATORS ARE NOT LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT..................................................................................8

IV.      THE ADMINISTRATORS ARE NOT LIABLE FOR INDIRECT COPYRIGHT INFRINGEMENT...........................................................11

    A. *Contributory Liability* ...........................................................11

    B. *Vicarious Liability* ................................................................15

V.       PLAINTIFFS STATE NO PLAUSIBLE CLAIM FOR THE REQUESTED INJUNCTION.....................................................................................19

VI.      CONCLUSION .........................................................................25

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  No. C99-05183 MHP, 2001 U.S. Dist. LEXIS 2186 (N.D. Cal. Mar. 5,
  2001), ..................................................................................................24

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...........................................................10

*Adams v. New York State Educ. Dept.*,
  No. 08 Civ. 5996, 2010 WL 1374675 (April 06, 2010) ....................20

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009)..........................................................................20

*Basic Books, Inc. v. Kinko's*,
  758 F. Supp. 1522 (S.D.N.Y. 1991) ...................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................20

*Bolivar v. Director of FBI*,
  846 F. Supp. 163 (D.P.R. 1994) .........................................................20

*Bowman v. Corr. Corp. of Am.*,
  350 F.3d 537 (6th Cir. 2003) ..............................................................19

*Burton v. City of Belle Glade*,
  178 F.3d 1175 (11th Cir. 1999) ..........................................................20

*Cable Nervo Network, Inc. v. Video Monitoring Serv. of Am.*,
  940 F.2d 1471 (11th Cir. 1991) ..........................................................24

*Cummings v. Walsh Constr. Co.*,
  561 F. Supp. 872 (S.D. Ga. 1983) ........................................................9

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ............................................................16

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ................................................................12

*In re Xerox Corp. Erisa Litig.*,
  483 F. Supp.2d 206 (D. Conn. 2007)...................................................20

*Kmetz v. State Historical Soc'y*,
  304 F. Supp. 2d 1108 (W.D. Wis. 2004) ............................................20

*Kmetz v. Vogt*,
  No. 03-C-107-C, 2004 WL 298102 (W.D. Wis. Feb 11, 2004)..........21

*Lineback v. Spurlino Materials, LLC*,
  546 F.3d 491 (7th Cir. 2008) .........................................................19, 20

*Lucas v. Hosp. Auth. of Dougherty County*,
   193 Ga. App. 595 (1989) ..............................................................................8, 9
*Lynch v. Ford Motor Co.*,
   Case No. 3:05-0955, 2007 U.S. Dist. LEXIS 12814 (M.D. Tenn. Feb. 22,
   2007) ..........................................................................................................19
*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ...............................................................................11, 12
*Orth-O-Vision, Inc. v. Home Box Office*,
   474 F. Supp. 672 (S.D.N.Y. 1979) .................................................................22
*Pacific and Southern v. Duncan*,
   744 F. 2d 1490 (11th Cir. 1994) ....................................................................24
*Payne v. Travenol Labs., Inc.*,
   565 F.2d 895 (5th Cir. 1978) ........................................................................19
*Pennington Seed, Inc. v. Produce Exch.No. 299*,
   457 F.3d 1334 (Fed. Cir. 2006) .....................................................................10
*Perfect 10, Inc. v. Amazon*,
   508 F.3d 1146 (9th Cir. 2007) .......................................................................12
*Piedmont Hospital, Inc. v. Palladino*,
   276 Ga. 612 (2003) ......................................................................................8
*Seymour v. Clemens & Green, Inc.*,
   Civ. A. No. 82-2237, 1984 WL 5440 (D. Kan. Mar. 13, 1984) .......................21
*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
   316 F.2d 304 (2d Cir. 1963) .........................................................................10
*Sony Corp. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)................................................................................ Passim
*Sony Discos, Inc. v. E.J.C. Family P'ship*,
   Civ. Act. H-02-3729, 2010 U.S. Dist. LEXIS 33435 (S.D. Tex. Mar. 31,
   2010) ..........................................................................................................12
*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*,
   596 F. Supp. 28 (S.D.N.Y. 1984) ..................................................................10

**STATUTES**

17 U.S.C. §107 ...................................................................................................2
17 U.S.C. § 107(4) .............................................................................................3
17 U.S.C. § 502 ................................................................................................21
42 U.S.C. § 2000e-5(g) .....................................................................................21

**OTHER AUTHORITIES**

2 Paul Goldstein, *Copyright* § 11.2.1.1 (2d ed. 2003) .........................................21

## I.   INTRODUCTION

Defendants' Motion for Summary Judgment ("Motion") demonstrates that the Administrators have committed no act of direct, contributory, or vicarious copyright infringement, and there are no ongoing or continuous acts of infringement.  First, Defendants have conducted no copying and Plaintiffs' attempt to impute a respondeat superior theory is contrary to the law.  Second, Plaintiffs dismiss the language of *Grokster*, ignore the teaching of *Sony*, and rely on non-controlling law to avoid a proper indirect infringement analysis.  Third, Plaintiffs improperly assert that the ERes and uLearn systems are more than "just an added benefit" that somehow create a "profit."  Fourth, past behavior, even if arguably "systematic" or "widespread," has changed.  Eleven of the 15 titles asserted by Plaintiffs are no longer used, including all seven Cambridge works.[1]

