# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS,
OXFORD UNIVERSITY PRESS, INC.,
and SAGE PUBLICATIONS, INC.,

                    Plaintiffs,

       - v. -

MARK P. BECKER, in his official
capacity as Georgia State University
President, et al.,

                    Defendants.

Civil Action No. 1:08-CV-1425-ODE

# PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION AND
# SUPPORTING MEMORANDUM OF LAW

811163.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

PROCEDURAL HISTORY ...................................................................2

ARGUMENT.........................................................................................4

    I.      DEFENDANTS CAN BE HELD LIABLE UNDER *EX
            PARTE YOUNG* WITHOUT REFERENCE TO DOCTRINES
            OF SECONDARY COPYRIGHT INFRINGEMENT .....................4

           A.    GSU Is Liable for Infringing Conduct by Its Employees
                Within the Scope of Their Employment Pursuant to the
                Doctrine of Respondeat Superior................................................7

           B.    Courts Hold "Official Capacity" Defendants Liable for
                Unlawful Acts Committed Within the Scope of Their
                Supervisory Authority.............................................................12

           C.    The Record Demonstrates Both Significant Direct
                Infringement by GSU Employees and the Conceded
                Responsibility of the Named Defendants ................................16

    II.     THE SCOPE OF THE FURTHER PROCEEDINGS
            ORDERED BY THE COURT SHOULD BE EXPANDED TO
            ENCOMPASS UNAUTHORIZED CONDUCT IN 2009 AND
            2010 BEYOND THAT DETAILED IN PLAINTIFFS'
            AUGUST RESPONSE.................................................................19

           A.    Plaintiffs' Response to the August Orders Was
                Necessarily Limited by Shortcomings in GSU's
                Production as to the Identified Academic Terms That
                Easily Can Be Rectified ..........................................................20

           B.    Instances of Infringement Have Continued Beyond the
                Semesters Referenced in the August Order .............................22

CONCLUSION....................................................................................25

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Bd. of Pub. Educ. for Savannah v. State of Georgia.*, No. CV 490-101,
1990 WL 608208 (S.D. Ga. Sept. 24, 1990)............................................................14

*Gordon v. Nextel Comm.*, 345 F.3d 922 (6th Cir. 2003) ................................. 10-11

*Harper & Row Pub. Inc. v. Nation Enters.*, 471 U.S. 539 (1985)............................8

*Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*,
533 F.3d 1287 (11th Cir. 2008) ..........................................................................8, 12

*Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988) ......................................... 13-14

*Pinkham v. Sara Lee Corp.*, 983 F.2d 824 (8th Cir. 1992)....................................11

*Playboy Enters., Inc. v. Starware Publ'g Corp.*, 900 F. Supp. 433
(S.D. Fla. 1995)......................................................................................................11

*Preserve Endangered Areas of Cobb's History (P.E.A.C.H.) v. United States
Army Corps of Engineers*, 916 F. Supp. 1557 (N.D. Ga. 1995), *aff'd*,
87 F.3d 1242 (11th Cir. 1996) ...........................................................................1, 6

*Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381
(6th Cir. 1996)..........................................................................................................8

*Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352 (S.D.N.Y. 2001)....................15

*Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999), *overruled on other grounds by
Alexander v. Sandoval*, 532 U.S. 275 (2001)........................................................14

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963)....... 9-11

*S. Bell Tel. and Tel. Co. v. Associated Tel. Directory Pub.*, 756 F.2d 801
(11th Cir. 1985)................................................................................................ 10-11

*Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir. 1987)...................9

*Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999)........ 13-14

*Superhype Pub. Inc., v. Vasiliou*, 838 F. Supp. 1220 (S.D. Ohio 1993) ...............11

*Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 596 F. Supp. 28
(S.D.N.Y. 1984), *aff'd*, 778 F.2d 89 (2d Cir. 1985) ......................................... 9-10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

## STATUTES, RULES, AND OTHER AUTHORITIES

17 U.S.C. § 101 ............................................................................................7

O.C.G.A § 51-2-2 ...................................................................................... 8-9

N.D.GA. L.R. 7.2(E) ....................................................................................1

3 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 12.04[A][1]
(2009) ...................................................................................................7, 9, 11

RESTATEMENT (THIRD) OF AGENCY § 2.04 (1999)....................................8

**INTRODUCTION**

Plaintiffs Cambridge University Press ("Cambridge"), Oxford University Press, Inc. ("Oxford"), and SAGE Publications, Inc. ("SAGE") (collectively, "Plaintiffs") submit this motion for partial reconsideration of the Court's September 30, 2010 Order and supporting memorandum of law pursuant to L.R. 7.2(E).  That rule authorizes reconsideration where necessary to correct clear error or prevent manifest injustice.[1]  Two aspects of the Order warrant reconsideration under this standard.

