IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAMBRIDGE UNIVERSITY PRESS, *et al.*, | §<br>§<br>§ | |
| Plaintiffs, | § | |
| v. | §<br>§ | Case No. 1:08-CV-1425-ODE |
| MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*, | §<br>§<br>§<br>§ | |
| Defendants. | § | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c)

COME NOW all Defendants in this action and file this Memorandum in Support of their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(c). Plaintiffs Cambridge University Press; Oxford University Press, Inc.; and SAGE Publications, Inc.'s (collectively, "Plaintiffs'") copyright infringement claims against the Board of Regents of the University System of Georgia and Georgia State University Administrators (collectively, "Defendants") in their official capacities fail for want of subject matter jurisdiction under Rule 12(b)(1) and on the pleadings under Rule 12(c).

## I.     INTRODUCTION

In Plaintiffs' recently-filed Motion for Partial Reconsideration, Plaintiffs concede that their theory of liability is based solely and completely on Defendants' "authority to stop the direct violations [of copyright infringement] about which Plaintiffs complain." (Dkt. 237 at 18.)  As a result, Plaintiffs' claims are barred by the Eleventh Amendment.  Congress has not, and cannot, abrogate Defendants' Eleventh Amendment immunity in this case because the Copyright Act was enacted under the Commerce Clause, rather than the Fourteenth Amendment.  The State of Georgia has neither consented to nor waived its Eleventh Amendment immunity.  And Plaintiffs cannot avail themselves of the narrow *Ex parte Young* exception to Eleventh Amendment immunity because "[t]he fact that a University Official has a general, state-law obligation to oversee a University's [intellectual property] policy does not give rise to a violation of federal [intellectual property] law." *Pennington Seed, Inc. v. Produce Exch. No. 299, L.L.C.*, 457 F.3d 1334, 1343 (Fed. Cir. 2006).  Accordingly, Plaintiffs' suit fails for lack of subject matter jurisdiction and based on the pleadings.

## II.    LEGAL STANDARDS

### A.     <u>Subject Matter Jurisdiction</u>

The Eleventh Amendment places constitutional limits on federal court

subject matter jurisdiction. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). The text of the amendment divests this Court of jurisdiction over actions against a state by "Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment deprives the federal courts of jurisdiction to entertain a suit brought by an individual against a nonconsenting state. *See Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *see also Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities,* 422 F.3d 392, 405 (6th Cir. 2005) (dismissing for lack of subject matter jurisdiction on the sole ground that the suit was barred by sovereign immunity under the Eleventh Amendment). A challenge to subject matter jurisdiction questions the very power of the court to hear the case; as such, a claim may not be waived by any party and may be raised at any time in the proceedings. *United States v. Lopez,* 287 F. App'x 837, 839 (11th Cir. 2008) (unpublished).

### B.    <u>Judgment on the Pleadings</u>

A motion for judgment on the pleadings is closely related to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). "Judgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). In reviewing a

motion for judgment on the pleadings, the Court accepts all facts in the pleadings as true and views them in the light most favorable to the nonmoving party. *Id.* The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion:  the Court considers whether the pleader has stated a claim for relief. *See Strategic Income Fund, L.L. C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (finding that a court's conversion of a motion to dismiss filed pursuant to Rule 12(b)(6) to a motion for judgment on the pleadings filed pursuant to Rule 12(c) was of "no moment" as the substantive analysis was the same).  Rule 12(c) allows motions for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  Here, a Rule 12(c) motion will not delay the trial, the date of which has not been set, and the filing was occasioned by Plaintiffs' recent request for partial reconsideration.

