# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

|  |  |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, OXFORD UNIVERSITY PRESS, INC., and SAGE PUBLICATIONS, INC., <br><br> Plaintiffs, <br><br> - v. - <br><br> MARK P. BECKER, in his official capacity as Georgia State University President, et al., <br><br> Defendants. | Civil Action No. 1:08-CV-1425-ODE |

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION
# TO DISMISS UNDER RULES 12(b)(1) AND 12(c)

825159.1

Defendants' motion to dismiss on Eleventh Amendment grounds represents an extremely belated and legally baseless attempt to forestall yet again a substantive ruling on the legality of the widespread unauthorized copying and distribution of Plaintiffs' copyrighted materials at Georgia State University (GSU). The motion was filed *more than two years after the deadline* for filing Rule 12 motions set by this Court's local rules and by the scheduling order entered in this case; *more than six months after the completion* of summary judgment briefing, in which Defendants did not raise a sovereign immunity defense; after the parties' subsequent August 2010 evidentiary submissions, which revealed a significant number of claimed infringements under GSU's current copyright policy; after the Court's ruling on the summary judgment motions, which allowed the case to go forward on Plaintiffs' contributory infringement claims; and after the parties' subsequent joint submission of proposed scheduling orders for the completion of fact discovery as to ongoing infringement and the Court's November 5, 2010 Scheduling Order.

Although the motion to dismiss purports to respond to Part I of Plaintiffs' pending motion for partial reconsideration (which addressed only Plaintiffs' direct infringement claim, as to which the Court granted Defendants' summary judgment motion), that claimed rationale is a transparent pretext for a motion that should

have been brought at an earlier stage of the case, such as in an initial responsive pleading.

Far from bringing such a motion to dismiss two years ago in response to the Complaint, Defendants did precisely the opposite:  they contended that the Board of Regents of the University System of Georgia had to be *added* to the action as a necessary party.  Then, when Plaintiffs moved for leave to file an Amended Complaint that named as additional defendants the Board and the individual Regents in their official capacities, Defendants opposed Plaintiffs' motion for leave to amend only with respect to the Board itself, at the same time expressly *disclaiming* any sovereign immunity objection to the individual Regents being proper parties.

Now, however, as the case is moving toward trial based on the substantial number of infringements Plaintiffs have identified under GSU's new policy, Defendants suddenly brandish a four-year old decision by the Federal Circuit, *Pennington Seed, Inc. v. Produce Exchange No. 299, L.L.C.*, 457 F.3d 1334 (Fed. Cir. 2006), which pre-dates the commencement of this lawsuit and which, in any event, does not support their motion.  This type of calculated abuse of the litigation process, undertaken in violation of this Court's local rules, should be rejected as untimely.  Moreover, even if the Court were to entertain Defendants' motion now –

which it need not do because a sovereign immunity defense does not implicate the Court's subject matter jurisdiction – it would find that it has no merit and thus provides no basis for dismissing the case.

Given Defendants' unjustified delay in filing the motion to dismiss as well as its lack of merit, Plaintiffs urge the Court to deny the motion as untimely and to address Defendants' Eleventh Amendment arguments – to the extent they persist in pressing them – at trial.

## ARGUMENT AND CITATION OF AUTHORITY

## I.  DEFENDANTS' MOTION IS UNTIMELY AND SHOULD NOT BE CONSIDERED AT THIS STAGE OF THE PROCEEDINGS.

Some two years ago, in response to Defendants' assertion that the Board of Regents was a "necessary party" insofar as GSU is a unit of the Regents of the University System of Georgia, Plaintiffs moved to amend the Complaint to add the Board and its individual members as defendants.  *See* Plaintiffs' Motion for Leave to Amend the Complaint to Add Additional Defendants, and Memorandum in Support, Docket. No. 29, at 2.  In response to that motion, Defendants opposed adding the Board as a party on sovereign immunity grounds but expressly stated that they did "not oppose adding as defendants the individual members of the Board in their official capacities."  *See* Defendants' Response to Plaintiffs' Motion for Leave to Amend the Complaint to Add Additional Defendants, Docket No. 33,

at 2 n.1.  The Court granted the motion to add the Regents as defendants.  *See* Dec. 11, 2008 Order, Docket No. 38.

Defendants' argument for dismissal of the Board of Regents, but not of the individual Regents themselves or any of the other "official capacity" administrator-defendants, was a deliberate tactical decision – consistent with governing law allowing prospective injunctive relief against state officials –which Defendants now attempt to relitigate without any legitimate basis.

