IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CAMBRIDGE UNIVERSITY PRESS, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 1:08-CV-1425-ODE |
| MARK P. BECKER, in his official capacity as Georgia State University President, *et al.*, | § § § | |
| Defendants. | § § § | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c)**

## I.     INTRODUCTION

Plaintiffs sued Defendants in their official capacities.  It is well-settled that official capacity defendants are entitled to the full scope of immunities possessed by the State. Further, it is undisputable that if the Defendants are entitled to Eleventh Amendment immunity, this action fails for lack of subject matter jurisdiction.  Plaintiffs' unsupported assertions that the Eleventh Amendment immunity defense does not implicate the Court's subject matter jurisdiction are without justification, and their suggestion that this threshold question should be addressed at trial is contrary to Supreme Court precedent. Because a challenge to a court's subject matter jurisdiction can be raised at any time, Plaintiffs' lengthy discourse criticizing the timeliness of this motion are irrelevant as a matter of law.   Regardless, Defendants asserted sovereign immunity and Eleventh Amendment immunity as affirmative defenses in their answer to the complaint.  (Defs.' Answer to Compl. (Dkt. 14) at Second Defense and Third Defense; Defs.' Answer to First Am. Compl. (Dkt. 42) at Second Defense and Third Defense.)    Plaintiffs' case can proceed only if they can show that (1) the State of Georgia has consented to be sued in federal court on the claims involved, (2) the State of Georgia has overtly effected a waiver of Eleventh Amendment immunity by either voluntarily invoking federal jurisdiction or by making a clear declaration that it intends to submit itself to federal jurisdiction, (3) there has been a successful abrogation of Eleventh Amendment immunity, or (4) the named Defendants are sufficiently connected to the enforcement of a

policy that violates the Constitution or federal law to allow for the application of the *Ex parte Young* exception.

Plaintiffs do not appear to dispute that this case involves neither consent nor abrogation. Rather, Plaintiffs argue for a waiver of immunity, but they fail to cite any clear and overt action by the State. And the Supreme Court has made it very clear that waiver of Eleventh Amendment immunity cannot be implied or construed from the circumstances. Plaintiffs' cited cases, attesting to the fact that Eleventh Amendment immunities are *waivable* under very limited and specific circumstances, are irrelevant since there has been no waiver in this case.

Plaintiffs insist that their case fits into the narrow *Ex parte Young* exception based on Defendants' alleged authority to oversee the University System of Georgia's Policy on the Use of Copyrighted Works in Education and Research ("Policy"). But this exact theory was rejected by the Federal Circuit in *Pennington Seed*. Plaintiffs' attempts to diminish the impact of this ruling by focusing on distinguishable Eleventh Circuit cases dealing with the enforcement of state laws that violate Equal Protection guarantees are without merit. These cases do not impact or diminish the clear holding in *Pennington Seed* that a university official's general obligation to oversee a University's intellectual property policies does not create a sufficient connection to any alleged violation of federal intellectual property laws sufficient to allow a case against the university official to proceed under the *Ex parte Young* exception.

## II.   THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE THE OFFICIAL CAPACITY DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.

Federal Courts are courts of limited jurisdiction.  Where a court does not have jurisdiction over the subject matter of a case before the court, the case must be dismissed. Assertion of Eleventh Amendment immunity challenges a court's subject matter jurisdiction.  *Smith v. Avino*, 91 F.3d 105, 107 (11th Cir. 1996) ("Under the law of this Circuit, Eleventh Amendment immunity is considered to be in the nature of subject matter jurisdiction, which can be considered at any time in the litigation and cannot be waived by the parties."), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Upper Oconee Basin Water Auth. v. Jackson County*, 699 S.E.2d 605, 607-08 (Ga. Ct. App. 2010) ("A motion to dismiss asserting sovereign immunity . . . is based upon the trial court's lack of subject matter jurisdiction, rather than the merits of the plaintiff's claim.") (citation omitted).  The court is "under a continuing duty to review [its] jurisdiction at any point on appeal, and the eleventh amendment partakes of the nature of a jurisdictional bar." *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (citations and internal quotation marks omitted) (affirming the lower court's dismissal on sovereign immunity grounds).  Because "state sovereign immunity implicates the court's subject matter jurisdiction," it "must be decided regardless of when it is raised." *Bell v. Dean*, No. 2:09-CV-1082, 2010 WL 1856086, at *2 (M.D. Ala. May 4, 2010) (granting in part the defendant's motion to dismiss, a defense raised for the first

3

time in a reply brief).

