Case 1:08-cv-01425-ODE Document 267 Filed 03/17/11

FILED IN CHAMBERS
U.S.D.C. - Atlanta

MAR 17 2011

_____en, Clerk
AmC\_\_\_\_\_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAMBRIDGE UNIVERSITY PRESS;
OXFORD UNIVERSITY PRESS, INC.;
and SAGE PUBLICATIONS, INC.,

    Plaintiffs,

v.

MARK P. BECKER, in his official
capacity as President of
Georgia State University; RISA
PALM, in her official capacity
as Senior Vice President for
Academic Affairs and Provost of
Georgia State University; J.L.
ALBERT, in his official
capacity as Georgia State
University Associate Provost
for Information Systems and
Technology; NANCY SEAMANS, in
her official capacity as Dean
of Libraries at Georgia State
University; ROBERT F. HATCHER,
in his official capacity as
Vice Chair of the Board of
Regents of the University
System of Georgia; KENNETH R.
BERNARD, JR., JAMES A BISHOP,
FREDERICK E. COOPER, LARRY R.
ELLIS, FELTON JENKINS, W.
MANSFIELD JENNINGS, JR., JAMES
R. JOLLY, DONALD M. LEEBERN,
JR., WILLIAM NESMITH, JR.,
DOREEN STILES POITEVINT, WILLIS
J. POTTS, JR., WANDA YANCEY
RODWELL, KESSEL STELLING, JR.,
BENJAMIN J. TARBUTTON, III,
RICHARD L. TUCKER, ALLAN VIGIL,
and LARRY WALKER, in their
official capacities as members
of the Board of Regents of the
University System of Georgia,

    Defendants.

CIVIL ACTION NO.
1:08-CV-1425-ODE

ORDER

This copyright infringement action, brought under 17 U.S.C. §§ 101 et seq., is before the Court on Defendants' Motion to Dismiss [Doc. 239], to which Plaintiffs have responded in opposition [Doc.

246] and Defendants have replied [Doc. 258]. For the reasons set forth below, Defendants' Motion to Dismiss [Doc. 239] is DENIED.

I. Pertinent Facts

The facts included herein are as set forth in the pleadings. Plaintiffs, publishers and holders of copyrights in academic works, brought this suit against Defendants, officials of Georgia State University ("Georgia State") and/or the University System of Georgia, alleging copyright infringement pursuant to the Copyright Act, 17 U.S.C. §§ 101 et seq. All Defendants are sued in their official capacities. Plaintiffs' First Amended Complaint alleges that Defendants are infringing their copyrights by providing students access to copyrighted materials through electronic systems and the internet without obtaining permission from them as copyright owners. Plaintiffs' First Amended Complaint explicitly alleges that "[b]y scanning, copying, displaying and distributing Plaintiffs' copyrighted material . . ., Defendants' conduct constitutes infringement of Plaintiffs' copyrights . . . ." [Plaintiffs' First Amended Complaint, ¶ 48 (Doc. 39)]. Plaintiffs seek injunctive and declaratory relief. They do not seek damages.

In filings (briefs and discovery materials) subsequent to the First Amended Complaint Plaintiffs have clarified that they rely on Defendants' oversight responsibility to impose liability on them.

Defendants deny that they committed or caused any action which may have violated Plaintiffs' copyrights [Doc. 42 at 8]. They deny that Plaintiffs' copyrights have been or are being infringed. They rely on the fair use defense [Id. at 5]. They also assert Eleventh Amendment immunity in their answer to the complaint [id.] and now move on this ground to dismiss this action for lack of subject matter

2

jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(c).

Plaintiffs argue in response to Defendants' Motion to Dismiss that the motion is not timely because the motion was not filed until long after the motion should have been filed under the Scheduling Order which set filing deadlines. They also argue that the Court has jurisdiction in this case regardless of whether resolution of this issue turns on the strict averments of the complaint, or instead on other facts in the record showing that Defendants have oversight responsibility for the Georgia State professors, instructors and other personnel who allegedly infringed Plaintiffs' copyrights.

Rule 12(b)(1) permits a party to assert the defense of a court's lack of subject matter jurisdiction by motion. FED. R. CIV. P. 12(b)(1). In ruling on a motion to dismiss, the Court must look to the facts as pled. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Andrx Pharms., Inc. v. Elan Corp., 421 F.3d 1227, 1232-33 (11th Cir. 2005). In considering Defendants' motion for judgment on the pleadings, the Court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001).

