**MAYMESTER 2009**

    A.    Pronunciation Games (Cambridge) – Professor Murphy (Dkt. 266 D-1)

    82.    Cambridge contends that *Pronunciation Games* is a "foreign work," but has not established that this work was not published in the United States within thirty (30) days of first publication. Cambridge has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Pronunciation Games* is a foreign work that avoids the requirement of 17 U.S.C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Cambridge has not shown it is entitled to maintain a claim for copyright infringement for this work.

    83.    Even if Plaintiff Cambridge could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Pronunciation Games* is 108 pages in length and a teacher's resource book that provides photocopiable pronunciation games (language training) for use in a classroom environment. The excerpt was nineteen (19) pages in length, which was

not substantial. Moreover, the book includes a "photocopy license" that applies to several pages, reducing the alleged improper use to only 9 pages, or approximately 8% of the work.[5]  Plaintiff Cambridge has not established that Professor Murphy's posting of the excerpt negatively affected the market for this work.  In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt.  In this instance, it appears that the excerpt was never made accessible to students because it was not assigned to the class as a reading assignment.  Thus, there could be no conceivable market harm from this posting.  All four fair use factors favor Defendants.

84.    Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy.  In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his

---

[5] The Court elects to rely on Plaintiffs' tabulation of the number of pages in a given work and the length of any excerpt used.  While Defendants properly note that Plaintiffs' routinely claim copyright in all pages of a given work but have provided a calculation of percentage used based only the text portion of the work, the Court adopts Plaintiffs' page counts for purpose of determining the percent of the various works taken as an excerpt.

conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

B.    Keep Talking: Communication Fluency Activities for Language Teaching (Cambridge) -- Professor Murphy (Dkt. 266 D-2)

85.    Cambridge contends that *Keep Talking: Communication Fluency Activates for Language Teaching* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the United States within thirty (30) days of first publication. Cambridge has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Keep Talking: Communication Fluency Activates for Language Teaching* is a foreign work that avoids the requirement of 17 U.S C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Cambridge has not shown it is entitled to maintain a claim for copyright infringement for this work.

86.    Even if Plaintiff Cambridge could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Keep Talking: Communication Fluency Activities for Language Teaching* is 193 pages

497

in length and a teacher's guide language teaching activities. The excerpt was forty-one pages or approximately 21% of the work. Professor Murphy tailored the excerpt and his use of the excerpt so as to inform students writing, vocabulary, speaking and pronunciation exercises. Plaintiff Cambridge has not established that Professor Murphy's posting of this excerpt negatively affected the market for this work. In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt. In fact, Professor Murphy has now required student to purchase this work as a textbook for his class. All four fair use factors favor Defendants.

87.     Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

C.      More Grammar Games: Cognitive Affective and Drama Activities for EFL Students (Cambridge) – Professor Murphy (Dkt. 266-4 D-3)

88.     Cambridge obtained U.S. Copyright Registration TX-274-034 more than five (5) years after the date this work was first published. Accordingly, the Court grants no presumption of copyright validity under 17 U.S.C. § 410(c)

498

and accords no evidentiary weight to that registration. Cambridge has failed to prove that it has a valid copyright in *More Grammar Games: Cognitive Affective and Drama Activities for EFL Students*. Cambridge has not shown it is entitled to maintain a claim for copyright infringement for this work.

89.    Even if Plaintiff Cambridge could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *More Grammar Games: Cognitive Affective and Drama Activities for EFL Students* is 174 pages in length and a teacher's guide for language teaching grammar. The excerpt was 36 pages in length or approximately 13.5% of the work, which is not substantial. Professor Murphy tailored the excerpt and his use of this excerpt so as to inform students writing, vocabulary, speaking and pronunciation exercises. Plaintiff Cambridge has not established that Professor Murphy's posting of this excerpt negatively affected the market for this work. In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt. Importantly, Professor Murphy testified that he did not require students in his class to access this excerpt

on ERes.  In other words, the material was not assigned even as supplemental reading for the students.

90.   Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy.  In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use.  The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

D.   Grammar Practice Activities (1st Edition)(Cambridge) – Professor Murphy (Dkt. 266 D-4)

91.   Cambridge contends that *Grammar Practice Activities* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the United States within thirty (30) days of first publication.  Cambridge has thus failed to establish that the subject work is, in fact, a "foreign work."  Plaintiffs have thus failed to demonstrate that *Grammar Practice Activities* is a foreign work that avoids the requirement of 17 U.S.C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Plaintiffs have not shown it is entitled to maintain a claim for copyright infringement for this work.