In their Response, Plaintiffs belatedly identified new works, declared (without analysis) any use of those works to be an "infringement" to support their allegations of continuing and ongoing infringement, and dismissed the undisputed

---

[1] Depending on how one counts individual works, the reduction varies.  If all of the works are viewed by title of the publication, the reduction is 11 works, from 15 cited in the Complaint to 4 remaining in the current ERes report.  If, however, one counts as Plaintiffs now suggest in their papers, such that the *SAGE Handbook*, *The Cambridge Companion to the Organ*, and *Materials Development in Language Teaching* as collective works made up of multiple independent works, then the number cited as at issue in the Complaint and in discovery totals 31 works, with only 9 remaining.  In either event, the reduction in works at issue is substantial.

evidence of changed behavior on grounds that the relief they seek is "not work-specific."   Plaintiffs also accuse the Administrators of failing to act responsibly.

Plaintiffs' belated identification of new works demonstrates their efforts to install a permission system that—like their unilateral designation of any unlicensed use of any works as "infringement"—fails to consider the public's right to make a "fair use."   The Copyright Act ("the Act"), in pertinent part, provides for "the fair use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."   17 U.S.C. §107.   Although this statutory exception to copyright infringement is expressly directed to the educational environment, Plaintiffs ignore it and ask the Court to do the same. Plaintiffs ask the Court to require *paid* publisher permission for all uses and to find that any uses "without authorization" or "unlicensed" constitute infringement. Neither the Act nor the facts support that approach.   Plaintiffs cannot ignore professors' statutory right to make fair use of Plaintiffs' materials.

Fair use determination is work specific.   The Act applies to the fair use "of *a* copyrighted work."   *Id.* (emphasis added).   One cannot address the legality of a given use without considering whether the fair use exception applies.   Proper consideration of Plaintiffs' claims for infringement thus requires a work-by-work and use-by-use analysis.   Such an analysis is precisely what the Policy provides.

2

Plaintiffs try to avoid that analysis because the relief they seek is "not work-specific but rather is addressed more broadly to GSU's practices."  (Pls.' Resp. (Dkt. 185) 26.)  That approach is not supported by the law.

When copyrighted material not owned by the professor or licensed by GSU is used, the professor conducts a fair use analysis using a comprehensive fair use checklist that is more detailed and thorough than the fair use checklist provided by Plaintiffs' licensing agent, the Copyright Clearance Center.  The evidence shows that if a given use is found to be *not* fair, the material is *not* used.

Plaintiffs ignore a proper fair use analysis for each copyrighted work because they cannot and have not met their burden regarding the fourth fair use factor: "the effect of the use upon the potential market for or value of the copyrighted work."   17 U.S.C. § 107(4).   In circumstances where the use is noncommercial, it is Plaintiffs' burden to demonstrate that the given use will harm the market for or value of the work.  *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984).  Plaintiffs have offered no credible evidence that the market for or the value of a given copyrighted work has been or will be negatively affected by any practice by any professor at GSU, particularly after implementation of the Policy.  And, Defendants have established that there is no effect.  The record is clear that if a proposed use is *not* fair, the work will not be used and no revenue will be lost for Plaintiffs.  Alternatively, if, through an

injunction imposed by this Court, Plaintiffs are allowed to insist upon a permission payment even though a use is a fair use, the work still will not be used, and an educational opportunity will be lost.  Granting Plaintiffs an injunction in this case would restrict the public's interest in the educational process at GSU, which furthers the Constitutional purpose of the free exchange of ideas and information.

Plaintiffs' comments notwithstanding, the Administrators have done and continue to do the right things.  Plaintiffs wrongly accuse the Administrators of avoiding responsibility and allowing or sanctioning "massive" infringement.  To the contrary, Defendants acted responsibly by creating, adopting, and actively implementing the Policy.  Yet, based on Plaintiffs' mischaracterizations, they request broad relief that would "enjoin Defendants from copying 'any of Plaintiffs' copyrighted works'" (Pls.' Resp. 16) without the exercise of a fair use determination.  Such a request is contrary to the law and the educational mission that professors fulfill.  Defendants' Motion should be granted.