First, because the Order erroneously rejected Plaintiffs' argument that employers are strictly liable for direct copyright infringements committed by their employees under respondeat superior – both generally and as applied to the official-capacity defendants in this action – the Court improperly dismissed Plaintiffs' direct infringement claims and limited Plaintiffs to proving their case by establishing liability under a contributory infringement theory.

Second, the Order directed further proceedings on the issue of potential "ongoing and continuous" infringements by Defendants, including by way of further discovery.  At the same time, the Order limited the universe of evidence

---

[1] *See, e.g., Preserve Endangered Areas of Cobb's History (P.E.A.C.H.) v. United States Army Corps of Engineers*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996).

that Plaintiffs may use to make that showing to claimed infringements identified in

response to the Court's August 11, 2010 and August 12, 2010 Orders, which only

asked for information during three terms in 2009 and gave Plaintiffs ten days to

identify such infringements.  Yet there is reason to believe that not only were there

additional infringements during those terms, but also that "ongoing and

continuous" infringements continued during more recent academic terms,

including Spring 2010  (evidence as to which was introduced by Defendants

themselves as part of their summary judgment filings).  Consequently, Plaintiffs

seek an expansion of the permissible scope of evidence and discovery relating

thereto to encompass additional conduct during 2009 as well as conduct in 2010 in

order to give the Court a more complete picture of the infringing activities that lie

at the heart of this lawsuit.

## PROCEDURAL HISTORY

In this copyright infringement case, Plaintiffs, leading academic publishers,

have alleged that Georgia State University ("GSU") employees have infringed the

copyrights in Plaintiffs' works on a continuing and systematic basis.  In support of

that position, Plaintiffs moved for summary judgment against Defendants –

officials at GSU responsible for and capable of halting the complained-of

infringements.  Defendants filed a cross-motion for summary judgment and, as part

811163.1

of that motion, appended a report listing activity on the GSU ERes system during the Spring 2010 semester.  Defendants' opposition to Plaintiffs' summary judgment motion also was accompanied by five declarations from GSU professors (the "Professor Declarations") describing their experience under the newly adopted GSU copyright policy, including during the Spring 2010 semester.

Following the summary judgment briefing, the Court issued orders on August 11 and August 12, 2010 that directed the Plaintiffs to file within ten days detailed information about any alleged infringements that occurred after the implementation of GSU's new copyright policy and that were reflected in GSU courses taught during the 2009 Maymester or Summer 2009 or Fall 2009 terms and directed Defendants to file a response ten days later.  Order, Docket No. 226. Plaintiffs filed the information they were able to collect in the time allowed on August 20, 2010.  Defendants filed responses to Plaintiffs' submissions on August 31, 2010 and September 15, 2010.[2]

On September 30, 2010, the Court denied Plaintiffs' summary judgment motion.  *Cambridge Univ. Press, et al. v. Mark P. Becker, et al.*, No. 1:08-CV-

---

[2] Hereinafter Plaintiffs' Response to the August Orders, Docket No. 228, is referred to as "Plaintiffs' Response" or "Plaintiffs' Supplemental Filing"; Defendants' Response, comprising Docket Nos. 230 and 233, is referred to as "Defendants' Response," and the parties' collective responses to the August Orders are referred to as the "August Submissions."

811163.1

1425-ODE (Sept. 30, 2010) ("Order") at 31.  Relying in part on the Professor Declarations, the Court granted Defendants' motion as to Plaintiffs' direct and vicarious infringement claims but denied it as to Plaintiffs' contributory infringement claims, holding that the record as developed did not speak to the question of "whether in practice the current [copyright] policy is encouraging improper application of the fair use defense."  *Id.* at 29-30.

The Court explained that "in order to show that Defendants are responsible for the copyright infringement alleged in this case, Plaintiffs must show that the 2009 Copyright Policy resulted in ongoing and continuous misuse of the fair use defense."  *Id.* at 30.  To do so, the Court instructed Plaintiffs to put forth evidence of "a sufficient number of instances of infringement" of their copyrights.  *Id.* However, the Court limited the scope of further proceedings to the lists of claimed infringements produced in response to the Court's August 11, 2010 and August 12, 2010 Orders.  *Id.*

## ARGUMENT

## I.   DEFENDANTS CAN BE HELD LIABLE UNDER *EX PARTE YOUNG* WITHOUT REFERENCE TO DOCTRINES OF SECONDARY COPYRIGHT INFRINGEMENT

As the Court recognized in its September 30 Order, Plaintiffs' First Amended Complaint alleged that GSU employees infringed Plaintiffs' copyrights

"by scanning, copying, displaying and distributing Plaintiffs' copyrighted material – including but not limited to each copyrighted work identified on Exhibit 1 – on a widespread and continuing basis via the Georgia State website and other Georgia State computers and servers."  Order at 16 (quoting Docket No. 39 at 29).  In their summary judgment briefing, Defendants sought to evade liability for these infringements on the ground that the individual GSU officials and Regents sued in their official capacities did not personally engage in the unauthorized copying and distribution of Plaintiffs' works.