## III.    BACKGROUND

The Eleventh Amendment is, by its very terms, a limitation on federal subject matter jurisdiction.  U.S. Const. amend. XI; *see also Chicago, Burlington & Quincy Ry. Co. v. Willard*, 220 U.S. 413, 418-22 (1981).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v.*

*Garrett*, 531 U.S. 356, 363 (2001).  The Board of Regents is an agency of the state vested with the governance, control, and management of the University System of Georgia.  Ga. Const. art. VIII, § IV, ¶ I(b); Ga. Code Ann. § 20-3-20 (2010); *Pollard v. Bd. of Regents*, 401 S.E.2d 272 (Ga. 1991).  As a general rule, suits against state officials in their official capacities are treated as suits against the state itself and immunities available to such officials are those the state possesses.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also* Ga. Code Ann. § 20-3-36 (2010) ("The applicability of the doctrine of sovereign immunity to the board of regents is reaffirmed . . . .").  In other words, a suit against an official in his or her official capacity is a suit against the entity that individual represents; thus, this action against the Board of Regents and GSU Administrators in their official capacities is simply a recharacterization of a claim against the State of Georgia.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1184 n.16 (11th Cir. 1994).  Even though the State of Georgia is not a named defendant in this action, Eleventh Amendment immunity applies to bar the suit because the state is the "real, substantial party in interest."  *Pennhurst*, 465 U.S. at 101 (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

Plaintiffs argue in their Motion for Partial Reconsideration for an extremely broad exception to Eleventh Amendment immunity.  (Dkt. 237 at 14.)  They attempt to dispense with the requirements of *Ex parte Young*, 209 U.S. 123 (1908), claiming that Defendants' mere "supervisory authority" over those who use the GSU e-Reserves system renders them (and thereby the state) liable for any copyright infringement that occurs through such system despite Eleventh Amendment immunity protections.  (*Id.*)  Because this interpretation of *Ex parte Young* is inapposite with federal precedent and because, failing to meet the requirements of the *Ex parte Young* exception, Plaintiffs' case cannot overcome Defendants' Eleventh Amendment immunity protections, Defendants respectfully request that this Court dismiss the present action.

## IV.  ELEVENTH AMENDMENT IMMUNITY

The three ways to provide judicial power over suits against states despite the Eleventh Amendment bar are through (1) consent by the state to be sued in federal court on the claim involved, (2) waiver of immunity by a state, or (3) abrogation of immunity.  *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 253 (1985).

As the Supreme Court noted in *Alden v. Maine*, 527 U.S. 706 (1999), the doctrine of Eleventh Amendment immunity from suit in federal court derives from the Constitutional plan itself, where the early constitutional allocation of power

between the central government and the states was limited by the Tenth Amendment reservation of rights to the states, as furthered and embodied in the Eleventh Amendment provision that federal jurisdiction would not extend to suits in federal court against one of the united states. *See* U.S. Const. amend. XI; *Alden*, 527 U.S. at 754.

In 1996, the Supreme Court confirmed the Eleventh Amendment immunity of the states in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), holding that the Eleventh Amendment bars a court's assertion of federal jurisdiction in a suit against a state unless the state has consented to be sued, the state unequivocally has waived its immunity, or the state's immunity has been abrogated. *See* 517 U.S. at 72-77. The United States Supreme Court repeatedly has recognized these principles. *See, e.g.*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) (barring ADEA claims); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) (barring suits by realtors under the False Claims Act); *Alden,* 527 U.S. 706 (barring private suit in federal or state court under the Fair Labor Standards Act); *Coll. Sav. Bank v. Fla. Prepaid Post-Secondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (barring Trademark Remedy Clarification Act claims); *Fla. Prepaid Post-Secondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627

(1999) (barring Patent and Plant Variety Protection Remedy Clarification Act ("Patent Remedy Act") claims).

The State of Georgia has not consented to suits such as Plaintiffs' or waived its Eleventh Amendment immunity with regard to such claims, [1] nor do Plaintiffs offer evidence to suggest otherwise.   Accordingly, in order for this Court to exercise subject matter jurisdiction, Congress must have properly abrogated the State of Georgia's immunity for such causes of action, which it has failed to do. *See Garrett*, 531 U.S. at 360 (finding no abrogation for ADA Title I claims); *Kimel*, 528 U.S. 62 (finding no abrogation for ADEA claims); *Alden*, 527 U.S. 706 (implicitly holding no abrogation for FLSA claims); *Coll. Sav. Bank v. Fla. Prepaid*, 527 U.S. 666 (finding no abrogation for trademark claims); *Fla. Prepaid v. Coll. Sav. Bank*, 527 U.S. 627 (finding no abrogation for patent claims);