Defendants could have timely brought the *Pennington Seed* case to the Court's attention in a motion to dismiss the Complaint, in their opposition to Plaintiffs' motion for leave to amend, in a motion for judgment on the pleadings as to the Amended Complaint, or at summary judgment.  Instead, Defendants filed a lengthy summary judgment brief asking the Court to absolve them from liability on numerous *other grounds*.  Having made that tactical decision, Defendants should not now be permitted to avoid its consequences as the parties complete the remaining discovery and prepare for trial.[1]

---

[1] Defendants raised Eleventh Amendment immunity arguments (pertaining to the unavailability of damages under *Ex parte Young*) in support of their application for a protective order blocking discovery into past infringements at GSU.  There again, however, Defendants deliberately refrained from arguing, as they do now, that the Eleventh Amendment required outright dismissal of the suit.  *See* Docket Nos. 58, 87.

825159.1

Denying dismissal and reserving consideration of Defendants' sovereign immunity arguments until trial is consistent with the Eleventh Circuit's decision in *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002), in which the court held that an unjustifiable delay in raising an immunity defense by motion to dismiss (in that case, qualified immunity) resulted in a waiver of the defendants' "right to raise the defense at the pretrial stage." *Id*. at 1306.  As the Eleventh Circuit explained, "[t]he potential for abusive delays or manipulative uses of qualified immunity claims is clear, as a defendant can raise the defense at various stages of litigation and a denial of the defense at any of these stages generally entitles a defendant to an immediate appeal." *Id*.  The same is true for Eleventh Amendment immunity, another defense that may be raised at any stage of litigation and one that, if addressed now, could open the door to an interlocutory appeal just as the parties are preparing to try the case on the merits, nearly three years after it was filed. Having chosen not to argue their Eleventh Amendment defense until after the time for filing Rule 12 motions had passed and after summary judgment was fully briefed and decided, Defendants have lost their right to raise it now and should be required to present any immunity defense at the next stage of this case, i.e.*,* at trial.

Federal Rule of Civil Procedure 12(c), which states that motions for judgment on the pleadings may be filed "[a]fter the pleadings are closed but within

such time as not to delay the trial," does not excuse Defendants' delay.  To the

contrary, the parties asked the Court to set specific deadlines for filing such

motions, and the Court did so.  The proposed scheduling order accompanying the

parties' July 2008 joint planning report, which mirrors Local Rule 7.1(A)(2),

provided that all motions other than those for which a specific time period is stated

in the scheduling order "must be filed WITHIN THIRTY (30) DAYS after the

preliminary report and discovery schedule is filed or should have been filed unless

the filing party has obtained prior permission of the Court to file later."  Joint

Preliminary Planning Report, July 25, 2008, Docket. No. 16, at 9.[2]  Defendants'

motion to dismiss (even if recharacterized as a motion for judgment on the

pleadings) is just such an "other" motion that Defendants have filed without the

Court's permission.  For this reason as well, the motion is untimely, and the Court

should, accordingly, postpone consideration of the sovereign immunity defense

until trial.  *Cf. English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994) ("[T]he trial

court has discretion to find a waiver if a defendant fails to assert the defense [of

qualified immunity] *within time limits set by the court* or if the court otherwise

---

[2] The Court entered the parties' proposed scheduling order on July 31, 2008.  *See*
Docket No. 23.

finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." (emphasis added)).

Defendants' wrongly assert that their late-invoked Eleventh Amendment defense deprives this Court of subject matter jurisdiction and thus requires immediate attention.  As the Supreme Court recognized in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997), the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."  *See also Patsy v. Bd. of Regents*, 457 U.S. 496, 515 n. 19 (1982) ("[W]e have never held that [the Eleventh Amendment] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion."); *Lapides v. Bd. of Regents of the University Sys. of Ga.*, 535 U.S. 613, 618 (2002) ("A state remains free to waive its Eleventh Amendment immunity from suit in a federal court.").  Defendants' ability to waive their Eleventh Amendment defense sets it apart from other subject matter jurisdictional limits which the Court is required to take up *sua sponte* and which cannot be waived.