Plaintiffs' arguments are contrary to established law on a number of fronts.

First, the cases cited above squarely contradict Plaintiffs' contention that a "sovereign immunity defense does not implicate the Court's subject matter jurisdiction." (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Under Rules 12(b)(1) and 12(c) (Dkt. 246) at 3.)  As the Eleventh Circuit noted, "the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III" and "with the jurisdictional nature of the Eleventh Amendment's limitation on judicial authority, the Supreme Court has held that the "Eleventh Amendment defense . . . need not be raised in the trial court," and may be raised for the first time by a state on appeal[.]"  *McClendon v. Ga. Dept. of Comm. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001) (internal citations omitted).

Second, much of Plaintiffs' brief concerns Defendants' alleged delay in filing the Motion to Dismiss, but they cite no case law directly supporting their waiver-by-delay arguments and ignore contrary Supreme Court precedent.  *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974) (recognizing state's Eleventh Amendment immunity defense first raised on appeal to the Seventh Circuit).

Third, Plaintiffs offer no support for their creative pronouncement that Defendants have lost their right to raise the defense of sovereign immunity at this time and must wait until trial to present the defense.  (Dkt. 246 at 5.)  Indeed, Plaintiffs' proposal conflicts

with the entire judicial structure: "an assertion of Eleventh Amendment immunity must be resolved before a court may address the merits of the underlying claim(s)." *Seaborn v. Florida Dep't of Corr.*, 143 F.3d 1405, 1407 and n.2 (11th Cir. 1998) (holding the United States Supreme Court ruling in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998) eliminated the exercise of "hypothetical jurisdiction," a prior Eleventh Circuit practice used to sidestep the sovereign immunity issue and dismiss the case on its merits).

Fourth, Plaintiffs' citations to qualified immunity case law are irrelevant. (Dkt. 246 at 5.)   Qualified immunity "protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known."   *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002). Qualified immunity is wholly separate and distinct from sovereign immunity and does not involve issues of subject matter jurisdiction.  This Court dealt with and disposed of a similar attempt to equate official immunity with sovereign immunity just last year in *Spruell v. Harper*, No. 1:09-CV-356, 2009 WL 4041937, at *4 (N.D. Ga. Nov. 18, 2009), noting that "this case does not involve sovereign immunity[,] [i]t involves official immunity," and that "[o]fficial immunity does not affect subject matter jurisdiction." Plaintiffs' reliance on qualified immunity case law is not analogous to the subject matter jurisdiction issues raised by the sovereign immunity defense.

### III. THE STATE OF GEORGIA HAS NOT WAIVED ITS ELEVENTH AMENDMENT IMMUNITY; PLAINTIFFS' CASES MERELY POINT OUT THAT THE STATE MAY WAIVE ITS ELEVENTH AMENDMENT IMMUNITY BY VOLUNTARILY INVOKING FEDERAL JURISDICTION OR MAKING A CLEAR DECLARATION OF WAIVER.

There are only three ways to provide judicial power over a suit against the state despite the Eleventh Amendment bar: (1) consent by the state to be sued in federal court on the claim involved, (2) waiver of immunity by a state, or (3) abrogation of immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 253 (1985). (*See also* Defs.' Mot. to Dismiss under Rules 12(b)(1) and 12(c) (Dkt. 239) at 6.) Plaintiffs do not attempt to argue for consent by the State of Georgia or for abrogation of state sovereign immunity, and instead seem to argue for an implied waiver of state sovereign immunity. (Dkt. 246 at 7.) But waiver of sovereign immunity requires a state to "affirmatively invoke[]" federal jurisdiction and it cannot be implied or construed from the circumstances. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).

Plaintiffs point to two cases—*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), and *Patsy v. Board of Regents*, 457 U.S. 496 (1982)—that merely illustrate that the sovereign immunity defense is in fact waivable, and that a federal court need not *sua sponte* raise the Eleventh Amendment issue. (Dkt. 246 at 7.) Defendants agree that the sovereign immunity defense differs from other types of subject matter jurisdiction issues in that it is indeed waivable, but maintain that the defense has not been waived here, and so Plaintiffs' citations to this effect are irrelevant; Defendants here *do* raise the defense.

6

The state has neither "voluntarily invoke[d] [federal] jurisdiction" nor made a "clear declaration that it intends to submit itself to [federal] jurisdiction," the required overt actions necessary to effect a waiver of state sovereign immunity. *See Fla. Prepaid*, 527 U.S. at 675, 676 (citation and internal quotation marks omitted).