3

II. Analysis

    A. Timeliness of Defendants' Motion

The Northern District of Georgia Civil Local Rule 7.1 requires that a motion to dismiss be filed within thirty days after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later. N.D. Ga. L.R. 7.1(A)(2). Plaintiffs contend that Defendants' Motion to Dismiss should be denied for untimeliness because the motion was filed long after the deadline for filing motions set by the Local Rules and long after the filing deadlines set by this Court in its Scheduling Order [Doc. 23]. Plaintiffs do not assert that Defendants have waived the right to assert Eleventh Amendment immunity. Defendants assert their Motion to Dismiss is timely because a challenge to subject matter jurisdiction may be raised at any time in the proceedings. Lowery v. Ala. Power Co., 483 F.3d 1184, 1213-14 n.64 (11th Cir. 2007).

In a case that involved the qualified immunity defense, the Eleventh Circuit held that when a defendant abuses the pretrial process by delaying in bringing a defense that was available early in the litigation but which could be raised at any time, such defendant may waive the right to raise the defense at the pretrial stage; however, the defense is preserved for trial. See Skrtich v. Thornton, 280 F.3d 1295, 1306-07 (11th Cir. 2002). Here, Defendants' Eleventh Amendment defense was raised in the answer to the complaint and in the answer to the First Amended Complaint. While the Motion to Dismiss based on the Eleventh Amendment was not filed until after the date set in the Scheduling Order, the Court does not believe that Defendants intended to delay the trial or frustrate the judicial process. Moreover, Defendants have not signaled an intent to waive

4

their Eleventh Amendment defense by failing to raise it by motion earlier. Finally, as Defendants point out, the Court's lack of subject matter jurisdiction may be raised at any time.

    B.    Eleventh Amendment Immunity

The Eleventh Amendment[1] prohibits suits in federal court against a non-consenting state by its citizens or citizens of other states. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1, 13-15 (1890); Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir. 2005). It is undisputed that Defendants here, as state officials sued in their official capacities, are arms of the State of Georgia. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1301 (11th Cir. 2007)(holding that the University System of Georgia and the Board of Regents are state entities for Eleventh Amendment purposes). Because the State of Georgia has not consented to be sued, the Eleventh Amendment bars suit against the state unless Congress has effectively abrogated the state's immunity for this issue.[2]

In its 1989 Pennsylvania v. Union Gas Co. divided decision, the Supreme Court of the United States held that the Commerce Clause of the Constitution grants Congress the constitutional authority to abrogate the Eleventh Amendment immunity of the states. Pennsylvania

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Therefore, it does implicate jurisdiction.

[2] Of course, a state could waive immunity or consent to suit in federal court. Neither is the case here.

v. Union Gas Co., 491 U.S. 1, 13-19 (1989). As a result, on November 15, 1990, Congress enacted the Copyright Remedy Clarification Act, which made explicit that "States, instrumentalities of States, and officers and employees of States acting in their official capacity, are subject to suit in Federal Court by any person for infringement of copyright." Copyright Remedy Clarification Act, Pub. L. No. 101-553, 104 Stat. 2749, 2749 (1990). The Act explicitly abrogated immunity "under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity." Id. However, the Supreme Court overturned the ruling in Union Gas in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 66 (1996). In 1999, the Supreme Court explicitly struck down Congress' effort to abrogate states' Eleventh Amendment immunity in the area of trademark and patent law through the Trademark Remedy Clarification Act and the Patent and Plant Variety Protection Remedy Clarification Act. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999); Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627 (1999). The Supreme Court ruled that not only was Congress unable to ground its authority to abrogate states' sovereign immunity under the Commerce Clause, but Congress also could not invoke Section 5 of the Fourteenth Amendment[3] in order to abrogate states' Eleventh Amendment immunity. Id.

---

[3] Section 5 of the Fourteenth Amendment provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5. "This article" is a reference to sections 1-4 of the Fourteenth Amendment.

The United States Court of Appeals for the Eleventh Circuit recently ruled that Congress did not have the authority to abrogate states' sovereign immunity through the Copyright Remedy Clarification Act, stating:

> It would be incongruous to hold that Congress may abrogate the States' sovereign immunity under the Copyright and Patent Clause for actions brought under the [Copyright Remedy Clarification Act] when the Supreme Court held that the clause does not provide this authority for the Patent Remedy Act.

Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., No. 08-13417, 2011 WL 649951, at *13-14 (11th Cir. Feb. 24, 2011).[4] Therefore, the Eleventh Amendment stands as a bar to suits against a state for copyright infringement.

Plaintiffs seek to proceed under the doctrine of Ex Parte Young, a narrow exception to Eleventh Amendment immunity which may allow a suit for prospective injunctive relief (not damages) against a state official (not the state itself) whose actions violate federal law [Doc. 246 at 10-15].