92.     Even if Plaintiff Cambridge could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Grammar Practice Activities* is 282 pages in length and a teacher's resource book for teaching grammar to students in a communicative methodology in a classroom environment. The excerpt was 59 pages in length or approximately 8% of the work, which was not substantial. Plaintiff Cambridge has not established that Professor Murphy's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

93.     Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

E.     Five-Minute Activities: A Resource Book of Short Activities (Cambridge) – Professor Murphy (Dkt. 266-4 D-5)

94.     Cambridge obtained U.S. Copyright Registration TX 7-274-046 more than five (5) years after the date this work was first published. Accordingly,

501

the Court grants no presumption of copyright validity under 17 U.S.C. §410(c) and accords no evidentiary weight to that registration. Cambridge has failed to prove that it has or owns a valid copyright in *Five Minute Activities: A Resource Book of Short Activities*. Cambridge has not shown it is entitled to maintain a claim for copyright infringement for this work.

95. Cambridge has not come forward with evidence sufficient to prove that *Five Minute Activities: A Resource Book of Short Activities* has been properly assigned to it.

96. Even if Plaintiff Cambridge could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. Plaintiff Cambridge has not established that Professor Murphy's posting of the excerpt negatively affected the market for this work. In this instance, it appears that the excerpt was never made accessible to students because it was not assigned to the class as a reading assignment. Thus, there could be no conceivable market harm from this posting. All four fair use factors favor Defendants.

97. Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that

502

regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

F.    Newspapers (Oxford) – Professor Murphy (Dkt. 266-4 D-6)

98.    Oxford contends that *Newspapers* is a "foreign work," but has not established that this work was not published in the United States within thirty (30) days of first publication. Oxford has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Newspapers* is a foreign work that avoids the requirement of 17 U.S C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Oxford has not shown it is entitled to maintain a claim for copyright infringement for this work.

99.    Oxford has not come forward with evidence sufficient to prove that *Newspapers* has been properly assigned to it.

100.    Even if Plaintiff Oxford could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching

503

purposes. The nature of the work is fact based. *Newspapers* is 129 pages in length and a teacher's resource book that provides photocopiable pronunciation games (language training) for use in a classroom environment. The excerpt was twenty-nine (29) pages in length, which was not substantial. Moreover, the book includes a "photocopy license" that applies to several pages, reducing the alleged improper use to only twenty-seven (27) pages, or approximately 20.9% of the work. Plaintiff Oxford has not established that Professor Murphy's posting of the excerpt negatively affected the market for this work. In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt. In this instance, it appears that the excerpt was never made accessible to students because it was not assigned to the class as a reading assignment. Thus, there could be no conceivable market harm from this posting. All four fair use factors favor Defendants.

101.   Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

504

G.    Role Play: Resource Books For Teachers (Oxford) – Murphy (D-7)

102.    Oxford contends that *Role Play: Resource Books for Teachers* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the United States within thirty (30) days of first publication. Oxford has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Role Play: Resource Books for Teachers* is a foreign work that avoids the requirement of 17 U.S.C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Oxford has not shown it is entitled to maintain a claim for copyright infringement for this work.

103.    Oxford has not come forward with evidence sufficient to prove that *Role Play: Resource Books for Teachers* has been properly assigned to it.

104.    Even if Plaintiff Oxford could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Role Play: Resource Books for Teachers* is 182 pages in length and a teacher's resource book that provides photocopiable language training resources for use in a classroom environment.

The excerpt was 39 pages in length, which was not substantial. Moreover, the book includes a "photocopy license" that applies to several pages, reducing the alleged improper use to only 30 pages, or approximately 16.4% of the work. Plaintiff Oxford has not established that Professor Murphy's posting of the excerpt negatively affected the market for this work. In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt. In this instance, it appears that the excerpt was never made accessible to students because it was not assigned to the class as a reading assignment. Thus, there could be no conceivable market harm from this posting. All four fair use factors favor Defendants.

105. Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

H.    Writing: Resource Books for Teachers (Oxford) – Professor Murphy (D-8)

106. Oxford contends that *Writing: Resource Books for Teachers* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the

506

United States within thirty (30) days of first publication.  Oxford has thus failed to establish that the subject work is, in fact, a "foreign work."  Plaintiffs have thus failed to demonstrate that *Writing: Resource Books for Teachers* is a foreign work that avoids the requirement of 17 U.S C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted.  The Court therefore concludes that Oxford has not shown it is entitled to maintain a claim for copyright infringement for this work.

107.   Oxford has not come forward with evidence sufficient to prove that *Writing: Resource Books for Teachers* has been properly assigned to it.

108.   Even if Plaintiff Oxford could assert a claim for infringement of a copyright in this work, Professor Murphy made a "fair use" of the work under 17 U.S.C. § 107.  The excerpt at issue was posted to ERes for educational or teaching purposes.  The nature of the work is fact based.  *Writing: Resource Books for Teachers* is 146 pages in length and a teacher's resource book that provides writing resources for use in a classroom environment.  The excerpt was 31 pages in length, which was not substantial.  Moreover, the book includes a "photocopy license" that applies to several pages, reducing the alleged improper use to only 24 pages, or approximately 16.4% of the work.  Plaintiff Oxford has not established that

Professor Murphy's posting of the excerpt negatively affected the market for this work. In fact, Professor Murphy testified that from time to time students actually purchased the work from which the excerpt was taken, after a review of the excerpt. In this instance, it appears that the excerpt was never made accessible to students because it was not assigned to the class as a reading assignment. Thus, there could be no conceivable market harm from this posting. All four fair use factors favor Defendants.

109. Moreover, while Professor Murphy only mentally completed a fair use checklist, he acted within the spirit of the 2009 Copyright Policy. In that regard, Professor Murphy recreated a fair use checklist that fairly and accurately represents his mental steps taken, with reference to this excerpt, in reaching his conclusion that the excerpt was a fair use. The Court finds that Professor Murphy acted in good faith and effectively complied with the 2009 Copyright Policy.

I.    Vocabulary (Oxford) – Professor Murphy (D-9)

110. Oxford contends that *Vocabulary* is a "foreign work," but has not established that this work was not published in the United States within thirty (30) days of first publication. Oxford has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Vocabulary* is a foreign work that avoids the requirement of 17 U.S.C. §411(a) that

registration of the copyright claim has been made (a "mandatory precondition")
before a civil action for infringement the copyright in a U.S. work shall be
instituted. The Court therefore concludes that Oxford has not shown it is entitled
to maintain a claim for copyright infringement for this work.

111. Oxford has not come forward with evidence sufficient to prove
that *Vocabulary* has been properly assigned to it.

112. Even if Plaintiff Oxford could assert a claim for infringement of
a copyright in this work, Professor Murphy made a "fair use" of the work under 17
U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching
purposes. The nature of the work is fact based. *Vocabulary* is 166 pages in length
and a teacher's resource book that provides photocopiable pronunciation games
(language training) for use in a classroom environment. The excerpt was 32 pages
in length, which was approximately 19.3% of the work. The work is also out of
print, and Plaintiff Oxford has not established that Professor Murphy's posting of
the excerpt negatively affected the market for this work. In fact, Professor Murphy
testified that from time to time students actually purchased the work from which
the excerpt was taken, after a review of the excerpt. In this instance, it appears that
the excerpt was never made accessible to students because it was not assigned to

the class as a reading assignment.  Thus, there could be no conceivable market

harm from this posting.  All four fair use factors favor Defendants.

113.   Moreover, while Professor Murphy only mentally completed a

fair use checklist, he acted within the spirit of the 2009 Copyright Policy.  In that

regard, Professor Murphy recreated a fair use checklist that fairly and accurately

represents his mental steps taken, with reference to this excerpt, in reaching his

conclusion that the excerpt was a fair use.  The Court finds that Professor Murphy

acted in good faith and effectively complied with the 2009 Copyright Policy.

J.   The Craft of Inquiry: Theories, Methods, Evidence – Professor
Kaufmann (D-10)

114.   Professor Kaufmann made a "fair use" of the work under 17

U.S.C. § 107.  The excerpt at issue was posted to ERes for educational or teaching

purposes.  The nature of the work is fact based.  *The Craft of Inquiry: Theories,*

*Methods, Evidence* is 134 pages.   The excerpt was 11 pages in length, or

approximately 8.2% of the work, which was not substantial.  She also did not use

the work in Maymester 2009.   Plaintiff [Publisher] has not established that

Professor Kaufmann's posting of the excerpt negatively affected the market for this

work. All four fair use factors favor Defendants.

115.   Professor Kaufmann completed a fair use checklist for the

accused excerpt of *The Craft of Inquiry: Theories, Methods, Evidence*. Although

Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

K.   Handbook of Feminist Research: Theory and Praxis (SAGE) – Kaufmann (D-11)

116.   Professor Kaufmann made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Handbook of Feminist Research: Theory and Praxis* is 712 pages. The excerpt was 20 pages in length, or approximately 2.8% of the work, which was not substantial. Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

117.   Professor Kaufmann completed a fair use checklist for the accused excerpt of *Handbook of Feminist Research: Theory and Praxis*. Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching

511

her conclusion that the excerpt was a fair use.  The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

L.      Handbook of Social Theory (SAGE) – Professor Kaufmann (D-12)

118.  *Handbook of Social Theory* is a collective work, and SAGE has not come forward with evidence sufficient to prove that the accused excerpt has been assigned to publisher.

119.  SAGE contends that *Handbook of Social Theory* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the United States within thirty (30) days of first publication.  SAGE has thus failed to establish that the subject work is, in fact, a "foreign work."   Plaintiffs have thus failed to demonstrate that *Handbook of Social Theory* is a foreign work that avoids the requirement of 17 U.S C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted.  The Court therefore concludes that SAGE has not shown it is entitled to maintain a claim for copyright infringement for this work.

120.  Even if Plaintiff SAGE could assert a claim for infringement of a copyright in this work, Professor Kaufmann made a "fair use" of the work under

17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Handbook of Social Theory* is 537 pages. The excerpt was 12 pages in length, or approximately 2.2% of the work, which was not substantial. Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

121. Professor Kaufmann completed a fair use checklist for the accused excerpt of *Handbook of Social Theory*. Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

M.    The SAGE Handbook of Qualitative Research (3d edition) (SAGE) –
      Professor Kaufmann (D-13)

122. *The SAGE Handbook of Qualitative Research (3d edition)* is a collective work, and SAGE has not come forward with evidence sufficient to prove that all of the accused excerpts have been assigned to SAGE.

123. Even if Plaintiff SAGE could assert a claim for infringement of a copyright in this work, Professor Kaufmann made a "fair use" of the work under

17 U.S.C. § 107.  The excerpt at issue was posted to ERes for educational or teaching purposes.  The nature of the work is fact based.  *The SAGE Handbook of Qualitative Research (3d edition)* is 1126 pages.  The excerpt was 103 pages in length, or approximately 9.1% of the work, which was not substantial.  Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work.  All four fair use factors favor Defendants.

124.  Professor Kaufmann completed a fair use checklist for the accused excerpt of *The SAGE Handbook of Qualitative Research (3d edition)*. Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use.  The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

N.    The SAGE Handbook of Qualitative Research (2d edition) (SAGE) – Professor Kaufmann (D-14)

125.  *The SAGE Handbook of Qualitative Research (2d edition)* is a collective work, and SAGE has not come forward with evidence sufficient to prove that all of the accused excerpts have been assigned to SAGE.

126.   SAGE did not obtain U.S. Copyright Registration for the contributions to the collective work.  Accordingly, the Court grants no presumption of copyright validity under 17 U.S.C. §410(c) and accords no evidentiary weight to that registration.  SAGE has failed to prove that it has or owns a valid copyright in *The SAGE Handbook of Qualitative Research (2d edition)*.  SAGE has not shown it is entitled to maintain a claim for copyright infringement for this work.

127.   Even if Plaintiff SAGE could assert a claim for infringement of a copyright in this work, Professor Kaufmann made a "fair use" of the work under 17 U.S.C. § 107.  The excerpt at issue was posted to ERes for educational or teaching purposes.  The nature of the work is fact based.  *The SAGE Handbook of Qualitative Research (2d edition)* is 1065 pages.  The excerpt was 78 pages in length, or approximately 7.3% of the work, which was not substantial.  *The SAGE Handbook of Qualitative Research (2d edition)* is out of print.  Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work.  All four fair use factors favor Defendants.