## II.    PLAINTIFFS' ATTEMPT TO EXPAND THE CASE DOES NOTSHOW ONGOING INFRINGEMENT AND IS PREJUDICIAL.

Plaintiffs contend that GSU is operating "an in-house digital coursepack factory" (Pls.' Resp. 1), that Defendants were aware of the many new works recently identified by Plaintiffs, and that although Plaintiffs have raised issues regarding only a few, discrete works, they are entitled to an injunction that "enjoins

Defendants from copying 'any of Plaintiffs' copyrighted works.'" (*Id.* at 16.)

First, Plaintiffs have not offered a single digital coursepack or "electronic anthology" as an exhibit with their motion. (*See id.* at 1, 3.) Second, Plaintiffs ignore the distinct differences between paper coursepacks and electronic postings, which include that electronic postings are more restricted (password protected) and that paper coursepacks typically are sold for profit by a bookstore or copyshop (neither of which is true of electronic postings). Third, Plaintiffs ignore GSU's extensive licensing of publications that comprise a portion of the works posted on ERes and uLearn, including nearly 400 of Plaintiffs' publications. (Defs.' Add. Supp. SOF at Ex. A.) Plaintiffs' assertion that GSU is an "electronic coursepack factory" simply is an inappropriate exaggeration that misstates the facts.

Regardless, even Plaintiffs admit that since adoption of the Policy, there has been a change in behavior at GSU. (Pls.' Resp. 2 ("reduced copying"); *id.* at 31 ("absence of some works from Exhibit 1").) Of the 15 titles cited in the Amended Complaint, 11 were not used after adoption of the new Policy in February of 2009. (Defs.' Mot. Summ. J. ("DMSJ") at 20-27.) Before Summary Judgment briefing, Plaintiffs had only identified the works accused of infringement in their Complaint at Paragraphs 22-27, Exhibit 1, and their response to Interrogatory Number 2. (*See* Am. Compl. (Dkt. 39-1) ¶¶ 19, 22-27, Ex. 1; Defs.' SOF (Dkt. 160-4), Ex. D No. 2.) In particular, Cambridge identified seven publications by title, Oxford

5

identified four publications by title, and SAGE identified four publications by title.

Yet in their Motion for Summary Judgment and Statement of Facts, Plaintiffs identified an additional 17 works alleged to be infringed.  (*See* Defs.' Summ. of Accused Works, attached as Ex. A at 12-15.)  Not one of the belated new work allegations provides the copyright registration information, identifies the particular pages copied, or lists the title of the excerpt; 16 fail to describe the professor that allegedly copied the excerpts, 11 omit which Plaintiff allegedly owns the registration, and one neglects to identify the course and semester in which the excerpts were included.  (*See id.*)  Plaintiffs then identified an additional six works alleged to be infringed in their Supp. SOF.  (*See id.* at 16-17.)  Finally, an additional 66 works were included in their opposition and supporting declarations.  (*See id.* at 18-29.)  Not one of these new infringement allegations provides the copyright registration information.  (*See id.*)  Sixty-two fail to identify the particular pages copied or the title of the excerpt.  (*See id.*)  Fifty-one neglect to identify the acting professor or the course in which the excerpts were included.

Plaintiffs contend that Defendants made "false" allegations with respect to the second edition of The SAGE Handbook ("SAGE 1").  (Pls.' Resp. 7-8.)  That contention is without justification.  Before summary judgment briefing, Plaintiffs complained that *Professor Belcher's* use of excerpts from six chapters of SAGE 1—6, 16, 17, 19, 24, 25—in classes *AL8961* and *SOC18342* was copyright

infringement.  (*See* Ex. A at 1-2.)  Though Defendants stated that SAGE 1 was not used in Summer 2009, they *expressly acknowledged* in footnote 1 that SAGE 1 was used by a different professor in a different course than the one accused of infringement.  (DMSJ 7 & n.1.)  Now, Plaintiffs complain about *Professor Kaufman's* use of new chapters 27 and 36 as well as *Professor Esposito's* use of chapter 17 (described in Defendants' brief) and a new excerpt by Michelle Fine not part of the original six chapters.  (*See* Ex. A at 18-19.)

To support the use of SAGE 1 in Fall 2009, Plaintiffs include *Professor Kaufman's* use of a new chapter, chapter 28, in *EPRS8500*.  (*See id.* at 18.)  New allegations of SAGE 1 use in Spring 2010 include *Professor Esposito's* EPRS8500 use of chapter 6, *Professor Kaufman's* EPRS8500 use of chapter 28, and *Professor Esposito's* EPRS8510 use of chapters 31 and 35.  (*See id.* at 18-19.)  Apparently, Plaintiffs contend that any use of any of their works by any professor in any course constitutes copyright infringement.[2]  Defendants were without knowledge of these allegations.