The Court recognized that "the Board of Regents has general supervisory authority over Georgia State's operations and elects the President of Georgia State."  Order at 7 (citing Defendants' Response to Plaintiffs' Statement of Facts, Docket No. 187, at 10-11).  The Court also found that "Georgia State/Defendants have the right and ability to supervise the professors, instructors, and other employees," Order at 20, and it is undisputed that certain of the other named defendants have supervisory authority over the staff of the GSU library and are responsible for correcting noncompliance with federal copyright law.  Defendants' Response to Plaintiffs' Statement of Facts, Docket No. 187, at 10-11.  Given these facts, Plaintiffs pointed to the doctrine of respondeat superior, as well as to a related line of cases under *Ex parte Young* involving defendants sued in their

official capacities, as authority for holding Defendants liable for the infringing acts

of GSU employees despite the fact that the named defendants were not actually

pressing the button on the scanner.  *See* Plaintiffs' Memorandum of Law in

Opposition to Defendants' Motion for Summary Judgment, Docket No. 185 ("Pl.

Opp. Mem."), at 32-39.

In its September 30 ruling, the Court stated correctly that GSU would be

liable for copyright infringement under the doctrine of respondeat superior if two

showings are made with respect to the claimed infringements by GSU employees:

"(1) there must be an employer/employee relationship; and (2) the employee must

be acting within the scope of his/her employment."  Order at 17.  The Court also

made a factual finding that "any employee who partook in any alleged

infringement was acting within the scope of his/her employment," Order at 18.

Although this finding alone is legally sufficient to establish Defendants' liability

for direct infringement, the Court nevertheless held that Defendants "cannot be

held directly liable for actions of the individual instructors through a respondeat

superior theory because respondeat superior applies in the copyright context as a

basis for finding vicarious liability, not direct liability."  Order at 18.

Because that determination was clearly erroneous, it warrants

reconsideration.  *See P.E.A.C.H.,* 916 F. Supp. at 1560.  As the cases discussed

below and the record evidence regarding unauthorized copying and distribution at

GSU make clear, Defendants are strictly liable for any direct copyright

infringements committed by GSU employees within the scope of their employment

regardless of whether they personally participated in, contributed to, or benefited

from the infringement.

> **A.**     **GSU Is Liable for Infringing Conduct by Its Employees Within the Scope of Their Employment Pursuant to the Doctrine of Respondeat Superior**

The acts of every employer sued for copyright infringement are, by

definition, acts of its employees undertaken on its behalf.  Just as copyright law

provides that an employer is deemed the author of works created by employees

within the scope of their employment under the "work made for hire" doctrine of

copyright law, *see* 17 U.S.C. § 101 (definition of "work made for hire"), so too is

an employer legally responsible for acts of infringement committed by employees

within the scope of their employment.  *See* 3 M. NIMMER & D. NIMMER, NIMMER

ON COPYRIGHT § 12.04[A][1] at 72-73 (2009) ("Nimmer) ("[Just as the [work for

hire] doctrine provides that the person who puts pen to paper, quill to canvas, or

finger to keyboard is not the 'author' of the work to the extent the employment

relationship exists, so the person who copies a work is by like measure not the sole

author of the infringement[.]").  Nimmer, § 12.04[A][1] at 72-73.

811163.1

Courts routinely hold employers responsible for direct copyright infringement by their employees without recourse to secondary (i.e., vicarious or contributory) infringement doctrines.  *See, e.g.*, *Harper & Row Pub. Inc. v. Nation Enters.*, 471 U.S. 539 (1985) (holding defendant Nation enterprises liable for direct infringement by employee editor); *Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287 (11th Cir. 2008) (holding defendant Scientology organizations directly liable for copying of plaintiff's book by their employees); *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381 (6th Cir. 1996) (holding defendant copy shop directly liable for copying by employees).