---

[1] The Georgia Code requires specific waiver of immunity by statute:   "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."   Ga. Const. art. I, § II, par. IX(e); *see also Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 3:07-CV-084, 2008 WL 1805439, at *16 (M.D. Ga. Apr. 18, 2008) ("Waiver is generally found if a State voluntarily invokes federal jurisdiction or if the State makes a 'clear declaration' that it intends to submit itself to federal jurisdiction.   The point of the "clear declaration" rule is 'to be certain that the State in fact consents to suit.'   A waiver of sovereign immunity requires an affirmative act and cannot be implied or construed from the circumstances." (quoting *Coll. Sav. Bank v. Fla. Prepaid*, 527 U.S. at 675-76, 680)).

*Seminole Tribe*, 517 U.S. at 72-77 (finding no abrogation for Indian Gaming Act claims).

According to Supreme Court precedent, Congress can only abrogate Eleventh Amendment immunity through express intention to do so and only under the exercise of its powers contained in Section 5 of the Fourteenth Amendment. *See Seminole Tribe*, 517 U.S. at 72; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (justifying abrogation of immunity under the Fourteenth Amendment because the Fourteenth Amendment came after the Eleventh Amendment, thus adjusting the preexisting balance between federal and state power); *see also Pennington Seed*, 457 F.3d at 1339 ("[C]ongress may abrogate, under certain circumstances, a state's Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment" but "it may not do so under its Article I Commerce Clause power in patent cases."). In addition, Congress's authority to abrogate Eleventh Amendment immunity using its Section 5 powers is limited to circumstances in which Congress is not creating new rights or expanding the scope of rights, but is preventing or remedying violations of rights. *See City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997) (requiring that laws abrogating state immunity be "proportional" and "congruent" to a constitutional violation).

In three cases similar to *Seminole Tribe*, the Supreme Court has found that Congress's purported abrogation of the Eleventh Amendment was ineffective. *See Garrett*, 531 U.S. 356; *Kimel*, 528 U.S. 62; *Fla. Prepaid v. Coll. Sav. Bank*, 527 U.S. 627. In each, the Supreme Court reaffirmed the limits on congressional power to abrogate Eleventh Amendment immunity and found that the federal laws at issue did not fit within the permissible scope of Section 5 of the Fourteenth Amendment under *City of Boerne v. Flores*. *Florida Prepaid* is particularly instructive.

In *Florida Prepaid*, the Supreme Court overturned Congress's express amendment of the patent laws to authorize suits against state governments for patent infringement under 15 U.S.C. § 271. The Court held that the law was not a valid exercise of power under Section 5 of the Fourteenth Amendment and therefore could not be used to sue a state government. The Court specifically noted that in enacting the Patent Remedy Act, "Congress identified no pattern of patent infringement by the States, let alone a pattern of constitutional violations." 527 U.S. at 640. "The legislative record thus suggests that the Patent Remedy Act does not respond to a history of 'widespread and persisting deprivation of constitutional rights' of the sort Congress has faced in enacting proper prophylactic §5 legislation." *Id.* *But cf. Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 369 n.9

(2006) (offering an extensive historical analysis justifying a limited exception to the holding of *Seminole Tribe* for certain bankruptcy proceedings, and noting that "the Bankruptcy Clause's unique history . . . [has] persuaded us that the ratification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity").