Defendants' attempt to portray their untimely motion as a justifiable response to Plaintiffs' pending motion for partial reconsideration is baseless. Defendants seize on the following phrase in Plaintiffs' motion for reconsideration – "authority to stop the direct violations [of copyright infringement] about which

Plaintiffs complain" – and suggest that it represents a new theory of liability

Plaintiffs unveiled for the first time in their reconsideration motion.  Def. Mem.,

Docket No. 239-2, at 2 (quoting Docket No. 237 at 14).  Defendants are simply

wrong.

 *First*, Plaintiffs' position has not changed.  From the Complaint through

their summary judgment papers (and numerous filings in between), Plaintiffs have

made clear that their direct infringement claim rests on Defendants' control over

and responsibility for the challenged conduct.  *See, e.g.*, Complaint, Apr. 15, 2008,

Docket No. 1, ¶ 13 ("Patton has ultimate responsibility for the academic and

technical departments of the University involved in the provision of electronic

course materials to Georgia State students through the Library website, the

Blackboard course management system, and elsewhere – and *the ability to direct*

*and demand their compliance with federal copyright law* and to halt activities that

do not so comply." (emphasis added)); Plaintiffs' Memorandum of Law in Support

of Their Motion for Summary Judgment, Feb. 26, 2010, Docket No. 142-1, at 37

("Injunctive relief is appropriate as to each of the Defendants.  In an action against

state officers in their official capacities, personal action by defendants individually

is not a necessary condition of injunctive relief; rather, *all that is required is that*

*the official be responsible for the challenged action*.  It is sufficient that the state

officer sued by virtue of his office, have some connection with the . . . conduct

complained of." (internal quotation marks, alterations, and citations omitted;

emphasis added)).

Indeed, the very phrase Defendants latch onto as a justification for their

untimely motion appears almost verbatim in Plaintiffs' brief in opposition to

Defendants' motion for summary judgment.  *See* Plaintiffs' Memorandum of Law

in Opposition to Defendants Motion for Summary Judgment, Apr. 5, 2010, Docket

No. 185, at 36 ("The only relevant question is whether the named defendants have

the *authority to stop the violations about which Plaintiffs complain.*"  (emphasis

added)).  Plaintiffs' word choice was not accidental.  As explained in detail below,

binding Eleventh Circuit precedent requires only that the "official be responsible

for the challenged action" for an injunction to issue under *Ex parte Young*.[3]

Defendants' Eleventh Amendment defense has no more validity now than it did

two years ago, when Defendants expressly disclaimed the defense.

---

[3] Defendants' motion is also procedurally improper in that it addresses a claim on which they already have prevailed.  Plaintiffs have moved for reconsideration of this Court's grant of summary judgment on their direct infringement claim. Because this Court granted summary judgment on that claim, Defendants' argument that the Court lacks subject matter jurisdiction over that claim because of the Eleventh Amendment is moot (and certainly premature) unless and until the Court grants Plaintiffs' motion for reconsideration.  Defendants do not contend that the Court lacks subject matter jurisdiction over the contributory infringement claim that presently remains in the case.

## II.   DEFENDANTS ARE PROPER PARTIES UNDER *EX PARTE YOUNG*.

Even if the Court were to address the merits of Defendants' motion now, it should find that their Eleventh Amendment arguments have no merit.  As an initial matter, Plaintiffs do not dispute that state institutions (as distinct from state officials) are entitled to Eleventh Amendment sovereign immunity from copyright infringement absent statutory abrogation or express waiver.  Indeed, precisely because of the Eleventh Amendment, Plaintiffs' claims were not brought against a state institution; rather, they were brought against state officials in their official capacities pursuant to the *Ex parte Young* exception to sovereign immunity.  The first half of Defendants' brief, in which they discuss Eleventh Amendment immunity in general, *see* Def. Mem., Docket No. 239-2 at 6-13, is therefore irrelevant; under *Ex parte Young*, the Eleventh Amendment immunity of a state official sued in his or her official capacity is not coextensive with that of the state entity the official represents.  That is the very point of *Ex parte Young*, 209 U.S. 123 (1908), and of the hundred-plus years of jurisprudence following it.[4]

---

[4] Defendants posit a general rule that "a suit against an official in his or her official capacity is a suit against the entity that individual represents," *see* Def. Mem., Docket 239-2, at 5, but *Ex parte Young* holds otherwise.  Under *Ex parte Young*, an action against a state official seeking prospective injunctive relief is not barred by the Eleventh Amendment because when a state official acts in contravention of federal law, "he is . . . . stripped of his official or representative character and is