Plaintiffs' citation to *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), is similarly inapplicable. *Lapides* illustrates that a state may waive sovereign immunity by voluntarily invoking federal jurisdiction. In *Lapides*, the plaintiff brought suit against the Board of Regents of the University System of Georgia in state court, alleging violations of both state and federal law. The Board of Regents affirmatively removed the case to federal court and then filed a motion to dismiss, asserting Eleventh Amendment immunity. The Supreme Court stated that by choosing to remove the case to federal court the Board of Regents "*voluntarily* invoked the federal court's jurisdiction." *Id.* at 620 (emphasis added). The Court held that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objections to litigation of a matter . . . in a federal forum." *Id.* at 624. This case presents no such fact pattern.

Here, Defendants were involuntarily sued in a federal court, and have taken no affirmative actions sufficient to waive sovereign immunity. Case law is clear that waiver requires an affirmative action by the state. *See Fla. Prepaid*, 527 U.S. at 675-76; *Edelman*, 415 U.S. at 651. Cases such as *Florida Prepaid* and *Edelman* "cannot be

7

reconciled with the [Plaintiffs'] reasoning, under which a state would waive its immunity by doing nothing more than filing an answer to a complaint and conducting discovery." *R.I. Dept. of Envtl. Mgmt. v. United States*, 304 F.3d 31, 49 (1st Cir. 2002) (affirming, based on state sovereign immunity, the lower court's grant of an injunction against federal administrative proceedings against the state).

Plaintiffs' citations to both Defendants' Response to Plaintiffs' Motion for Leave to Amend the Complaint to Add Additional Defendants (Dkt. 33) and this Court's December 11, 2008 Order (Dkt. 38) simply do not support their case.  In fact, Defendants clearly stated that "because the State of Georgia did not invoke federal jurisdiction, did not manifest a clear intent to waive immunity, and did not enact a statute waiving sovereign immunity in federal court or in copyright cases, there has been no waiver of sovereign immunity."  (Dkt. 33 at 6.)  Recognizing this, this Court noted that "[t]he parties' arguments regarding sovereign immunity . . . will be considered when and if such a motion is filed."  (Dkt. 38 at 2.)

Because sovereign immunity is a matter of subject matter jurisdiction, and because the defense can be raised at any time, Plaintiffs' arguments regarding timeliness fail. Similarly, Plaintiffs' suggestion to reserve until trial the question of subject matter jurisdiction directly conflicts with Supreme Court precedent.  And Plaintiffs' attempts to broaden the waiver doctrine do not comply with well-established controlling precedent and belies recent First Circuit case law.  Accordingly, Plaintiffs' attempt to eschew the

8

state's sovereign immunity fail and Plaintiffs' case can proceed only through the *Ex parte Young* exception, which does not apply here.

## IV. THE *EX PARTE YOUNG* EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY REQUIRES MORE THAN MERE SUPERVISORY AUTHORITY.

Plaintiffs claim that "the Eleventh Amendment immunity of a state official sued in his or her official capacity is not coextensive with that of the state entity the official represents." (Dkt. 246 at 10.) This statement is incorrect as a matter of law. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law . . . . For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citations and internal quotation marks omitted) (distinguishing suits against officials in their official capacity from suits against officials in their personal capacity).

The crux of the issue before this court is whether Defendants are sufficiently connected to the allegedly infringing actions to support an *Ex parte Young* exception. Plaintiffs admit the connection in this case is limited to (and indeed base their entire argument upon) Defendants' "supervisory authority" to oversee the implementation of the Policy. (Dkt. 237 at 14.) But Plaintiffs' theory—that supervisory authority is a sufficient connection to the alleged infringement—directly contradicts Federal Circuit

precedent and does not comport with Eleventh Circuit precedent.

    a.    **Plaintiffs' case is indistinguishable from the Federal Circuit's holding in _Pennington Seed_.**

Perhaps because the facts of _Pennington Seed, Inc. v. Produce Exchange No. 299_, 457 F.3d 1334 (Fed. Cir. 2006), are indistinguishable from the facts of this case, and because the Federal Circuit found Plaintiffs' supervisory authority theory deficient, Plaintiffs go to great lengths to distance themselves from the holding of _Pennington Seed_.