C. Ex Parte Young

In 1906, the State of Minnesota passed certain acts which fixed the prices for transporting passengers and commodities on railroads within the state, substantially reducing the rates railroad companies

---

[4] The Fifth Circuit has also rejected the constitutionality of the Copyright Remedy Clarification Act, holding that Congress cannot abrogate states' Eleventh Amendment immunity in suits involving the Copyright Act. See e.g., Rodriguez v. Texas Comm'n on the Arts, 199 F.3d 279, 281 (5th Cir. 2000) (holding that it is appropriate to adopt the Supreme Court's analysis of the Patent Remedy Act in the copyright context because Congress sought to protect substantially the same interests in each act and the language of the respective abrogation provisions is virtually identical); Chavez v. Arte Publico Press, 204 F.3d 601, 607-08 (5th Cir. 2000).

7

could charge. Ex Parte Young, 209 U.S. 123, 127-28 (1908). Stringent civil and criminal penalties for violating the acts were provided. Id. at 128. Shareholders of the railroad companies brought suit against Edward T. Young, the Attorney General of Minnesota, seeking an injunction to prevent Young from enforcing the new rate laws and their penalties. Id. at 129-31. The Circuit Court[5] granted a preliminary injunction enjoining Young from taking any action to enforce the new laws and their penalties, pending final hearing. Id. at 132.

The day after the Circuit Court granted the preliminary injunction, Young filed a petition for a writ of mandamus in Minnesota state court. Id. at 133. The writ was issued. Id. It commanded the Northern Pacific Railway Company to adopt and publish the new rates. Id. The federal Circuit Court then ordered Young to show cause why he should not be held in contempt for violating the temporary injunction. Id. Young asserted that the Circuit Court had lacked jurisdiction to enjoin him, as attorney general, from performing his duties as a state official. Id. Young's argument was grounded in the Eleventh Amendment of the U.S. Constitution. Id. The Circuit Court rejected Young's argument and found him in contempt of its injunctive order. The Circuit Court also rejected Young's effort to obtain a writ of habeas corpus, styled Ex Parte Young.

Upon review, the Supreme Court of the United States first held that the provisions of the Minnesota acts relating to the enforcement of the rates were unconstitutional. Id. at 148. The Supreme Court

---

[5]The Circuit Court for the District of Minnesota, which was the federal trial court.

found that the acts violated the due process and equal protection guarantees of the United States Constitution. Id. at 149-50. In holding that the Circuit Court had jurisdiction to enjoin Young despite the Eleventh Amendment, the Supreme Court reasoned:

> [T]he use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.

Id. at 159.[6] The Supreme Court held that when an officer of the state seeks to enforce an act which violates the Federal Constitution, an injunction seeking prospective relief does not violate the Eleventh Amendment. Id. at 155-56. Accordingly, Young was not entitled to disregard the federal court order; his habeas corpus petition was dismissed. Id. at 168.

While Ex Parte Young has endured as binding case law for over a century, the Supreme Court and the lower courts have interpreted it many times.[7] For one thing, it is well recognized today that Ex

---

[6]The Ex Parte Young doctrine has been described as "the Young fiction." See e.g., Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 262 (1997).

[7]Edelman v. Jordan, 415 U.S. 651, 677 (1974)(finding that the relief sought must be prospective, not retrospective); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (finding that the alleged violation must be of federal, as opposed to state, law); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 74-75 (1996)(finding that where Congress has prescribed a detailed remedial scheme for the enforcement of a statutorily created right against a state, an action under Ex Parte Young should not be allowed); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281-83 (1997)(finding that Ex Parte Young does not apply when a suit involves a "special sovereignty interest" such as a state's property interest in sovereign lands); Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535

9

Parte Young applies in suits for prospective injunctive relief to state actors acting in their official capacities who violate federal *laws* (not just federal constitutional guarantees). See e.g., Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (holding that the doctrine of Ex Parte Young avoided the state actor's Eleventh Amendment sovereign immunity claim because the complaint alleged an ongoing violation of federal law and sought relief properly characterized as prospective); see e.g. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336-37 (11th Cir. 1999) ("The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law.").

D.   Application of the Ex Parte Young Doctrine Here

Defendants contend that the Ex Parte Young exception to Eleventh Amendment immunity does not apply to them because Defendants themselves are not violating federal law but instead only have an oversight role over Georgia State's policies and personnel. To support their contention, Defendants rely on the Federal Circuit case Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334 (Fed. Cir. 2006) as persuasive authority. In Pennington Seed, the Federal Circuit held:

> Allegations that a state official directs a University's patent policy are insufficient to causally connect that state official to a violation of federal patent law—i.e.,

---

U.S. 635, 645 (2002)(finding that Ex Parte Young applies in suits for prospective injunctive relief to state actors acting in their official capacities who violate federal *laws*, not just federal constitution guarantees); Frew v. Hawkins, 540 U.S. 431, 436-40 (2004)(finding that a federal consent decree is enforceable against a state official under Ex Parte Young even if the decree violations were not violations of federal law).