128.   Professor Kaufmann completed a fair use checklist for the accused excerpt of *The SAGE Handbook of Qualitative Research (2d edition)*.  Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and

515

accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

O.   Handbook of Critical and Indigenous Methodologies (SAGE) – Professor Kaufmann (D-15)

129.   Even if Plaintiff SAGE could assert a claim for infringement of a copyright in this work, Professor Kaufmann made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Handbook of Critical and Indigenous Methodologies* is 570 pages. The excerpt was 37 pages in length, or approximately 6.5% of the work, which was not substantial. Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

130.   Professor Kaufmann completed a fair use checklist for the accused excerpt of *Handbook of Critical and Indigenous Methodologies*. Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor

Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

P.    Qualitative Research Practice (SAGE) – Kaufmann (D-16)

131. SAGE contends that *Qualitative Research Practice* is a "foreign work," but has not established that this work was not published in the United States within thirty (30) days of first publication. SAGE has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *Qualitative Research Practice* is a foreign work that avoids the requirement of 17 U.S.C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that SAGE has not shown it is entitled to maintain a claim for copyright infringement for this work.

132. Even if Plaintiff SAGE could assert a claim for infringement of a copyright in this work, Professor Kaufmann made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Qualitative Research Practice* is 608 pages. The excerpt was 16 pages in length, or approximately 2.6% of the work, which was not substantial. Plaintiff SAGE has not established that

517

Professor Kaufmann's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

133. Professor Kaufmann completed a fair use checklist for the accused excerpt of *Qualitative Research Practice*. Although Professor Kaufmann was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

Q.   Handbook of Narrative Inquiry (SAGE) – Professor Kaufmann (D-17)

134. Professor Kaufmann made a "fair use" of the work under 17 U.S.C. § 107. The excerpt at issue was posted to ERes for educational or teaching purposes. The nature of the work is fact based. *Handbook of Narrative Inquiry* is 650 pages. The excerpt was 32 pages in length, or approximately 4.9% of the work, which was not substantial. Plaintiff SAGE has not established that Professor Kaufmann's posting of the excerpt negatively affected the market for this work. All four fair use factors favor Defendants.

135. Professor Kaufmann completed a fair use checklist for the accused excerpt of *Handbook of Narrative Inquiry*. Although Professor Kaufmann

518

was unable to locate the completed fair use checklist, Professor Kaufmann recreated a fair use checklist that fairly and accurately represents Professor Kaufmann's analysis with reference to this excerpt in reaching her conclusion that the excerpt was a fair use. The Court finds that Professor Kaufmann acted in good faith and effectively complied with the 2009 Copyright Policy.

### R.   The Enlargement of the European Union (Oxford) – Professor Danis (D-18)

136.   Oxford contends that *The Enlargement of the European Union* is a "foreign work," but has <u>not</u> established that this work was <u>not</u> published in the United States within thirty (30) days of first publication. Oxford has thus failed to establish that the subject work is, in fact, a "foreign work." Plaintiffs have thus failed to demonstrate that *The Enlargement of the European Union* is a foreign work that avoids the requirement of 17 U.S C. §411(a) that registration of the copyright claim has been made (a "mandatory precondition") before a civil action for infringement the copyright in a U.S. work shall be instituted. The Court therefore concludes that Oxford has not shown it is entitled to maintain a claim for copyright infringement for this work.

137.   Oxford has not come forward with evidence sufficient to prove that *The Enlargement of the European Union* has been properly assigned to it.

138.   Even if Plaintiff Oxford could assert a claim for infringement of a copyright in this work, Professor Danis made a "fair use" of the work under 17 U.S.C. § 107.  The excerpt at issue was posted to ERes for educational or teaching purposes, although the course was never taught.  The nature of the work is fact based.  *The Enlargement of the European Union* is 494 pages.  The excerpt was 10 pages in length, or approximately 2% of the work, which was not substantial.  Plaintiff Oxford has not established that Professor Danis's posting of the excerpt negatively affected the market for this work.  All four fair use factors favor Defendants.

139.  Professor Danis's correspondence with the GSU library indicates that he completed a fair use checklist for the accused excerpt of *The Enlargement of the European Union*.