Further, Plaintiffs' assertion that Defendants were well aware of the extensive scope of purportedly infringing activities is incorrect.  To the contrary,

---

[2] Plaintiffs' briefing also adds new Professors and new chapters to their copyright assertions of SAGE 2.  For example, *Professor Esposito's* EPS8280 use of two unidentified chapters (which Defendants are unable to locate) and *Professor Kaufman's* EPRS8500 use of the Introduction.

by letter dated July 1, 2009, Defendants' counsel stated:

> Oxford, Sage and Cambridge have provided only limited discovery and only limited testimony regarding the copyrights in the works that they allege are infringed by the defendants. We are relying on the limited discovery concerning the scope of your claims and the scope of this litigation.

(Defs.' Add. Supp. SOF at Ex. B, Attach. 1.)  After discovery has closed, Plaintiffs now seek to add in excess of 270 excerpts as alleged "infringements."  (Dkt. 142-3 ¶¶ 267-69.)  The timing of Plaintiffs' attempted addition is prejudicial if for no other reason than it precludes any meaningful, necessary fair use analysis.

## III. THE ADMINISTRATORS ARE NOT LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT.

Plaintiffs assert that the Administrators are liable for direct infringement under the doctrine of respondeat superior.  "[T]wo elements are required before an employer can be held liable under respondeat superior . . . not only must the employee be acting within the scope of employment, but the actions must also be in furtherance of the employer's business."  *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 616 (2003) (reversing lower court finding that a nurse, authorized to examine a patient, acted outside of the scope of employment when taking  the unauthorized action of fondling the patient's genitals).  A respondeat superior argument fails when unauthorized actions are taken by an employee that are not in furtherance of Defendant's business.  *See Lucas v. Hosp. Auth. of Dougherty*

*County*, 193 Ga. App. 595, 596 (1989) ("while [a nurse] may have been advancing the hospital's interests in giving *authorized* injections . . . she clearly abandoned the hospital's interests . . . when she gave unauthorized injections").

Defendants are not liable where an employee acts for "reasons disconnected from the *authorized* business of the master." *Id.* (emphasis added). Plaintiffs' own case law on this issue provides that the "test applied in determining liability is whether the act is within the class of acts that the agent or employee is *authorized* to perform." *Cummings v. Walsh Constr. Co.*, 561 F. Supp. 872, 879 (S.D. Ga. 1983) (denying motion for summary judgment where employees' actions arguably were outside of the scope of employment). Plaintiffs wrongly argue that Defendants are liable for any and all employee actions, whether authorized or not.

The Administrators have made it very clear that the unfair use of copyrighted materials is unauthorized and is not condoned in the furtherance of GSU's business; that is the entire purpose of the Policy. If a professor does not perform a fair use analysis (e.g., use the checklist), or intentionally performs it improperly, the professor is acting outside the scope of his or her employment. Any such unauthorized actions taken by professors in the face of the Policy fall well outside the bounds of respondeat superior.

Each of the three other cases Plaintiffs cite to support their respondeat superior argument applies an *indirect* infringement analysis, not the doctrine of

9

respondeat superior.  In *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001), the defendant's "failure to police" combined with its "financial[] benefit[]" led to the imposition of vicarious liability.  Similarly, in *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963), the defendant had "the power to police" and "a most definite financial interest."  And in *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 596 F. Supp. 28, 33 (S.D.N.Y. 1984), the court referred to the "principles of contributory infringement and respondeat superior" in finding indirect copyright infringement.  These cases do not address the issue here, where the purported infringements would have occurred outside of the scope of employment.

Plaintiffs' assertions that Defendants merely need the authority to stop the violations are likewise misplaced.  (Pls.' Resp. 36.)  It is true that *Ex parte Young* requires "some connection between the official and the enforcement of the illegal act." (Pls.' Resp. 36-7.)  But the showing of "a nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by *that* individual."  *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1342-43 (Fed. Cir. 2006) (emphasis added) (finding a University Official's duty to oversee a patent portfolio an insufficient nexus).

While Defendants have the authority to promulgate rules and regulations, the

10

act of committing copyright infringement is clearly outside the bounds of such rules and regulations.  Respondeat superior does *not* apply because a professor who purportedly commits copyright infringement is committing an *un*authorized act.

## IV.  THE ADMINISTRATORS ARE NOT LIABLE FOR INDIRECT COPYRIGHT INFRINGEMENT.

### A.  *Contributory Liability*

Contrary to Plaintiffs' assertion, the Supreme Court's decisions in *Sony* and *Grokster* indicate that providing software that is used to infringe a plaintiff's copyright without knowledge of the infringing activity and without intent to encourage or induce infringement is *not* enough to impute secondary liability for copyright infringement.  Providing a mechanism whereby a user can infringe is not enough to establish liability.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 9l3, 939 n.12 (2005).  And "material contribution" is not a path to liability outside of intentional encouragement or inducement.  *See Grokster*, 545 U.S. at 939 n.12 ("[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses.  Such a holding would tread too close to the *Sony* safe harbor.").  Plaintiffs' attempt to differentiate the present case from *Grokster*

11

based upon the "ongoing relationship" between the Administrators "with users of the system" is erroneous.

In *Grokster*, the Supreme Court described two paths to contributory liability: "[(1)] actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on [(2)] distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id*. at 942 (Ginsburg, J. concurring). Without showing an intent to induce or encourage infringement, a software distributor's "failure to take affirmative steps to prevent infringement, if the device otherwise [is] capable of substantial non infringing uses" is not enough to establish contributory liability. *Id.* at 939 n.12 (majority opinion).[3]

The ERes and uLearn systems are capable of noninfringing uses. The Administrators actively discourage infringement and have implemented mechanisms to foster copyright compliance. (Dkt. 160-2 at 31-37.) Under

---

[3] *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996), relied upon by Plaintiffs, pre-dates the Supreme Court's decision in *Grokster*. The Ninth Circuit's analysis in *Perfect 10, Inc. v. Amazon,* 508 F.3d 1146 (9th Cir. 2007), which indicates that liability can attach in the absence of encouragement or inducement to infringe, has not been adopted in the Eleventh Circuit, and this reasoning has been shunned by other courts. *See Sony Discos, Inc. v. E.J.C. Family P'ship*, Civ. Act.  H-02-3729, 2010 U.S. Dist. LEXIS 33435, at *8, 14 (S.D. Tex. Mar. 31, 2010) ("'Material contribution' must mean promoting and sustaining infringing activities, not merely providing a site on which some infringing activity may occur.").

*Grokster,* without encouragement or inducement, Defendants are *not* liable.

Furthermore, the actions that Plaintiffs allege constitute Defendants' "material contribution" to alleged infringement are limited to the following, none of which separately or cumulatively could amount to "material contribution":

- "Defendants' provision of the 'site and facilities' for the storage of infringing materials . . . and their refusal to remove infringing works." (Pls.' Resp. 41.)
- Library staff members' identification of only one work as a non-fair use. (*Id.* at 42.)
- GSU's purported failure to pay for permissions to post Plaintiffs' "or any other publishers' works" on the ERes system. (*Id.*)
- GSU's lack of a budget dedicated to paying permissions fees for electronic postings. (*Id.*)
- Defendants' encouragement of use of the ERes and uLearn systems. (*Id.*)

Some of these activities have nothing to do with any purported infringement, some are plainly incorrect, and others indicate that GSU is actively working to *prevent* use of the electronic systems for infringing purposes.

First, "provision of [a] 'site and facilities'" where purportedly infringing materials are stored does not establish contributory liability under *Grokster* and *Sony*. Second, the Administrators contest whether any infringing materials have been posted on ERes and uLearn and therefore have had no reason to remove any material from the systems. (Plaintiffs also ignore the Policy's requirement that all materials are removed from ERes once the course for which they were posted ends. (Additional          Guidelines          for          Electronic          Reserves,

http://www.usg.edu/copyright/additional_guidelines_for_electronic_reserves/.))

Perhaps most interesting is Plaintiffs' reference to library staffs' identification of a single work as potentially being a non-fair use. The fact that staff have identified *any* work as a potential non-fair-use, and on that basis have refused to post it, is evidence that staff review is *a control that is working.*

Plaintiffs' claim that GSU has failed to obtain permissions to use any of the materials on the electronic systems is flat wrong. GSU has permission to use materials that are linked from licensed databases or that are posted by professors that own the materials. Licensed works linked on ERes include works owned by Plaintiffs. (Defs.' Add. Supp. SOF at Ex. A.)

GSU's lack of a budget for paying for additional permissions evidences only one thing: GSU's repeatedly explained policy that the electronic distribution systems are to be used to distribute three types of materials: (1) materials owned by the professor posting the material; (2) materials that are already licensed by the university (i.e., for which permissions already have been paid); and (3) materials that fall under the fair use exception.

Finally, it is only logical that the Administrators encourage use of the electronic systems that they have put in place "to assure that students and teachers will have timely access to course-related library resources." (*See* Additional Guidelines                 for                 Electronic                 Reserves,

14

http://www.usg.edu/copyright/additional_guidelines_for_electronic_reserves/.)
Thus, Plaintiffs have pointed to no activity that even arguably could constitute a material contribution to alleged infringement.

Lastly, the parties agree that a necessary element to a contributory infringement claim is that the defendant had knowledge of infringing activity. The Administrators throughout this litigation have asserted that the uses of Plaintiffs' materials on ERes and uLearn are fair uses, which do not constitute copyright infringement. Plaintiffs' assertion otherwise is entirely unfounded, as evidenced by their failure to cite any source. (*See* Pls.' Resp. 45.)

Because the Administrators have not encouraged or induced any party to infringe Plaintiffs' copyrights, actively have discouraged infringement, and have put in place numerous mechanisms to foster copyright compliance, summary judgment on Plaintiffs' contributory infringement claims is appropriate.

**B.** ***Vicarious Liability***

Plaintiffs argue that the Administrators financially benefit because they encourage University System of Georgia institutions to utilize current technology to attract and retain students and the Policy means that no payment is made for permission to use some material on ERes and uLearn.

In order for alleged infringing activity to constitute a draw sufficient to amount to a financial benefit, the infringing activity must be more than just an

15

added benefit.  *See Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir. 2004).  The Administrators have explained that the uLearn and ERes systems exist "to assure that students and teachers will have timely access to course-related library resources."   (*See* Additional Guidelines for Electronic Reserves, http://www.usg.edu/copyright/additional_guidelines_for_electronic_reserves/.)  This enhancement to the educational experience at GSU, however, is but one of many uses of "current technology" at the university.  The library's electronic catalogue, wireless internet on campus, and use of multimedia in the classrooms are but a small example of other technological advancements used to enhance the educational experience.  Cumulatively, these and many other uses of current technology—along with top-quality faculty, interesting and diverse course offerings, flexible degree programs, convenient and high-quality facilities, and other advantages—are designed to attract and retain students.  The Administrators have *not* claimed that posting of unlicensed materials on ERes and uLearn (legally done under the fair use exception) is done in order to attract and retain students. (*See* Pls.' Resp. 45.)

In addition, contrary to Plaintiffs' unfounded assertion that "GSU has not paid anything to secure permissions for using Plaintiffs' or any other publishers' works on the ERes system" (Pls.' Resp. 42), GSU has in fact paid substantial sums to secure permissions to use many of the works posted on ERes (Defs.' Supp. SOF

(Dkt. 188) ¶ 29 (describing the millions of dollars spent on electronic database licensing)), including works owned by Plaintiffs (Defs.' Add. Supp. SOF, Ex. A.). Fair uses of materials, wherein permissions have not been sought, account for only one of three types of material posted to ERes and uLearn, which also include materials owned by the professors who are posting the material, and links to already-licensed electronic materials.   (*See* Course Reserves - Guidelines for Instructors, http://www.library.gsu.edu/reserves/instructorinfo.asp.).

Plaintiffs cannot reasonably argue that a few alleged non-fair use postings to electronic systems that otherwise contain substantial amounts of material for which permissions have been obtained and which amount to fair uses (and where those electronic systems constitute a small part of the broad range of educational opportunities and technological advancements at GSU) draw students to GSU.

Furthermore, the Administrators have explained how postings to electronic systems constitute no cost savings. (DMSJ at 37-42.)   ERes and uLearn provide professors and students with a convenient way to share educational information for the designated, limited purpose identified by the professor.   Unlike the University of Texas System to which Plaintiffs have pointed (Mariniello Report (Dkt. 131) Ex. B at 10), GSU's policy is to not pay for permissions where permission is not

required.[4]   Accordingly, there is no "savings" in GSU's failure to pay for additional materials posted on ERes and uLearn.

Plaintiffs' attempt to characterize GSU's use of ERes and uLearn as a shift from licensed coursepacks purely for financial savings is without merit. (*See* Pls.' Resp. 46.)   The Administrators explained in their Motion, in their response to Plaintiffs' Motion for Summary Judgment, and again above (and Plaintiffs elsewhere in their Response have acknowledged) that the purpose of ERes and uLearn is to provide professors and students with a convenient means to timely share educational information.   Furthermore, analysis of permissions required for printed coursepacks is entirely distinct from the electronic-posting scenario of the present case.   Printed coursepacks involve the copying and *sale* of the excerpted works.   The usual model is that the copyshop (Kinko's, for instance) and then the school bookstore profits on the sale.   These characteristics mean that the practice is to pay for permissions for all of the works included in the coursepack, even though copying and distribution of any individual excerpt in a given course may, outside of the printed coursepack environment, constitute a fair use.

For all of the above-reasons and those stated in previous briefs, Plaintiffs'

---

[4] Plaintiffs have noted that some university systems such as the University of Texas System pay for licenses to all materials they use without conducting any fair use analysis to determine if permissions fees are required by law. (*See* Mariniello Report (Dkt. 131) Ex. B at 10.)

claim for vicarious infringement necessarily fails.

## V.   PLAINTIFFS STATE NO PLAUSIBLE CLAIM FOR THE REQUESTED INJUNCTION.

Plaintiffs cannot obtain an injunction regarding GSU's present practices because the activities that Plaintiffs seek to enjoin have been completed. With the adoption and implementation of the Policy, there is no reasonable expectation that Plaintiffs will continue past practices. To the contrary, the undisputed evidence is that GSU professors and staff are performing a proper fair use analysis *before* any use is made. Actions for injunctive relief, "where the violation is not ongoing, and there is little danger of a recurring violation, are moot." *Lynch v. Ford Motor Co.*, Case No. 3:05-0955, 2007 U.S. Dist. LEXIS 12814, at *15 (M.D. Tenn. Feb. 22, 2007) (citing *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) (holding that an action for injunction is moot where it "has no impact on [the plaintiff's] legal interests").

Plaintiffs cannot obtain an order commanding Defendants to obey the Copyright Act generally. This Circuit repeatedly has held that "obey the law" injunctions are unenforceable. *See, e.g.*, *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 899 (5th Cir. 1978). Such injunctions are overbroad and increase the likelihood of unwarranted contempt proceedings. *See Lineback v. Spurlino Materials, LLC*, 546

F.3d 491 (7th Cir. 2008).

Plaintiffs suggest that, at the very least, their deficiently-pled claims should be allowed to proceed because they may—at a later date—be "willing to provide the Court with a detailed recitation of the desired injunction." (Pls.' Resp. 50.) With the heightened pleading standards now required by *Iqbal* and *Twombly*, Plaintiffs' generic request for injunctive relief cannot avoid summary judgment. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). In fact, several courts have dismissed actions *because* the request for injunctive relief was insufficient. *See Adams v. N.Y. State Educ. Dept.,* No. 08 Civ. 5996, 2010 WL 1374675, at *2 (Apr. 06, 2010); *In re Xerox Corp. Erisa Litig.,* 483 F. Supp.2d 206, 221 (D. Conn. 2007); *Bolivar v. Director of FBI*, 846 F. Supp. 163, 167-68 (D.P.R. 1994).

Authority cited by Plaintiffs to support their contention that pleading requirements do not apply to prayers for relief is flawed. *Kmetz v. State Historical Soc'y*, 304 F. Supp. 2d 1108 (W.D. Wis. 2004), was overturned based on the very proposition Plaintiffs cite. At first, the court allowed the plaintiff to proceed "only if [plaintiff] adduces sufficient evidence at trial to enable the court to describe the terms of the injunction with the specificity required in Fed. R. Civ. P. 65(d)." 304 F. Supp. 2d at 1138. Subsequently, the court agreed "that the complaint was not structured to meaningfully . . . give defendants fair notice of a claim" and granted a

20

motion for reconsideration. *Kmetz v. Vogt*, No. 03-C-107-C, 2004 WL 298102 (W.D. Wis. Feb 11, 2004).

Plaintiffs' citation to *Seymour v. Clemens & Green, Inc.*, equally is misplaced. Civ. A. No. 82-2237, 1984 WL 5440, at *1 (D. Kan. Mar. 13, 1984). There, the plaintiff sued under Title VII and neglected to specifically request injunctive relief in the complaint, but did ask that the court grant equitable relief. *Id.* The express language of the controlling statute—42 U.S.C. § 2000e-5(g)— saved the claim from dismissal because it provided that if discrimination is proved, "the court may enjoin the respondent . . . and order such affirmative action as may be appropriate, which may include . . . any other equitable relief as the court deems appropriate." *Id.* But for the statute, the claim would have been dismissed.

Plaintiffs' reliance on non-educational cases for relief beyond the timely-identified works is misplaced, and an injunction of the scope sought by the Plaintiffs would harm the public interest. Section 502 of the Copyright Act authorizes a court to issue injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. In the typical case, the copyright owner seeks an injunction restraining the defendant from copying or distributing copies of the specific work the defendant is accused of copying. If the copyright owner proves infringement, an injunction of this type routinely is granted. *See* 2 Paul Goldstein, *Copyright* § 11.2.1.1 (2d ed. 2003).

Plaintiffs rely on music and media copyright cases, coursepack cases, and cases regarding works not yet in existence to argue for an injunction regarding works not disclosed in discovery.  (Pls.' Resp. 17-23.)  None of these cases fit the instant factual scenario and they do not support the broad relief Plaintiffs seek.

In certain circumstances, courts have allowed a copyright owner to obtain broader relief.  For example, in *Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672 (S.D.N.Y. 1979), Home Box Office (HBO) filed a copyright counterclaim against Orth-O-Vision for the unauthorized retransmission of 12 of its movies.  474 F. Supp. at 684-85.  As a remedy, HBO sought an injunction that "would extend not only to future infringements of those twelve works but also to any future infringement of HBO's shows not yet published or copyrighted."  *Id*. at 685.  The court agreed with HBO that it had "equitable discretion" to issue an injunction of this broad scope, *id*. at 686, "[w]here, as here, liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains," *id.*

*Basic Books, Inc. v. Kinko's*, 758 F. Supp. 1522, 1542 (S.D.N.Y. 1991), followed the same rationale.  In that case, the plaintiff publishing houses filed suit against Kinko's, a photocopying service, which had been infringing the plaintiffs' copyrighted works through its business of making educational packets tailored to specific college courses.  *Basic Books,* 758 F. Supp. at 1526. Relying in part upon

the defendant's "historic willful blindness to the copyright law," and the nature of its business as a large-volume photocopying shop, the court issued an injunction that extended to "future copyrighted works." *Id*. at 1542.

*Orth-O-Vision* and *Basics Books* are representative of those cases relied upon by Plaintiffs to assert that, since Plaintiffs do not seek damages, Defendants are not prejudiced by the Court's extension of relief beyond the works in suit. In fact, nothing could be further from the truth.

Unlike the commercial "coursepack" cases represented by *Basic Books*, and the competitive environment of *Orth-O-Vision,* the instant case is wholly in the non-commercial, non-profit, public-educational environment. Here, no party makes money by copying. If a student prints an assigned excerpt on his home computer, that "copy" is made for class purposes and no money is exchanged. Plaintiffs contend that they incur damages from the loss of a sale. But as shown by the evidence, if the professor believed a permission fee would be necessary, the professor would not assign the reading in the first place.

Further, unlike the music or media cases, the typical student is not copying an entire work. Rather, the professor posts an excerpt to expose the student to a certain concept or methodology. (*See* Kaufman Decl. ¶ 3.) As explained in a recent posting regarding this case, GSU's practice is fairly typical of that at other institutions: usually relatively small portions of works are posted for student use.

(*See*    http://chaucer.umuc.edu/blogcip/collectanea/2010/02/no_fair_use_for_e-reserves_or.html.)   There is no evidence that a GSU professor has provided access to or a person has copied an entire book.  That is not the fact pattern in Orth-O-Vision[5] where copies of the entire work were made by a single person who then would seek to parse them and resell or otherwise profit from the individual parts.

Most importantly, unlike the cases cited by Plaintiffs, where the infringers used entire works and/or used them for commercial purposes, GSU professors with direct knowledge of the use to be made complete a documented fair use analysis *before* making any copies.  Professors thoroughly consider fair use and, only after that consideration is complete, authorize access to the subject work.  Such a fair use analysis must be performed for each and every use.  No case cited by Plaintiffs provides such protection against infringement.

In effect, the publishers are attempting to deprive professors of their right to make fair use of copyrighted works and seek to obtain a permission fee where none is necessary.  Unlike an individual who makes repetitive, identical use of multiple works as in Plaintiffs' cited cases, each professor's use varies.  Here, each use, even if made of the same work, is different.  Unlike the cases cited by Plaintiffs,

---

[5] This includes *Pacific & Southern v. Duncan*, 744 F.2d 1490 (11th Cir. 1994), *Cable Nervo Network, Inc. v. Video Monitoring Service of America*, 940 F.2d 1471 (11th Cir. 1991), and *A&M Records, Inc. v. Napster, Inc*., No. C99-05183 MHP, 2001 U.S. Dist. LEXIS 2186, at *4 (N.D. Cal. Mar. 5, 2001).

use of copyrighted material in the nonprofit, non-commercial, education environment cannot be generalized or "pigeon-holed," and thus is not reasonably susceptible to sweeping injunction.

GSU is a large state university that educates students from all walks of life. Students attend GSU to learn and benefit from the free exchange of ideas and information.   In this academic environment, the Plaintiff publishers seek an injunction that would preclude any copying of Plaintiffs' copyrighted material without regard to the nature of the use or a fair use analysis.   (*See* Am. Compl. Prayer for Relief; Pls.' Resp. 16.)   Such an injunction would disrupt the learning process at GSU, and cause greater harm to the public that has a vested interest in the educational process at GSU than any alleged harm to the Plaintiffs arising from the continued practices at GSU in accordance with the Policy.

## VI.   CONCLUSION

For these reasons, the Court should grant Defendants' Motion for Summary Judgment.

Respectfully submitted this 26th day of April, 2010.

THURBERT E. BAKER
Georgia Bar No. 033887
Attorney General

R. O. LERER
Georgia Bar No. 446962
Deputy Attorney General

DENISE E. WHITING-PACK
Georgia Bar No. 558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General
KING & SPALDING LLP

*/s/ Katrina M. Quicker*
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Katrina M. Quicker
Georgia Bar No. 590859
Kristen A. Swift
Georgia Bar No. 702536

**Attorneys for Defendants**

26

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing Reply Brief in Support of Defendants' Motion for Summary Judgment complies with the font and point selections approved by the Court in L.R. 5.1B.  The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Katrina M. Quicker*
Katrina M. Quicker
(Ga. Bar No. 590859)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAMBRIDGE UNIVERSITY PRESS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:08-CV-1425-ODE |
| MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*, | § § § | |
| Defendants. | § § § | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 26th day of April, 2010, I have electronically filed the foregoing Reply Brief in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Katrina M. Quicker*
Katrina M. Quicker
  (Ga. Bar No. 590859)