While conceptually one could, as the Court has, characterize an employer's liability as "indirect" in such circumstances insofar as the employer itself has not literally performed the infringing acts, it does not follow that the sole basis for holding the employer liable is one or more of the secondary infringement doctrines.  Instead, as the foregoing cases illustrate, the law holds the employer strictly liable for the direct infringements committed by its employees through the doctrine of respondeat superior.  *See* RESTATEMENT (THIRD) OF AGENCY § 2.04 (1999) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."); O.C.G.A. ¶ 51-2-2 ("Every

811163.1

8

person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business . . . ."); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) ("the normal agency rule of respondeat superior applies to copyright infringement by a servant within the scope of his employment"); Nimmer § 12.04[A][1] at 72 ("To the extent that the infringer is the agent of another, the master can be held culpable for the infringement.").[3]

The distinction between *indirect* liability under respondeat superior and *secondary* liability under the doctrines of vicarious and contributory infringement is important. Copyright liability attaches to the employer once it has been established that one or more of its employees has engaged in acts of direct infringement. *See, e.g., Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 596

---

[3] *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir. 1987), cited by the Court, *see* Order at 18, is not to the contrary. That case did not address copyright infringement but, rather, involved a civil rights claim under Title VII and the particular statutory definition of "employer" that applies to discrimination claims. Although the court referred to respondeat superior liability as "indirect," it held that in situations where an employee accused of harassment is acting "within the scope of employment," and thus is acting as the agent of the employer, the employer is "directly" and "strictly" liable for the employee's harassment under Title VII without the need for any additional showing. *Id.* at 1559. *See also id.* at 1558 (noting that "if Long was acting as an 'agent' of Pilot Freight when he sexually harassed Sparks, Pilot Freight is directly liable to Sparks for Long's conduct").

F. Supp. 28, 33 (S.D.N.Y. 1984), *aff'd*, 778 F.2d 89, 92 (2d Cir. 1985) (noting that the principle of respondeat superior imposes copyright infringement liability on defendant publisher for infringing activities by its employees within the scope of their employment).   Under the Court's interpretation of the doctrine of respondeat superior, however, notwithstanding a demonstration by Plaintiffs that employees of GSU have engaged in acts of direct infringement (which the record establishes, as detailed in Section C below), Plaintiffs still would be faced with separately proving the elements of contributory infringement as applied to GSU (accepting solely for purposes of this motion the Court's dismissal of Plaintiffs' vicarious infringement claims).   Although Plaintiffs are confident that the current fact record supports such a finding, they respectfully submit that it should not be their burden to make that showing.

The test for vicarious infringement established in *Shapiro, Bernstein* and adopted by the Eleventh Circuit in *S. Bell Tel. and Tel. Co. v. Associated Tel. Directory Pub.*, 756 F.2d 801 (11th Cir. 1985) (discussed by the Court at page 20 of the September 30 Order), was meant to extend traditional respondeat superior liability to situations involving defendants who, while not themselves the employers of the direct infringers, nonetheless share the hallmarks of an employer – i.e., control and financial benefit.  *See*, *e.g.*, *Gordon v. Nextel Comm.*, 345 F.3d

922, 925-26 (6th Cir. 2003) (explaining that while "*respondeat superior* imposes liability on an employer for copyright infringement by an employee," the *Shapiro* test applies "outside the employer-employee context"); *Superhype Pub. Inc., v. Vasiliou*, 838 F. Supp. 1220, 1225 (S.D. Ohio 1993) (holding that "[t]hough an employer can surely be liable for acts of infringement committed by an employee under the doctrine of *respondeat superior*, the courts have created a much broader umbrella of liability" for non-employers under the test for vicarious liability).  That vicarious liability test, however, was *not* meant to limit or replace traditional employer liability for the direct infringements of employees under the theory of respondeat superior, even if such liability is "indirect" in the sense that the employee's conduct is attributed to the employer.[4]  The case law clarifies that the

---

[4] Indeed, the language quoted by the Court from *Southern Bell* related to the potential *personal* liability of individuals who were held jointly and severally liable with (i.e., in addition to) the defendant employers; their personal liability neither superseded the employer's liability nor created a new test to be applied to the employers.  *Compare Playboy Enters., Inc. v. Starware Pub. Corp.*, 900 F. Supp. 433, 438 (S.D. Fla. 1995) (holding defendant employer liable for direct infringement of plaintiff's photographs), *with Playboy Enters., Inc. v. Starware Pub. Corp.*, 900 F. Supp. 438, 440-42 (S.D. Fla. 1995) (holding defendant officers personally liable under *Southern Bell* tests of personal and vicarious liability); *see also, e.g.*, *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 833-34 (8th Cir. 1992) (same); Nimmer § 12.04[A][1] at 72-73 (distinguishing liability of the employer under respondeat superior from personal liability of "related" corporate officers).  Although Plaintiffs have named certain GSU officials as defendants here, Plaintiffs do *not* seek to hold them personally liable; rather, as discussed in the next section,

operative distinction is not whether the defendant is a direct or indirect infringer but whether the defendant is liable as an employer (through the doctrine of respondeat superior) or as a related party (through the doctrine of vicarious infringement).

In short, because the Court found correctly that the GSU employees were acting within the scope of their employment (in scanning, copying, displaying and distributing Plaintiffs' copyrighted material on ERes and uLearn), *see* Order at 18, Defendants are responsible for infringements by those GSU employees under respondeat superior to the extent the Court otherwise determines that the challenged activities on the part of those employees constitute direct copyright infringement.  *See generally Letterese*, 533 F.3d 1287.

**B.    Courts Hold "Official Capacity" Defendants Liable for Unlawful Acts Committed Within the Scope of Their Supervisory Authority**

The above conclusion is not disturbed by the fact that the defendants in this case are officials of a public institution rather than the employing entity itself. Under *Ex parte Young*, the named defendants would be strictly liable in their official capacities for GSU employees' acts of direct infringement based on their

---

Defendants are named in their official capacities as representatives of their employer, GSU, pursuant to *Ex parte Young*.

supervisory authority over the infringing conduct – no differently than would the

institution that employed those individuals in a private setting.  Accordingly, the

Court can order prospective injunctive relief against the named defendants upon a

showing of direct infringements by GSU employees without having to address

theories of secondary infringement.  *See Luckey v. Harris*, 860 F.2d 1012 (11th

Cir. 1988); Pl. Opp. Mem. 35-36.

Under *Ex parte Young*, there is no need to show that state officials named as

official-capacity defendants *personally* violated federal law – either directly or

secondarily – to establish their liability for direct infringement by employees of the

state institution.  *See* Pl. Opp. Mem. 35-39.  For example, the plaintiffs in a class-

action suit concerning inadequate funding for indigent legal services named as

defendants the governor of Georgia and the state judges responsible for providing

counsel to indigent defendants in Georgia courts.  *Luckey*, 860 F.2d at 1013-14.

The Eleventh Circuit rejected the notion that an *Ex parte Young* defendant official

must have taken some action personally that violates the Constitution or federal

law, holding instead that "[p]ersonal action by defendants individually is not a

necessary condition of injunctive relief against state officers in their official

capacity."  *Id.*at 1015.  Rather, "[a]ll that is required is that the official be

*responsible for* the challenged action."  *Id.* (emphasis added).  *See also Summit*

811163.1

*Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999) (holding that plaintiffs properly named as defendants Alabama's Governor and Attorney General and the District Attorney because they were authorized to enforce the criminal liability provisions of the challenged statute).

In sum, liability is attributed to the named Defendants based on the conduct of others acting within Defendants' supervisory authority and does not require any additional showing – such as encouragement of the conduct or financial benefit from it. The only relevant question is whether the named Defendants have the *authority* to stop the direct violations about which Plaintiffs complain. *See, e.g., Sandoval v. Hagan*, 197 F.3d 484, 492, 500-01 (11th Cir. 1999) (holding that the Director of the Alabama Department of Public Safety could face a lawsuit alleging unlawful promulgation of English-only drivers' license exams), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001); *Bd. of Pub. Educ. for Savannah v. State of Georgia.*, No. CV 490-101, 1990 WL 608208, at *4 (S.D. Ga. Sept. 24, 1990) (unpublished) (rejecting defendants' argument that the *Ex parte Young* exception applies only when the official is "personally or individually involved in the unconstitutional action") (citing *Luckey*, 860 F.2d at 1015-16).

Relying on *Ex parte Young*, courts have permitted a plaintiff to seek injunctive relief against an officer of a state university for ongoing direct violations

of federal copyright law.  *See Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352,

357 (S.D.N.Y. 2001).  As described in Plaintiffs' opposition papers, *see* Pl. Opp.

Mem. 37-38, the plaintiffs in *Salerno* sued the chancellor of the City University of

New York and the director of another state institute, alleging that the plaintiff

Aleandri's work was being infringed by employees of the university and of the

institute.  In response, both the chancellor and the director moved to dismiss on the

ground that the plaintiffs had not alleged with specificity how the officers were

connected with the enforcement of the alleged violations of Aleandri's copyright.

*Id.*  The defendants also argued that *Ex parte Young* was unavailable because "the

state is the real party in interest in this matter."  *Id.*  The court rejected both

arguments, explaining that *Ex parte Young* only requires a plaintiff to allege "*some

connection* between the official and the enforcement of the illegal act" and noting

that the defendants' argument ignored the whole point of *Ex parte Young*, which is

to permit claims for prospective injunctive relief against state officials to ensure

state compliance with federal law.  *See id.* at 357 (emphasis added).

The foregoing cases effectively carry the agency rationale of respondeat

superior into the context of state institutions, consistent with the Eleventh

Amendment.  Injunctive relief against the official-capacity defendants enables the

plaintiff to obtain an effective remedy under *Ex parte Young* against unlawful

conduct by employees of the institution for whom the defendants are responsible. As Plaintiffs explained in their opposition brief, Defendants have admitted that they have the authority and/or duty to ensure, in one way or another, that GSU is in or, as necessary, comes into, compliance with federal copyright law.  *See* Pl. Opp. Mem. at 38-39.  And, as the Court found, "any employee who partook in any alleged infringement was acting within the scope of his/her employment."  Order at 18.  It follows, under the cases discussed above, that Defendants are liable for the direct infringement under *Ex parte Young* even if they did not personally make or distribute unauthorized copied of Plaintiffs' works, without regard to whether their liability is more properly characterized as "direct" or "indirect" and without any need to invoke the doctrines of vicarious or contributory infringement.

> **C.    The Record Demonstrates Both Significant Direct Infringement by GSU Employees and the Conceded Responsibility of the Named Defendants**

The September 30 Order reflects some uncertainty as to the nature of the activities claimed by Plaintiffs to constitute direct infringement of their copyrights. By way of clarification, the record establishes that ordinary usage of the ERes system results in a variety of acts by GSU employees on the GSU computer system that, unless excused by the fair use doctrine, plainly constitute acts of direct copyright infringement – acts for which the Defendants are strictly liable and

subject to injunctive relief under the doctrine of respondeat superior and *Ex parte*

*Young*, as described above.  Specifically:

- When a member of the GSU library staff electronically scans copyrighted materials in preparation for uploading them to the ERes system, an unauthorized, permanent digital copy is created on a computer server owned by GSU and operated by GSU information technology staff;[5]

- When a member of the GSU library staff uploads the digital copy to the ERes system, an unauthorized digital copy is created on the ERes system on a computer server owned by GSU and operated by GSU information technology staff;[6]

- In order to send students copies of files through the ERes system, unauthorized digital copies are first created and stored in the memory of a computer server owned by GSU and operated by GSU information technology staff and then distributed to each student in the class who accesses the reading.[7]

It is uncontested that the GSU library personnel, information technology

specialists, and professors involved in posting materials to the ERes system are

employees of GSU – the first element necessary to establish Defendants'

respondeat superior liability.  As to the second element, the Court has held that

"any employee who partook in any alleged infringement was acting within the

---

[5] Docket No. 172 at 34-35, 40-41 (Dimsdale Dep.); Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, Docket No. 142 ("Pl. Mem."), 16.

[6] Pl. Mem. 16.

[7] Docket No. 162 at 6 (Dewar Report); Docket No. 167 at 40-41, 50-52 (Palmour Dep.); Pl. Mem.16-17.

scope of his/her employment and therefore the second element of respondeat superior is satisfied."  Order at 18.  These findings, taken together, are enough to hold Defendants liable for direct infringement without any additional showing of financial benefit, material contribution, or the like.

The record also makes clear that Defendants have the requisite responsibility for the direct infringements detailed above to be held liable for them and to be subject to injunctive relief under *Ex Parte Young*.  The Court found that "Georgia State/Defendants have the right and ability to supervise the professors, instructors, and other employees," Order at 20, and it is undisputed that certain of the other named defendants have supervisory authority over the staff of the GSU library and are responsible for correcting noncompliance with federal copyright law. Defendants' Response to Plaintiffs' Statement of Facts, Docket No. 187, at 10-11.

In light of the foregoing, Plaintiffs respectfully request that the Court (1) reconsider its holding, in the September 30 Order, that Defendants cannot be held liable for direct infringement; (2) deny Defendants' motion for summary judgment as to Plaintiffs' direct infringement claims; and (3) allow Plaintiffs to move forward with those claims as well as with their contributory infringement claims.

## II.   THE SCOPE OF THE FURTHER PROCEEDINGS ORDERED BY THE COURT SHOULD BE EXPANDED TO ENCOMPASS UNAUTHORIZED CONDUCT IN 2009 AND 2010 BEYOND THAT DETAILED IN PLAINTIFFS' AUGUST RESPONSE

The Court has expressly directed Plaintiffs to make an evidentiary proffer as to the "ongoing and continuous" nature of Defendants' asserted infringements. Yet the Order limits Plaintiffs' ability to meet this burden by confining the universe of evidence that Plaintiffs may use to make the required showing to alleged infringements described in the August Submissions.  As we describe, these Submissions are incomplete as to the scope of potential infringement during the three 2009 terms they encompass, and by definition do not include evidence of ongoing infringement during the four academic terms that have ensued.   That the existence of such further evidence of ongoing and continuous infringement is not merely speculative is revealed by the partial record as to the Spring 2010 semester, which was discussed in the parties' summary judgment motions.  Those filings highlighted significant infringing activity at GSU during this later semester.

Plaintiffs accordingly submit that the evidence of "ongoing and continuous" infringing activity on which the September 30 Order asks the Plaintiffs to focus should not be limited to the specific instances detailed in the August Submissions (or, more generally, to the period between February 17, 2009 and September 2009).  Plaintiffs instead respectfully request that the Court reconsider its Order

811163.1

and allow more complete discovery into, and the submission of evidence

concerning, instances of ongoing infringements at GSU during 2009 and 2010

beyond those identified subject to the limits of prior discovery.

**A.    Plaintiffs' Response to the August Orders Was Necessarily Limited by Shortcomings in GSU's Production as to the Identified Academic Terms That Easily Can Be Rectified**

Plaintiffs faced a number of difficulties in comprehensively responding to

the Court's August Orders that limited their ability to depict the full scope of

infringement at GSU during the 2009 Maymester and Summer and Fall 2009

terms.[8]  For one, Plaintiffs were unable to include all of the material that was

posted to ERes during these academic terms because the ERes reports produced by

Defendants (and necessarily relied upon by Plaintiffs in their Response) were

incomplete.  Pl. Supp. Filing ¶ 5(b).  Specifically, the ERes reports for the 2009

Summer and Fall terms were generated and produced shortly after those terms

began.  While the Summer 2009 term lasted through July 28, 2009, the ERes report

produced reflects usage and statistics only through July 1, 2009.  Similarly,

although the Fall 2009 Semester presumably extended until December, the report

produced by Defendants covered material on the ERes system only through

---

[8] These limitations were described in Plaintiffs' Response.  *See* Pl. Supp. Filing ¶ 5.

September 15, 2009. *Id.* Thus, these reports do not include any additional course material that professors may have posted to ERes later in those terms, nor do they reflect data as to students who viewed such materials later in these terms. Plaintiffs' Response was further limited in that certain of the entries on the ERes reports did not identify the specific material – the chapters or pages from certain works – that was posted to ERes. *See* Pl. Supp. Filing ¶ 5(c).[9]

As indicated in the parties' proposed scheduling orders submitted on October 20, 2010, Defendants have indicated that they will produce complete ERes reports for the 2009 Maymester and Summer and Fall 2009 terms as well as "available" syllabi and fair use checklists for the courses and list of claimed infringements set forth in response to the Court's August Orders. Plaintiffs respectfully request that the Court reconsider its Order to allow Plaintiffs to supplement their August Response with any additional instances of claimed infringements that may be revealed in these updated ERes reports and, to the extent revealed by the syllabi, to add previously missing chapter and page details. To the extent any additional instances of claimed infringements are identified, Plaintiffs also request that Defendants be ordered to produce syllabi and fair use checklists

---

[9] Pl. Supp. Filing ¶ 5(a); *see also* Joint Notice of Filing Stipulations, Docket No. 118, ¶¶ 6-7.

related to such works as well (as they have agreed to do for the works in the

August Response).

### B.   Instances of Infringement Have Continued Beyond the Semesters Referenced in the August Orders

Three academic terms (Spring, May and Summer 2010) have been

completed since the terms referenced in the August Submission.  Currently, GSU

students are enrolled in the Fall 2010 term.   A complete picture of ongoing

infringing activity warrants Plaintiffs' being afforded discovery into ERes postings

of Plaintiffs' works during these later terms.

There is good reason to believe that evidence of continuing infringement of

the type identified in the prior ERes reports and in the August Submissions would

be uncovered via discovery into ERes practices for these succeeding terms.  By

way of example, the parties' summary judgment briefs and Plaintiffs' supplemental

declarations[10] detailed instances of unlicensed uses of Plaintiffs' works during the

Spring 2010 semester that reflect a pattern of activity remarkably similar to that

uncovered with respect to prior academic terms and depicted in the August

---

[10] *See* Defendants' Memorandum in Support of Motion for Summary Judgment, Docket No. 160, at 7-13; Pl. Opp. Mem. 10-14; Supplemental Declaration of Frank Smith, (Apr. 5, 2010), Supplemental Declaration of Niko Pfund (Apr. 5, 2010), Supplemental Declaration of Sara van Valkenburg (Apr. 5, 2010), Docket No. 184 ("Supplemental Declarations").

Submissions.  Specifically, the Spring 2010 ERes report shows that about 1,000 unlicensed course materials already had been posted to ERes and accessed over 25,000 times just a few weeks into the Spring 2010 semester, including at least 60 works owned or controlled by Plaintiffs.  Specific instances of unlicensed uses of Plaintiffs' works during this time period included, but were not limited to:

- 22 works owned or controlled by SAGE, all but one of which has been distributed via ERes semester after semester at GSU;

- 23 works owned or controlled by Oxford, 14 of which have continued to be distributed via ERes semester after semester at GSU; and

- 16 works owned or controlled by Cambridge, seven of which have continued to be distributed via ERes semester after semester.[11]

Furthermore, many of the same professors identified in the August Submissions as instructors of courses in which an allegedly infringed work was assigned were reported on the Spring 2010 ERes report as continuing to post multiple chapters from the same work, numerous excerpts for a single course, and lengthy excerpts of 30, 40, 50, or even more pages from a single work.[12]  By way of example, in Spring 2010:

---

[11] Pl. Opp. Mem. 10-12; Spring 2010 ERes Report, Docket No. 160; Supplemental Declarations.

[12] Spring 2010 ERes Report, Docket No. 160.

- Professor Esposito posted 26 excerpts to ERes for her course EPRS8500, including 30 pages from *Handbook of Qualitative Research* and 46 pages from *Qualitative Interviewing*;

- Professor Kaufmann posted numerous excerpts to ERes for EPRS8500, including 74 pages from *Handbook of Feminist Research,* 41 pages from *Handbook of Narrative Inquiry*, and 169 pages from *Handbook of Qualitative Research*;

- Professor Lloyd posted numerous excerpts to ERes for RELS3305, including 44 pages from *Critics of the Bible;* 36 pages from *The Cambridge Companion to Karl Barth*, and 45 pages from *The Problem of Evil*;

- Professor Orr posted numerous excerpts to ERes for MUS8830, including 49 pages from *Ars Nova and the Renaissance*, 29 pages from *The Rise of European Music*, and 22 pages from *The Motet in the Age of Du Fay;*

- Professor Restivo posted at least 100 pages from *Film Theory and Criticism* on ERes for COMM6020; and

- Professor Selwood posted numerous excerpts to ERes for HIST4540, including 47 pages from *Cheap Print & Popular Piety* and 36 pages from the *Examinations of Anne Askew*.[13]

To avoid the prospect of manifest injustice were Plaintiffs confined to the limited record available to them to date in demonstrating a pattern of "ongoing and continuous" infringements by GSU under the control and supervision of the Defendants, Plaintiffs respectfully request that, in addition to allowing Plaintiffs to fill out the record as to potentially infringing activity during the three academic terms that were the subject of the August Submissions, the Court expand the

---

[13] *Id.*; *see also* Pl. Opp. Mem. 11 (discussing Esposito excerpts).

temporal scope of further proceedings to include discovery into, and a proffer of evidence concerning, instances of claimed infringement that have occurred during 2010.

## <u>CONCLUSION</u>

For reasons discussed above, Plaintiffs move the Court to reconsider portions of its September 30 Order and (1) deny Defendants' motion for summary judgment as to Plaintiffs' direct infringement claims and allow Plaintiffs to move forward with those claims as well as with their contributory infringement claims; (2) allow Plaintiffs to introduce evidence of infringements during the May, Summer, and Fall 2009 terms beyond those indicated in the August Submissions and order Defendants to produce syllabi and fair use checklists related to such works; and (3) allow Plaintiffs to introduce evidence of infringements during the Spring, May, Summer, and Fall 2010 terms, and order Defendants to produce ERes reports from those terms and syllabi and fair use checklists related to claimed infringing works from those terms to aid Plaintiffs in making such a showing.

Respectfully submitted this 20th day of October, 2010.

/s/ John H. Rains IV
Edward B. Krugman
Georgia Bar No. 429927
John H. Rains IV
Georgia Bar No. 556052

811163.1

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
(404) 881-4100

R. Bruce Rich (*pro hac vice*)
Randi Singer (*pro hac vice*)
Jonathan Bloom (*pro hac vice)*
Todd D. Larson (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

***Attorneys for the Plaintiffs***

811163.1

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1.  This document was prepared in Times New Roman 14 point font.

/s/ John H. Rains IV
John H. Rains IV

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing **PLAINTIFFS'**

**MOTION FOR PARTIAL RECONSIDERATION AND SUPPORTING**

**MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF filing

system which will automatically send e-mail notification of such filing to the

following attorneys of record:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Kristen A. Swift, Esq.
> C. Suzanne Johnson, Esq.
> King & Spalding
> 1180 Peachtree Street
> Atlanta, Georgia 30309
>
> Kristina M. Quicker, Esq.
> BALLARD SPAHR, LLP
> 999 Peachtree Street, Suite 1000
> Atlanta, GA 30309
>
> Mary Jo Volkert, Esq.
> Assistant S. Attorney General
> 40 Capitol Square
> Atlanta, Georgia 30334

This 20th day of October, 2010.

> /s/ John H. Rains IV
> John H. Rains IV

811163.1

28