Like the Supreme Court in *Florida Prepaid*, numerous courts rightly have held that the Copyright Act is not a valid abrogation of Eleventh Amendment immunity. *See, e.g.*, *IME Adm'rs, L.L.C. v. Colorado*, 146 F. App'x 281 (10th Cir. 2005); *Chavez v. Arte Publico Press*, 204 F.3d 601, 608 (5th Cir. 2000); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000); *Jacobs v. Memphis Convention and Visitors Bureau*, No. 2:09-cv-2599, 2010 WL 1840890, at *6 (W.D. Tenn. May 10, 2010); *Mktg. Info. Masters, Inc. v. Bd. of Trs. of Cal. State Univ. Sys.*, 552 F. Supp. 2d 1088 (S.D. Cal. 2008); *Nat'l Ass'n of Bds. of Pharmacy*, No. 3:07-CV-084, 2008 WL 1805439 (M.D. Ga. Apr. 18, 2008); *Infomath v. Univ. of Ark.*, 633 F. Supp. 2d 674 (E.D. Ark. 2007). The Supreme Court also clarified the interplay between Eleventh Amendment immunity and the copyright laws in *Seminole Tribe*. As Justice Stevens noted in his *Seminole Tribe* dissent:

> The importance of the majority's decision to overrule the Court's holding in *Pennsylvania v. Union Gas Co.* cannot be overstated . . .

[because] it prevents Congress from providing a federal forum for a broad range of actions against States, from those sounding in copyright and patent law, to those concerning bankruptcy, environmental law, and the regulation of our vast national economy.

*Id.* at 77 (Stevens, J., dissenting).   Chief Justice Rehnquist, critical of Justice Stevens' dissent, responded:

First, Justice Stevens' statement is misleadingly overbroad.  We have already seen that several avenues remain open for ensuring state compliance with federal law.  Most notably, an individual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law.  Second, contrary to the implication of Justice Stevens' conclusion, it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes; in the decision of this Court that Justice Stevens cites (and somehow labels "incompatible" with our decision here), we specifically reserved the question whether the Eleventh Amendment would allow a suit to enforce the antitrust laws against a State.  Although the copyright and bankruptcy laws have existed practically since our Nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States.

*Id.* at 73 (majority opinion) (citations omitted).

The Copyright Act, under which Plaintiffs have sued, was passed pursuant to Congress's Article I powers.  *See Jacobs v. Memphis Convention and Visitors Bureau*, No. 2:09-cv-2599, 2010 WL 1840890, at *6 (W.D. Tenn. May 10, 2010) (reviewing the legislative history of the Congressional attempt to abrogate Eleventh Amendment immunity in the Copyright Remedy Clarification Act and

finding the Act unconstitutional as it "intended to remove the states' sovereign immunity by means of Article I—namely, the Copyright Clause"). Nothing in the Act suggests any relationship whatsoever to the Fourteenth Amendment. Nor is there sufficient indication that Congress was attempting to remedy a pattern of constitutional violations. Thus, while Congress purported to abrogate the Eleventh Amendment in the Copyright Act, *see* 17 U.S.C. § 511(a), its attempt to do so exceeded its powers, and the law is not valid.

In view of the Motion for Partial Reconsideration where Plaintiffs' arguments concerning copyright infringement were clarified, Plaintiffs' case cannot proceed because the State of Georgia has not consented to suit in federal court, the state has not waived its Eleventh Amendment immunity, and Congress' attempt to abrogate the Eleventh Amendment in the Copyright Act was not a valid exercise of its Section 5 powers. Because Plaintiffs' case against the official capacity defendants is, in essence, a suit against the state, and there is no valid abrogation of Eleventh Amendment immunity, Plaintiffs' case fails for lack of subject matter jurisdiction.

As is explained below, Plaintiffs' case is not saved by the *Ex parte Young* exception to Eleventh Amendment immunity.

## V.    EX PARTE YOUNG

Plaintiffs seek relief based on the narrow exception to Eleventh Amendment immunity articulated in *Ex parte Young*, which allows a plaintiff to seek prospective injunctive relief against state officials acting or threatening to act in violation of federal law, typically through the enforcement of state law, regulation, or policy in direct contravention of federal law.  *See, e.g.*, *Will*, 491 U.S. at 71 & n.10; *Ex parte Young*, 209 U.S. at 159-60.  But because Defendants have not and are not threatening to commit an actual violation of federal law and are instead acting in a merely supervisory role, the narrow exception of *Ex parte Young* does not apply.  *Pennington Seed*, 457 F.3d at 1343.  Plaintiffs argue in their Motion for Partial Reconsideration that "liability is attributed to the named Defendants based on the conduct of others acting within Defendants' supervisory authority and does not require any additional showing" and that, indeed, "[t]he only relevant question is whether the named Defendants have the *authority* to stop the direct violations about which Plaintiffs complain."  (Dkt. 237 at 14 (emphasis in original).)  This theory of liability does not fall within the narrow *Ex parte Young* exception to Eleventh Amendment immunity as a matter of law.

In *Pennington Seed*, the Federal Circuit rejected Plaintiffs' exact argument, stating that "[t]he fact that a University Official has a general, state-law obligation

to oversee a University's patent policy does not give rise to a violation of federal patent law."  457 F.3d at 1343.  The plaintiff, a licensee of a patent for a type of non-toxic fescue grass, sued the University of Arkansas and numerous official-capacity defendants for patent infringement, alleging that the defendants' responsibility to supervise intellectual property activity and their ability to stop an ongoing violation of federal patent law were sufficient to causally connect the defendants to the alleged violation of federal law.  *Id.* at 1342.  The Federal Circuit held that the broad general obligation of the defendants to prevent a violation of the federal patent laws was insufficient to causally connect them to the infringement.   Specifically, the court noted that the plaintiff's suit sought to "enjoin the University Officials from neglecting their job duties established by state law.  But, a federal court cannot enjoin a state official to perform his or her duty under *state* law."  *Id.* at 1343 (emphasis in original).  Accordingly, the Federal Circuit affirmed the dismissal of the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3), and (b)(6).

Plaintiffs' arguments find no support in existing precedent.  Plaintiffs seek to defeat Defendants' Eleventh Amendment immunity based on an *Ex parte Young* exception to state immunity that does not apply in this case because Defendants

have insufficient official connection with the matter in question.[2]  "Allegations that University Officials failed to supervise intellectual property policy at the school is not an allegation of federal patent infringement and does not retain a sufficient causal connection to the activity."  *See id.* at 1343 n.5.

Justification for this suit includes only unsupported assertions that the Board of Regents is responsible for the over 1,200 GSU professors (as well as the over 40,000 faculty and teaching staff employed by the other 34 state colleges and universities in Georgia).  Plaintiffs' theory that "the only relevant question is whether the named Defendants have the *authority* to stop . . . direct violations" (Dkt. 237 at 14) contradicts extensive precedent.  *See Ex parte Young*, 209 U.S. at 157 (rejecting the constitutionality of a suit against a Governor "based upon the theory that . . . , as the executive of the State, [he] was, in a general sense, charged with the execution of all its laws"); *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("Courts have not read *Young* expansively.  *Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.") (internal citations omitted), *cert. denied sub nom.*, *Children's Healthcare Is a Legal Duty, Inc. v. Montgomery*, 519 U.S. 1149 (1997); *Long v. Van de Kamp*, 961

---

[2] Plaintiffs have gone to great lengths to avoid naming the individual professors as defendants in this action.

F.2d 151, 152 (9th Cir. 1992) ("[U]nder *Ex parte Young* . . . there must be a threat of enforcement.").

Plaintiffs' citation to the decision in *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) is not instructive.   *Luckey* involved an action under 42 U.S.C.A. § 1983.   Section 1983 actions against a state official in his official capacity, which seek only declaratory or injunctive relief, are not barred by the Eleventh Amendment because such actions are not treated as actions against the state.   *Will*, 491 U.S. 58, 71.   Section 1983 cases concern constitutional torts committed by a governmental employee exercising discretionary powers so that constitutional rights personal to the plaintiff are violated as a result.   This specifically implicates the due process clause of the Fourteenth Amendment which expressly provides parties with at least one full and fair opportunity to litigate an issue before being bound by a prior determination of that issue.   *See, e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979).   In other words, the Fourteenth Amendment authorizes the abrogation of Eleventh Amendment immunity for § 1983 actions.

Plaintiffs' citations to *Sandoval v. Hagan*, 197 F.3d 484 (11th Cir. 1999), and *Board of Public Education for Savannah v. State of Georgia*, No. CV 490-101, 1990 WL 608208 (S.D. Ga. Sept. 24, 1990), similarly involve allegations of

violations of Title VI of the Civil Rights Act of 1964, an act which properly and effectively abrogated the Eleventh Amendment through the Fourteenth Amendment, pursuant to 42 U.S.C.A. § 2000d-7.  Further to that point, any actions taken against state employees under *Ex parte Young* in those cases were allowed because the state employees "by performing their duties . . . violate[d] plaintiffs' federal rights."  *See Bd. of Pub. Educ. for Savannah*, 1990 WL 608208, at *5.  The case law and fact patterns of these civil rights actions are wholly different and distinct from Plaintiffs' allegations of copyright infringement, and are therefore not analogous.

Plaintiffs' citation to *Salerno v. City University of New York*, 191 F. Supp. 2d 352 (S.D.N.Y 2001), is also not instructive.  First, the motions to dismiss the copyright claims against defendants Calendra Institute and the City University of New York in *Salerno* were in fact granted:  the *Salerno* plaintiffs did not even attempt to contest the dismissal of the claims against the institutions.  191 F. Supp. 2d at 356.  Second, the court allowed the claims against two individually named defendants to proceed because the plaintiffs were able to allege actual and direct involvement by those named defendants in the alleged copyright infringement.  *Id.* at 357.  This fact pattern is not analogous to Plaintiffs' theory that "the only

relevant question" is whether Defendants have supervisory authority over any and all infringers. (Dkt. 237 at 14.)

Accordingly, to establish the liability of the named Defendants, Plaintiffs must do more than nebulously state that their rights have been violated; they must specifically allege what state statute, regulation, or policy these particular Defendants were obligated to enforce, how these Defendants either enforced or threatened such enforcement, and how that enforcement contravenes Federal law. Because Plaintiffs' claims against the Board of Regents and GSU Administrators rely, at best, upon a theory of supervisory liability for the acts of GSU employees without ever demonstrating that any of the named defendants were involved personally with any violations of Plaintiffs' legal rights, the claims do not satisfy the *Ex parte Young* exception and therefore must be dismissed for want of subject matter jurisdiction.

## VI.   CONCLUSION

Because this Court lacks subject matter jurisdiction over Plaintiffs' case, Defendants respectfully request that the Court grant their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).

Respectfully submitted this 4th day of November, 2010.

THURBERT E. BAKER
Georgia Bar No. 033887
Attorney General

R. O. LERER
Georgia Bar No. 446962
Deputy Attorney General

DENISE E. WHITING-PACK
Georgia Bar No. 558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General

*/s/ Katrina M. Quicker*
Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Kristen A. Swift
Georgia Bar No. 702536

KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
(404) 572-4600
(404) 572-5100 (facsimile)

Katrina M. Quicker
Georgia Bar No. 590859

BALLARD SPAHR LLP
999 Peachtree St., Suite 1000
Atlanta, GA 303039-3915
(678) 420-9300
(678) 420-9301 (facsimile)

***Attorneys for Defendants***

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c) complies with the font and point selections approved by the Court in L.R. 5.1B.   The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Katrina M. Quicker*_____
Katrina M. Quicker
Georgia Bar No. 590859

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al., | |
| Plaintiffs, | Civil Action No. 1:08-CV-1425-ODE |
| -*vs.*- | |
| MARK P. BECKER, in his official capacity as Georgia State University President, et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 4th day of November, 2010, I have electronically filed the foregoing DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c) with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Katrina M. Quicker*
Katrina M. Quicker
Georgia Bar No. 590859

BALLARD SPAHR LLP
999 Peachtree St., Suite 1000
Atlanta, GA 303039-3915
(678) 420-9300
(678) 420-9301 (facsimile)
Email of filer:
QuickerK@BallardSpahr.com

***Attorney for Defendants***