As Plaintiffs explained in their summary judgment papers and motion for partial reconsideration, the Eleventh Circuit has held that in an action against state officers in their official capacities, "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief"; instead, "[a]ll that is required is that the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988). It is sufficient, as the court stated in *Luckey*, that the state officer sued "'by virtue of his office, ha[ve] some connection' with the . . . conduct complained of." *Id.* at 1015-16 (quoting *Ex parte Young*, 209 U.S. at 157. As Plaintiffs pointed out in their reconsideration motion, the factual stipulations in this case plainly establish that each of the named defendants is a proper party under this standard. *See* Plaintiffs' Motion for Partial Reconsideration and Supporting Memorandum of Law, Docket No. 237, at 13-18.[5]

---

subjected in his person to the consequences of his individual conduct." 209 U.S. at 159-60. Thus, as the Supreme Court has stated, "where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar." *Coeur d'Alene*, 521 U.S. at 276-77.

[5] Only in the absence of "some connection," where the defendant is "merely . . . a representative of the state," is the action an improper "attempt[] to make the state a party." *Ex parte Young*, 209 U.S. at 157. *See also Coeur d'Alene*, 521 U.S. at 271 (observing that allowing every action against an officer named in his official capacity to proceed would be an "empty formalism" that would undermine the interests served by the Eleventh Amendment).

825159.1

11

Defendants apparently believe this Circuit's interpretation of *Ex parte Young*

was somehow nullified by the Federal Circuit's decision in *Pennington Seed*, but it

was not.  As a threshold matter, *Pennington Seed* is not binding on this Court.

Instead, the applicable rule of law is what the Eleventh Circuit articulated in

*Luckey v. Harris*, *supra*, where, as noted, the Court held that under *Ex parte Young*

"[a]ll that is required is that the official be responsible for the challenged action,"

860 F.2d at 1015, as Defendants undisputedly are here.[6]

---

[6] Other circuits apply the same standard as the Eleventh.  *See, e.g.*, *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 645 (7th Cir. 2006) ("The Attorney General argues that the plaintiffs have only established a general connection between her duties and powers and the [statute at issue] but not the specific connection necessary to overcome sovereign immunity.  She argues that her primary duties do not involve the prosecution of ordinary criminal cases (as a prosecution under the [statute] would be), but only in criminal appeals.  We are unconvinced by this argument.  The Attorney General concedes that she has the power to enforce the [statute]; the power is simply concurrent with that of the State's Attorney.  This satisfies the some connection requirement of *Ex parte Young*." (internal quotation marks omitted)); *CSX Transp., Inc. v. N.Y. State Office of Transp. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002) ("[T]he Individual Defendants argue that they are not amenable to suit under *Ex Parte Young* because they are not responsible for the conduct CSX alleges is in violation of federal law.  However, a review of the powers of ORPS reveals that it has the authority, among other things, to monitor the quality of local assessment practices by individual assessing units, remove assessors, impose penalties upon assessors, and order assessors to comply with its directives. . . . [P]recedent establishes that ORPS possesses both the power and the duty under New York law to control assessment of railroad taxes for the local districts.  It is those very assessments that CSX argues are in violation of the 4-R Act.  Accordingly, *Ex Parte Young* allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an

In *Luckey*, the plaintiffs sought an order requiring the defendants to meet minimal constitutional standards in the provision of indigent criminal defense services.  The Eleventh Circuit held that the governor of Georgia, who was responsible for law enforcement and had the power to direct the Attorney General to initiate prosecutions, and state judges, who were responsible for administering representation for indigent criminal defendants, were appropriate parties under *Ex parte Young*.  *See* 860 F.2d at 1016.  Under the same standard, there can be little question that Defendants in this case are appropriate parties under *Ex parte Young* based on their failure to exercise their right and ability to stop the widespread copyright infringement of which Plaintiffs complain – committed, not incidentally, under a new copyright policy Defendants adopted in response to this lawsuit.  The stipulated facts specifying the connection of each of the named defendants to the ERes system, *see* Section III, *infra*, easily establish the requirement of "some connection" to the challenged conduct and, hence, that *Ex parte Young* applies.

Defendants' attempts to distinguish *Luckey* are unsuccessful.  Defendants argue that because *Luckey* was a section 1983 civil rights action that is "not treated as actions against the state," and because the Fourteenth Amendment abrogates the

---

ongoing violation of federal law." (internal quotation marks and citations omitted)).

Eleventh Amendment for section 1983 civil rights actions, *Luckey* somehow does not apply here.  Def. Mem., Docket No. 239-2, at 17.[7]  However, the fact that *Luckey* and other cases on which Plaintiffs rely involved civil rights claims does not mean that *Ex parte Young* only applies to claims rooted in the Fourteenth Amendment, which "authorized the abrogation of Eleventh Amendment immunity for § 1983 actions." *Id.*

Because the *Ex parte Young* doctrine *presumes* that the state entity in question is immune from suit, it is immaterial that Congress did not abrogate sovereign immunity for copyright claims.  *See* Def. Mem., Docket No. 239-2, at 11-13.  That is why the court in *Salerno v. City University of New York*, 191 F. Supp. 2d 352 (S.D.N.Y. 2001), held that the Chancellor of the City University of New York (CUNY) and the Director of the John D. Calandra Italian American Institute did not have sovereign immunity from copyright infringement claims under *Ex parte Young* even though CUNY and the Calandra Institute, as arms of the State of New York, did.  *See* 191 F. Supp. 2d at 355-56.[8]  The court expressly

---

[7] Defendants also note that *Sandoval v Hagan,* 197 F.3d 484 (11th Cir. 1999), and *Board of Public Education for Savannah v. State of Georgia*, No. CV 490-101, 1990 WL 608208 (S.D. Ga. Sept. 24, 1990), involved claims under the Civil Rights Act of 1964.  *See* Def. Mem., Docket No. 239-2, at 18.

[8] Defendants' suggestion that *Salerno* is distinguishable based on the plaintiffs there having alleged "actual and direct involvement" by the named defendants in

rejected the defendants' argument that its holding that CUNY and the Institute were arms of the state precluded plaintiffs' reliance on *Ex parte Young* as to the official capacity defendants on the ground that the state was the real party in interest.  *See id.* at 357.  *See also Sandoval v. Hagan*, 197 F.3d 484, 500 (11th Cir. 1999) ("Even if the Eleventh Amendment barred Appellees' action against the State of Alabama . . . Appellees' suit, as it relates to Director [of the Alabama Department of Public Safety] Hagan, in his official capacity, still could proceed . . . .").

The same principle is illustrated by *Pennington Seed* itself, which involved patent infringement claims against employees of a state university.  As Defendants point out, the Supreme Court in *Fla. Prepaid Post-Secondary Education Expense Board v. College Savings Bank*, 527 U.S. 627 (1999), struck down Congress's attempt to abrogate state sovereign immunity with respect to patent infringement claims.  *See* Def. Mem., Docket No. 239-2, at 10-11.  Yet in *Pennington Seed*, the Federal Circuit did not hold that the defendants could not be held liable under *Ex parte Young* because Congress had not abrogated the state university's sovereign

---

the alleged copyright infringement is baseless.  The court in *Salerno* merely referred to allegations of "limited involvement" by the defendants in the infringement without specifying what the alleged involvement was and emphasized that "some connection between the official and the enforcement of the illegal act" is all that is required under *Ex parte Young*.  191 F. Supp. 2d at 357.

immunity for patent infringement, as Defendants' theory would suggest.  (Instead, it found that the Plaintiffs had not demonstrated a sufficient nexus between the named defendants and the patent infringement.)  Thus, *Pennington Seed* – the apparent belated discovery of which seems to have motivated Defendants' motion – actually refutes Defendants' theory that *Ex parte Young* does not apply to intellectual property claims.

## III.    EVEN IF THIS COURT WERE BOUND TO APPLY *PENNINGTON SEED*, DEFENDANTS' MOTION STILL WOULD LACK MERIT.

In *Pennington Seed*, the Federal Circuit noted that the plaintiffs' attempt to establish the official capacity defendants' connection to the patent infringement at issue was marred by reliance on materials and argument outside the four corners of the complaint that the district court refused to recognize.  457 F.3d at 1342 n.4.  In this case, however, the relevant facts concerning the role of each defendant in overseeing the ERes system have been developed through discovery and stipulations.  Those established facts show that the defendants named in this case are not "random" and that they do indeed have a significant "nexus" to the alleged violations of federal law sufficient to make them proper defendants under *Ex parte Young* as interpreted in *Pennington Seed*.

As Plaintiffs demonstrated in their opposition to Defendants' summary judgment motion, each named Defendant has the authority or duty to ensure, in one

way or another, that GSU comes into compliance with federal copyright law as well as the authority to stop specific violations of that law.  Specifically, Defendants have conceded that President Becker, Provost Palm, and Dean of Libraries Seamans each have the authority to direct library staff to block access to or remove specific infringing materials on the ERes system if required to do so by the Court.  Defendants' Response to Plaintiffs' Statement of Facts, Docket No. 187, at 10-11; Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Admission, May 13, 2009 ("First RFA"), No. 7, attached hereto as Exhibit A; Defendants' Amended and Supplemental Responses to Plaintiffs First Set of Interrogatories to Defendants, May 19, 2009 ("GSU Interrog. Response"), No. 4, attached hereto as Exhibit B.  Provost Palm, for example, is responsible for monitoring officials and functions of the University's academic administration and for "correct[ing] any conduct not consistent with the professional and legal fulfillment of the University's purposes and objectives," which obviously includes noncompliance with copyright law.  *See* First RFA, Nos. 18-19.  Indeed, Defendants have admitted that the GSU Provost's responsibilities include "correcting noncompliance with federal copyright law."  *Id.*, No. 19.  This contrasts with *Pennington Seed*, where the Court held that "a federal court cannot

enjoin a state official to perform his or her duty under *state* law." *Pennington Seed*, 457 F.3d at 1343.

Moreover, the new copyright policy about which Plaintiffs complain (and on which Defendants stake their fair use defense) was drafted by a committee of which one defendant – Dean Seamans – was a member, and it was adopted by the members of the Board of Regents, who are also each defendants.  As the Court recognized in its summary judgment order, there is a nexus between Defendants and the violations of federal law at issue in this case, as "those Defendants who formulated the Current Policy are also responsible for overseeing its implementation."  Order, Sept. 30, 2010, Docket No. 235, at 29.  In light of the significant number of ongoing infringements identified in Plaintiffs August 2010 filings (and the possibility that the additional discovery this Court's November 5 Order allows will uncover additional examples of ongoing infringement), there remains a triable question of fact as to whether Defendants are implementing the copyright policy in compliance with federal law.

In short, the record before this Court is dramatically different than that in *Pennington Seed*.  Therefore, even if the heightened "nexus" showing required by the Federal Circuit were the law of this Circuit (which it is not), Defendants would not be entitled to judgment as a matter of law on that ground.

825159.1

## CONCLUSION

Two years ago, in a filing devoted entirely to the Eleventh Amendment, Defendants stated that they did not oppose Plaintiffs' motion to add the members of the Board of Regents as official capacity defendants in this action.  Since then, Defendants have chosen not to raise the sovereign immunity arguments they now rely on in any filing with the Court, despite having several procedurally appropriate opportunities to do so.  Thus, even if this Court were inclined to find Defendants' motion meritorious (which it is not), the Court should deny Defendants' attempt to derail the case by raising an Eleventh Amendment defense at this late date.  To the extent Defendants wish to pursue their sovereign immunity defense, the Court should entertain it at the trial it has decided to conduct, not now.

Respectfully submitted this 6th day of December, 2010.

/s/ John H. Rains IV
Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
John H. Rains IV
rains@bmelaw.com
Georgia Bar No. 556052

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

825159.1

19

R. Bruce Rich (*pro hac vice*)
Randi Singer (*pro hac vice*)
Jonathan Bloom (*pro hac vice*)
Todd D. Larson (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1. This document was prepared in Times New Roman 14 point font.

/s/ John H. Rains IV
John H. Rains IV

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing **PLAINTIFFS'**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c)** with the Clerk of

Court using the CM/ECF filing system which will automatically send e-mail

notification of such filing to the following attorneys of record:

> Anthony B. Askew, Esq.
> Stephen M. Schaetzel, Esq.
> Kristen A. Swift, Esq.
> C. Suzanne Johnson, Esq.
> King & Spalding
> 1180 Peachtree Street
> Atlanta, Georgia 30309
>
> Kristina M. Quicker, Esq.
> BALLARD SPAHR, LLP
> 999 Peachtree Street, Suite 1000
> Atlanta, GA 30309
>
> Mary Jo Volkert, Esq.
> Assistant S. Attorney General
> 40 Capitol Square
> Atlanta, Georgia 30334

This 6th day of December, 2010.

/s/ John H. Rains IV
John H. Rains IV

825159.1

22