First, Plaintiffs simply repeat their supervisory authority argument, citing various discovery documents to that effect.  (Dkt. 246 at 17.)  But even relying on these documents, Plaintiffs can show only a supervisory authority of the named defendants. (Dkt No. 246 Ex. A. at 9.)  During discovery Defendants pointed out that while, for example, the Provost has some supervisory authority, Defendants "den[y] he is responsible for the enforcement of such policies."  (Dkt. 246, Ex. A. at 12.)

Second, Plaintiffs claim that _Pennington Seed_ somehow created a "heightened nexus" requirement.  (Dkt. 246 at 18.)  But the _Pennington Seed_ opinion does not contain a single reference to or intimation of a different or heightened standard.  Instead, the court found that "there must be a connection between the state officer and the enforcement of the act" and that "[a] nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that

individual." *Id.* at 1342-43.

Third, Plaintiffs attempt to obfuscate the holding of *Pennington Seed* by pointing to statements regarding "state law." (Dkt. 246 at 18.) The *Pennington Seed* court plainly stated that *Ex parte Young* can only proceed where there is a violation of *federal* law. *Id.* at 1343. Failing that, the Federal Circuit found that the *Pennington* plaintiff's allegations that the defendants were, at best, failing to meet their state law obligations to oversee the University's patent policy could not support an *Ex parte Young* exception. Plaintiffs' supervisory authority argument fails for the exact same reason.

Finally, Plaintiffs point out that the law of the Federal Circuit is not binding upon this Court. Defendants acknowledge this as true, but note that the Federal Circuit is especially well-equipped to deal with this subject, an intellectual property matter, and that the Federal Circuit's holding is not inconsistent with any other binding precedent.

### b. Eleventh Circuit precedent is concordant with the Federal Circuit decision in *Pennington Seed*.

Plaintiffs incorrectly stated that the Federal Circuit's *Pennington Seed* decision constitutes a break from Eleventh Circuit precedent. (Dkt. 246 at 12.) Rather, *Pennington Seed* is wholly consistent with long-standing Eleventh Circuit precedent, including *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988). Plaintiffs urge the court to disregard factually indistinguishable Federal Circuit law and grossly oversimplify Eleventh Circuit law by adopting an overly broad construction of the *Ex parte Young*

exception.  Defendants urge the court to follow the *Pennington Seed* precedent because it is factually indistinguishable from the present case and consistent with binding precedent.

The Eleventh Circuit has long recognized that "a plaintiff may sue only the particular official who has threatened to take some unconstitutional action against him or her."  *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 819 n.4 (5th Cir. 1979).  *Luckey v. Harris* in fact recognizes this requirement, noting that "the state officer sued must, by virtue of his office, ha[ve] some connection with the unconstitutional act or conduct complained of."   860 F.2d at 1015-16 (citation and internal quotation marks omitted).

The key issue in the Eleventh Circuit's analysis, as in any *Ex parte Young* analysis, is the level of connection required to enforce an injunction against the state.   "Courts have struggled about the degree to which an official must be responsible for a challenged action to satisfy the *Ex parte Young* connection requirement."  *Bd. of Pub. Educ. for the City of Savannah v. Georgia*, No. CV 490-101, 1990 WL 608208, at *4 (S.D. Ga. Sept. 24, 1990).  Plaintiffs purport to meet the connection requirement based on Defendants' supervisory authority.   But this is the exact argument that the Federal Circuit found insufficient in *Pennington Seed*.  457 F.3d at 1342.

The *Ex parte Young* doctrine "prohibits state officers from enforcing state policies in violation of the Constitution or federal law."  *Sandoval v. Hagan*, 197 F.3d 484, 500 (11th Cir. 1999).  "[T]he doctrine of *Ex parte Young* cannot operate as an exception to [a

state's] sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999). "Therefore, unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Id.* "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citing *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993)).

In *Luckey v. Harris*, the plaintiffs complained of systematic deficiencies in the Georgia indigent criminal defense system, denying the plaintiffs their constitutional rights. 860 F.2d at 1013. The court there found a sufficient connection between the alleged constitutional deprivations and the governor's powers, including the faithful execution of the laws, the power to commence criminal prosecutions, and the authority to direct the Attorney General. *Id.* at 1016. The Court similarly found a connection to certain Georgia judges based on their responsibility for *actually administering* the system of representation for the indigent criminally accused. *Id.* This connection, while fairly broad, was not based on mere supervisory authority. Similarly, in *Sandoval v. Hagan*, the court allowed the *Ex parte Young* action to proceed against the Director of the Alabama Department of Public Safety based on his *enforcement* of Alabama's official policy of administering its diver's license examinations only in English. 197 F.3d at 500.

13

*City of Savannah* is instructive.  There, the plaintiffs filed suit against The State of Georgia, The Governor of the State of Georgia, and numerous official capacity defendants in connection with their roles in the State Department of Education, alleging that the State had not complied with the Court-ordered desegregation plan.  1990 WL 608208, at * 1.  The court found a sufficient connection as to the Comptroller General and the Director because the Comptroller General affirmatively countersigns any warrants directing payments from the state treasury, and the Director then affirmatively pays those warrants.  *Id.* at *5.  More specifically, the Court found a sufficient connection because both the Comptroller General and the Director had *affirmatively issued* unlawfully discriminatory payments in the past.  *Id.*  The court's discussion of the Governor's connection to the constitutional deprivations similarly focused on a history of past wrongs.  *Id.* at *4 n.2.  The court noted that a generalized allegation against the Governor would be insufficient to meet the connection requirement.  *Id.* (citing *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 714 F.2d 946 (9th Cir. 1983)).  But the court noted that the plaintiffs "allege[d] that Governor Harris' predecessors, unlike the past governors of California, actively sought to prevent desegregation."  1990 WL 608208, at *4 n.2.

Plaintiffs' cases are distinguishable from the present case.  Plaintiffs do not allege any connection between the official capacity defendants and the alleged acts of copyright infringement beyond a mere supervisory authority.  Plaintiffs cite cases which list, often

14

in some detail, the connections between the named defendant and the alleged constitutional deprivation; none of these cases rely on mere supervisory authority. The only directly relevant case addressing whether supervisory authority over a University's copyright policy is sufficient to meet the connection requirement of *Ex parte Young* is *Pennington Seed*. Because supervisory authority is an insufficient connection to allow an *Ex parte Young* action to proceed against Defendants, and because the University System of Georgia's Policy is consistent with federal law and Plaintiffs do not allege otherwise, Plaintiffs' *Ex parte Young* arguments for jurisdiction do not apply.

## V.   CONCLUSION

Because this Court lacks subject matter jurisdiction over Plaintiffs' case, Defendants respectfully request that the Court grant their Motion to Dismiss.

Respectfully submitted this 13th day of January, 2011.

SAMUEL S. OLENS
Georgia Bar No. 551540
Attorney General

R. O. LERER
Georgia Bar No. 446962
Deputy Attorney General

DENISE E. WHITING-PACK
Georgia Bar No. 558559
Senior Assistant Attorney General

MARY JO VOLKERT
Georgia Bar No. 728755
Assistant Attorney General

Anthony B. Askew
Georgia Bar No. 025300
Special Assistant Attorney General
Stephen M. Schaetzel
Georgia Bar No. 628653
Kristen A. Swift
Georgia Bar No. 702536
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
(404) 572-4600
(404) 572-5100 (facsimile)

*/s/ Katrina M. Quicker*

Katrina M. Quicker
Georgia Bar No. 590859
BALLARD SPAHR LLP
999 Peachtree St., Suite 1000
Atlanta, GA 303039-3915
(678) 420-9300
(678) 420-9301

**Attorneys for Defendants**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c) complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing pleading was prepared on a computer using 14-point Times New Roman font.

*/s/ Katrina M. Quicker*
Katrina M. Quicker
Georgia Bar No. 590859
BALLARD SPAHR LLP
999 Peachtree St., Suite 1000
Atlanta, GA 303039-3915
(678) 420-9300
(678) 420-9301

**Attorney for Defendants**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| CAMBRIDGE UNIVERSITY PRESS, et al.,<br><br>                        Plaintiffs,<br><br>*-vs.-*<br><br>MARK P. BECKER, in his official capacity as Georgia State University President, et al.,<br>                        Defendants. | Civil Action No.<br>1:08-CV-1425-ODE |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 13th day of January, 2011, I have electronically filed the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(c) with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Edward B. Krugman
krugman@bmelaw.com
Georgia Bar No. 429927
Corey F. Hirokawa
hirokawa@bmelaw.com
Georgia Bar No. 357087
John H. Rains IV
Georgia Bar No. 556052

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

R. Bruce Rich
Randi Singer
Todd D. Larson

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*/s/ Katrina M. Quicker*
Katrina M. Quicker
Georgia Bar No. 590859
BALLARD SPAHR LLP
999 Peachtree St., Suite 1000
Atlanta, GA 303039-3915
(678) 420-9300
(678) 420-9301
QuickerK@BallardSpahr.com

***Attorney for Defendants***