10

> patent infringement. A nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual. See Frew, 540 U.S. at 437, 124 S. Ct. 899 (holding that the Ex Parte Young doctrine applies when state officials act in violation of state law); see also Shell Oil Co., 608 F.2d at 211 (holding that a general obligation to enforce state laws is not a sufficient nexus). The fact that a University Official has a general, state-law obligation to oversee a University's patent policy does not give rise to a violation of federal patent law.

Id. at 1342-43. The Federal Circuit affirmed the dismissal of plaintiffs' claims against the university officials in Pennington Seed. In part, it held that Ex Parte Young did not apply. The Federal Circuit reasoned that plaintiffs sought to enjoin the university officials from neglecting their job duties established by state law; a federal court cannot enjoin a state official to perform his or her duty under state law. The Federal Circuit relied on the Supreme Court's decision in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984).

In Pennhurst School, a resident of Pennsylvania's Institution for the Care of the Mentally Retarded brought suit in federal district court against the institution (hereinafter "Pennhurst School") and various state and county officials who allegedly had violated his federal constitutional and statutory rights as well as his rights under the Pennsylvania Mental Health and Mental Retardation Act of 1966 ("MH/MR Act"). The trial court awarded injunctive relief against the state officials who had oversight responsibility for Pennhurst School based in part on violation of the MH/MR Act, which the court held provided a right to adequate habilitation. The Court of Appeals affirmed, and held that the MH/MR Act required the state to adopt the "least restrictive environment"

11

approach for the care of the mentally retarded. The Court of Appeals relied on Ex Parte Young to refute the state's argument that injunctive relief under the MH/MR Act was barred by the Eleventh Amendment.

The Supreme Court reversed and remanded, finding that the Eleventh Amendment barred the federal courts from determining how the state officials should carry out their duties under state law (the MH/MR Act). The majority opinion authored by Justice Powell explained: "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Id. at 106. Thus, Pennhurst School does stand as a limitation on the Ex Parte Young doctrine. However, Pennhurst School itself does not compel a conclusion that Ex Parte Young is unavailable to Plaintiffs here. For one thing, Plaintiffs' First Amended Complaint does not seek relief for violation of a state law as in Pennhurst. Plaintiffs seek relief only under the federal Copyright Act. Under the instant pleadings, it does not appear that the Court will be called upon to determine whether state law requires Defendants to take action to avert copyright violations.

Pennington Seed does appear factually similar to a case in which state officials are sued for copyright infringement, and the officials were not personally involved in the alleged copyright violations. However, the Court will not address this argument at this time in part because Plaintiffs' First Amended Complaint currently alleges that Defendants' own copying, scanning, displaying, and distributing of Plaintiffs' materials violated Plaintiffs' copyrights. Also, the Court notes that Eleventh Circuit precedent

may be contrary to Pennington Seed. In Luckey v. Harris, the Eleventh Circuit held that "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief . . . . All that is required is that the official be responsible for the challenged action." Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988). It is sufficient that the state officer have "some connection" with the alleged misconduct by virtue of his office for Ex Parte Young to apply. Id. at 1015-16. Defendants argue that Luckey v. Harris is not dispositive because it is a civil rights case, brought under 42 U.S.C. § 1983 and that it is otherwise factually distinguishable as well. Again, the Court will not address this issue further at this time because the pleadings assert that Defendants themselves scanned, copied, displayed, and distributed Plaintiffs' copyrighted materials.

Ex Parte Young may (or may not) apply to this case. Writing for the majority in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), and responding to Justice Stevens' warning in his dissent that the Supreme Court's holding would prevent relief against states for violations of antitrust, bankruptcy, and copyright laws, Chief Justice Rehnquist stated in dicta[8] that such a conclusion was "exaggerated" because "[m]ost notably, an individual may obtain injunctive relief under Ex Parte Young in order to remedy a state officer's ongoing violation of federal law." Id. at 73.

At trial, the parties will need to present evidence and argument that will allow the Court to rule on the question whether Plaintiffs

---

[8]Seminole Tribe itself did not involve antitrust, bankruptcy or copyright claims.

13

may proceed under <u>Ex Parte Young</u> or whether the case must be dismissed for lack of subject matter jurisdiction. Based on the pleadings alone, the Court cannot say that it lacks subject matter jurisdiction to hear the case. Dismissal under Rules 12(b)(1) and 12(c), Federal Rules of Civil Procedure, would be improper.

Accordingly, Defendants' Motion to Dismiss [Doc. 239] is DENIED WITHOUT PREJUDICE. The parties are DIRECTED to file a proposed consolidated pre-trial order no later than April 29, 2011. The trial is set for May 16, 2011 at 10:00 a.m.

SO ORDERED, this __17__ day of March, 2011.

/s/ Orinda D. Evans
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE